UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ISIAH ROBINSON, and LISA                    CASE NO. 3:24-cv-00948-WWB-PDB
CLAYTON ROBINSON, Each an
Individual,

      Plaintiffs,

v.

NATIONAL AUTOMOTIVE, INC.,
a Florida corporation,

      Defendant.
_____

### DEFENDANT/COUNTER-PLAINTIFF'S RESPONSE IN OPPOSITION TO PLAINTIFFS/COUNTER-DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

COMES NOW Defendant/Counter-Plaintiff, NATIONAL AUTOMOTIVE, INC. ("NAI"), by and through its undersigned counsel, and pursuant to Local Rule 3.01(c), files this response in opposition to Plaintiffs/Counter-Defendants' Motion for Judgment on the Pleadings (the "Motion") (D.E. 19) as follows:

### STATEMENT OF MATERIAL FACTS

1.      Plaintiffs, Isiah Robinson and Lisa Robinson ("Plaintiffs"), initiated this action on September 12, 2024, by the filing of their five-count Verified Complaint against NAI (the "Complaint"), to wit: (1) Action for Violation of the Federal Odometer Act; (2) Action for Fraud; (3) Action for Fraudulent Inducement; (4) Action for Breach of Express Warranty; and (5) Action for Revocation of Acceptance. (D.E. 1).

2.      Notably, <u>each</u> of these counts incorporates and realleges the general allegations contained in Paragraphs 1-51 of the Complaint. *See* the Complaint at ¶¶ 53, 64, 70, 75 and 81.

1

Within the "Factual Allegations" section of the Complaint (paragraphs 11-51), Plaintiffs alleged that they signed the following documents in relation to the purchase of a used 2011 Chevrolet Equinox (the "Vehicle") from NAI:

(a)     a Retail Installment Sales Contract ("RISC") (*see* paragraphs 15 and 16);

(b)     an Odometer Disclosure Statement (*see* paragraphs 19 and 20);

(c)     a Separate Odometer Disclosure Statement (*see* paragraphs 22 and 23);

(d)     an Unsecure Power of Attorney (*see* paragraphs 24 and 25); and

(e)     "Lastly,"[1] an Application for Certificate of Motor Vehicle Title (*see* paragraphs 26 and 27).

3.     In Count I of the Complaint, Plaintiffs rely on the documents they claim to have signed (itemized in paragraph 2 above) in support of their allegations that NAI violated the Federal Odometer Act.  *See* paragraphs 52-63 of the Complaint.

4.     In Count II of the Complaint, Plaintiffs rely on an alleged "mileage representation", and "representations and omissions," made by NAI in and/or among the documents referenced in Paragraphs 1-51 of the Complaint.  *See* paragraphs 65-69 of the Complaint.

5.     In Count III of the Complaint, Plaintiffs allege NAI induced them to enter into the RISC and consummate the transaction for the sale of the Vehicle by "knowingly making misrepresentations of material fact and omissions of material fact," which are not described or

---

[1]  Plaintiffs verified the Complaint, declaring "under penalty of perjury under the laws of the United States of America" that their allegations were true and correct.  Plaintiffs therefore claim that the identified documents are the *only* ones they signed in relation to the purchase of the Vehicle from NAI.  NAI vehemently disagrees, and asserts that Plaintiffs have intentionally withheld not only the correct/proper documents, but all of the *other* documents they signed in relation to the purchase, which comprise the governing contracts between the parties.

identified in Count III; presumably, those "misrepresentations" and "omissions" are set forth in paragraphs 1-51, which are the only factual allegations made in relation to Count III.

6.     In Count IV of the Complaint, Plaintiffs rely on the "Mileage Representation" as vaguely and ambiguously defined. *See* paragraphs 65 and 76 of the Complaint. Plaintiffs vaguely mention "various statements by Dealership," but did not plead any such statements with specificity. As with the other counts, Count IV incorporates and realleges paragraphs 1-51 of the Complaint.

