UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ISIAH ROBINSON, and LISA
CLAYTON ROBINSON, Each an
Individual,

        Plaintiffs,

v.

NATIONAL AUTOMOTIVE, INC.,
a Florida corporation,

        Defendant.

CASE NO. 3:24-cv-00948-WWB-PDB

_____

### DEFENDANT/COUNTER-PLAINTIFF'S RESPONSE IN OPPOSITION TO PLAINTIFFS/COUNTER-DEFENDANTS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

COMES NOW Defendant/Counter-Plaintiff, NATIONAL AUTOMOTIVE, INC. ("NAI"), by and through its undersigned counsel, and pursuant to Local Rule 3.01(c), files this response in opposition to Plaintiffs/Counter-Defendants' Motion for Leave to File an Amended Complaint (the "Motion") (D.E. 26) as follows:

### STATEMENT OF MATERIAL FACTS

1.      Plaintiffs, Isiah Robinson and Lisa Robinson ("Plaintiffs"), initiated this action against NAI on September 12, 2024, by the filing of their five-count Verified Complaint, to wit: (1) Action for Violation of the Federal Odometer Act; (2) Action for Fraud; (3) Action for Fraudulent Inducement; (4) Action for Breach of Express Warranty; and (5) Action for Revocation of Acceptance. (D.E. 1).

1

2.    On November 22, 2024,[1] Plaintiffs served paper discovery on NAI, consisting of Interrogatories and Requests for Production.  While the Motion references only one set of paper discovery being served on NAI, Plaintiffs actually served an additional set of paper discovery on NAI on November 22, 2024, which set was directed to NAI's Counterclaim.

3.    Plaintiffs state in the Motion that they "sought information to elucidate the identity of actors engaged in the conspiracy to violate the Act."  *See* the Motion at p. 2.  It is not clear which particular interrogatory Plaintiffs are referring to, but the ones that would presumably seek this information – although obviously not worded as Plaintiffs have described it in the Motion - are interrogatories 2 and/or 7, which is the set of interrogatories directed to Plaintiffs' underlying claims.  *See* Exhibit "A" to the Motion.

4.    As Plaintiffs acknowledge in the Motion (*see* p. 2 therein), on January 6, 2025, NAI served its unverified answers to the Interrogatories (both sets, meaning in response to the interrogatories directed to Plaintiffs' underlying claims and the interrogatories directed to NAI's Counterclaim).[2]  A copy of NAI's January 6th interrogatory answers, and counsel's corresponding service e-mail, is attached hereto as Composite Exhibit "A."  Within those answers (both the unverified set served on January 6th and the verified set served on January 9th), the signature block for each one identifies Robin Ramaghi as the President of NAI.  Further, in response to

---

[1]  Curiously, Plaintiffs claim to have served this discovery on October 2, 2024, but the cover e-mail attached to the Motion as part of Exhibit "A" reflects that the paper discovery was actually served on NAI's counsel on November 22, 2024.  The Certificates of Service in the Request for Production and First Interrogatories within Exhibit "A" to the Motion also are both dated November 22, 2024. NAI had recently filed its Answer and Affirmative Defenses and Counterclaim on November 8, 2024.  (D.E. 17).

[2]  To ensure there is no confusion, the unverified set of answers were served by NAI's counsel on Friday, January 6, 2025, followed by the verified set of answers served by NAI's counsel on Monday, January 9, 2025.  The set attached to the Motion as Exhibit "B" were served on January 9th.

Interrogatory number 1 in the Interrogatories directed to Plaintiffs' underlying claims, Robin Byler Ramaghi is identified as the President of NAI. Mrs. Ramaghi is likewise identified in response to Interrogatory number 2 as a potential witness and is identified again in NAI's answers to Interrogatories 3 and 7 as having interacted with and communicated with Plaintiffs in regard to their purchase of the subject vehicle.[3] Of course, it also goes without saying – despite Plaintiffs' seeming refusal to acknowledge this fact – that Plaintiffs would have known, as far back as a year before their lawsuit was filed, who they interacted with at NAI and undoubtedly have known Mrs. Ramaghi since the purchase of the subject vehicle on or about September 8, 2023.[4]

5.  As noted by Plaintiffs in the Motion, their counsel reached out to NAI's counsel for the first time regarding his intent to seek leave to amend the Complaint by e-mail on January 27, 2025, which was the actual deadline to seek leave to amend, and counsel then spoke by phone two days later, on January 29, 2025. In the interim, Plaintiffs' counsel did not file a motion seeking to extend their deadline to move for leave to amend the Complaint.

6.  On February 19, 2025, twenty-one days after counsel's telephone call and over five months after Plaintiffs first commenced this action, Plaintiffs filed their Motion, which, among other exhibits discussed herein, includes their proposed Verified Amended Complaint in which Robin Ramaghi is named as a putative defendant under Count I – the Action for Violation of the Federal Odometer Act.

---

[3] The State of Florida Division of Corporations, as maintained at www.sunbiz.org, identifies Robin Byler as the President of NAI. A copy of the print-out is attached hereto as Exhibit "B," and NAI respectfully requests the Court take judicial notice of same. Rule 202, Fed. R. Evid.

[4] Exhibit "C" to the Motion appears to have left off the date and time of NAI's counsel's responsive e-mail, which was sent on January 16, 2025, at 2:55 p.m., and in that e-mail, undersigned counsel also stated that she believed that Robin Ramaghi was the one that handled the transfer of title documents. A copy of that e-mail chain with the date and time of NAI's counsel's response is attached hereto as Exhibit "C." NAI's counsel was out of town on January 14, 2025, for a deposition in another matter.

## ARGUMENT

Although NAI recognizes that leave to amend may be freely given upon certain circumstances when justice so requires it, in *this* particular instance, NAI respectfully submits that Plaintiffs' Motion should be denied. First, even applying the factors and case law cited by Plaintiffs regarding the exercise of diligence in seeking leave to amend,[5] Plaintiffs did not do so and have not demonstrated good cause under Rule 16, Fed. R. Civ. P. Plaintiffs knew before they ever filed suit who they had interacted and communicated with at NAI (including Robin Ramaghi), which cannot even remotely be considered a large business operation with many employees (in contrast to, for example, places such as the Coggin or Duval car dealerships located in and around Jacksonville). Thereafter, Plaintiffs knew as of January 6, 2025, which was verified through interrogatory answers on January 9th, that Mr. Caldwell sold the subject vehicle to Plaintiffs and that Mrs. Ramaghi also spoke to Plaintiffs in person, as described in NAI's answers to the Interrogatories directed to Plaintiffs' underlying claims. Further, Plaintiffs acknowledge in the Motion that the Certificate of Title bears the "presumptive" signature of Mrs. Ramaghi. *See* the Motion at p. 4. In addition, the State of Florida's publicly-available records only identify one name/officer, Robin Byler, who was expressly identified as "Robin Byler Ramaghi" in NAI's response to Interrogatory number 1, which was served on Plaintiffs' counsel on January 6, 2025, and who was also identified as the President of NAI in both sets of answers to Interrogatories served on January 6, 2025. Plaintiffs have not demonstrated why they were unable to ascertain this fact before filing their Complaint and/or why this information was purportedly unavailable to

