# EXHIBIT F

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ISIAH ROBINSON, and LISA
CLAYTON ROBINSON, Each an
Individual,

      Plaintiffs/Counter-Defendants,

v.

NATIONAL AUTOMOTIVE, INC.,
a Florida corporation,

      Defendant/Counter-Plaintiff.

_____

CASE NO. 3:24-cv-00948-WWB-PDB

**COUNTER-PLAINTIFF'S ANSWERS AND OBJECTIONS TO COUNTER-DEFENDANT ISIAH ROBINSON'S FIRST INTERROGATORIES**

COMES NOW Counter-Plaintiff, NATIONAL AUTOMOTIVE, INC. ("NAI"), by and through its undersigned counsel, and pursuant to Rule 33, Fed. R. Civ. P., hereby serves its answers and objections to Counter-Defendant Isiah Robinson's First Interrogatories as follows:

**GENERAL ANSWERS AND OBJECTIONS**

Because the applicable Federal Rules of Civil Procedure permits discovery of certain information, documents, or things which would otherwise be inadmissible at trial or evidentiary hearing, NAI does not waive its rights to object to the admission into evidence of any information contained in these answers on any proper grounds.

NAI objects to each Interrogatory to the extent that it may be read to seek information that is immune from discovery under the attorney/client privilege, the work product doctrine, or that is otherwise privileged or protected from disclosure.

NAI reserves the right to supplement and/or modify these answers as may be needed.

## SPECIFIC ANSWERS AND OBJECTIONS TO INTERROGATORIES

1. Describe in detail each category of damages National Automotive claims to have sustained as a result of the alleged disablement of the GPS device by Counter-Defendants. Include the amounts for each category of damages and the methodology used to calculate them.

**RESPONSE:** NAI has not yet calculated the damages it has incurred due to Plaintiffs' breach of the contracts, but the GPS Acknowledgement makes clear that NAI is the owner of the GPS device, not Plaintiffs. Because Plaintiffs refused to allow NAI to inspect the GPS device, NAI does not know where it is (if it's even still located on the vehicle), if it is repairable or if it has to be replaced in its entirety. NAI's inability to protect its security interest in the Vehicle is also an element of its damages because Plaintiffs granted NAI a security interest in the Vehicle, and the GPS device is intended to enable NAI to monitor the Vehicle's location (e.g. to ensure the Vehicle has not left the state), to ensure that the Vehicle is not being used for commercial purposes, to locate the Vehicle in the event of a default resulting in repossession, to locate the Vehicle in the event it were stolen (and to avoid further damage and to aid in recovery by law enforcement). In essence, NAI has been damaged in its ability to protect its security interest and to mitigate its losses in the event of a default, theft, insurance claim, etc. NAI is also at risk of additional damages if it is not able to exercise its security interest against the Vehicle.

2. Identify all documents, electronic data, or other evidence in National Automotive's possession that support its claim for damages, and describe how each piece of evidence support National Automotive's claim.

**RESPONSE:** See all of the exhibits attached to the Counterclaim, all of which are self-explanatory. NAI also had, prior to the GPS device being disabled/removed/tampered with, the ability to track the location of the vehicle, through the GPS device, among other pieces of information that it provided. The spreadsheet that NAI maintained with the information provided by the GPS device supports NAI's claim because the GPS stopped submitting information as of May 4, 2024, which means that it was either disabled, removed or tampered with, and Plaintiffs have refused to allow NAI to inspect it despite multiple requests to do so.

3. State the specific date and time when National Automotive first became aware that the GPS device allegedly installed on the Vehicle was disabled, and explain how National Automotive discovered the disablement.

2

**RESPONSE:** NAI first became aware that the GPS device installed on the Vehicle was no longer sending a signal with any data on or about May 4, 2024. NAI discovered this through its regular/routine review of the data transmitted electronically to NAI from the device itself.

4. Identify any third parties, including contractors, vendors, or monitoring services, that were involved in installing, maintaining, or monitoring the GPS device on the Vehicle. Provide their names, addresses, and roles in connection with the GPS device.

**RESPONSE:** Verizon is the network that is used for GPS monitoring. SVR is the GPS company. The GPS device was installed on the Vehicle by NAI's mechanic. Other than Verizon, routine monitoring of the GPS device was handle internally by employees of NAI, all of whom are still employed by NAI and can be contacted solely through NAI's counsel of record.

5. Explain how the alleged disablement of the GPS device resulted in any financial loss, missed payments, repossession complications, or other adverse impacts to National Automotive. For each, describe in detail how the disablement caused the loss, the amount of the loss and the date the loss was incurred.

