**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
(Jacksonville Division)

**CASE NO.: 3:24-cv-00948**

ISIAH ROBINSON, and,
LISA CLAYTON ROBINSON,
Each an Individual,

      Plaintiffs/Counter-Defendants,

vs.

NATIONAL AUTOMOTIVE, INC., a
Florida Corporation, and
ROBIN RAMAGHI,
an individual

      Defendants/Counter-Plaintiffs.

_____/

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiffs Isiah Robinson and Lisa Clayton-Robinson ("the **Robinsons**") bring this action against National Automotive, Inc. ("**Defendant**") over its September 8, 2023 sale of a 2011 Chevrolet Equinox ("**Equinox**"). To induce the sale, Defendant represented that the vehicle had 118,245 actual miles and provided odometer disclosure statements affirming that mileage. In reality, the certificate of title, concealed from the Robinsons, was branded "not actual." These false representations induced the purchase and created an express warranty as to mileage.

After the sale, Defendant altered the disclosure documents to add "*TMU*"[1] notations, a post hoc attempt to feign compliance with the Odometer Act. Defendant also violated the Act's title-based disclosure requirements by routing the transaction through extraneous paperwork and by executing mileage disclosures on the title itself through a

_____

[1] An acronym for "*true mileage unknown*."

non-secure power of attorney designating a fictitious name to sign as both transferor and transferee. When the Robinsons discovered the scheme, they filed a complaint with the Department of Highway Safety and Motor Vehicles, which cited Defendant for failing to properly complete an odometer disclosure statement and for failing to disclose falsified mileage.

By this motion, the Robinsons seek partial summary judgment on liability pursuant to Federal Rule of Civil Procedure 56 and Local Rule 3.01 as to Count I for violation of the Federal Odometer Act and Count IV for breach of express warranty. The Robinsons further move for summary judgment on Affirmative Defenses 1-5, 8-9, 11, 12 and 13.

## II.    Undisputed Facts

1.      On September 8, 2023, Defendant sold the Robinsons a 2011 Chevrolet Equinox. Defs.' Answer & Affirmative Defenses ¶¶ 14-15; I. Robinson Aff. ¶1; L. Robinson Aff. ¶1; Ramaghai Dep. 124:19-20.

2.      At the time of sale, Defendant represented that the Equinox had 118,245 actual miles at the time of sale. I. Robinson Aff. ¶2; L. Robinson Aff. ¶2; DE 30-2, 30-3, 30-4, 30-6; Ramaghai Dep. 98:6-20.

3.      Defendant provided an Odometer Disclosure Statement disclosing 118,245 miles without checking the box indicating the mileage was not actual. I. Robinson Aff. ¶ 3; L. Robinson Aff. ¶3; DE 30-3; Ramaghai Dep. 97:14-98:20.

4.      Defendant prepared and presented a Title Application (HSMV 82040) affirmatively certifying that 118,245 "reflects the actual mileage."  I. Robinson Aff. ¶3; L. Robinson Aff. ¶3; DE 30-3; Ramaghai Dep. 98:24-100:10.

5.      Defendant presented a Separate Odometer Disclosure Statement and

Acknowledgment (HSMV 82933) that, under penalty of perjury, represented 118,245 miles as accurate. I. Robinson Aff. ¶3; L. Robinson Aff. ¶3; DE 30-4; Ramaghai Dep. 104:22-105:25.

6.       Defendant repeated the 118,245 figure in the Bill of Sale and Retail Installment Sales Contract provided to the Robinsons on September 8, 2023, without any notation that the mileage was not actual. I. Robinson Aff. ¶3; L. Robinson Aff. ¶3; DE 30-2; Ramaghai Dep. 91:13-15; Ex. A – Bill of Sale.

7.       By virtue of presenting the Odometer Disclosure Statement, Title Application, Separate Odometer Disclosure Statement and Acknowledgment, Bill of Sale and Retail Installment Sales Contract each designating the mileage to be 118,245, Mr. and Mrs. Robinson believed the actual mileage of the Equinox was 118,245. I. Robinson Aff. ¶8; L. Robinson Aff. ¶8.

8.       The documents identified in Statement No. 7, *supra*, were provided to the Robinsons at the conclusion of the sale on September 08, 2023. I. Robinson Aff. ¶4; L. Robinson Aff. ¶4.

9.       Defendant did not sign the documents identified in Statement No. 7, *supra*, before providing copies to the Robinsons. I. Robinson Aff. ¶4; L. Robinson Aff. ¶4; DE 30-2, 30-3, 30-4, 30-6; Ramaghai Dep. 87:15-88:13; 97:14-98:20; 105:9-108:21.

10.      Defendant testified it provided the documents in identified in Statement No. 7, *supra*, to the Robinsons simply for them to take home and review. Ramaghai Dep.87:25-88:2; 98:13-16; 107:8-11; 107:20-108:5.

11.      Defendant withheld the certificate of title from the Robinsons at the time of transfer and used a power of attorney to sign the Equinox's title on their behalf. I.

Robinson Aff. ¶5; L. Robinson Aff. ¶5; Ramaghai Dep. 75:25-77-9.

12.     The title history for the Equinox shows the mileage history steadily increasing. *Compare* Ex. B - Title History at 66, with Ex. B at 58 & 56.

13.     The certificate of title for the Equinox was branded "NOT ACTUAL" months before this sale, and the last "actual" mileage recorded in the title history was 208,579 miles on January 16, 2023. DE 30-11; Ex. B, pgs. 56.