7.     In Count V of the Complaint, Plaintiffs once again include virtually no additional facts, other than those alleged in paragraphs 1-51 of the Complaint, although Plaintiffs made reference to having "notified Dealership, verbally and in writing, that they were revoking acceptance." *See* paragraph 87 of the Complaint. Notably, Plaintiffs did not attach any such writing to the Complaint as an exhibit.

8.     On November 8, 2024, NAI filed its Answer and Affirmative Defenses to Verified Complaint for Damages and Incidental Relief and Counterclaim. (D.E. 17). The Counterclaim asserts a single cause of action against Plaintiffs for breach of contract. Within Count I, NAI identified twelve documents that comprise the contracts governing the parties, to wit:

(a)     a Retail Installment Contract and Security Agreement (*see* paragraph 8);

(b)     a Bill of Sale Buyer's Order (*see* paragraph 9);

(c)     an As Is – Sold Without Warranty agreement (*see* paragraph 10);

(d)     a Customer Consent to Contact Via Telephone and Wireless Device ((*see* paragraph 11);

(e)     a Federal Risk Based Pricing Notice (*see* paragraph 12);

(f)      a Separate Odometer Disclosure Statement and Acknowledgement (*see* paragraph 13);

(g)      a Buyers Guide (*see* paragraph 14);

(h)      a Power of Attorney for a Motor Vehicle, Mobile Home, Vessel or Vessel with Trailer (*see* paragraph 15);

(i)       an Application for Certificate of Motor Vehicle Title (*see* paragraph 16);

(j)       an Odometer Disclosure Statement (*see* paragraph 17);

(k)      an Acknowledgement of Purchase of Vehicle Containing Past Due Starter Interrupt and/or Electronic Tracking (GPS) Device as Condition of Sale (the "GPS Acknowledgement") (*see* paragraph 18); and

(l)       a Repossession Agreement (*see* paragraph 19).

9.       On November 20, 2024, Plaintiffs filed their Answer and Defenses to NAI's Counterclaim. (D.E. 18).  Critically, despite the fact that Plaintiffs did not refer to or attach the vast majority of the documents identified in paragraph 8 above to their own Complaint, Plaintiffs *admitted* having executed *all* of these various documents, including the Acknowledgement of Purchase of Vehicle Containing Past Due Starter Interrupt and/or Electronic Tracking (GPS) Device as Condition of Sale.[2]

10.     On November 20, 2024, Plaintiffs filed their Motion for Judgment on the Pleadings, in which they seek to have the Court dismiss the Counterclaim "for lack of standing and supplemental jurisdiction." *See* D.E. 19 at p. 10.

---

[2]  Plaintiffs denied that the copies of the documents attached to NAI's Counterclaim as Exhibits A-L are true and correct representations of the documents as signed by Plaintiffs, but did not attach alternate versions of Exhibits B, C, D, E, G, K and/or L to their Complaint or to their Answer.

## ARGUMENT

Plaintiffs' Motion should respectfully be denied on both grounds raised by Plaintiffs.

## I.    NAI does not lack Article III standing.

Plaintiffs' argument that NAI lacks standing is based on their assertion that the Counterclaim alleges "nothing but generalized claims of harm, without any quantifiable loss or description of injury." *See* the Motion at p. 7.   Plaintiffs rely solely on *Nicklaw v. Citimortgage, Inc.*, 839 F. 3d 998 (11th Cir. 2016), in support of their argument.   In *Nicklaw*, the Eleventh Circuit held, in pertinent part:

> A plaintiff has injury in fact if he suffered an invasion of a legally protected interest that is concrete, particularized, and actual or imminent. (internal citation omitted). 'A 'concrete' injury must be '*de facto*'; that is, it must actually exist. (internal citations omitted). And intangible injuries may satisfy the Article III requirement of concreteness. (internal citation omitted).

*Nicklaw*, 839 F. 3d at 1002.