---

[5] In fact, in *Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002), cited by Plaintiffs, the court noted that "the right to amend is not absolute." *Id.* at 1275.

them, whether before filing suit or thereafter.[6]  The fact that Plaintiffs chose to serve paper discovery on NAI in late November 2024, is squarely within their prerogative, but the consequences of that decision should not fall on NAI or Mrs. Ramaghi.  For these reasons alone, Plaintiffs' Motion should be denied due to their failure to exercise diligence in pursuing leave to amend and their corresponding failure to satisfy the "good cause" requirement under Rule 16, Fed. R. Civ. P.[7]

Separate and apart from those grounds, however, Plaintiffs' Motion should likewise be denied on the grounds of futility. "The Court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile. (internal citation omitted). 'A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.' (internal citations omitted)." *Gibbs v. United States*, 865 F. Supp. 2d 1127, 1146 (M.D. Fla. 2012), *aff'd,* 517 F. App'x 664 (11th Cir. 2013); *Hall v. United Ins. Co. of Am.*, 367 F. 3d 1255, 1263 (11th Cir. 2004)

---

[6]  Plaintiffs claim that, "Upon verifying that Mrs. Ramaghi had executed the transfer of title, Plaintiffs promptly moved for leave to amend their complaint."  *See* the Motion at p. 4.  NAI respectfully disagrees.  Even if the Court were to consider January 26th as the operative "trigger" for Plaintiffs to seek leave to amend, which NAI does not concede is the proper date to use, Plaintiffs nonetheless waited another *twenty-four days* to actually file the Motion.  There is no explanation for that three-plus week delay, other than Plaintiffs' counsel's vague and ambiguous statement that, "Due to the press of business, the undersigned was only able to complete his research and revisions to the complaint more recently."  It is unclear from the Motion what research would even be required in order to seek leave to amend the Complaint, when Plaintiffs propose to add Mrs. Ramaghi to a single count that was already in the original Complaint.

[7]  Plaintiffs also cited to *Donahay v. Palm Beach Tours & Transp., Inc.*, 243 F.R.D. 697, 699 (S.D. Fla. 2007), in the Motion.  The *Donahay* court held, in pertinent part, "Moreover, even if the opposing party would not be prejudiced by the modification of a scheduling order, good cause is not shown if the amendment could have been timely made. *See Hayes v. Rule,* No. 1:03CV1196, 2005 WL 2136946, at *4 (M.D.N.C. August 19, 2005)." *Id.* In this case, the amendment could have been timely made. The *Donahay* court went on to state, "It has been held that a Court's evaluation of good cause is more stringent than its inquiry into the propriety of amendment under the more liberal Rule 15. *See Sosa,* 133 F.3d at 1418; *see also Forstmann,* 114 F.R.D. at 85. Thus, even if Defendants could demonstrate that the amendment is proper under Rule 15, the Court must first determine whether Defendants have shown good cause under Rule 16(b) because Defendants' Motion was filed *after* the scheduling order's deadline." *Id.* (emphasis in original)

("This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal," quoting *Burger King Corp. v. Weaver,* 169 F. 3d 1310, 1320 (11th Cir. 1999)); *Pettaway v. Miami Air Int'l, Inc.*, 624 F. Supp. 3d 1268, 1282-1283 (M.D. Fla. 2022); *Mutch v. PGA Tour, Inc.*, Case No. 3:04-cv-97-J-12TEM, 2006 WL 8439223, at *2 (M.D. Fla. Jan. 18, 2006).

This requires the Court to review the proposed Verified Amended Complaint attached as Exhibit "H" to the Motion.  As noted above, the only Count that is proposed to be asserted against Robin Ramaghi is Count I, entitled "Action for Violation of the Federal Odometer Act."  "Because a private cause of action requires the allegation of intent-to-defraud, courts have held that the stringent pleading standards of Federal Rule of Civil Procedure 9(b) apply to Federal Odometer Act claims. (internal citation omitted).  The Rule 9(b) standard is satisfied when a plaintiff alleges: '(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiff[]; and (4) what the Defendants gained by the alleged fraud.' *Id.* (internal citation omitted)." *Bertolotti v. A&I Int'l Motor Corp.*, Case No. 16-22185-Civ-COOKE/TORRES, 2016 WL 6804624, at *2 (S.D. Fla. Nov. 17, 2016).  In *Bertolotti*, the Court concluded that the plaintiff's claim alleging a violation of the Federal Odometer Act warranted dismissal because the plaintiff had alleged "bare allegations" that were insufficient to state a cause of action under the Act.  *Id. See also, Lherisson v. Whittington*, Case No. 1:23-cv-2462-KMM,  2024 WL 4349766, at *3 (S.D. Fla. Feb. 28, 2024) (in which the Court analyzed the plaintiff's allegations against an individual defendant for alleged violations of the Federal Odometer Act and dismissed the plaintiff's complaint).

So too, in the Amended Complaint, Plaintiffs have not alleged facts against Mrs. Ramaghi that meet the heightened pleading standard of Rule 9(b) sufficient to state a claim against her for an alleged violation of the Federal Odometer Act upon which relief can be granted.[8]  In fact, in the proposed Amended Complaint, Plaintiffs have made a similar allegation of "engaging in a conspiracy to violate the Federal Odometer Act" as was made by the *Bertolotti* plaintiff that was found to be insufficient by the District Court.  *Id.  See*, Exhibit "H" at ¶ 68.  Notably, paragraph 68 of Count I of the proposed Amended Complaint is the only allegation against Mrs. Ramaghi in Count I, save for the incorporation of the preceding paragraphs 1-59 as incorporated through paragraph 61 of Count I, and paragraph 68 uses the phrase "violated the act with intent to defraud" without any corresponding allegations of fraud pled with specificity.  Moreover, a review of those