**RESPONSE:** NAI has been unable to locate the Vehicle, and therefore protect and preserve its security interest in the Vehicle, because the GPS device was disabled, removed and/or tampered with, which has a direct adverse impact on NAI's ability to repossess the Vehicle if necessary. NAI is also the owner of the GPS device. When NAI discovered that the GPS device was not providing the Vehicle's location, NAI reached out to Plaintiffs offering a free oil change and reported to Plaintiffs that the GPS appeared to be having issues. Mrs. Robinson screamed at Mrs. Ramaghi that it was "none of our fucking business" and that she wasn't going to drive 2+ hours so that we could "track her" and "play Big Brother." Mr. Robinson would not take NAI's phone calls. This is particularly frustrating because, when Plaintiffs purchased the Vehicle, Mrs. Ramaghi and Plaintiffs had a very in-depth conversation about the fact that NAI does not typically finance vehicle purchases outside of the Jacksonville area. In response, Plaintiffs reassured Mrs. Ramaghi/NAI that if any issues arose, they would be dealt with swiftly, they had no problem bringing the Vehicle to Jacksonville and no problems communicating with NAI. They played on Mrs. Ramaghi's sympathies about being a couple that just "needed a chance," and then refused to cooperate and be responsive as soon as it was actually needed.

6. Identify any instances where National Automotive attempted to repossess or locate the Vehicle, specifying dates, actions taken, and the role of the GPS device (if any) in those efforts.

3

**RESPONSE:** Following Plaintiffs' purchase of the Vehicle, NAI would occasionally review the GPS data to see where the Vehicle was located. Those specific dates were not written down, but in each instance, prior to the GPS device no longer sending data to NAI, the GPS device was sending information to NAI via satellite. NAI has not attempted to repossess the Vehicle.

7. Identify all individuals with knowledge of the alleged disablement of the GPS device, including their names, job titles, contact information, and the nature of their knowledge.

**RESPONSE:** See NAI's response to Interrogatory number 4 above. Also, Plaintiffs would have knowledge of the disablement of the GPS device, and NAI's corresponding efforts to communicate with Plaintiffs about that.

8. Describe in detail any actions National Automotive has taken to repair, replace, or reactivate the GPS device since the alleged disablement, including the costs associated with those actions.

**RESPONSE:** Between May and July 2024, NAI reached out to Plaintiffs numerous times by telephone to try to discuss this with them and to address it, including even offering free oil changes if they would bring the Vehicle to NAI and requesting that an inspection be done as soon as possible. Despite NAI's repeated requests, Plaintiffs consistently refused to bring the Vehicle to NAI so it could inspect it and/or try to determine if the GPS device was malfunctioning, had been removed, or if something else had happened to it.

9. Explain whether National Automotive contends that the disablement of the GPS device has caused harm to its reputation, business operations, or customer relations. For each, describe the harm and the evidence supporting such claims.

**RESPONSE:** NAI has suffered harm to its business operations in the sense that its ability to protect its security interest in the Vehicle has been damaged. Also, NAI has tried numerous times to get Plaintiffs' cooperation in the inspection of the GPS device, which Plaintiffs have refused to do, so that would constitute "harm" to NAI's customer relations, in particular with Plaintiffs. The fact that Plaintiffs have refused to comply with NAI's repeated requests to allow it to inspect the Vehicle and GPS device has caused further harm to its customer relations.

4

10. Identify all communications, written or oral, between National Automotive and Counter-Defendants or any third parties regarding the GPS device, its disablement, or any damages National Automotive claims to have suffered as a result.

**RESPONSE:** See NAI's answer to Interrogatory number 5 above.

11. State whether National Automotive conducted any physical inspection of the Vehicle to confirm that the GPS device was disabled. If so, provide the date, location, individuals present, and the results of that inspection. If no inspection was conducted, explain why not.

**RESPONSE:** See NAI's answer to Interrogatory number 5 above. NAI has been unable to conduct a physical inspection of the Vehicle (and/or the GPS device) because Plaintiffs have failed and refused to cooperate with NAI's repeated requests, and efforts, to conduct an inspection.

12. Identify any individuals or third-party entities who inspected, tested, or attempted to repair the GPS device. For each, provide their names, job titles, contact information, and the date and findings of their inspections or tests.

**RESPONSE:** None known.

13. Describe in detail the condition of the GPS device at the time National Automotive allegedly determined it was disabled, including whether it was damaged, removed, or otherwise altered, and how National Automotive attributed this condition to Counter-Defendants.

**RESPONSE:** NAI does not know the condition of the GPS device because Plaintiffs have failed and refused to allow NAI to inspect it. See NAI's response to Interrogatory number 5 above. NAI attributes the condition, whatever it may be, to Plaintiffs because they were the only ones in possession, custody and control of the Vehicle (and therefore the GPS device) at the time the GPS device stopped sending data electronically to NAI.

14. State whether National Automotive has any evidence showing that Counter-Defendants tampered with, removed, or otherwise disabled the GPS device. If so, identify all such evidence and provide a detailed description of how this evidence implicates Counter-Defendants individually.