14.     The Robinsons were not shown the "NOT ACTUAL" mileage branding on the title at the time of sale on September 8, 2023 or otherwise aware of the branding. I. Robinson Aff. ¶5; L. Robinson Aff. ¶5.

15.     The mileage disclosures were not made on the Equinox's in the Robinson's presence. I. Robinson Aff. ¶6; L. Robinson Aff. ¶6.

16.     Defendant's practice is to keep titles offsite at Mrs. Ramaghai's residence. Ramaghai Dep. 40:2-6; 41:13-17.

17.     Defendant's practice is to complete mileage disclosures on titles kept offsite after a vehicle is sold. Ramaghai Dep. 47:18-48:6; 48:18-49:9.

18.     The power of attorney utilized by the Defendant in the Robinson transaction was a non-secure form. DE 30-5 ("This non-secure power of attorney form…[.]).

19.     The unsecure power of attorney designated a fictious name, Robert Karr, as attorney in fact. Ramaghai Dep. 103:7-19.

20.     Defendant executed the disclosures as both transferor and transferee on the Equinox's title in the Robinson transaction. DE 30-11; 75:25-77-9.

21.     At the time of the Robinson transaction, the title to the Equinox was neither held by a lender nor lost. Ramaghai Dep. 103:2-6.

22.    The unsecure power of attorney states it cannot be used "to allow an individual or entity (such as a dealership) to sign as both buyer and seller for the purpose of disclosing the odometer reading." DE 30-5.

23.    The unsecure power of attorney utilized by the Defendant lacked any mileage disclosures. DE 30-5.

24.    Defendant admits that it does not verify mileage on vehicles it acquires for resale. Ramaghai Dep. 23:18-20.

25.    Defendant's representation of 118,245 miles was based only on a glance at the odometer. Ramaghai Dep. 91:13-18; 100:20–23.

26.    A salesperson named "Chris" completed all of the documents identified in Statement No. 7 on Defendant's behalf. Ramaghai Dep. 94:15-17; 98:3-5; 99:1-7; 105:9-19.

27.    Defendant's corporate designee did not speak with the salesperson who entered the mileage in preparation for the deposition. Ramaghai Dep. 10:14-19; 81:8-15.

28.    Defendant's corporate designee lacked personal knowledge that the reading actually came from the odometer. 91:16-92-13.

29.    Defendant had no written policies or procedures for inspecting vehicles prior to resale. Ramaghai Dep. 25:13–16.

30.    Defendant cannot identify when the Equinox was inspected. Ramaghai Dep. 66:1-10.

31.    Defendant's corporate designee has no personal knowledge of the results of the inspection. Ramaghai Dep. 66:25-67:6.

32.    Defendant's corporate designee did not speak with the only mechanic on

staff to determine if the Equinox was inspected even though he still works for the Defendant. Ramaghai Dep. 66:19-24.

33.    After the September 8, 2023 sale, Mrs. Ramaghai, on the Defendant's behalf, altered the Disclosure Statement, Title Application, and Odometer Acknowledgment signed by the Robinsons by adding "NOT ACTUAL" or "TMU" notations. DE 30-7; DE 30-8; DE 30-9; Ramaghai Dep. 117:23; 122:18-123:5;

34.    Defendant asserts these alterations occurred later in the Robinsons' presence and with their consent. Ramaghai Dep. 117:12-14; 118:2-9; 124:1-8;

35.    The Robinsons never consented to these alterations nor where they aware of the alterations when made. I. Robinson Aff. ¶¶13-14; L. Robinson Aff. ¶13-14.

36.    The Robinsons never returned to Defendant's premises after September 8, 2023 to sign title documents or new contracts. I. Robinson Aff. ¶16; L. Robinson Aff. ¶16.

37.    GPS history confirms the Equinox never returned to Defendant's dealership after September 8, 2023. DE 68-2.

38.    After discovering the mileage misrepresentations, the Robinsons submitted a complaint to the Florida Department of Highway Safety and Motor Vehicles ("**DHSMV**"). which cited the Defendant for violating Fla. Stat. §319.225(4) as a result of its failure to properly complete an odometer disclosure statement and failed to make "the consumer aware that the vehicle's mileage was not actual when it was sold[.]" Composite Ex. C – DHSMV Investigative Report & Citation; I. Robinson Aff. ¶17; L. Robinson Aff. ¶17.

39.    Defendant claims to have generated a second Bill of Sale and second Retail Installment Sales Contract with handwritten "TMU" notations which the Robinsons acknowledged and signed on a later date. Ramaghai Dep. 119:8-16; 120:12-24;  121:8-

122:12; 127:23-128:2; Ex. D – Altered Bill of Sale

40.    The only differences between the original and altered versions are the added TMU notations. I. Robinson Aff. ¶19; L. Robinson Aff. ¶19; *Compare* DE 30-2 with Ex. E – Altered RISC; *Compare* Ex. A with Ex. D.

41.    Defendant could not identify when the Robinsons actually re-signed the altered documents or approved modifications made to the Disclosure Statement, Title Application, and Odometer Acknowledgment. Ramaghai Dep. 113:23-114:8; 117:11-20;119:17-20; 122:18- 126:6.

42.    Defendant accepted the Equinox's title from Murray Ford in blank, except for a signature from Murray Ford. Ramaghai Dep. 71:22-72:17.

43.    Defendant filled in and signed the disclosures on the title from Murray Ford to the dealership. Ramaghai Dep. 77:10-12; 21-23.

44.    Defendant unilaterally filled in the mileage without inspecting the Equinox, relying on a number phoned in by Murray Ford's clerk. Ramaghai Dep. 79:9-18.

45.    Defendant accepts titles with incomplete title disclosures "every day." Ramaghai Dep. 19-21.

46.    Despite completing the disclosure on Murray Ford's behalf, Defendant failed to select the "NOT ACTUAL" designation. Ramaghai Dep. 77:23-12.

47.    Defendant received the title for the Equinox from Murray Ford with a "NOT ACTUAL" brand. Ramaghai Dep. 74:2-8.

48.    Defendant could not answer why it failed to select the designation that the mileage was inaccurate on the disclosure it made on behalf of Murray Ford. Ramaghai Dep. 77:23-78:17.

49.    The mileage disclosure completed by Defendant on behalf of Murray Ford bears the date "9-1-23," five days before the Robinson transaction. DE 30-11, p.3.

50.    Defendant could not recall when it actually received the title for the Equinox. Ramaghai Dep. 72:18-24.

51.    Defendant could not identify where it received the title. Ramaghai Dep. 72:25-73:11.

52.    Defendant could not explain why it implemented the use of a power of attorney. Ramaghai Dep. 102:14-16.

53.    Defendant admits this use of the fictitious POA is its standard practice in every transaction. Ramaghai Dep. 102:20–25.

54.    Defendant completed the mileage disclosures on the Equinox's title on September 08, 2023. Ramaghi Dep. 74:10–77:9

55.    The Robinsons relied on the Defendant's mileage representations when agreeing to purchase the Equinox. I. Robinson Aff. ¶¶8-11; L. Robinson Aff. ¶ __.

56.    The Robinsons delivered a demand letter, pre-suit, to try and resolve the dispute.  Ramaghai Dep. 167:5-168:8; I. Robinson Aff. ¶18; L. Robinson Aff. ¶ __.

## III.    STATUTORY BACKGROUND

### a.  Odometer Act.

Congress passed the Odometer Act to prevent fraud in the sale of motor vehicles. The Congressional intent in passing the Act was to prevent odometer tampering and to provide other general safeguards for the protection of consumers. 49 U.S.C. §32701(b).

As a remedial consumer protection statute, the Odometer Act is broadly and vigorously applied to accomplish the Act's purposes. *Owens v. Samkle Auto. Inc.,* 425

F.3d 1318, 1322 (11th Cir. 2005). In passing the Act, Congress mandated accurate odometer statements and other pertinent information concerning motor vehicles to penalize those who engage in odometer tampering and related wrongdoing. *Id*.

Congress amended the Odometer Act in 1986 to close the very loopholes exploited by the Defendant by making the certificate of title the exclusive medium for mileage disclosure. *S. Rep. No*. 99-47, at 1–2 (1986), reprinted in 1986 U.S.C.C.A.N. 5620, 5621. The NHTSA's rulemaking history explains why: separate, dealer-generated forms were too vulnerable to abuse" so the disclosure had to live on the title itself, handed to and signed by the buyer during the transfer, so consumers can view mileage history, identify prior owners, and detect erasures or alterations. Supplementary Information to 1991 Final Rule, 56 Fed. Reg. 47,681, 47,684 (1991); Supplementary Information to Proposed Revisions, 52 Fed. Reg. 27,022, 27,025 (July 17, 1987); Supplementary Information to 1988 Final Rule, 53 Fed. Reg. 29, 464 (Aug. 5, 1988). The Act and its implementing regulations are therefore two-pronged: a transferor may not give a false mileage statement, and it must make the disclosure in the form and manner prescribed; that is, on the title, presented to and signed by the transferee at the time of sale. 49 U.S.C. § 32705(a)(1)–(3); 49 C.F.R. § 580.5(c).

The regulations also tightly curb work-arounds. Mileage disclosures may appear on a supplemental form only when a vehicle has not yet been titled. 49 C.F.R. § 580.5(g). A secure power of attorney may be utilized only when the transferor's title is physically held by a lienholder or lost and the transferee is obtaining a duplicate on the transferor's behalf, and even then, the power of attorney form must be printed on secure paper by the state, scanned in a secure manner, must itself carry the odometer disclosure, and may

not be used to sign for both transferor and transferee. 49 C.F.R. §§ 580.13, 580.14, 580.4, 580.5(h); *Coleman v. Lazy Days RV Ctr., Inc.*, 2006 U.S. Dist. LEXIS 52178, at *14–16. Finally, a reseller, such as the Defendant, may accept a mileage disclosure from a prior seller, "only if it is complete." 49 U.S.C. § 32705(a)(3).

The statutory commands safeguard the integrity of the mileage history and directly prohibit the misconduct engaged in by the Defendant here. The Eleventh Circuit has emphasized that completing mileage disclosures on the vehicle's title is essential to preserving the reliability and continuity of the mileage paper trail, a central purpose of the disclosure scheme. *See Owens,* 425 F.3d at 1323-24. The success of this carefully constructed remedial scheme depends on strict adherence to its many interrelated and technical provisions. *Id.*

"The purpose of the statute is to punish odometer tamperers by imposing civil penalties upon them and to reward purchasers who discover such tampering and bring it to the attention of the federal courts." *Delay v. Hearn Ford*, 373 F. Supp. 791, 796 (D.S.C. 1974). The Odometer Act provides a private cause of action to recover damages from those who, like the Defendant here, violate its provisions with fraudulent intent. 49 U.S.C. § 32710(a). To prevail on a claim under the Odometer Act, a plaintiff must show "(1) that the defendant violated the Act or its regulations, (2) with intent to defraud." *Owens*, 425 F.3d at 1321. The Robinsons further state as follows:

## I.   LEGAL ARGUMENT

### a.   Count I – Violation of the Odometer Act.
#### i.   Defendant violated 49 U.S.C. § 32705(a)(2) by providing false mileage statements.

At the September 08, 2023 sale, the Defendant represented to the Robinsons that

the Equinox had 118,245 actual miles. (SOF ¶¶1-2). Defendant provided the Robinsons with an Odometer Disclosure Statement ("**Disclosure Statement**") that disclosed 118,245 miles and left the box indicating the mileage was not actual, unchecked. (SOF ¶3). Defendant also prepared and presented an Application for Certificate of Motor Vehicle Title, Form No. HSMV 82040 MV (Rev. 07/23) ("**Title Application**"), affirmatively certifying that 118,245 "reflects the actual mileage" (SOF ¶4). In addition, Defendant presented a Separate Odometer Disclosure Statement and Acknowledgment, Form No. HSMV 82933 (Rev. 10/09) ("**Odometer Acknowledgment**"), which, under penalty of perjury, likewise represented the 118,245 reading as accurate. (SOF ¶5). Defendant repeated the same mileage in the bill of sale ("**Bill of Sale**") and retail installment sales contract ("**Retail Installment Sales Contract**") without any notation that the mileage was not actual (SOF ¶6), thereby conveying the vehicle's mileage was accurate. (SOF ¶7).

As part of its fraudulent scheme, it failed to sign these documents before providing copies to the Robinsons at the conclusion of the transaction. (SOF ¶¶8-9). In this fashion, it could later argue, as it has, that the documents provided to the Robinsons were given solely for them to take home and review prior to completing the purchase. (SOF ¶10).

The title history, however, reveals that the certificate of title for the Equinox was branded with a "NOT ACTUAL" mileage disclosure months before this sale, and the last "actual" reading recorded was 208,579 miles on February 17, 2023 (SOF ¶12).

The Act prohibits giving a false statement to the transferee "in making the disclosure," and courts treat related verbal and written statements connected to the transfer paperwork as part of that disclosure. 49 U.S.C. § 32705(a)(2); *Ryan v. Edwards*, 592 F.2d 756, 761 (4th Cir. 1979). On this undisputed record, the sale-day

representations were unequivocally false, and the Defendant knew or should have known that the representations were false at the time they were made to the Robinsons. The certified title history, with multiple mileage entries made under penalty of perjury, shows a consistent mileage increase, contradicting representations made to the Robinsons. (SOF ¶12) Moreover, the face of the title for the Equinox clearly demarcates that the mileage was "*NOT ACTUAL*" months prior to the Robinson's purchase. (SOF ¶13).

On these facts, a reasonable jury could conclude the odometer reading was impaired, as reliance on title history for mileage accuracy is proper. *See Moxey v. Jimmy Auto Sale LLC*, 2019 U.S. Dist. LEXIS 52747, at *9 (D.N.J. Mar. 28, 2019); *King v. Union Leasing, Inc.*, 2018 U.S. Dist. LEXIS 178489, at *4-5 (D. Ariz. Oct. 17, 2018). As a result, there is no dispute of material fact that the Defendant violated 49 U.S.C. § 32705(a)(2), as a matter of law.

### ii. Defendant violated 49 U.S.C. § 32705(a)(3) in the form and manner in which it made mileage disclosures.

Beyond falsity, Defendant violated the Act's form-and-manner requirements. It withheld the certificate of title at the time of transfer from the Robinsons' examination and signature (SOF ¶¶11; 16) and instead routed the sale through extraneous paperwork (SOF ¶¶3-6), preventing the Robinsons from viewing the title's preexisting "NOT ACTUAL" branding at the time of sale on September 08, 2023 (SOF ¶14) and from providing the mileage disclosures on the Equinox's title during the transfer. (SOF ¶11). Defendant maintains a business practice of storing vehicle titles offsite (SOF ¶16) and completing disclosures on vehicle titles post-sale. (SOF ¶17). In furtherance of the fraudulent scheme, it implemented the use of a non-secure power of attorney (SOF ¶18) bearing a fictitious name (SOF ¶19) to complete odometer disclosure fields on the

Equinox's title and to sign as both the transferor and transferee, all outside of the Robinsons' presence. (SOF ¶¶15; 20).

Each step collides headfirst with the Act's design: first, if a power of attorney is used, it must be on secure paper printed by the state. 49 C.F.R. § 580.4. And a secure power of attorney may be used only in very narrow circumstances, such as when "the transferor's title is physically held by a lienholder," or when "the transferor to whom the title was issued by the State has lost his title and the transferee obtains a duplicate title on behalf of the transferor." *Coleman,* No. 8:05-cv-00930-T-17-TBM, 2006 U.S. Dist. LEXIS 52178, at *15-16 (internal citations omitted); *see also* 49 C.F.R. § 580.13(a).

Second, if one of the narrow exceptions is present and a secure power of attorney is used, the form itself must contain the mileage disclosures required by the Act and its regulations, and it may not be used by the transferor to sign as both transferor and transferee in the same transaction. 49 U.S.C. § 32705(b)(2)(A); 49 C.F.R. § 580.13; 49 C.F.R. § 580.5(h); *Lee v. Gallup Auto Sales, Inc.,* 1998 U.S. Dist. LEXIS 24326, n.3. The regulations likewise permit mileage disclosure on a supplemental form only if the vehicle has not yet been titled. 49 C.F.R. § 580.5(g).

The record reveals the form utilized by the Defendant was a "non-secure" power of attorney. (SOF ¶18). The record further reveals that there was no basis for Defendant's use of a power of attorney in the first place because the title was neither held by a lienholder nor lost. (SOF ¶21). Even if Defendant could establish otherwise, the power-of-attorney form nevertheless omitted the required mileage disclosures (SOF ¶22) and Mrs. Ramaghai used it on Defendant's behalf to sign as both transferor and transferee (SOF ¶20), conduct the regulations, and the instructions of the form itself (SOF ¶22)

expressly forbid. The narrow supplemental-form exceptions also do not apply because the Defendant ultimately made mileage entries on the Equinox's title, confirming the vehicle had already been titled. (SOF ¶20).

On this record, there is no dispute of material fact that the Defendant violated the act in the way in which it provided the mileage disclosures to the Robinsons.

### iii.    Defendant's actions evince its intent to defraud.

Although the Eleventh Circuit has addressed few Odometer Act cases, the Fifth Circuit's *Nieto v. Pence*, 578 F.2d 640 (5th Cir. 1978), reflects the majority rule that reckless disregard or gross negligence in an odometer disclosure supports intent to defraud. This Court has applied the same principle. *Coleman v. Lazy Days RV Ctr., Inc.*, No. 8:05-CV-930-T-17TBM, 2007 U.S. Dist. LEXIS 50514, 2007 WL 2021832, at *2 (M.D. Fla. July 12, 2007); *Fowler v. Elegant Auto Fin. LLC*, 446 F. Supp. 3d 966, 969 (M.D. Fla. 2020). Actual knowledge is not required, and ignorance is no defense: "Claiming ignorance, even truthfully, is not enough […] [c]are must be taken to learn and reveal the facts, rather than care to avoid or hide them." *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387.

Courts impose an affirmative duty on dealers to discover mileage defects. *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1284 (10th Cir. 1998); *McEwen v. Delong*, No. CV-19-05192-PHX-SMB, 2021 U.S. Dist. LEXIS 119334, at *13 (D. Ariz. June 25, 2021); *Simmons Auto Sales, Inc. v. Royal Motor Co.*, 489 So.2d 518, 521 (Ala. 1986)( public policy demands that auto dealers utilize their expertise to discover [mileage] alterations); *Jones v. Fenton Ford, Inc.*, 427 F. Supp. 1328, 1335 (D. Conn. 1977). A dealer's failure to take even basic verification steps is reckless, and courts infer intent

when no investigation is done. *Suiter*, 151 F.3d at 1284; *see also Bolton v. Tyler Lincoln Mercury, Inc.*, 587 F.2d 796 (5th Cir. 1979). Reliance on the odometer while ignoring readily ascertainable title information likewise satisfies the intent element. *Tusa v. Omaha Auto. Auction Inc.*, 712 F.2d 1248, 1254 (8th Cir. 1983); *Avila v. Used Car Showcase 1 LLC*, 2021 U.S. Dist. LEXIS 232918, *10; *Nieto*, 578 F.2d at 640; *Aldridge v. Billips*, 656 F. Supp. 975, 978 (W.D. Va. 1987); *Bryant v. Thomas*, 461 F. Supp. 613, 618 (D. Neb. 1978); *Oettinger v. Lakeview Motors, Inc.*, 675 F. Supp. 1488, 1495 (E.D. Va. 1988).

Here, Defendant's corporate designee, Mrs. Ramaghai, admitted the dealership "does not verify the mileage" prior to resale (SOF ¶24) and that she believes the 118,245 figure came only from glancing at the odometer. (SOF ¶25). She further testified that a salesperson named "Chris" completed all of the mileage disclosures (SOF ¶26) but she failed to speak with Chris in preparation for the deposition (SOF ¶27) and she lacked personal knowledge the reading actually came from the odometer (SOF ¶28). The Defendant's corporate representative further testified that it had no written policies or procedures regarding vehicle inspections (SOF ¶29), it purportedly completed an inspection but could not identify when the inspection occurred (SOF ¶30), and did not personally see the results of the inspection checklist. (SOF ¶31). The corporate representative likewise did not speak with the only person how could have had personal knowledge of the inspection to prepare for the deposition, despite being able to do so. (SOF ¶32). In sum, there is no evidence that the Defendant did anything to investigate the veracity of the mileage disclosures at the time they were made to the Robinsons.

The record does, however, establish that the Defendant ignored obvious "NOT ACTUAL" branding on the face of the title, and nevertheless made representations that

the Equinox's actual mileage was 118,245 at the September 08, 2023 sale, precisely the conduct courts deem reckless and sufficient for intent. *Aldridge*, 656 F. Supp. at 978; *Tusa*, 712 F.2d at 1254; *Rife v. Randolf Ezrre Wholesale Auto Sales LLC*, No. CV-19-04689-PHX-DLR, 2022 U.S. Dist. LEXIS 21480, at *8 (D. Ariz. Feb. 7, 2022); *Williams v. Toyota of Jefferson, Inc.*, 655 F. Supp. 1081 (E.D. La. 1987); *Jones v. Fenton Pontiac, Inc.*, 427 F. Supp. 1328 (D. Conn. 1977); see also *Suiter*, 151 F.3d at 1284.

Defendant's alterations further confirm its intent. To conceal the fraudulent scheme, Mrs. Ramaghai testified as Defendant's Rule 30(b)(6) designee that she personally altered the Disclosure Statement, Title Application, and Odometer Acknowledgment after Plaintiffs had signed them by adding "not actual" or "*TMU*" (i.e., "*true mileage unknown*") notations. (SOF ¶33). Defendant claims these changes occurred after the September 08, 2023 sale, in the Robinsons' presence and with their consent (SOF ¶34). The Robinsons, however, have testified that they never authorized these modifications nor where they aware that they occurred (SOF ¶35) and they never returned to the dealership after September 8, 2023 to sign the documents or authorize alterations. (SOF ¶36). And, GPS data shows the Equinox never returned to the dealership's location. (SOF ¶37). Following an a DHSMV investigation, the Defendant's conduct in this regard was found to be violative of Fla. Stat. §319.225(4) as a result of its failure to properly complete an odometer disclosure statement and failed to make "the consumer aware that the vehicle's mileage was not actual when it was sold[.]" (SOF ¶38). Altering an odometer disclosure after it is provided to the consumer, so that the later disclosure is accurate, is evidence that the dealer knew of the problem with the initial disclosure, and shows intent. *Small v. Savannah Int'l Motors, Inc.,* 619 S.E.2d 738 (Ga. Ct. App. 2005).

Defendant further claims that it also generated a second bill of sale ("**Altered BOS**") and a second retail installment sales contract ("**Altered RISC**") which the Robinsons executed with handwritten "TMU" notations (SOF ¶39). Yet the originals and altered versions are identical in all respects except for the added "TMU," notations which remove any doubt of after-the-fact alterations rather than a true second signing. (SOF ¶40).

Despite the Defendant's claims that a second meeting occurred, it could not identify with any certainty when the Robinsons returned to authorize the changes and re-sign the contracts. (SOF ¶41). Defendant's inability to recall basic facts undermines its narrative and contradicts its affirmative defenses that Plaintiffs returned on September 14, 2023. D.E. 39 at ¶¶2-3;8-9; 11. Under Fed. R. Civ. P. 8(c), a defendant bears the burden of pleading and proving an affirmative defense with sufficient ultimate facts to avoid unfair surprise. *See Advanced Fla. Med. Group v. Progressive Am. Ins. Co.*, 364 So. 3d 1131. Where a defendant's testimony contradicts or fails to support the factual basis of its defense, courts hold the defense lacks evidentiary support and summary judgment is proper under Fed. R. Civ. P. 56. *See Roberts v. United States*, 225 F. Supp. 2d 1138; *McKee v. Crestline Hotels & Resorts, LLC*, 376 So. 3d 758.

Separate from its cover-up efforts, the record shows Defendant violated the Act by accepting an incomplete odometer disclosure from its transferor, Murray Ford. 49 U.S.C. § 32705(a)(3). Mrs. Ramaghai admitted that when Defendant received the Equinox's title, the transfer section was blank except for Murray Ford's signature (SOF ¶42), that she filled in the mileage disclosure herself (SOF ¶43), and that she relied solely on a number phoned in by Murray Ford's clerk without inspecting the vehicle (SOF

¶44). She further admitted Defendant accepts titles in this fashion "every day." (SOF ¶45). In completing the disclosure on Murray Ford's behalf, Defendant failed to select the "not actual" designation (SOF ¶46) despite having received a title already branded "NOT ACTUAL." (SOF ¶47). Defendant refused to answer why it failed to make the proper selection (SOF ¶48). By accepting a blank disclosure and supplying mileage entries itself, Defendant violated the statute, supporting an inference of intent to defraud. *See Mills v. Manse*, 535 N.E.2d 1378 (Ohio Ct. App. 1987) (intent inferred where dealer accepted title with no odometer certification and later issued its own statement certifying accuracy).

Although Defendant testified that the disclosure it made on Murray Ford's behalf were completed after the Robinson sale, the disclosure, executed under penalty of perjury, bears the date "9-1-23," five days before the Equinox transaction. (SOF ¶49). And when pressed, beyond vague generalizations, Defendant could not identify when it actually completed the mileage disclosure on Murray Ford's behalf, when it received the title or where it came into possession of the title. (SOF ¶¶50, 51).

Under Rule 30(b)(6), a defendant is bound by its designee's testimony. *See QBE Ins. Corp.*, 277 F.R.D. at 688–91. A "lack of knowledge" answer, as given here, still binds the corporation at trial. *Galati v. Royal Caribbean Cruises Ltd.*, No. 23-cv-20655-BLOOM/Torres, 2024 U.S. Dist. LEXIS 119947, at *14 (S.D. Fla. July 9, 2024); *see also Peeler v. KVH Indus.*, No. 8:12-cv-1584-T-33MAP, 2014 U.S. Dist. LEXIS 4618, at 20 (M.D. Fla. Jan. 13, 2014).

Underscoring the Defendant's abhorrent reckless disregard for what the law required, the record unequivocally establishes that the Defendant made the disclosures

on the title for the Robinson transaction through an unsecure power of attorney designating a fictitious name- "*Robert Karr.*" (SOF ¶¶19; 20). The record further establishes that it completed the mileage disclosures on behalf of the Dealership as transferor and the Robinsons as transferees (SOF ¶¶19; 20), a practice it employs in without any meaningful explanation (SOF ¶52) and in every transaction. (SOF ¶53). Most critically, Defendant's own testimony establishes that it completed the mileage disclosure on the Equinox's title on September 8, 2023, the very date of the Robinsons' purchase. (SOF ¶54).

Federal guidance is clear: a power of attorney cannot be used for a dealer or its agent to sign as both transferor and transferee, and a third party may sign for the consumer only if that third party is independent of the dealer or the transferee. *See* Nat'l Highway Traffic Safety Admin., Federal Odometer Disclosure Requirements, Questions and Answers (Mar. 20, 1990). Defendant's use of an alias as a supposed "3rd party" was materially false and confirms a deliberate effort to conceal its scheme. By signing on behalf of itself and the Robinsons under the fictitious name "Robert Karr," Defendant stripped the odometer certification of any integrity and violated the Act. *See* 49 C.F.R. § 580.5(h). This practice ensured the Robinsons never saw the title that disclosed the mileage discrepancy, further evidencing intent to defraud. *See Desamours v. Impact Auto Depot, Inc.*, 2022 WL 2758337, at *6 (S.D. Fla. June 29, 2022) (mag.), adopted by 2022 WL 2753225 (S.D. Fla. July 14, 2022).

On this record, Defendant's position is not grounded in any credible evidence or logical reasoning. This Court need not credit implausible inferences. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). Particularly when the Defendant's

position is "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Any dispute regarding the steps taken to verify the veracity of the odometer, later rectify the disclosure with the Robinsons' consent or that it failed to have the title in hand at the time of the transaction on September 08, 2023, is not genuine, and no reasonable jury could find for the Defendant on these facts. Rather, a jury could infer that Defendant had either actual or constructive knowledge of the car's mileage sufficient to form the requisite intent to defraud. Summary judgment on Count I is therefore warranted as to liability.

### b. Count IV – Defendant's Breach of Express Warranty.

Under Florida's UCC, an express warranty arises when a seller makes an affirmation of fact or description of goods that forms part of the bargain. Fla. Stat. § 672.313(1)(a)–(b). Any such affirmation or description that induces the purchase creates a warranty that the goods so conform. *Miles v. Kavanaugh*, 350 So. 2d 1090 (Fla. 3d DCA 1977); *Rastaedt v. Mercedes-Benz USA, LLC*, 63 So. 3d 41 (Fla. 4th DCA 2011). No special words are required. Fla. Stat. § 672.313(2); *State Farm Ins. Co. v. Nu Prime Roll-A-Way of Miami, Inc.*, 557 So. 2d 107 (Fla. 3d DCA 1990). No specific intent to create a warranty is necessary. *Id.; Miles*, 350 So. 2d 1093.

There is no dispute of material fact that the Defendant represented that the Equinox had 118,245 actual miles. (SOF ¶2). The Robinsons relied on that description (SOF ¶56), which created an express warranty under § 672.313(1)(a). But the description was false when made. (SOF ¶¶12-13; 33; 47). The Odometer Act reinforces that "buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle." 49 U.S.C. § 32701(a)(2). This discrepancy constitutes a breach of express warranty, as a matter of law.

Defendant's reliance on "as-is" disclaimers is misplaced. Fla. Stat. § 672.316(1) provides that disclaimers inconsistent with express warranties are inoperative, and Comment 1 explains that such disclaimers are "repugnant" to the agreement. Once part of the bargain, representations cannot be undermined by boilerplate language. *See Curry Motor Co., Inc. v. Hasty*, 505 So. 2d 347 (Ala. 1987) (mileage statement an express warranty despite disclaimer); *Mitchell v. White Motor Credit Corp.*, 627 F. Supp. 1241 (M.D. Tenn. 1986) (same); *Gobran Auto Sales, Inc. v. Bell*, 783 S.E.2d 389, 394 (Ga. Ct. App. 2016) (disclaimer ineffective to negate express warranty).

Because Defendant's disclaimers directly conflict with its express warranty, they are inoperative as a matter of law. The Court should enter summary judgment on Count IV for breach of express warranty.

### c. Plaintiff is entitled to summary judgment on certain of Defendant's affirmative defenses.

Summary judgment may be granted on an affirmative defense. *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990). Where the movant does not bear the burden of proof, it need only show the opponent cannot sustain that burden at trial. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

### i. Affirmative Defense Nos. 1, 4-5 – Failure to State a Cause of Action

Failure to state a claim is not an affirmative defense. *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988).

### ii. Affirmative Defense No. 2 – Waiver

Waiver requires a voluntary relinquishment of a known right, and there can be no waiver unless the party had all the material facts. *Irvine v. Cargill Inv. Servs., Inc.*, 799 F.2d 1461, 1464 (11th Cir. 1986). The defense is disfavored and cannot be used to

achieve ends contrary to public policy. *Nw. Nat'l Cas. Co. v. McNulty,* 307 F.2d 432, 442–43 (5th Cir. 1962)(Applying Florida law). Nor may an individual waive protections of a statute designed to protect both the public and the individual. *Belcher v. Ocwen Loan Servicing, LLC, No.* 8:16-cv-690-T-23AEP, 2016 U.S. Dist. LEXIS 173271, at *3-4 (M.D. Fla. Dec. 15, 2016).

Defendant can point to no evidence that the Robinsons knew the disclosures were false when initially made at the time of sale nor that they voluntarily relinquished any right to truthful and accurate mileage disclosures at the time of sale. Applying waiver to these circumstances would undermine Congress's remedial scheme. The defense must fail as a result.

### iii. Affirmative Defense No. 3 – Estoppel

Equitable estoppel in Florida requires: (1) a representation of material fact by the party to be estopped that is contrary to its later position; (2) reliance by the asserting party; and (3) a detrimental change in position caused by that reliance. *United States Life Ins. Co. v. Logus Mfg. Corp.*, 845 F. Supp. 2d 1303, 1318 (S.D. Fla. 2012). The doctrine rests on "fair play and essential justice" and applies when one party "lulls another party into a disadvantageous legal position." *Fla. Dep't of Health & Rehab. Servs. v. S.A.P.*, 835 So. 2d 1091, 1096 (Fla. 2002). Defendant is unable to point to any contrary representation it relied upon to its detriment and consequent change in position. The defense fails.

### iv. Affirmative Defense No. 8 – Unclean Hands

Unclean hands requires plaintiff wrongdoing directly related to the claim and resulting injury to the defendant. *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450. It applies only to claims of equitable relief. *Regions Bank v. Old Jupiter, LLC*, No. 10-80188, 2010 U.S. Dist. LEXIS 131443, at *6 (S.D. Fla. Dec. 13, 2010); *See also RKR*

*Motors, Inc. v. Midway Leasing*, 2025 U.S. Dist. LEXIS 87201 (S.D. Fla. 2025) (striking unclean-hands defense to Odometer Act damages claim as an equitable doctrine that does not bar legal relief).The Robinsons do not seek equitable relief [2] and Defendant will be unable to point to any misconduct or injury. Summary judgment is warranted here.

### v. Affirmative Defense No. 9 – Laches

Laches applies to claims that are equitable in nature. *Jeremiah's Int'l Trading Co. v. Calderone*, 2015 U.S. Dist. LEXIS 183662, *6. The defense of laches does not apply to claims arising under congressional acts providing a statute of limitations. *See Wlodynski v. Ryland Homes of Florida Realty Corp.*, No. 808-CV-00361-JDW-MAP, 2008 U.S. Dist. LEXIS 54515, 2008 WL 2783148, at *2 (M.D. Fla. July 17, 2008). The Robinsons have raised no equitable claims. *See* Complaint, *generally*. Moreover, Congress has established a two-year limitations period for the Odometer Act. 49 U.S.C. § 32710(b). This defense fails as a matter of law.

### vi. Affirmative Defense No. 11 – Accord & Satisfaction

This defense arises when there is a good-faith dispute between two parties over the amount or terms of a contract, and they agree to settle the matter by a new agreement. The new agreement (the "accord") and its execution (the "satisfaction") effectively discharge the original obligation. *Air Products & Chemicals, Inc. v. Louisiana Land & Exploration Co.*, 806 F.2d 1524, 1528-1529. The Robinsons have raised no contractual claims against the Defendant. See Complaint, *generally.* Nor is there any evidence of a new agreement being executed to discharge an original obligation. This defense is a red-herring and must fail as a matter of law.

---

[2] Count V for Revocation of Acceptance is brought pursuant to the statutory remedies afforded under 15 U.S.C. § 2310(d) and, by extension, Fla. Stat. § 672.608.

### vii.  Affirmative Defense No. 12  – As-Is Waiver

Defendant's "as-is" defense fails. Florida law provides that the substance of the parties' bargain controls over boilerplate. *See* Fla. Stat. § 672.316(1). A seller cannot make factual statements or promises about a vehicle and then nullify them through a broad disclaimer; any disclaimer conflicting with an express warranty is inoperative. *Id.* UCC Comment 1 confirms that disclaimers of express warranties are "repugnant" to the agreement. Once Defendant's mileage representations became part of the bargain, they could not be undone by "as-is" language. It is undisputed that those representations were part of the dickered terms and created an express warranty under § 672.313(1)(a). (SOF ¶55). But the representations were false. (SOF ¶ SOF ¶¶12-13; 33; 47). Defendant cannot now rely on disclaimers to avoid liability.

### viii.  Affirmative Defense No. 13  – Failure to Mitigate Damages

The doctrine of avoidable consequences, or duty to mitigate, bars recovery of damages an injured party "could have avoided without undue risk, burden, or humiliation." *State v. P.C.L.*, 332 So. 3d 4 (Fla. Dist. Ct. App. 2022). It applies only when a party fails to take reasonable measures available without undue effort or expense. *Id.* The Robinsons did take such steps. After uncovering the misrepresentations, they promptly filed a complaint with DHSMV, invoking the administrative process. (SOF ¶56). Courts have held that pursuing administrative remedies can constitute mitigation. *See Thoroughbred Motor Cars, Inc. v. Draper*, 1993 WL 135436, at *3–4 (Tenn. Ct. App. Apr. 30, 1993). They also sent a pre-suit demand letter, which the dealership ignored. (SOF ¶56). These actions demonstrate the reasonable efforts to mitigate damages.

### IV.    CONCLUSION

For the reasons set forth above, the record presents no genuine dispute: Defendant made false mileage disclosures, violated the Act's title-based form-and-manner requirements, and did so with at least reckless disregard, establishing intent to defraud, and separately breached an express warranty as to mileage.

**WHEREFORE**, Plaintiffs, Isiah Robinson and Lisa Robinson, respectfully request that the Court grant partial summary judgment in their favor on Count and Count IV as to liability; enter judgment on Affirmative Defenses Nos. 1, 2, 3, 4, 5, 8, 9, 11, 12, and 13; set this matter for a trial (or further proceedings) on damages and statutory remedies, and award Plaintiffs their reasonable attorneys' fees and costs as provided by law, together with such other and further relief as the Court deems just and proper.

Respectfully submitted on September 30, 2025:

*/s/ Joshua E. Feygin*
**JOSHUA FEYGIN, ESQ.**
FL Bar No.: 124685
Email: Josh@sueyourdealer.com
**SUE YOUR DEALER – A LAW FIRM**
4601 Sheridan St #205,
Hollywood, FL 33021
Tel: (954) 228-5674
Fax: (954) 697-0357
*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on Tuesday, September 30, 2025, a copy of the foregoing was filed via the Court's Electronic Filing system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Joshua E. Feygin*
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685