In *Ball v. Alamo Rent A Car, LLC*, Case No. 6:17-cv-2106, 2018 WL 3068065, at *2 (M.D. Fla. April 23, 2018), the Court considered defendant's motion to dismiss the plaintiff's breach of contract claim because the plaintiff allegedly lacked constitutional standing to bring suit. *Id.* The Court rejected this argument.   In considering the "injury element," the Court held that the plaintiff's allegations "clearly articulate[d] a concrete injury," citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), noting the *Lujan* holding that, "at the pleading stage, the injury requirement is satisfied by 'general factual allegations of injury resulting from [Defendant's] conduct." *Id.*

The elements of the cause of action for breach of contract are: (1) the existence of a contract; (2) breach of that contract; and (3) damages. *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017).  Paragraphs 8-19 of the Counterclaim (D.E. 17) specifically identify the documents that comprise the governing contracts, all of which are also attached as

exhibits to the Counterclaim.  Paragraphs 24-26 of the Counterclaim expressly allege that Plaintiffs breached the contractual documents, namely the GPS Acknowledgement.  Lastly, paragraphs 27 and 28 allege that NAI has been damaged by Plaintiffs' breaches of the GPS Acknowledgement.  Therefore, NAI's Counterclaim alleged the elements of the cause of action for breach of contract and included "general factual allegations of injury resulting from [Plaintiffs'] conduct."

In conjunction with the Court's consideration of Plaintiffs' argument, a review of the GPS Acknowledgement is warranted.  The GPS Acknowledgement (a) identifies Plaintiffs as the Buyers; (b) identifies NAI as the Seller/Creditor; (c) describes the Vehicle as the same one identified in *every other* document signed by Plaintiffs in relation to its purchase; (d) contains the same account number (4762) as the one listed on the RISC attached as Exhibit "A" to Plaintiffs' Complaint as well as Exhibits A, B and C attached to NAI's Counterclaim; and (e) contains the same Vehicle Stock Number 28439 as listed on Exhibits B and G attached to the Counterclaim. *See* D.E. 17, at Exh. K.[3]

The GPS Acknowledgement states, in pertinent part:

- "I/We understand and agree that the Lien Holder or Holder of the Motor Vehicle Retail Installment Contract (if assigned), may use the GPS Unit to locate the Vehicle.  The Starter Interrupt Device may prevent the Vehicle from starting, subject to any Rights I may have to Cure a Default."
- "I/We agree not to tamper with the Device and that it remains the Property of the Lien Holder or Holder of the Motor Vehicle Retail Installment Contract (if assigned)."
- "I/We understand the GPS unit is being used to secure collection of monies I hereby acknowledge I/we owe and, where allowed, to repossess the Vehicle as allowed."

*See* D.E. 17, at Exh. K.

---

[3]  It is undeniable, and cannot be disputed, that the "Retail Installment Contract" referenced in the GPS Acknowledgement is *either* the RISC that Plaintiffs allege is the operative contract *or* the Retail Installment Contract and Security Agreement that NAI alleges is the operative contract (*see* paragraph 8 of the Counterclaim and Exhibit "A" thereto).  In short, there is no other retail installment contract, or vehicle, referred to or contemplated by the GPS Acknowledgement.

Moreover, the Retail Installment Contract and Security Agreement described in paragraph 8 of the Counterclaim (and attached as Exhibit "A" thereto) states, in pertinent part:

- Under the sub-heading "Remedies," "If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:…We may immediately take possession of the Property by legal process or self-help…"
- "If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle." (D.E. 17, at p. 22).
- Under the heading "Security Agreement," "To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property." (D.E. 17, at p. 22).
- "By giving us a security interest in the Property, you represent and agree to the following:…You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes. You agree not to remove the Property from the U.S. without our prior written consent. You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent." (D.E. 17, at p. 22).

*See* D.E. 17, at Exh. A.

Plaintiffs' Motion claims that NAI did not articulate "specific or measurable damages" or a "tangible or financial injury." *See* D.E. 19, p. 7. First, a litigant has Article III standing if it has incurred *either* tangible *or* intangible injury. "For purposes of the concrete injury analysis under Article III, [the Eleventh Circuit] ha[s] recognized three kinds of harm: 1) tangible harms, like physical or monetary harms; 2) intangible harms, like injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts; and, finally, 3) a material risk of future harm when a plaintiff is seeking injunctive relief. (internal citation omitted)." *DiPierro v. Florida Health Sciences Ctr., Inc.*, Case No. 8:23-cv-01864-KKM-NHA, 2024 WL 3051320, at *4 (M.D. Fla. June 18, 2024).[4]

---

[4] Just as the Court considered a breach of contract claim in *Ball*, so too did the district court in *Attias v. Carefirst, Inc.*, 346 F.R.D. 1, 9 (D.D.C. 2024). In *Attias*, the district court held that, "No analogue is even required here, however, because American courts dating back to the Founding have permitted plaintiffs to bring suit based on the exact injury Plaintiffs have alleged: a breach of contract. That was true regardless of whether the plaintiff incurred actual damages or, as here,

Although the injury incurred by a litigant is not limited to a "financial injury," as Plaintiffs have described it, in this instance NAI did in fact allege a financial injury (or monetary harm) because it alleged a breach of the GPS Acknowledgement, which was attached as an exhibit to the Counterclaim, and expressly states that the device "remains the property of the Lien Holder." NAI further alleged that Plaintiffs had tampered with, permanently disabled and/or removed the GPS unit from the Vehicle. *See* D.E. 17, at ¶¶ 24-26. Damage to personal property is a classic example of monetary or financial damage, which NAI alleged it has incurred.

That said, even to the extent the damage to NAI's property were somehow insufficient (which NAI does not concede, and Plaintiffs wholly ignored in their Motion), "in Florida where a contract has been breached but for one reason or another recoverable damages were not proven," the party is still entitled to nominal damages. *Zayre Corp. v. Creech*, 497 So. 2d 706, 708 (Fla. 4th DCA 1986); *see also, Land & Sea Petroleum Holdings, Inc. v. Leavitt*, 321 So. 3d 810, 815 (Fla. 4th DCA 2021); *Indian River Colony Club, Inc. v. Schopke Const. & Engineering, Inc.*, 619 So. 2d 6, 8 (Fla. 5th DCA 1993); and *Continuum Condo. Ass'n, Inc. v. Continuum VI, Inc.*, 549 So. 2d 1125, 1127 (Fla. 3d DCA 1989). "General damages, that is, those damages which naturally flow or result from the injuries alleged need not be specifically pleaded." *Hutchison v. Tompkins*, 259 So. 2d 129, 132-133 (Fla. 1972); *Land & Sea Petroleum Holdings, Inc.*, 321 So. 3d at 815; *Mims Investments, LLC v. Mosaic Fertilizer, LLC*, Case No. 8:11-cv-1093-T-TBM, 2013 WL 1215932, at *8, n. 10 (M.D. Fla. July 17, 2013).

Moreover, Rule 8(a), Fed. R. Civ. P., requires that a "pleading that states a claim for relief must contain…(2) a short and plain statement of the claim showing that the pleader is entitled to

---

sought to recover only nominal damages. All the same, the breach of a contractual obligation to perform some duty has always been understood as a concrete injury that enables the aggrieved contracting party to proceed in an American court." *Id.* at 9.

relief." In this particular instance, regardless of any entitlement it has to monetary damages due to its property (the GPS unit) being tampered with/removed/disabled while it was in Plaintiffs' possession and control, NAI has also incurred damages due to Plaintiffs' breach of the GPS Acknowledgement in that NAI is unable to protect and preserve its security interest in the Vehicle, and its corresponding remedy of repossession of the Vehicle (as may be needed), if NAI is unable to locate the Vehicle and/or unable to utilize the information that is ordinarily tracked, compiled and reported by the GPS unit that was installed on the Vehicle when the Plaintiffs purchased it.

As such, NAI has not only properly pled the elements of the cause of action for breach of contract, in compliance with Florida law and Rule 8, Fed. R. Civ. P., but NAI has alleged sufficient facts alleging it has incurred damages – whether tangible and/or intangible – establishing it has standing to pursue a breach of contract claim under Article III. Plaintiffs' Motion should respectfully be denied on this basis.

## II. The Court has, and should exercise, supplemental jurisdiction over NAI's Counterclaim.

### A. The Court has supplemental jurisdiction over NAI's Counterclaim.

28 U.S.C. §1367 states, in pertinent part:

(a)   Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
…
(c)   The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

"Whenever a federal court has supplemental jurisdiction under section 1367(a), that jurisdiction should be exercised unless section 1367(b) or (c) applies." *Parker v. Scrap Metal Processors, Inc.*, 468 F. 3d 733, 743 (11th Cir. 2006) (citing *Palmer v. Hosp. Auth. of Randolph County*, 22 F. 3d 1559, 1569 (11th Cir. 1994)).

In this instance, Plaintiffs' argument is limited to 28 U.S.C. §1367(c)(2) (*see* the Motion at p. 7), so that is the only factor addressed by NAI here.  Plaintiffs argue that NAI's counterclaim for breach of contract is "wholly distinct" from Plaintiffs' claims "which center on odometer misrepresentations during the vehicle's sale" and that "[t]hese claims do not share a 'common nucleus of operative fact.'"  Nothing could be further from the truth.  Even a cursory review of Plaintiffs' factual allegations and NAI's general allegations makes clear that the parties' respective claims center around an identical – and thereby common – nucleus of operative fact, which is the purchase and sale of the Vehicle borne out by the documents signed by Plaintiffs related thereto. *See also, Buckles v. Focus on Innovation, Inc.*, 2014 WL 982841, at *3 (M.D. Fla. Mar. 6, 2014) ("In determining whether a state law claim is part of the same case or controversy as a federal issue, courts look to 'whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence.' *Hudson v. Delta Air Lines, Inc.*, 90 F. 3d 451, 455 (11th Cir. 1996).").  There is no question that Plaintiffs' claims and NAI's claim arise from the same facts and also involve the same transaction, occurrences, witnesses and evidence.

Moreover, Plaintiffs themselves asserted state law claims against NAI and alleged that the Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. §1367.  *See* D.E. 1, at p. 1, ¶ 1. The notion that Plaintiffs' state law claims for fraud, fraudulent inducement, breach of express warranty and revocation of acceptance somehow stem from a *different* set of facts than those upon which NAI's Counterclaim is based is absurd and simply unsupported.  It would be

10

wholly unfair to NAI, and not at all in keeping with judicial economy, convenience of the parties and witnesses, and expense to the parties, to force NAI to have to litigate its claim for breach of contract in state court while Plaintiffs litigate their claims, that derive from the *very same* transaction and occurrence, before this Court.

Further, Plaintiffs' reliance on *Parker* is curious, because in *Parker*, the Eleventh Circuit actually reversed the district court's dismissal for lack of subject matter jurisdiction. *Parker*, 468 F. 3d at 747. With regard to whether the state claim substantially predominated over the federal claims, the Eleventh Circuit likewise did not agree with the district court's findings. *Id.* at 744. The Court noted, "'A federal court will find substantial predominance when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage.' *McNerny v. Nebraska Public Power Dist.,* 309 F. Supp. 2d 1109, 1117–18 (D. Neb. 2004), (*citing De Ascencio v. Tyson Foods, Inc.*, 342 F. 3d 301, 309 (3rd Cir. 2003) (*quoting Gibbs*, 383 U.S. at 727, 86 S. Ct. at 1140)) (internal quotes omitted)." That is simply not the case in this instance. NAI has Article III standing for its breach of contract claim.

**B.     The Court should exercise supplemental jurisdiction because NAI's Counterclaim is a compulsory counterclaim under Rule 13(a)(1), Fed. R. Civ. P.**

In this instance, NAI's claim for breach of contract against Plaintiffs is a compulsory counterclaim that existed at the time it was served with the Complaint and, as such, was not only required to be raised and asserted in conjunction with responding to Plaintiffs' Complaint but also warrants the Court's exercise of supplemental jurisdiction over it.

Rule 13(a)(1), Fed. R. Civ. P., states, in pertinent part: "A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire

jurisdiction."[5]  In *Stevenson v. Corporation of Lloyd's*, 2016 WL 524735, at \*5 (M.D. Fla. Feb. 10, 2016), Judge Moody held, "Among other considerations, a claim is part of the same transaction or occurrence such that it is compulsory if there is a logical relationship between the claim and the counterclaim. *See Londono v. Turkey Creek, Inc.*, 609 So. 2d 14, 20 (Fla. 1992).

> '[A] claim has a logical relationship to the original claim if it *arises* out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.'

*Id.* (internal citation omitted). In Florida, the 'aggregate of operative facts' that can serve as a basis for a compulsory counterclaim has been broadly construed…"  *See also, Beepot v. J.P. Morgan Chase Nat'l Corp. Serv., Inc.*, 57 F. Supp. 3d 1358, 1370-1371 (M.D. Fla. 2014) (in which Judge Howard addressed what constitutes a compulsory counterclaim under Florida law and confirmed the Eleventh Circuit's reliance on the "logical relationship" test, citing *Montgomery Ward Dev. Corp. v. Juster*, 932 F. 2d 1378, 1382) (11th Cir. 1991)).

Here, NAI had a claim against Plaintiffs, at the time that NAI was served with Plaintiffs' Complaint, which arises out of the very same transaction/occurrence (the purchase and sale of the Vehicle and the contracts related thereto) that is the subject matter of Plaintiff's claims, and does not require the addition of another party, given that the Counterclaim is solely against Plaintiffs. NAI's claim undeniably has a logical relationship to Plaintiffs' claims as it arises out of the same

---

[5]  "The Florida rule of civil procedure dealing with compulsory counterclaims tracks the corresponding federal rule…Applying this standard, Florida courts have long held that a compulsory counterclaim is a defendant's cause of action 'arising out of the transaction or occurrence that formed the subject matter of the plaintiff's claim.' (internal citations omitted). A similarly longstanding axiom is that the compulsory counterclaim rule is designed to foreclose the possibility of duplicative litigation. Hence, Florida courts encourage a 'broad, realistic interpretation' of the rule that allows the rule to accomplish its goal." *Puff 'N Stuff of Winter Park, Inc. v. Federal Trust Bank, F.S.B.*, 945 F. Supp. 1523, 1530 (M.D. Fla. 1996).

aggregate of operative facts.  Plaintiffs' attempt to distinguish their claims as "wholly distinct" from NAI's claim is disingenuous and falls flat.  Each and every one of Plaintiffs' claims arises from the identical set of operative facts, which is the parties' contractual relationship that arose in relation to the purchase and sale of the Vehicle.  Under both Florida and federal law, NAI was required to assert its claim for breach of contract at the time it responded to Plaintiffs' Complaint or risk being deemed to have waived that claim.  Judicial economy, basic reason and logic, and traditional notions of fairness, warrant the Court's exercise of supplemental jurisdiction over NAI's Counterclaim.

Plaintiffs' "merger clause" argument does not fit neatly under either of Plaintiffs' arguments as to why the Court should not exercise supplemental jurisdiction over NAI's Counterclaim because it appears to require the Court to go beyond the four corners of the Counterclaim and to disregard the applicable standard of review applied to the Motion.  Whether NAI is entitled to "seek remedies under the RISC for Plaintiffs' alleged breach of the GPS Agreement" (*see* the Motion, at p. 9) or whether NAI can hold Plaintiffs "liable for damages afforded under the RISC based on an alleged breach of the GPS Agreement" is not properly before the Court.  That will be an issue for the Court to determine upon the parties' presentation of evidence and argument at either the summary judgment stage or at trial.  NAI respectfully submits that the Court should not engage in that kind of substantive analysis in relation to a motion for judgment on the pleadings.

For now, the Court need only consider that, in their Answer to the Counterclaim, Plaintiffs *admitted* having signed the GPS Acknowledgement, among all of the other documents they signed.  (D.E. 18).  NAI alleged that Plaintiffs breached the GPS Acknowledgement and that NAI has incurred damages as a result. On the issue of the interplay of the contractual documents, NAI

13

disagrees entirely with Plaintiffs' "merger clause" argument and instead submits that the Eleventh

Circuit, and Courts within the Middle District of Florida, have repeatedly recognized that, "'Under

Florida law, where two or more documents are executed by the same parties, at or near the same

time and concerning the same transaction or subject matter, the documents are generally construed

together as a single contract.' *Clayton v. Howard Johnson Franchise Systems, Inc.*, 954 F. 2d 645,

648 (11th Cir. 1992); *Quix Snaxx, Inc. v. Sorensen*, 710 So. 2d 152, 153 (Fla. 3d DCA 1998)."

*Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1067 (11th Cir. 2004); *Ballou v. Talari*, Case

No. 8:16-cv-0598-T-MAP, 2017 WL 11473714, at *7 (M.D. Fla. Nov. 29, 2017) (holding the same

and relying on *Bragg*); *Audiology Dist., LLC v. Simmons*, Case No. 8:12-cv-02427-JDW-AEP,

2014 WL 7672536, at *5 (M.D. Fla. May 27, 2014) (holding the same, in reliance on *Bragg*, and

holding, "In other words, if two or more contracts are 'functionally intertwined,' they must be

'read and construed together.'" (internal citations omitted)).

In *Vereen v. Lou Sobh Automotive of Jax, Inc.*, 2012 WL 601217, at *8, 11 (M.D. Fla. Feb.

23, 2012), Judge Melton elected *not* to disregard the other documents signed in conjunction with

a RISC, despite the RISC's inclusion of a merger clause, holding:

> "While the RISC includes a merger clause, the Court is of the opinion that to ignore
> all of the other documents Plaintiff executed in conjunction with her attempted
> purchase of the vehicle as non-existent and wholly without legal binding effect, as
> Plaintiff urges, cannot be done based on the language of those documents and on
> the facts of this case. Common sense dictates, and Florida law supports, that all of
> these documents should be read together as part of a single transaction."

*Id.* at *8.  Judge Melton went on to reiterate, "Florida law permits multiple documents regarding

the same transaction executed at or near the same time to be construed together as a single

contract…" *Id.* at *11 (citing to *Bragg*); *see also, Morris v. Sheehan Buick Pontiac GMC, Inc.*,

Case No. 10-80796-CIV-ZLOCH/ROSENBAUM, 2012 WL 12894289, at *8-9 (S.D. Fla. March

10, 2012) (Relying on *Bragg*, the court concluded, "…all of the documents that comprise the

attempted vehicle sale must be viewed as a single contract."). So too, in this instance, *all* of the contractual documents that the parties signed are "functionally intertwined" and should be read and construed together.[6]

For all of the foregoing reasons, NAI respectfully submits that Plaintiffs' Motion should be denied in all respects.

WHEREFORE, Counter-Plaintiff, NATIONAL AUTOMOTIVE, INC., respectfully requests that the Court enter an Order denying Plaintiffs/Counter-Defendants, ISIAH ROBINSON and LISA CLAYTON ROBINSON, Motion for Judgment on the Pleadings, and for such further relief as the Court deems just and proper.

<b>McGLINCHEY STAFFORD</b>

*/s/ Kimberly Held Israel*
Kimberly Held Israel, Esq.
Florida Bar No. 47287
10407 Centurion Pkwy. N., Ste. 200
Jacksonville, FL 32256
Telephone: (904) 224-4449
Fax: (904) 485-8083
Primary E-Mail: kisrael@mcglinchey.com
Secondary E-Mail: cgipson@mcglinchey.com
***Attorney for Defendant/Counter-Plaintiff,
NATIONAL AUTOMOTIVE, INC.***

---

[6] It bears noting that the Bill of Sale Buyer's Order, GPS Acknowledgement and Repossession Agreement attached to NAI's Counterclaim refer to the retail installment contract, while the Buyers Guide states, directly below Plaintiffs' signatures, "IMPORTANT: The information on this form is part of any contract to buy this vehicle," all of which only further supports the conclusion that the documents are functionally intertwined and should be read and construed together. *See* D.E. 17, at Exh. B, G, K and L.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 11, 2024, a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court by using the CM/ECF system, causing a copy to be served on counsel for all parties of record.

<i><u>/s/ Kimberly Held Israel</u></i><br>Attorney