---

[8]  "Where a complaint contains claims of fraud or mistake, however, Rule 9(b) imposes a heightened pleading standard, requiring that the circumstances constituting fraud be stated with particularity.  *See Brooks v. Blue Cross & Blue Shield of Fla.***,** 116 F.3d 1364, 1381 (11th Cir. 1997). This particularity requirement is satisfied if the complaint alleges 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.' *U.S. ex rel. Matheny v. Medco Health Sols., Inc.***,** 671 F.3d 1217, 1223 (11th Cir. 2012) (internal citation omitted)... In assessing the sufficiency of factual content and the plausibility of a claim, courts may consider only: (1) the allegations of the complaint; (2) the exhibits attached to the complaint; (3) documents that are undisputed and central to plaintiffs' claim; and (4) matters subject to judicial notice." *Brexendorf v. Bank of Am., N.A.,* 319 F. Supp. 3d 1257, 1261 (M.D. Fla. 2018). "Rule 9(b) requires that allegations of fraud include: (1) precisely what [false or fraudulent] statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the Plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *U.S. ex rel. Butler v. Magellan Health Servs., Inc.*, 101 F. Supp. 2d 1365, 1368 (M.D. Fla. 2000). "[T]he Rule's 'particularity' requirement is not satisfied by 'conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud.' To meet this standard, the complaint needs to identify the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the content and way the statements misled the plaintiff; and what the defendant gained through the alleged fraud." *Francois v. Hatami*, 565 F. Supp. 3d 1259, 1265 (S.D. Fla. 2021) (internal citations omitted).

preceding paragraphs 1-59 reflects that paragraphs 6, 10, 11, 50, 52, 53 and 55 mention Mrs. Ramaghi in passing (other than the jurisdictional allegation at paragraph 9), but those paragraphs lack any allegations of ultimate fact against her and, perhaps more importantly for the Court's consideration of the Motion, those paragraphs also lack allegations of fraud with specificity as required by law. *See also, Haynes v. JPMorgan Chase Bank, N.A.*, 466 F. App'x 763, 765 (11th Cir. 2012) (finding that the district court's denial of a motion for leave to amend was not an abuse of discretion where the proposed amended complaint failed to plead fraud with particularity, also noting "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior," citing *Durham v. Bus. Mgmt. Assocs.*, 847 F. 2d 1505, 1511 (11th Cir. 1988)). It also bears noting that the allegations related to the transfer of title – paragraphs 47 through 53 of the proposed Amended Complaint – are completely (and intentionally) silent as to when these alleged acts occurred by either NAI or Mrs. Ramaghi. That is because Plaintiffs' counsel is already in receipt of documents produced by non-parties Murray Ford and Manheim, in response to Subpoenas served upon them by Plaintiffs' counsel, in which the allegedly-inaccurate mileage was first reported by Murray Ford and Manheim (in other words, well before NAI ever acquired the subject vehicle, awaited the original Certificate of Title from Murray Ford and then discussed the mileage with Plaintiffs). Even if the Court were to determine that Plaintiffs had demonstrated good cause to modify the Scheduling Order in order to amend the Complaint, the Motion is nonetheless due to be denied because the Amended Complaint would be immediately subject to a motion to dismiss, thereby rendering amendment futile.

For all of the foregoing reasons, NAI respectfully submits that Plaintiffs' Motion should be denied.

WHEREFORE, Defendant/Counter-Plaintiff, NATIONAL AUTOMOTIVE, INC., respectfully requests that the Court enter an Order denying Plaintiffs/Counter-Defendants, ISIAH ROBINSON and LISA CLAYTON ROBINSON, Motion for Leave to File Amended Complaint, and for such further relief as the Court deems just and proper.

**McGLINCHEY STAFFORD**

*/s/ Kimberly Held Israel*
Kimberly Held Israel, Esq.
Florida Bar No. 47287
10407 Centurion Pkwy. N., Ste. 200
Jacksonville, FL 32256
Telephone: (904) 224-4449
Fax: (904) 485-8083
Primary E-Mail: kisrael@mcglinchey.com
Secondary E-Mail: ktravis@mcglinchey.com
***Attorney    for    Defendant/Counter-Plaintiff,
NATIONAL AUTOMOTIVE, INC.***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 5, 2025, a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court by using the CM/ECF system, causing a copy to be served on counsel for all parties of record.

*/s/ Kimberly Held Israel*
Attorney

| From: | Israel, Kim |
|---|---|
| To: | "JOSHUA FEYGIN" |
| Cc: | Gipson, Christine; Travis, Kathleen |
| Subject: | SERVICE OF COURT DOCUMENT - Robinson v. National Automotive, Inc. - Case No. 3:24-cv-948 |
| Date: | Monday, January 6, 2025 8:47:33 PM |
| Attachments: | image001.png |
| | Robinson v. NAI - NAI"s unverified Answers to Interrogatories on Counterclaim.pdf |
| | Robinson v. NAI - NAI"s unverified Answers to Interrogatories on Plaintiffs" Claim.pdf |
| Importance: | High |

# NOTICE OF ELECTRONIC SERVICE OF COURT DOCUMENT

| Court: | U.S. District Court, Middle District of Florida, Jacksonville Division |
|---|---|
| Case Number: | 3:24-cv-948 |
| Case Name: | Isiah Robinson, etc. v. National Automotive, Inc. |
| Documents Served: | (1) Defendant's Answers and Objections to Plaintiff Isiah Robinson's First Interrogatories and (2) Counter-Plaintiff's Answers and Objections to Counter-Defendant Isiah Robinson's First Interrogatories |
| Attorney: | Kimberly Held Israel |
| E-mail: | kisrael@mcglinchey.com |
| Telephone: | 904.224.4485 |

Good evening – please see attached the unverified answers to interrogatories.  I'm expecting the signed set tomorrow and will send those to you upon receipt.

Thanks,
Kim

**Kimberly "Kim" Held Israel** (she/her/hers)
Attorney at Law

kisrael@mcglinchey.com
10407 Centurion Pkwy N, Ste 200, Jacksonville, FL 32256
T (904) 224-4485  F (904) 485-8083

bio | vCard | mcglinchey.com



Alabama  California  Florida  Louisiana  Massachusetts  Mississippi  New York
Ohio  Rhode Island  Tennessee  Texas  Washington  Washington, DC

**COMPOSITE EXHIBIT "A"**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ISIAH ROBINSON, and LISA
CLAYTON ROBINSON, Each an
Individual,

CASE NO. 3:24-cv-00948-WWB-PDB

     Plaintiffs/Counter-Defendants,

v.

NATIONAL AUTOMOTIVE, INC.,
a Florida corporation,

     Defendant/Counter-Plaintiff.

_____

**COUNTER-PLAINTIFF'S ANSWERS AND OBJECTIONS TO COUNTER-
DEFENDANT ISIAH ROBINSON'S FIRST INTERROGATORIES**

COMES NOW Counter-Plaintiff, NATIONAL AUTOMOTIVE, INC. ("NAI"), by and

through its undersigned counsel, and pursuant to Rule 33, Fed. R. Civ. P., hereby serves its answers

and objections to Counter-Defendant Isiah Robinson's First Interrogatories as follows:

**GENERAL ANSWERS AND OBJECTIONS**

Because the applicable Federal Rules of Civil Procedure permits discovery of certain

information, documents, or things which would otherwise be inadmissible at trial or evidentiary

hearing, NAI does not waive its rights to object to the admission into evidence of any information

contained in these answers on any proper grounds.

NAI objects to each Interrogatory to the extent that it may be read to seek information that

is immune from discovery under the attorney/client privilege, the work product doctrine, or that is

otherwise privileged or protected from disclosure.

NAI reserves the right to supplement and/or modify these answers as may be needed.

1

## SPECIFIC ANSWERS AND OBJECTIONS TO INTERROGATORIES

1.      Describe in detail each category of damages National Automotive claims to have

sustained as a result of the alleged disablement of the GPS device by Counter-Defendants.  Include

the amounts for each category of damages and the methodology used to calculate them.

**RESPONSE:**  NAI has not yet calculated the damages it has incurred due to Plaintiffs'
breach of the contracts, but the GPS Acknowledgement makes clear that NAI is the owner of the
GPS device, not Plaintiffs.  Because Plaintiffs refused to allow NAI to inspect the GPS device,
NAI does not know where it is (if it's even still located on the vehicle), if it is repairable or if it
has to be replaced in its entirety.  NAI's inability to protect its security interest in the Vehicle is
also an element of its damages because Plaintiffs granted NAI a security interest in the Vehicle,
and the GPS device is intended to enable NAI to monitor the Vehicle's location (e.g. to ensure the
Vehicle has not left the state), to ensure that the Vehicle is not being used for commercial purposes,
to locate the Vehicle in the event of a default resulting in repossession, to locate the Vehicle in the
event it were stolen (and to avoid further damage and to aid in recovery by law enforcement).  In
essence, NAI has been damaged in its ability to protect its security interest and to mitigate its losses
in the event of a default, theft, insurance claim, etc. NAI is also at risk of additional damages if it
is not able to exercise its security interest against the Vehicle.


2.      Identify all documents, electronic data, or other evidence in National Automotive's

possession that support its claim for damages, and describe how each piece of evidence support

National Automotive's claim.

**RESPONSE:**  See all of the exhibits attached to the Counterclaim, all of which are self-
explanatory.  NAI also had, prior to the GPS device being disabled/removed/tampered with, the
ability to track the location of the vehicle, through the GPS device, among other pieces of
information that it provided.  The spreadsheet that NAI maintained with the information provided
by the GPS device supports NAI's claim because the GPS stopped submitting information as of
May 4, 2024, which means that it was either disabled, removed or tampered with, and Plaintiffs
have refused to allow NAI to inspect it despite multiple requests to do so.


3.      State the specific date and time when National Automotive first became aware that

the GPS device allegedly installed on the Vehicle was disabled, and explain how National

Automotive discovered the disablement.

2

**RESPONSE:**  NAI first became aware that the GPS device installed on the Vehicle was no longer sending a signal with any data on or about May 4, 2024.  NAI discovered this through its regular/routine review of the data transmitted electronically to NAI from the device itself.

4.     Identify any third parties, including contractors, vendors, or monitoring services, that were involved in installing, maintaining, or monitoring the GPS device on the Vehicle. Provide their names, addresses, and roles in connection with the GPS device.

**RESPONSE:** Verizon is the network that is used for GPS monitoring.  SVR is the GPS company.  The GPS device was installed on the Vehicle by NAI's mechanic.  Other than Verizon, routine monitoring of the GPS device was handle internally by employees of NAI, all of whom are still employed by NAI and can be contacted solely through NAI's counsel of record.

5.     Explain how the alleged disablement of the GPS device resulted in any financial loss, missed payments, repossession complications, or other adverse impacts to National Automotive. For each, describe in detail how the disablement caused the loss, the amount of the loss and the date the loss was incurred.

**RESPONSE:**  NAI has been unable to locate the Vehicle, and therefore protect and preserve its security interest in the Vehicle, because the GPS device was disabled, removed and/or tampered with, which has a direct adverse impact on NAI's ability to repossess the Vehicle if necessary.  NAI is also the owner of the GPS device.  When NAI discovered that the GPS device was not providing the Vehicle's location, NAI reached out to Plaintiffs offering a free oil change and reported to Plaintiffs that the GPS appeared to be having issues.  Mrs. Robinson screamed at Mrs. Ramaghi that it was "none of our fucking business" and that she wasn't going to drive 2+ hours so that we could "track her" and "play Big Brother." Mr. Robinson would not take NAI's phone calls.  This is particularly frustrating because, when Plaintiffs purchased the Vehicle, Mrs. Ramaghi and Plaintiffs had a very in-depth conversation about the fact that NAI does not typically finance vehicle purchases outside of the Jacksonville area.  In response, Plaintiffs reassured Mrs. Ramaghi/NAI that if any issues arose, they would be dealt with swiftly, they had no problem bringing the Vehicle to Jacksonville and no problems communicating with NAI.  They played on Mrs. Ramaghi's sympathies about being a couple that just "needed a chance," and then refused to cooperate and be responsive as soon as it was actually needed.

6.     Identify any instances where National Automotive attempted to repossess or locate the Vehicle, specifying dates, actions taken, and the role of the GPS device (if any) in those efforts.

**RESPONSE:** Following Plaintiffs' purchase of the Vehicle, NAI would occasionally review the GPS data to see where the Vehicle was located. Those specific dates were not written down, but in each instance, prior to the GPS device no longer sending data to NAI, the GPS device was sending information to NAI via satellite. NAI has not attempted to repossess the Vehicle.

7.    Identify all individuals with knowledge of the alleged disablement of the GPS device, including their names, job titles, contact information, and the nature of their knowledge.

**RESPONSE:** See NAI's response to Interrogatory number 4 above. Also, Plaintiffs would have knowledge of the disablement of the GPS device, and NAI's corresponding efforts to communicate with Plaintiffs about that.

8.    Describe in detail any actions National Automotive has taken to repair, replace, or reactivate the GPS device since the alleged disablement, including the costs associated with those actions.

**RESPONSE:** Between May and July 2024, NAI reached out to Plaintiffs numerous times by telephone to try to discuss this with them and to address it, including even offering free oil changes if they would bring the Vehicle to NAI and requesting that an inspection be done as soon as possible. Despite NAI's repeated requests, Plaintiffs consistently refused to bring the Vehicle to NAI so it could inspect it and/or try to determine if the GPS device was malfunctioning, had been removed, or if something else had happened to it.

9.    Explain whether National Automotive contends that the disablement of the GPS device has caused harm to its reputation, business operations, or customer relations. For each, describe the harm and the evidence supporting such claims.

**RESPONSE:** NAI has suffered harm to its business operations in the sense that its ability to protect its security interest in the Vehicle has been damaged. Also, NAI has tried numerous times to get Plaintiffs' cooperation in the inspection of the GPS device, which Plaintiffs have refused to do, so that would constitute "harm" to NAI's customer relations, in particular with Plaintiffs. The fact that Plaintiffs have refused to comply with NAI's repeated requests to allow it to inspect the Vehicle and GPS device has caused further harm to its customer relations.

10.    Identify all communications, written or oral, between National Automotive and Counter-Defendants or any third parties regarding the GPS device, its disablement, or any damages National Automotive claims to have suffered as a result.

**RESPONSE:** See NAI's answer to Interrogatory number 5 above.

11.    State whether National Automotive conducted any physical inspection of the Vehicle to confirm that the GPS device was disabled. If so, provide the date, location, individuals present, and the results of that inspection. If no inspection was conducted, explain why not.

**RESPONSE:** See NAI's answer to Interrogatory number 5 above. NAI has been unable to conduct a physical inspection of the Vehicle (and/or the GPS device) because Plaintiffs have failed and refused to cooperate with NAI's repeated requests, and efforts, to conduct an inspection.

12.    Identify any individuals or third-party entities who inspected, tested, or attempted to repair the GPS device. For each, provide their names, job titles, contact information, and the date and findings of their inspections or tests.

**RESPONSE:** None known.

13.    Describe in detail the condition of the GPS device at the time National Automotive allegedly determined it was disabled, including whether it was damaged, removed, or otherwise altered, and how National Automotive attributed this condition to Counter-Defendants.

**RESPONSE:** NAI does not know the condition of the GPS device because Plaintiffs have failed and refused to allow NAI to inspect it. See NAI's response to Interrogatory number 5 above. NAI attributes the condition, whatever it may be, to Plaintiffs because they were the only ones in possession, custody and control of the Vehicle (and therefore the GPS device) at the time the GPS device stopped sending data electronically to NAI.

14.    State whether National Automotive has any evidence showing that Counter-Defendants tampered with, removed, or otherwise disabled the GPS device.  If so, identify all such evidence and provide a detailed description of how this evidence implicates Counter-Defendants individually.

**RESPONSE:**  NAI has a spreadsheet that reflects when the GPS device last functioned, e.g. last transmitted data to NAI.  This "implicates" Plaintiffs because they were the only ones in possession, custody and control of the Vehicle (and the attached GPS device) at the time the GPS device stopped sending data to NAI.  When NAI notified Plaintiffs of the issue and asked them to bring the Vehicle in so that NAI could inspect the Vehicle and the GPS device, Mrs. Robinson cursed at Mrs. Ramaghi, refused to cooperate with her request, refused to bring the Vehicle to NAI for inspection, and hung up on her abruptly.  Mr. Robinson ignored additional efforts by NAI to get them to cooperate with NAI's request for an inspection.

15.    State whether National Automotive attempted to contact Counter-Defendants regarding the alleged disablement of the GPS device.  If so, describe all such communications, including dates, methods, and responses from Counter-Defendants.

**RESPONSE:**  Yes, more than once.  See NAI's answers to Interrogatories 5 and 14 above.

16.    Identify all repair, maintenance, or service records for the GPS device on the Vehicle, including the date of installation, any subsequent inspections or repairs, and the names and contact information of the individuals or entities who performed the work.

**RESPONSE:**  The GPS device was installed on the Vehicle by NAI's mechanic, Pierson Satterwauske, on or about early September 2023.  He can be contacted solely through NAI's counsel of record.  NAI does not have any repair, maintenance or service records for the GPS device after it was installed on the Vehicle.  In terms of any subsequent inspections, see NAI's answers to Interrogatories 5 and 14 above.

17.    Describe any training, protocols or procedures National Automotive has in place for its employees to verify the status of GPS devices installed in consumer vehicles.  State whether these procedures were followed in this case and, if so, how they were applied.

**RESPONSE:** NAI does not know what is meant by "verify[ing] the status" of GPS devices. But generally, NAI receives data transmitted by the GPS devices through satellite, which data will indicate if the GPS device is functioning or not. NAI does not have its own "training, protocols or procedures" in place to "verify the status of GPS devices" but has the ability to use customer service assistance through SVR as needed. SVR representative(s) have come to NAI's office from time to time. NAI has also attempted several times to reboot the GPS device in the Vehicle and/or to have the GPS device remotely reset, without success.

18.    Explain whether National Automotive possesses any logs, reports, or other records from its GPS monitoring system that indicate when the alleged disablement occurred or provide evidence of the device's functionality prior to the alleged disablement.

**RESPONSE:**  Yes, NAI has a spreadsheet that reflects when the alleged disablement occurred.

19.    State whether National Automotive attempted to recover the GPS device from the Vehicle after determining it was allegedly disabled. If so, describe the actions taken, dates, and the results of those actions.

**RESPONSE:** NAI is not sure what is mean by "recover the GPS device," but as noted in its answers to Interrogatories 5 and 14 above, NAI has repeatedly asked Plaintiffs to allow NAI to inspect the GPS device once NAI became aware that it was no longer transmitting data, but Plaintiffs have failed and refused to allow NAI to do so.

20.    Identify all communications between National Automotive and any third parties, including contractors, vendors, or GPS manufacturers, regarding the alleged disablement of the GPS device or efforts to confirm that Counter-Defendants were responsible.

**RESPONSE:**  None known, because Plaintiffs have repeatedly refused to cooperate with NAI's efforts to inspect the GPS device, as described more fully above.

21.    Describe in detail whether National Automotive obtained or attempted to obtain an independent expert opinion, inspection, or analysis of the GPS device prior to filing its

Counterclaim to determine the cause of the alleged disablement. If not, explain why no such efforts were made.

**RESPONSE:** Not yet.

22.     State whether National Automotive has any photographic, video, or written documentation of the GPS device as it existed prior to the alleged disablement. If such documentation exists, describe its contents and the date it was created.

**RESPONSE:** NAI is not entirely clear on what is meant by "as it existed prior to the alleged disablement." NAI does not have pictures of the GPS device once Plaintiffs drove off with the Vehicle. NAI has a spreadsheet that reflects when the GPS device last functioned, e.g. last transmitted data to NAI. It was not created on a specific date though because it was intended to track data over the life of Plaintiffs' loan for the Vehicle.

**NATIONAL AUTOMOTIVE, INC.**

By:_____
        Robin Ramaghi
Its: President

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing was acknowledged before me this _____ day of January, 2025, by ROBIN RAMAGHI, as the President of NATIONAL AUTOMOTIVE, INC., and who is personally known to me or who produced _____ as identification and said that the interrogatory answers are true and correct to the best of her knowledge and belief.

Sworn to and subscribed before me this _____ day of January, 2025.

_____
Notary Public, State of Florida
My Commission expires:

8

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ISIAH ROBINSON, and LISA                     CASE NO. 3:24-cv-00948-WWB-PDB
CLAYTON ROBINSON, Each an
Individual,

      Plaintiffs/Counter-Defendants,

v.

NATIONAL AUTOMOTIVE, INC.,
a Florida corporation,

      Defendant/Counter-Plaintiff.

_____

### DEFENDANT'S ANSWERS AND OBJECTIONS TO PLAINTIFF ISIAH ROBINSON'S FIRST INTERROGATORIES

COMES NOW Defendant, NATIONAL AUTOMOTIVE, INC. ("NAI"), by and through its undersigned counsel, and pursuant to Rule 33, Fed. R. Civ. P., hereby serves its answers and objections to Plaintiff Isiah Robinson's First Interrogatories as follows:

### GENERAL ANSWERS AND OBJECTIONS

Because the applicable Federal Rules of Civil Procedure permits discovery of certain information, documents, or things which would otherwise be inadmissible at trial or evidentiary hearing, NAI does not waive its rights to object to the admission into evidence of any information contained in these answers on any proper grounds.

NAI objects to each Interrogatory to the extent that it may be read to seek information that is immune from discovery under the attorney/client privilege, the work product doctrine, or that is otherwise privileged or protected from disclosure.

NAI reserves the right to supplement and/or modify these answers as may be needed.

## SPECIFIC ANSWERS AND OBJECTIONS TO INTERROGATORIES

1.    **Affiant**.  Please identify the person(s) who participated in the preparation of the answers to these Interrogatories.  As to any such person, identify which Interrogatory such assistance was provided as well as the source of information for such assistance.

**RESPONSE:** Robin Byler Ramaghi, President of NAI, along with NAI's counsel, Kimberly Held Israel, Esq.  To the extent applicable, NAI objects to the portion of the interrogatory that seeks the disclosure of attorney-client communications between Mrs. Ramaghi and counsel, e.g. the "source of information" for the assistance rendered by counsel.  Mrs. Ramaghi and counsel conferred regarding each of the interrogatories and NAI's corresponding responses.

2.    **Potential Witness(es)**.  Please identify all persons who are believed or known by National Automotive, its agents or attorneys, to have any knowledge concerning any of the issues or matters raised in the pleadings herein and specify the subject matter about which the witness has knowledge.

**RESPONSE:**    (1) Robin Byler Ramaghi – NAI's defenses to Plaintiffs' claims, interactions between Plaintiffs and NAI related to the purchase and sale of the Vehicle, and the allegations in NAI's Counterclaim; (2) Christopher Caldwell – interactions between Plaintiffs and NAI related to the purchase and sale of the Vehicle (which may bear on NAI's defenses to Plaintiffs' claims) and potentially certain allegations in NAI's Counterclaim; (3) Pierson Satterwauske – the inspection of the Vehicle upon NAI's receipt of same and the installation of the GPS device on the Vehicle; (4) Plaintiffs – the allegations of their verified Complaint, interactions between them and NAI related to the purchase and sale of the Vehicle, and the allegations of NAI's Counterclaim; (5) a corporate representative of Murray Ford – information related to the Vehicle while it was in its possession, including but not limited to its receipt of the Vehicle and the transfer of title to the Vehicle; and (6) potentially a corporate representative of Manheim, who conducted the auction of the Vehicle, as Manheim may have information about the Vehicle, including its reported mileage.

3.    **Expert Witness(es) – Trial**.    In regard to any expert witness(es) that National Automotive intends to call at the trial of this case, please set forth the following:

(a)    Identify each such witness;

(b)    Describe his or her qualifications as an expert;

(c)      State the subject matter upon which he or she is expected to testify;

(d)      State the substance of the facts and opinions to which he or she is expected to

testify; and

(e)      Provide a summary of the grounds of each such opinion.

**RESPONSE:** Unknown at this time.

4.      **Expert Witness(es) – Consultation**.  Identify any and all experts with whom National Automotive has consulted in regard to this case.

**RESPONSE:** None.

5.      **Statements by Plaintiffs**.  Identify each and every person believed or known by National Automotive, its agents and/or attorneys, to have heard the Plaintiffs, their agents, or their representatives, make any statement, remark, or comment concerning any matters or issues raised in the pleadings herein, and state the substance of any such statement, remark, or comment.

**RESPONSE:** On or around September 8, 2023, Plaintiffs came to NAI's location to look at vehicles and asked if they could have a blank set of contract documents to take with them so they could read everything over first before making a purchase. Christopher Caldwell was present at the time, discussed this with Plaintiffs, and gave them a blank set of documents to review, per their request. Some time later, Plaintiffs returned to NAI's location to purchase the Vehicle.

On September 14, 2023, Robin Byler Ramaghi and Christopher Caldwell spoke to Plaintiffs in person at NAI's office. They discussed the mileage on the Vehicle following NAI's receipt of the actual Certificate of Title, which reflected the mileage was not actual. During that conversation, NAI gave Plaintiffs the option to surrender the Vehicle and terminate the contract, and to receive a return of their deposit. Plaintiffs said they didn't want to do that and instead wanted to keep the Vehicle. Based on their decision to keep the Vehicle, Plaintiffs then signed new paperwork that clearly was marked as "TMU" in multiple places. Robin Byler Ramaghi specifically explained to Plaintiffs what "TMU" meant before Plaintiffs signed the new paperwork. Mr. Robinson in particular was concerned about Mrs. Robinson having a vehicle to drive due to her job. Mrs. Robinson expressed no concerns at all during this conversation. NAI was also told that Mrs. Robinson is a realtor and was "always working," whereas Mr. Robinson was retired and worked part time at Volkswagen, so he had a more flexible schedule.

6.    **Witness Statement(s)**.  State whether National Automotive, its agents, attorneys, or anyone acting on National Automotive's behalf, have obtained statements in any form from any person(s) regarding any issue raised in this lawsuit.  If so, state the following:

(a)    Identify the person(s) giving the statement(s);

(b)    The date when such statement(s) was taken;

(c)    The name and address of the person(s) taking the statement; and

(d)    Whether a copy of such statement(s) was given to the person(s) from whom it was taken.

**RESPONSE:**  None at this time, other than the statements identified in paragraph 5 above and Mrs. Robinson's comments on the phone in response to Mrs. Ramaghi's request to bring the Vehicle to NAI so it could inspect the GPS device.  Those statements are referenced in response to Interrogatory number 7 below and in the other set of Interrogatories related to the Counterclaim (*see* the response to Interrogatory 5 in that set).

7.    **Identification of Actors as to Vehicle**.    Identify each person (including the Transferee Party) known to National Automotive who performed any activity with respect to the repair, servicing, marketing, sale, transfer, assignment, or disposition of the Vehicle (regardless of whether the person is an employee or agent of National Automotive). As to any such person, identify:

(a)    The activity performed;

(b)    Whether the person knew the mileage displayed on the Vehicle's odometer was inaccurate; and

(d)[sic]All communications (both written and oral) between National Automotive and the person concerning the instant action.

**RESPONSE:**  Murray Ford had the Vehicle in its possession, custody and control before NAI did, and NAI believes that Travis Ward had the Vehicle prior to Murray Ford.  NAI does not know what activities were performed by Mr. Ward or Murray Ford, if any; nor is NAI able to

4

answer the remaining questions as to Mr. Ward or Murray Ford. Manheim picked up the Vehicle from Murray Ford's wholesale lot, transported the Vehicle to the auction lot and then transported the Vehicle to NAI. NAI is not able to speak for Manheim as to whether it performed any other activities and/or whether it had any knowledge of the mileage of the Vehicle. NAI has not communicated with Manheim about this.

On behalf of NAI, Christopher Caldwell sold the Vehicle to Plaintiffs. Mr. Caldwell would have been dependent on the estimated mileage provided by Murray Ford and is not believed to have spoken to anyone at Murray Ford about the sale of the Vehicle to Plaintiffs. After September 8, 2023, Mr. Caldwell and Mrs. Ramaghi spoke to the Plaintiffs in person, as described above. Mrs. Ramaghi also repeatedly attempted to contact Plaintiffs about the disabled GPS unit attached to the Vehicle after NAI discovered that it was no longer sending any data about the Vehicle to NAI. Mr. Robinson refused to return NAI's phone calls. During one phone call between Mrs. Ramaghi and Mrs. Robinson, Mrs. Robinson cursed at Mrs. Ramaghi, saying, "We aren't bringing the damn vehicle back to the fucking dealership two hours away so you can track us. You'll hear from our attorney," at which point she hung up on Mrs. Ramaghi.

8.    **Disposition of Vehicle**. Describe the step-by-step process by which National Automotive marketed, sold, transferred, assigned, inspected or disposed of the Vehicle. In responding to this request, state with particularity how the title transfer documents were executed, who signed the transfer documents on behalf of National Automotive and who signed on behalf of the Plaintiffs.

**RESPONSE:** NAI bought the Vehicle from Murray Ford as part of a wholesale lot of vehicles at auction. Manheim transported the Vehicle from the auction to NAI. NAI inspected the Vehicle for any engine, transmission, and/or any other potential mechanical or operational issues. The Vehicle was cleaned, had a GPS device installed on it, and then stickered and photographed to be marketed for sale on Facebook. NAI then sold the Vehicle to Plaintiffs. When NAI received the title from Murray Ford, NAI promptly contacted Plaintiffs about the mileage information on the title. Plaintiffs returned to NAI to discuss the situation, and review their options. Despite being given the opportunity to surrender the Vehicle, terminate the contract and receive the return of their deposit, Plaintiffs chose to keep the Vehicle and sign new paperwork with "TMU" clearly marked in multiple places. Murray Ford assigned/transferred the title to the Vehicle to NAI, who in turn assigned the title to Plaintiffs through the Clay County DMV. NAI identified those documents as exhibits to its Counterclaim.

9.    **Acquisition of Vehicle**. Describe the step-by-step process by which National Automotive acquired the Vehicle and had its title transferred to it. Identify any pre-purchase

inspections that occurred and the individual(s) involved in the inspection along with all documents that were executed to transfer title to National Automotive.

**RESPONSE:** NAI bought the Vehicle from Murray Ford as part of a wholesale lot of vehicles at auction. Manheim transported the Vehicle from the auction to NAI. NAI does not know if anyone at Murray Ford or Manheim inspected the Vehicle before NAI purchased it. NAI inspected the Vehicle following its purchase at auction. As described in response to Interrogatory number 8 above, Murray Ford assigned/transferred the title to the Vehicle to NAI, who in turn assigned the title to Plaintiffs through the Clay County DMV. NAI identified those documents as exhibits to its Counterclaim.


**NATIONAL AUTOMOTIVE, INC.**

By:_____
      Robin Ramaghi
Its: President


STATE OF FLORIDA
COUNTY OF DUVAL

    Sworn to and subscribed before me this _____ day of January, 2025, by ROBIN RAMAGHI, as the President of NATIONAL AUTOMOTIVE, INC., and who is personally known to me or who produced _____ as identification and said that the interrogatory answers are true and correct to the best of her knowledge and belief.


_____
Notary Public, State of Florida
My Commission expires:

6



# Detail by Entity Name

Florida Profit Corporation
NATIONAL AUTOMOTIVE, INC

**Filing Information**

| | |
|---|---|
| **Document Number** | P13000056723 |
| **FEI/EIN Number** | 36-4766251 |
| **Date Filed** | 07/03/2013 |
| **Effective Date** | 07/02/2013 |
| **State** | FL |
| **Status** | ACTIVE |

**Principal Address**

6600 BLANDING BLVD
JACKSONVILLE, FL 32244

Changed: 01/16/2015

**Mailing Address**

6600 BLANDING BLVD
JACKSONVILLE, FL 32244

Changed: 10/12/2016

**Registered Agent Name & Address**

BYLER, ROBIN L
6600 BLANDING BLVD
JACKSONVILLE, FL 32244

Address Changed: 10/12/2016

**Officer/Director Detail**

**Name & Address**

Title P

BYLER, ROBIN L
6600 blanding blvd
JACKSONVILLE, FL 32244

**Annual Reports**

| **Report Year** | **Filed Date** |
|---|---|

**EXHIBIT "B"**

| 2023 | 01/18/2023 |
| 2024 | 01/10/2024 |
| 2025 | 01/03/2025 |

## Document Images

| | |
|---|---|
| 01/03/2025 -- ANNUAL REPORT | View image in PDF format |
| 01/10/2024 -- ANNUAL REPORT | View image in PDF format |
| 01/18/2023 -- ANNUAL REPORT | View image in PDF format |
| 01/25/2022 -- ANNUAL REPORT | View image in PDF format |
| 01/28/2021 -- ANNUAL REPORT | View image in PDF format |
| 04/14/2020 -- ANNUAL REPORT | View image in PDF format |
| 01/30/2019 -- ANNUAL REPORT | View image in PDF format |
| 01/12/2018 -- ANNUAL REPORT | View image in PDF format |
| 03/11/2017 -- ANNUAL REPORT | View image in PDF format |
| 10/12/2016 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 03/08/2016 -- ANNUAL REPORT | View image in PDF format |
| 01/16/2015 -- ANNUAL REPORT | View image in PDF format |
| 03/16/2014 -- ANNUAL REPORT | View image in PDF format |
| 07/03/2013 -- Domestic Profit | View image in PDF format |

Florida Department of State, Division of Corporations

| From: | Israel, Kim |
|---|---|
| To: | "JOSHUA FEYGIN" |
| Cc: | Gipson, Christine; Travis, Kathleen |
| Subject: | RE: SERVICE OF COURT DOCUMENT - Robinson v. National Automotive, Inc. - Case No. 3:24-cv-948 |
| Date: | Thursday, January 16, 2025 2:55:32 PM |
| Attachments: | image004.png |
| | image005.png |
| | image001.png |
| | image002.png |

Good afternoon – I will amend those answers, have them re-verified and served on you.  I believe Robin Ramaghi was the individual who handled that but the amended answers will bear that out.  I'll get those to you by the end of next week.

Kim

**Kimberly "Kim" Held Israel**  (she/her/hers)

Attorney at Law

kisrael@mcglinchey.com

10407 Centurion Pkwy N, Ste 200, Jacksonville, FL 32256

T (904) 224-4485  F (904) 485-8083

bio | vCard | mcglinchey.com

Alabama  California  Florida  Louisiana  Massachusetts  Mississippi  New York
Ohio  Rhode Island  Tennessee  Texas  Washington  Washington, DC



**From:** JOSHUA FEYGIN <josh@sueyourdealer.com>
**Sent:** Thursday, January 16, 2025 2:39 PM
**To:** Israel, Kim <kisrael@mcglinchey.com>
**Cc:** Gipson, Christine <cgipson@mcglinchey.com>; Travis, Kathleen <ktravis@mcglinchey.com>
**Subject:** Re: SERVICE OF COURT DOCUMENT - Robinson v. National Automotive, Inc. - Case No. 3:24-cv-948

Hello:

Following up once more.

Regards,

**EXHIBIT "C"**

On Tue, Jan 14, 2025 at 10:34 AM JOSHUA FEYGIN <josh@sueyourdealer.com> wrote:

Following up on the below email.

On Wed, Jan 8, 2025 at 12:34 PM JOSHUA FEYGIN <josh@sueyourdealer.com> wrote:

Interrogatory # 7 (Identification of Actors) & 8 (Disposition of Vehicle) of the interrogatory requests served in reference to the affirmative claims of the Plaintiffs seek, inter-alia, the disclosure of the actors associated with the title transfers. This would include identifying the name of any individual(s) that executed title transfer documents.

On Wed, Jan 8, 2025 at 12:23 PM Israel, Kim <kisrael@mcglinchey.com> wrote:

Good afternoon – I'm pending receipt of the verifications and will send those to you upon receipt. With regard to your question about the transfer of title documents, can you please direct me to which particular interrogatory (and corresponding answer) you're referring to, and I'll gladly take a look.

Thanks
Kim

**Kimberly "Kim" Held Israel**   (she/her/hers)
Attorney at Law

kisrael@mcglinchey.com
10407 Centurion Pkwy N, Ste 200, Jacksonville, FL 32256
T (904) 224-4485  F (904) 485-8083

bio | vCard | mcglinchey.com

Alabama  California  Florida  Louisiana  Massachusetts  Mississippi  New York
Ohio  Rhode Island  Tennessee  Texas  Washington  Washington, DC



**From:** JOSHUA FEYGIN <josh@sueyourdealer.com>
**Sent:** Wednesday, January 8, 2025 11:27 AM
**To:** Israel, Kim <kisrael@mcglinchey.com>
**Cc:** Gipson, Christine <cgipson@mcglinchey.com>; Travis, Kathleen
<ktravis@mcglinchey.com>
**Subject:** Re: SERVICE OF COURT DOCUMENT - Robinson v. National Automotive, Inc. - Case
No. 3:24-cv-948

Good morning:

Please provide executed jurats. Further, it is not clear by the responses who executed
the title transfer documents on behalf of the dealership. Please advise.

Regards,

On Mon, Jan 6, 2025 at 8:47 PM Israel, Kim <kisrael@mcglinchey.com> wrote:

## NOTICE OF ELECTRONIC SERVICE OF COURT DOCUMENT

| | |
|---|---|
| Court: | U.S. District Court, Middle District of Florida, Jacksonville Division |
| Case Number: | 3:24-cv-948 |
| Case Name: | Isiah Robinson, etc. v. National Automotive, Inc. |
| Documents Served: | (1) Defendant's Answers and Objections to Plaintiff Isiah Robinson's First Interrogatories and (2) Counter-Plaintiff's Answers and Objections to Counter-Defendant Isiah Robinson's First Interrogatories |
| Attorney: | Kimberly Held Israel |
| E-mail: | kisrael@mcglinchey.com |
| Telephone: | 904.224.4485 |

Good evening – please see attached the unverified answers to interrogatories. I'm
expecting the signed set tomorrow and will send those to you upon receipt.

Thanks,
Kim

**Kimberly "Kim" Held Israel** (she/her/hers)
Attorney at Law

kisrael@mcglinchey.com
10407 Centurion Pkwy N, Ste 200, Jacksonville, FL 32256
T (904) 224-4485  F (904) 485-8083

bio | vCard | mcglinchey.com



Alabama  California  Florida  Louisiana  Massachusetts  Mississippi  New York
Ohio  Rhode Island  Tennessee  Texas  Washington  Washington, DC

---

www.mcglinchey.com

McGlinchey Stafford, PLLC in Alabama, Florida, Louisiana, Massachusetts, Mississippi, New York, Ohio, Tennessee,
Texas, Washington, and Washington DC and McGlinchey Stafford, LLP in California.

Confidentiality Statement: This email may contain attorney-client privileged, work product-protected, and/or confidential
information. It is for the sole use of the intended recipient(s). If you have received this transmission in error, immediately
notify us by telephone at 504-586-1200 and return the original message to us at McGlinchey Stafford, 12th Floor, 601
Poydras Street, New Orleans, LA, 70130 via the United States Postal Service.

We take steps to remove metadata in attachments sent by email, and any remaining metadata should be presumed
inadvertent and should not be viewed or used without our express permission. If you receive an attachment containing
metadata, please notify the sender immediately and a replacement will be provided.

See McGlinchey Stafford Disclaimer (https://www.mcglinchey.com/disclaimer/) and Privacy Policy
(https://www.mcglinchey.com/privacy-policy/)