**RESPONSE:** NAI has a spreadsheet that reflects when the GPS device last functioned, e.g. last transmitted data to NAI. This "implicates" Plaintiffs because they were the only ones in possession, custody and control of the Vehicle (and the attached GPS device) at the time the GPS device stopped sending data to NAI. When NAI notified Plaintiffs of the issue and asked them to bring the Vehicle in so that NAI could inspect the Vehicle and the GPS device, Mrs. Robinson cursed at Mrs. Ramaghi, refused to cooperate with her request, refused to bring the Vehicle to NAI for inspection, and hung up on her abruptly. Mr. Robinson ignored additional efforts by NAI to get them to cooperate with NAI's request for an inspection.

15. State whether National Automotive attempted to contact Counter-Defendants regarding the alleged disablement of the GPS device. If so, describe all such communications, including dates, methods, and responses from Counter-Defendants.

**RESPONSE:** Yes, more than once. See NAI's answers to Interrogatories 5 and 14 above.

16. Identify all repair, maintenance, or service records for the GPS device on the Vehicle, including the date of installation, any subsequent inspections or repairs, and the names and contact information of the individuals or entities who performed the work.

**RESPONSE:** The GPS device was installed on the Vehicle by NAI's mechanic, Pierson Satterwauske, on or about early September 2023. He can be contacted solely through NAI's counsel of record. NAI does not have any repair, maintenance or service records for the GPS device after it was installed on the Vehicle. In terms of any subsequent inspections, see NAI's answers to Interrogatories 5 and 14 above.

17. Describe any training, protocols or procedures National Automotive has in place for its employees to verify the status of GPS devices installed in consumer vehicles. State whether these procedures were followed in this case and, if so, how they were applied.

**RESPONSE:** NAI does not know what is meant by "verify[ing] the status" of GPS devices. But generally, NAI receives data transmitted by the GPS devices through satellite, which data will indicate if the GPS device is functioning or not. NAI does not have its own "training, protocols or procedures" in place to "verify the status of GPS devices" but has the ability to use customer service assistance through SVR as needed. SVR representative(s) have come to NAI's office from time to time. NAI has also attempted several times to reboot the GPS device in the Vehicle and/or to have the GPS device remotely reset, without success.

18. Explain whether National Automotive possesses any logs, reports, or other records from its GPS monitoring system that indicate when the alleged disablement occurred or provide evidence of the device's functionality prior to the alleged disablement.

**RESPONSE:** Yes, NAI has a spreadsheet that reflects when the alleged disablement occurred.

19. State whether National Automotive attempted to recover the GPS device from the Vehicle after determining it was allegedly disabled. If so, describe the actions taken, dates, and the results of those actions.

**RESPONSE:** NAI is not sure what is mean by "recover the GPS device," but as noted in its answers to Interrogatories 5 and 14 above, NAI has repeatedly asked Plaintiffs to allow NAI to inspect the GPS device once NAI became aware that it was no longer transmitting data, but Plaintiffs have failed and refused to allow NAI to do so.

20. Identify all communications between National Automotive and any third parties, including contractors, vendors, or GPS manufacturers, regarding the alleged disablement of the GPS device or efforts to confirm that Counter-Defendants were responsible.

**RESPONSE:** None known, because Plaintiffs have repeatedly refused to cooperate with NAI's efforts to inspect the GPS device, as described more fully above.

21. Describe in detail whether National Automotive obtained or attempted to obtain an independent expert opinion, inspection, or analysis of the GPS device prior to filing its

7

Counterclaim to determine the cause of the alleged disablement.  If not, explain why no such efforts were made.

**RESPONSE:** Not yet.

22.     State whether National Automotive has any photographic, video, or written documentation of the GPS device as it existed prior to the alleged disablement.  If such documentation exists, describe its contents and the date it was created.

**RESPONSE:** NAI is not entirely clear on what is meant by "as it existed prior to the alleged disablement." NAI does not have pictures of the GPS device once Plaintiffs drove off with the Vehicle.  NAI has a spreadsheet that reflects when the GPS device last functioned, e.g. last transmitted data to NAI.  It was not created on a specific date though because it was intended to track data over the life of Plaintiffs' loan for the Vehicle.

                                        **NATIONAL AUTOMOTIVE, INC.**

                                        By:_____
                                            Robin Ramaghi
                                        Its: President

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing was acknowledged before me this ____ day of January, 2025, by ROBIN RAMAGHI, as the President of NATIONAL AUTOMOTIVE, INC., and who is personally known to me or who produced _____ as identification and said that the interrogatory answers are true and correct to the best of her knowledge and belief.

Sworn to and subscribed before me this _____ day of January, 2025.

                                        _____
                                        Notary Public, State of Florida
                                        My Commission expires: