UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ISIAH ROBINSON, and LISA CLAYTON
ROBINSON, Each an Individual,

        Plaintiffs,

vs.

NATIONAL AUTOMOTIVE, INC., a Florida
corporation, and ROBIN RAMAGHI, an
individual,

        Defendants.

Case No. 3:24-cv-00948

---

### DEFENDANT NATIONAL AUTOMOTIVE, INC.'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' VERIFIED AMENDED COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF AND MEMORANDUM OF LAW

COMES NOW Defendant, NATIONAL AUTOMOTIVE, INC., a Florida corporation ("NAI"), by and through its undersigned counsel, and pursuant to Rule 56, Fed. R. Civ. P., files this Motion for Summary Judgment and Memorandum of Law as to all counts of Plaintiffs', ISIAH ROBINSON ("Mr. Robinson") and LISA CLAYTON ROBINSON ("Mrs. Robinson") (collectively the "Plaintiffs"), Verified Amended Complaint for Damages and Incidental Relief (the "Complaint") (D.E. 30), and states:

### STATEMENT OF MATERIAL FACTS

1.     In early September 2023, NAI purchased, as part of a wholesale lot, several vehicles from Murray Ford, and among those was a used 2011 Chevrolet Equinox, VIN ending in 4389 (the "Vehicle"). NAI did not receive the Certificate of Title for the Vehicle from Murray Ford prior to, or at the time of, purchase. *See* the Affidavit of Robin Ramaghi attached hereto as Exhibit "A."

2.      On September 8, 2023, shortly after NAI had received the Vehicle (delivered by Manheim on behalf of from Murray Ford), Plaintiffs purchased the Vehicle from NAI. *See* Exhibit "A." Christopher Caldwell, an NAI employee, was the sales associate who sold the Vehicle to Plaintiffs. *See* NAI's Amended Answers to Plaintiff Isiah Robinson's First Interrogatories at ¶ 7 attached hereto as Exhibit "B."

3.      In conjunction with the purchase of the Vehicle, Plaintiffs signed a Retail Installment Contract and Security Agreement with NAI. A true and correct copy of the Retail Installment Contract and Security Agreement is attached to the Amended Counterclaim as Exhibit "A" and incorporated herein by reference. *See also* Exhibit "A."

4.      In conjunction with the purchase of the Vehicle, Plaintiffs also signed a Bill of Sale Buyer's Order (the "Buyer's Order"). A true and correct copy of the Buyer's Order is attached to the Amended Counterclaim as Exhibit "B" and incorporated herein by reference.

5.      In conjunction with the purchase of the Vehicle, Plaintiffs also signed an "As Is – Sold Without Warranty" agreement (the "As Is Agreement"). A true and correct copy of the As Is Agreement is attached to the Amended Counterclaim as Exhibit "C" and incorporated herein by reference. *See also* Exhibit "A."

6.      In conjunction with the purchase of the Vehicle, Plaintiffs also signed a Buyers Guide. A true and correct copy of the Buyers Guide is attached to the Amended Counterclaim as Exhibit "G" and incorporated herein by reference. *See also* Exhibit "A."

7.      At the time of the sale to Plaintiffs, NAI had not yet received the Vehicle's Certificate of Title from Murray Ford but had no information upon which to believe the Vehicle's odometer was inaccurate. *See* Exhibit "A" and Exhibit "B."

10.     On September 11, 2023, NAI received the Certificate of Title from Murray Ford.  *See* Exhibit "A."  Upon receipt and review of the Vehicle's Certificate of Title, NAI discovered that the mileage on the Vehicle was disclosed to be "not actual." *See* Exhibit "A" at ¶ 20.

11.     Based on the mileage being listed as "not actual" on the Certificate of Title, NAI immediately contacted Plaintiffs, and on September 14, 2023, Plaintiffs returned to NAI to discuss the mileage on the Vehicle with NAI. *See* Exhibit "A" and Exhibit "B" at ¶ 8.  NAI gave Plaintiffs the opportunity to inspect the original Certificate of Title, return the Vehicle, and receive the return of their down payment without any further contractual obligation to NAI. *Id.* However, Plaintiffs voluntarily chose to re-sign all of the paperwork and keep the Vehicle despite having knowledge of the mileage discrepancy. *Id.*

12.     The contract documents were specifically marked as "TMU" in multiple places in Plaintiffs' presence and with their knowledge and consent. On behalf of NAI, Robin Ramaghi specifically explained to Plaintiffs that "TMU" meant True Mileage Unknown. *See* Exhibit "A."

13.     Plaintiffs filed their Complaint on March 28, 2025, in which they attempt to allege claims for Violation of the Federal Odometer Act; Fraud; Fraudulent Indument; Breach of Express Warranty; and Revocation of Acceptance. (D.E. 30).

### STANDARD OF REVIEW

Rule 56, Fed. R. Civ. P., provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of showing that no genuine issue of material facts exists. *Clark v. Coats & Clark, Inc.*, 929 F. 2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

Although a "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact[,]" the burden shifts to the non-moving party, who must "go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (internal quotations and citations omitted). "When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must 'go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.' (internal citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial." *Hunter v. adp Screening and Selection Servs., Inc.*, Case No. 6:15-cv-845-ORL-31TBS, 2016 WL 4992472, at *2 (M.D. Fla. Sep. 19, 2016) (citing *Celotex*, 477 U.S. at 324-25).

The nonmoving party must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F. 2d 984, 986 (11th

Cir. 1985); *Hunter*, 2016 WL 4992472, at *2.  Although "[e]vidence is viewed in a light most favorable to the nonmoving party," the court is not "constrained to accept all the nonmovant's factual characterizations and legal arguments."  *Beal v. Paramount Pictures, Corp.*, 20 F. 3d 454, 458-59 (11th Cir. 1994). "[C]onclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros., Inc.*, 212 F. 3d 1210, 1217 (11th Cir. 2000); *Fowler v. Elegant Auto Finance LLC*, 446 F. Supp. 3d 966, 969 (M.D. Fla. March 17, 2020) ("there must exist a conflict in substantial evidence to pose a jury question.").

## ARGUMENT

Based on the law set forth above, NAI is entitled to the entry of summary judgment in its favor as to all counts of Plaintiffs' Amended Complaint because there is no genuine issue as to any material fact in dispute, and NAI is entitled to judgment as a matter of law.

### A.    Plaintiffs do not have any evidence that NAI intended to defraud them.

Plaintiffs' first three counts of the Complaint are based on the same fundamental – and mandatory - evidentiary showing, which they have not satisfied and cannot satisfy. As noted above, the Complaint contains the following alleged claims against NAI: (I) Violation of the Federal Odometer Act; (II) Fraud; and (III) Fraudulent Inducement.  Each of these claims requires that Plaintiffs have evidence of NAI's intent to defraud them, and Plaintiffs do not have any evidence of an intent to defraud. As such, there is no genuine issue of material fact in dispute upon which Plaintiffs could be entitled to relief under any of these counts.  NAI will address each one in turn:

I.   *Count I - Alleged Violation of the Federal Odometer Act*

To establish a violation of the Federal Odometer Act (the "Act"), a plaintiff must present evidence showing (1) that the defendant violated the Act or its regulations, (2) with intent to defraud. *Bertolotti v. A&I Int'l Motor Corp.,* Case No. 16-22185-CIV, 2016 WL 6804624, at *2 (S.D. Fla. Nov. 17, 2016) (internal citations omitted); *Coleman v. Lazy Days RV Center, Inc.,* Case No. 8:05-cv-00930-T-17TBM, 2007 WL 2021832, at *1 (M.D. Fla. July 12, 2007). In this instance, Plaintiffs have no evidence to support their allegations that NAI intended to defraud them or that NAI had any actual or constructive knowledge of a mileage discrepancy with the Vehicle.

Plaintiffs bear the burden of providing evidence that NAI acted with an intent to defraud. *Witkowski v. Mack Trucks, Inc.,* 712 F. 2d 1352 (11th Cir. 1983). In *Witkowski,* the plaintiffs appealed a decision from the Middle District (the Hon. William Castagna) finding that the defendants did not violate the Motor Vehicle Information and Cost Act in effect at the time[1] because there was no evidence of an intent to defraud. *Id.* at 1352. At the trial level, Judge Castagna found that "although plaintiffs had established a discrepancy between the mileage actually showing on the odometers and that recorded on the title certificate by the previous owner, there was no evidence to suggest the discrepancy arose from Mack's intent to defraud." *Id.* at 1353. Specifically, Judge Castagna noted that plaintiffs produced no evidence indicating that defendants tampered with the odometer or had knowledge of an odometer discrepancy. *Id.* (noting that the defendant's delivery receipt recorded the mileage of the vehicle as essentially the same as when defendant sold it to plaintiffs). On appeal, the Eleventh Circuit found

---

[1]   As alleged by Plaintiffs in paragraph 60 of their Amended Complaint, this is also known as the Federal Odometer Act.

that the "record support[ed] the district court's finding that plaintiffs failed to prove defendants acted with intent to defraud" and affirmed Judge Castagna's ruling in favor of defendants. *Id.*

So too, in the instance case, Plaintiffs have no evidence that NAI acted with an intent to defraud them, as required by 49 U.S.C. §32710(a), nor any knowledge of a mileage discrepancy. *Snoody v. Savannah Motors, Inc.,* Case No. CV405-203, 2007 WL 9711140, at *12-13 (S.D. GA. Jan. 26, 2007) (granting the defendant's motion for summary judgment as to an alleged violation of the Act because the plaintiff had not produced any evidence of an intent to defraud, and therefore, plaintiff failed to create a genuine issue of material fact on the element of intent to defraud).[2]  In the Complaint, Plaintiffs alleged that NAI violated the Act by making a false statement with intent to defraud (*see* Amd. Compl. at ¶ 63) and that NAI acted with intent to defraud by failing to provide Plaintiffs with the Certificate of Title for the Vehicle. (*see* Amd. Compl. at ¶ 64). These are mere allegations, and neither one constitutes *evidence* of intent. Plaintiffs have not produced any evidence that NAI knew, or should have known, that the mileage on the Vehicle was not actual; nor any evidence that NAI concealed any purported knowledge from Plaintiffs.  Based on the information from Manheim, who conducted the auction of the Vehicle for Murray Ford, the mileage on the Vehicle was reported to be 118,189. *See* Exhibit "A"; *see also, Manning v. Ashcar, Inc.,* Case No. 1:19-CV-04309-SDG, 2021 WL 9596193, at *3 (N.D. Ga. Jan. 22, 2021) (in a somewhat similar fact pattern to the instant case, the district court granted summary judgment for the

---

[2]  The *Snoody* court also noted that "Mere negligence cannot be the basis of civil liability under the Odometer Act. (internal cite omitted). To establish a violation, a plaintiff must demonstrate fraudulent intent or reckless disregard for the truth. (internal cite omitted)." 2007 WL 9711140, at *13.

defendant dealer on the plaintiff's Federal Odometer Act claim because there was no evidence showing that the defendants acted with an intent to defraud or knew prior to the sale that the vehicle actually had more mileage on it. The district court also found that the plaintiff's reliance on the Bill of Sale, which listed the vehicle's milage at the incorrect number, and subsequent documents informing her that the vehicle's mileage was actually higher, was insufficient evidence to survive summary judgment.). Moreover, Plaintiff Isiah Robinson expressly admitted that he does not believe that he and Mrs. Robinson were intentionally tricked as to the mileage. During his deposition, when asked if he thought NAI salesman Chris Caldwell was "trying to trick [him] intentionally," Plaintiff, Isiah Robinson, responded "Oh, no, no, no. No." *See* excerpts from Mr. Robinson's deposition attached hereto as Exhibit "C" at 85:19-21.

NAI likewise had no constructive knowledge that the mileage on the Vehicle's odometer was not accurate. *See* Amd. Compl. at ¶ 31.  NAI asked each Plaintiff, through Interrogatories, for the basis of their allegation that NAI had actual and constructive knowledge that the Vehicle's mileage was not accurate, and in response, Plaintiffs said: (1) the certified title history for the vehicle obtained from the Florida Department of Highway Safety and Motor Vehicles; (2) the Carfax Vehicle History Report; (3) the FLHSMV report dated May 8, 2024; (4) Complaint 171760 and the findings of compliance examiner Sylvester Krzykalski, which included a violation FL Statutes 319.275(4), specifically for the dealership's failure to complete a proper odometer disclosure statement; and (5) altered Mileage Disclosure documents submitted to DHSMV.  *See* Plaintiffs' respective answers to NAI's Interrogatories attached hereto as Composite Exhibit "D."

First, Plaintiffs have no evidence demonstrating that NAI had a certified title history for the Vehicle or a "Carfax Vehicle History Report" for the Vehicle in its possession at the time of the sale to Plaintiffs. In fact, according to Florida's Department of Highway Safety and Motor Vehicles website, obtaining a copy of these documents at the time of sale is not even a necessary requirement of a dealer. *See* the screenshot from www.flhsmv.gov, the website for the Florida Highway Safety and Motor Vehicles, under the heading *Buying from a Licensed Dealer*, attached hereto as Exhibit "E."[3] As noted in bold on Exhibit "E," "[u]sed vehicles are not required to have a warranty." Moreover, as is also noted on Exhibit "E," the Federal Trade Commission's Used Car Rule requires dealers to display a Buyers Guide in every used car they offer for sale, and the Buyers Guide is required to tell the proposed purchaser, among other things, instructions for how to get a vehicle history report (which the Buyers Guide in this instance did – *see* the Affidavit at Exhibit "A" as well as Exhibit "G" to the Amended Counterclaim (D.E. 39)), but the Buyers Guide does not require a dealer to provide a purchaser with a "Carfax Vehicle History Report." *Id.* As such, not only have Plaintiffs failed to produce any evidence that NAI had the certified title history or a "Carfax Vehicle History Report" for the Vehicle prior to or at the time of Plaintiffs' purchase, but these are not documents that NAI was even required to furnish to Plaintiffs in conjunction with the sale of the Vehicle.[4]

---

[3] NAI respectfully requests that the Court take judicial notice of the contents of Exhibit "E," as applicable. Rule 201(b)(2) and (c)(2), Fed. R. Evid.

[4] Plaintiffs did not obtain a title history for the Vehicle themselves until after they purchased it and had already retained counsel in preparation for this action. *See* Amd. Compl. at ¶ 44.

Additionally, the FLHSMV report, Complaint #171760, did not exist at the time of the sale of the Vehicle to Plaintiffs, so Plaintiffs cannot credibly rely on that – their own consumer complaint - as evidence of NAI's alleged knowledge of an odometer discrepancy or an intent to defraud. *Witkowski*, 712 F.2d at 1353-54 ("A violation of the Act or the rules promulgated thereunder does not automatically lead to civil liability, however, [§ 32710(a)] requires a defendant to have violated the Act with an intent to defraud before liability can be imposed."). As for Plaintiffs' allegation that NAI submitted "altered Mileage Disclosure documents" to the DHSMV, they likewise have no evidence to support this accusation against NAI. *See also,* Exhibit "A."

In short, Plaintiffs have no evidence that NAI had actual or constructive knowledge of the Vehicle's mileage discrepancy. Plaintiffs allege that they obtained a copy of the transfer title, which stated that NAI acquired the car on September 1, 2023, from Murray Ford. *See* Amd. Compl. at ¶¶ 45-46. They also alleged that, at the time NAI acquired the Vehicle, the transfer title stated that the mileage was "not actual", and the Odometer Disclosure from Murray Ford disclosed the mileage to be 118,135 but failed to make a selection as to the accuracy of the mileage. *See* Amd. Compl. at ¶¶ 47-48. Once again, these are merely conclusory allegations without any actual evidence in support. Plaintiffs have no evidence to demonstrate, establish or prove that NAI accepted the transfer of title from Murray Ford with an incomplete odometer disclosure statement *prior to* the sale to Plaintiffs, and that is because they cannot do so, as NAI did not receive the title until September 11, 2023. *See* Exhibit "A" at ¶ 20. Plaintiffs have no evidence that NAI received or reviewed the Vehicle's Certificate of Title prior to

the sale to Plaintiffs and/or that NAI otherwise knew what the Certificate of Title even said. For these reasons, summary judgment in favor of NAI is proper as a matter of law.

## II.    *Count II - Alleged Fraud*

In order for Plaintiffs to prevail on their fraud claim, they must prove: "(a) a false representation of fact, known by the party making it to be false at the time it was made; (b) that the representation was made for the purpose of inducing another to act in reliance on it; (c) actual reliance on the representations; and (d) resulting damage to the plaintiff." *Kent v. Sullivan*, 793 So. 2d 1027, 1028 (Fla. 5th DCA 2001) (also noting, "[N]ot every false representation constitutes fraud on which a claim for relief can be based," citing *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F. 2d 1520, 1550 (11th Cir. 1985) (additional quotation omitted)."). Plaintiffs' claim for fraud is based on an alleged misrepresentation about the Vehicle's mileage made during the sale. But Plaintiffs cannot create a genuine issue of material fact in dispute on this claim because they do not have any evidence to support each and every element of the cause of action.

Plaintiffs defined the alleged misrepresentation as the "Mileage Representation," which was made by NAI either knowingly or recklessly. *See* Amd. Compl. at ¶¶ 74-75. Plaintiffs further alleged that the "Mileage Representation" was written and oral affirmations that the odometer reading was "at or about 118,245 miles." *See* Amd. Compl. at ¶ 16. But Plaintiffs have no evidence to support or prove these allegations. *See* Exhibit "A." Further, as noted above, Mr. Robinson admitted that he does not believe NAI's salesman Chris Caldwell intentionally tricked him. *See* Exhibit "C" at 85:19-21. Plaintiffs have no evidence upon which to base a finding that NAI knew that the mileage on the Vehicle was not accurate at the time of the sale to Plaintiffs. *See*

*Wolf v. MWH Constructors, Inc.,* 34 F. Supp. 3d 1213, 1222 (M.D. Fla. 2014) ("Failure to show sufficient evidence of any essential element is fatal to the claim and the court should grant the summary judgment."). NAI is entitled to summary judgment on Count II as a matter of law.

### III.   *Count III – Alleged Fraudulent Inducement*

To succeed on a fraudulent inducement claim, Plaintiffs must provide evidence of: "1) a false statement concerning a material fact, 2) knowledge by the person making the statement that the representation is false, 3) intent by the person making the statement that the representation will induce another to act upon it, and 4) reliance on the representation to the injury of the other party." *GEICO Gen. Ins. Co. v. Hoy*, 136 So. 3d 647, 651 (Fla. 2d DCA 2013) (internal citations omitted).  For the same reasons set forth in Section II above, namely Plaintiffs' lack of sufficient evidence to support each and every element of the cause of action for fraudulent inducement, Count III likewise fails as a matter of law.

It is clear that in order to succeed on Count III, as with Counts I and II, Plaintiffs must come forward with evidence demonstrating not only that NAI had knowledge of the mileage discrepancy, but that NAI intended to defraud Plaintiffs by concealing that information from them. Plaintiffs simply do not have the evidence to meet their burden in this regard. Without sufficient evidence to support these claims, there is no genuine issue of material fact in dispute and summary judgment in NAI's favor is proper.

### B.   Plaintiffs cannot establish the existence of any warranty based on NAI's alleged representations.

In this case, the contract documents expressly exclude and/or disclaim all express and implied warranties in conspicuous language, provide that the Vehicle is

being purchased in an "as is" condition, and contain an integration clause stating that the contract documents constitute the entire agreement between the parties. Given that NAI disclaimed all express and implied warranties, and included qualifying language – on a standard pre-printed form – that the mileage reflected on the odometer statement was listed "to the best of [its] knowledge," there is no genuine issue of material fact in dispute that NAI made any warranties to Plaintiffs, and summary judgment in NAI's favor is proper.

I.    ***Count IV – Alleged Breach of Express Warranty***

Plaintiffs allege that NAI's "Mileage Representations" constitute an express warranty pursuant to Section 2-313 of the Uniform Commercial Code ("UCC"), and that NAI subsequently breached that warranty. *See* Amd. Compl. at ¶¶ 85-86. UCC §2-313 states in relevant part:

> *(1) Express warranties by the seller are created as follows:*
>
> > *(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods….*
> >
> > *(b) Any description of the goods…*
> >
> > *…*

In *Witkowski*, the plaintiffs signed a security agreement which contained a disclaimer of all warranties provision in boldface type, above the signature line. *Witkowski*, 712 F. 2d at 1354. The plaintiffs also signed a purchase order and delivery receipt, each of which stated that the truck was being sold "as is." *Id.* The court found that the plaintiffs' signatures evidenced a reasonable understanding that the defendant's disclaimer of all warranties was a term of the contract. *Id.*

Here, Plaintiffs signed *multiple* contract documents that disclaim any and all
warranties and state that the Vehicle is being sold "as is".[5] *See* excerpts from the
deposition of Plaintiff, Lisa Robinson, attached hereto as Exhibit "F" at 51:22-52:1
(testifying that she and Mr. Robinson discussed the fact that they signed an as-is
warranty or no warranty document in relation to the purchase of the Vehicle and knew it
was as-is); *see also* Exhibit "C" at 43:22-45:1 (wherein Mr. Robinson testified that he
understands this document means that NAI did not provide any warranties with regard
to this Vehicle and that NAI did not agree to do something with the Vehicle that was not
reflected in the paperwork); *see also, Vision Power, LLC v. Midnight Express Power
Boats, Inc.,* Case No. 18-61700, 2019 WL 5291042, at \*6 (S.D. Fla. July 26,
2019)(citing *Ames v. Winnebago Indus., Inc.,* 2005 WL 2614614, at \*4 (M.D. Fla. Oct.
14, 2005) (In Florida, sellers may exclude both express and implied warranties in the
sale of goods). Plaintiffs signed the Buyer's Order, which plainly stated:

> "You are purchasing the Vehicle based upon your personal inspection,
> and are not relying upon any opinion, statement, promise or
> representation of the salesperson, or any other of our employees that is
> not contained in the written agreements you are signing today."

---

[5] "'Under Florida law, where two or more documents are executed by the same parties,
at or near the same time and concerning the same transaction or subject matter, the
documents are generally construed together as a single contract.' *Clayton v. Howard
Johnson Franchise Systems, Inc.,* 954 F. 2d 645, 648 (11th Cir. 1992); *Quix Snaxx, Inc.
v. Sorensen,* 710 So. 2d 152, 153 (Fla 3d DCA 1998)" *Bragg v. Bill Heard Chevrolet,
Inc.,* 374 F.3d 1060, 1067 (11th Cir. 2004); *Ballou v. Talari,* Case No.: 8:16-cv-0598-T-
Map, 2017 WL 11473714, at \*7 (M.D. Fla. Nov. 29, 2017). (holding the same and
relying on *Bragg*); *Audiology Dist., LLC v. Simmons,* Case No. 8:12-cv-02427-JDW-
AEP, 2014 WL 7672536, at \*5 (M.D. Fla. May 27, 2014) (holding the same, in reliance
on *Bragg,* and holding, "In other words, if two or more contracts are 'functionally
intertwined,' they must be 'read and construed together.'" (internal citations omitted));
*Snoody,* 2007 WL 9711140, at \*5.

*See* Exhibit "A" attached hereto and Exhibit "B" to the Amended Counterclaim (D.E. 39).

The Buyer's Order also disclaims, in bold in its own section, a disclaimer of all

warranties. More specifically, it states:

> "Warranty. We make no express or implied warranties. Except as required
> by law, we make no implied warranty of merchantability and no warranty
> that the Vehicle is fit for a particular purpose. We sell the Vehicle AS IS –
> NOT EXPRESSLY WARRANTED OR GUARANTEED, WITH ALL
> FAULTS."

*Id.*

Additionally, right above the signature lines on page 3, the Buyer's Order states: "This is

the complete agreement; there are no other written or oral agreements." At the bottom

of *each page* of the Buyer's Order, directly above Plaintiffs' signatures is the following

language in bold: "THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO

CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN

LEGAL COUNSEL." *Id.* Notably, the Buyer's Order *also* states, under the heading

"Vehicle Inspection" on page 2: "You are purchasing the Vehicle based upon your

personal inspection, and are not relying upon any opinion, statement, promise or

representation of the salesperson, or any other of our employees that is not contained in

the written agreements you are signing today." *Id.*

In addition to the Buyer's Order, Plaintiffs executed the As Is Agreement, which

states in bold, capital letters,

> SELLER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES,
> EITHER EXPRESSED OR IMPLIED INCLUDING ALL IMPLIED
> WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A
> PARTICULAR PURCHASE AND SELLER NEITHER ASSUMES NOR
> AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY
> LIABILITY IN CONNECTION WITH THE SALE FO THE VEHICLE.
>
> "NOTICE OF VEHICLE SOLD WITHOUT ANY WARRANTY"

> THIS VEHICLE IS SOLD AS IS, WHERE IS AND WITHOUT ANY WARRANTY, THE PURCHASER WILL BEAR THE ENTIRE EXPENSE OF REPAIRING OR CORRECTING ANY DEFECTS THAT PRESENTLY EXIST AND/OR MAY OCCUR IN THE VEHICLE UNLESS THE SALESPERSON PROMISES IN WRITING AT THE TIME OF THE SALE TO CORRECT SUCH DEFECTS.

*See* Exhibit "A" attached hereto as well as Exhibit "C" to the Amended Counterclaim. Plaintiffs also executed a Buyers Guide, which in extra-large bold font states that the purchase is AS IS – NO DEALER WARRANTY.  *See* Exhibit "A" attached hereto as well as Exhibit "G" to the Amended Counterclaim.  Directly below that language, the Buyers Guide states, "THE DEALER DOES NOT PROVIDE A WARRANTY FOR ANY REPAIRS AFTER SALE."  *See* Exhibit "A" attached hereto as well as Exhibit "D" to the Amended Counterclaim.[6]

Despite the fact NAI expressly disclaimed all warranties, Plaintiffs seemingly rely on the Odometer Disclosure Statements, but this reliance is wholly misplaced as the Odometer Statements contain qualifying language. The Odometer Disclosure and Odometer Disclosure Acknowledgment that Plaintiffs reference do not contain any express warranties. *See* Exhibits "E" and "F" to the Amended Counterclaim. To the contrary, they state "to the best of our knowledge the odometer reading..." NAI is not providing an express warranty as to the odometer disclosure, but rather certifying, as required by law, that the odometer reading is correct to the best of its knowledge. As

---

[6] Both Mr. Robinson and Mrs. Robinson testified that they either did not read certain documents prior to signing them, or that they could not remember if they read the documents at signing. *See* Exhibit "F" (Mrs. Robinson's Deposition) at 37:12-18; and Exhibit "C" (Mr. Robinson's Deposition) at 43:22-44:3. Regardless, "[i]t is well-established [that] the failure to review and read a contract prior to its execution is not a defense against its application. *Santana v. Miller*, 314 So. 3d 346, 349 (Fla. 3d DCA 2020) (internal citations omitted). And that is because "each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it." *Id.* (internal citations and quotations omitted).

discussed above, NAI did in fact fill out the Odometer Disclosure and Odometer Disclosure Acknowledgement to the best of its knowledge.

## II.     *Count V – Alleged Revocation of Acceptance*

Plaintiffs' last claim against NAI in the Complaint is one for "revocation of acceptance" pursuant to the Magnusson Moss Warranty Act ("MMWA"). *See* Amd. Compl. at ¶ 89. Plaintiffs alleged that NAI provided the same purported "Express Mileage Warranty" defined in Count IV. *Id.* at ¶¶ 85, 91.

As an initial matter, Count V of the Complaint is silent as to whether Florida state law is applicable to this claim, and if so, which law(s) would apply.   There is no reference to an allegedly applicable state statute upon which this claim is based. Florida law provides that when a dealer disclaims all warranties, as is the case here, there is no basis to later revoke acceptance. *See Ames*, 2005 WL 2614614, at *4 ("Although Florida law provides for revocation of acceptance as a remedy for buyers in certain circumstances, when a dealer disclaims all warranties there is no basis to later revoke acceptance.").

To the extent the alleged "Express Mileage Warranty" is purportedly directed at any oral statements made by NAI at the time of sale[7], the Eleventh Circuit has held that the MMWA does not extend to oral express warranties. *Vision Power, LLC v. Midnight Express Power Boats, Inc.,* Case No. 18-61700-SMITH/SELTZER, 2019 WL 5291042, at *6 (S.D. Fla. July 26, 2019); 15 U.S.C. § 2301.

---

[7] While difficult to ascertain, the Complaint alleges that "various statements" were made by NAI, "including the Mileage Representation," which is defined in the Complaint as purporting to include representations "both in writing and orally."   *See* Amd. Compl. at ¶¶ 16, 85 and 91.

As for Plaintiffs' claim of an alleged express written warranty, e.g. the Express Mileage Warranty (*see* Amd. Compl. at ¶ 85), there is none. Pursuant to the MMWA, a "written warranty" is defined as:

> (a) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship **and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance** over a specified period of time, or
>
> (b) any undertaking in writing in connection with the sale **by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product** in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

(emphasis added) 15 U.S.C.A. § 2301. None of the contract documents between the parties affirm or promises that the Vehicle is defect-free or will meet a specified level of performance, and none of the contract documents undertake to repair, replace, or take other remedial action with respect to the Vehicle. Even if the Court were to find the Odometer Disclosure or Odometer Disclosure Acknowledgement to be "written warranties", which they are not, the contract documents nonetheless expressly disclaim all express and implied warranties.

In sum, there is no genuine issue of material fact in dispute regarding Counts IV and V of the Complaint. Plaintiffs executed several contractual documents which disclaim all warranties, and Plaintiffs testified that they understood that NAI did not provide any warranties with regard to the Vehicle.[8] Therefore, NAI is entitled to

---

[8]  Plaintiffs' prayer for damages in Count V also appears to demand relief, e.g. a "refund of the entire purchase amount paid by [Plaintiffs],vision " to which they are not entitled.

summary judgment on Plaintiffs' claims for Breach of Express Warranty (Count IV) and Revocation of Acceptance (Count V) as a matter of law.

WHEREFORE, Defendant, NATIONAL AUTOMOTIVE, INC., respectfully requests that the Court enter summary judgment in its favor as to all counts of Plaintiffs' Amended Complaint, award Defendant its attorney's fees and costs incurred in having to defend this action, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

**McGLINCHEY STAFFORD**

*/s/ Kimberly Held Israel*
Kimberly Held Israel, Esq.
Florida Bar # 47287
10375 Centurion Parkway N., Suite 420
Jacksonville, FL 32256
(904) 224-4449 (Telephone)
(904) 485-8083 (Facsimile)
Primary E-mail: kisrael@mcglinchey.com
Secondary E-mails:
jeldemire@mcglinchey.com
cgipson@mcglinchey.com
***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been served, via the Court's e-Portal, this **30th** day of **September, 2025**, to: **Josh Feygin, Esq.**, josh@sueyourdealer.com, and **Michael Citron, Esq.**, michael@maclegalpa.com, *Counsel for Plaintiffs.*

*/s/ Kimberly Held Israel*
ATTORNEY

---

*Lambert v. Monaco Coach Corp.*, Case No. 8:04-cv-608-T30-TBM, 2005 WL 1227485, at *4 (M.D. Fla. May 24, 2005).

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ISIAH ROBINSON, and LISA
CLAYTON ROBINSON, Each an
Individual,

CASE NO. 3:24-cv-00948-WWB-PDB

     Plaintiffs,

v.

NATIONAL AUTOMOTIVE, INC.,
a Florida corporation,

     Defendant.

_____

**AFFIDAVIT OF ROBIN RAMAGHI IN SUPPORT OF NATIONAL AUTOMOTIVE,
INC.'S MOTION FOR SUMMARY JUDGMENT**

STATE OF FLORIDA
COUNTY OF DUVAL

     BEFORE ME this day personally appeared ROBIN BYLER RAMAGHI, who, first

being duly sworn, deposes and says:

     1.     I am over the age of 18 and am competent to testify to the matters contained

herein.

     2.     I am the President of National Automotive, Inc. ("NAI") and was the

President at the time of the events discussed in NAI's Motion for Summary Judgment (the

"Motion").

     3.     As the President of NAI, I am familiar with the business records maintained

by NAI in relation to the purchase and sale of vehicles, including but not limited to the

various documents that the parties enter into, such as: the Retail Installment Contract and

Security Agreement, the Odometer Disclosure Statement, the Bill of Sale, the Warranty

1

EXHIBIT "A"

Disclaimer, the Separate Odometer Disclosure Statement and Acknowledgment, the Buyer's Guide, the Power of Attorney, and the Application for Certificate of Motor Vehicle Title. These business records are made at or near the time of the occurrences or transactions recorded therein by a person with knowledge, or from information provided by a person with knowledge, and are kept in the course of NAI's regularly-conducted business activities.

4.    In approximately August 2023, NAI expressed an interest and intent to purchase a used 2011 Chevrolet Equinox, VIN ending in 4389 (the "Vehicle") from Murray Ford, which is located in Starke, Florida, through a wholesale purchase of multiple vehicles at Murray Ford. At the time that NAI expressed its intent to purchase the Vehicle, NAI did not know the actual mileage of the Vehicle, but was provided the year, make and model of the Vehicle as well as its Vehicle Identification Number ("VIN").

5.    Further, although NAI had expressed its intent to buy the Vehicle from Murray Ford in August 2023, NAI had not yet paid Murray Ford for the Vehicle and did not have possession, custody or control of the Vehicle at that time. In other words, the purchase was not completed at that time. Rather, the Vehicle was run through an auction conducted by Manheim, on behalf of Murray Ford, in the lane in which other NAI vehicles are run, in the event that a third party wanted to pay more for the Vehicle than NAI was willing to pay Murray Ford for it.

6.    Based on the information from Manheim, the mileage on the Vehicle was reported to be 118,189.

7.    NAI did not review the mileage for the Vehicle in deciding whether to buy it as part of a wholesale lot of cars being purchased from Murray Ford.

2

8.      Following Manheim's auction in early September 2023, Manheim transported the Vehicle to NAI where NAI promptly inspected the Vehicle for any engine, transmission, and/or any other potential mechanical or operational issues before offering the Vehicle for sale.

9.      Prior to NAI's receipt of the Vehicle in early September 2023, NAI was not told by anyone employed by Murray Ford or Manheim that the Vehicle's mileage was "not actual" or not as reflected on the odometer itself.

10.     On September 8, 2023, Isiah Robinson and Lisa Clayton Robinson ("Plaintiffs") came to NAI's location to look at, and test drive, the Vehicle for possible purchase.

11.     Later that same day, Plaintiffs came back to NAI and purchased the Vehicle. I did not sell the Vehicle to Plaintiffs on behalf of NAI, and I did not have any conversations with Plaintiffs on September 8th regarding the Vehicle, its mileage and/or the purchase and sale of the Vehicle.

12.     At the time NAI sold the Vehicle to Plaintiffs, NAI did not have the original Certificate of Title in its possession because it had not yet received it from Murray Ford. NAI was unaware of any discrepancies with the odometer reading or the Vehicle's mileage at the time NAI took delivery of the Vehicle and at the time NAI sold the Vehicle to Plaintiffs.

13.     At the time NAI sold the Vehicle to Plaintiffs, NAI did not have the certified title history for the Vehicle or a Carfax history report. Nor did Plaintiffs ask for either of these types of documents before purchasing the Vehicle and signing all of the contract documents, including the documents that make clear that this was an "As Is" purchase.

3

Copies of all of the contract documents signed by Plaintiffs are attached to NAI's Amended Counterclaim filed in this case.

14.     More specifically, and by way of example, in conjunction with the purchase of the Vehicle, Plaintiffs signed a Retail Installment Contract and Security Agreement with NAI, which is attached to the Amended Counterclaim as Exhibit "A."

15.     In addition, Plaintiffs signed a Bill of Sale Buyer's Order, which expressly states that the Vehicle is being sold "AS IS" and without any express or implied warranties. This document is attached as Exhibit "B" to NAI's Amended Counterclaim. It specifically states, in bold, under the heading "Warranty Information": Warranty. We make no express or implied warranties. Except as required by law, we make no implied warranty of merchantability and no warranty that the Vehicle is fir for a particular purpose. We sell the Vehicle AS IS – NOT EXPRESSLY WARRANTED OR GUARANTEED, WITH ALL FAULTS." The "Vehicle Inspection" section on page 2 is also important and applicable.

16.     Plaintiffs also signed an "As Is – Sold Without Warranty" agreement as well as a Buyer's Guide stating that NAI was selling the Vehicle "as is" and without any warranties. Both documents were fully disclosed to Plaintiffs and acknowledged by their signatures. These documents are attached as Exhibits "C" and "G" to NAI's Amended Counterclaim, respectively.

17.     The "As Is – Sold Without Warranty" agreement states, in bold and all capital letters:

> SELLER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESSED OR IMPLIED INCLUDING ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND SELLER NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF THE VEHICLE.

> **"NOTICE OF VEHICLE SOLD WITHOUT ANY WARRANTY"**
>
> THIS VEHICLE IS SOLD AS IS, WHERE IS AND WITHOUT ANY WARRANTY. THE PURCHASER WILL BEAR THE ENTIRE EXPENSE OF REPAIRING OR CORRECTING ANY DEFECTS THAT PRESENTLY EXIST AND/OR MAY OCCUR IN THE VEHICLE UNLESS THE SALESPERSON PROMISES IN WRITING AT THE TIME OF THE SALE TO CORRECT SUCH DEFECTS.
>
> BUYER HEREBY ACKNOWLEDGES HE HAS READ, UNDERSTANDS, AND ACCEPTS THE PROVISIONS OF THIS WARRANTY STATEMENT FOR THE ABOVE IDENTIFIED VEHICLE.

18.    The Buyers Guide states, in bold and/or all capital letters:  AS IS – NO DEALER WARRANTY.  THE DEALER DOES NOT PROVIDE A WARRANTY FOR ANY REPAIRS AFTER SALE.  In short, NAI did not provide any warranties at all with regard to the Vehicle, whether express or implied.

19.    The Buyers Guide also recommends that a prospective purchaser OBTAIN A VEHICLE HISTORY REPORT AND CHECK FOR OPEN SAFETY RECALLS.  As far as NAI is aware, Plaintiffs did not obtain a vehicle history report prior to deciding to purchase the Vehicle

20.    On September 11, 2023, NAI picked up the Vehicle's Certificate of Title from Murray Ford as was NAI's standard practice. Upon receipt and review of the Certificate of Title, NAI discovered for the first time that the mileage on the odometer of the Vehicle was reported to be "not actual." As a result of this discovery, NAI promptly contacted Plaintiffs by telephone to report that there was an issue with the mileage and to ask them to come back to NAI to review and discuss their options.

21.    On September 14, 2023, NAI salesman, Christopher Caldwell, and I met with and talked to Plaintiffs in person at NAI's office to disclose that the mileage of the Vehicle was reported as being "not actual" on the Certificate of Title. During this

5

conversation, NAI gave Plaintiffs the option to surrender the Vehicle, terminate the contract, and to receive a return of their down payment. Notably, Plaintiffs did not drive to NAI in the Vehicle itself, but rather drove to Jacksonville in a Volkswagen. Plaintiffs told me and Mr. Caldwell that they did not want to surrender the Vehicle, receive their down payment back and terminate the contract, but instead wanted to keep the Vehicle, because other dealers would not sell them a financed vehicle due to their credit limits and past history.

22.    Plaintiffs watched me put the notation of "TMU," which stands for "true mileage unknown," on the contract documents before Plaintiffs re-signed the contract documents. During this same conversation, I specifically explained to Plaintiffs that "TMU" stands for "true mileage unknown." I made these notations on the contract documents with Plaintiffs' knowledge and consent.

23.    NAI did not know, nor have any reason to suspect, that the odometer reading on the Vehicle was inaccurate at the time that NAI bought the Vehicle from Murray Ford, nor at the time NAI sold the Vehicle to Plaintiffs. As soon as NAI became aware of the discrepancy with the mileage disclosure, NAI promptly notified Plaintiffs of same and presented them with the options described above. Put simply, NAI had absolutely no reason, nor any intent, to deceive or defraud Plaintiffs in any way with regard to the mileage disclosure on the Vehicle, or in any other respect with regard to the sale of the Vehicle to Plaintiffs.

FURTHER AFFIANT SAYETH NAUGHT.

[SIGNATURES ON FOLLOWING PAGE]

**NATIONAL AUTOMOTIVE, INC.**

By: _____

     Robin Ramaghi

Its: President

STATE OF FLORIDA

COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this 30ᵗʰ day of September, 2025, by ROBIN RAMAGHI as the President of NATIONAL AUTOMOTIVE, INC., who is personally known to me.

_____

NOTARY PUBLIC, STATE OF FLORIDA

My Commission Expires: 6/3/2028

[STAMP/SEAL]



AMANDA HALL
NOTARY PUBLIC
MY COMMISSION
EXPIRES 6-3-2028
STATE OF FLORIDA
COMMISSION NUMBER HH 489628

**Israel, Kim**

| | |
|---|---|
| **From:** | Israel, Kim |
| **Sent:** | Sunday, January 26, 2025 1:51 PM |
| **To:** | JOSHUA FEYGIN |
| **Cc:** | Gipson, Christine; Travis, Kathleen |
| **Subject:** | SERVICE OF COURT DOCUMENT - Robinson v. National Automotive, Inc. - Case No. 3:24-cv-948 |
| **Attachments:** | Robinson v NAI - verified amended answers to Interrogs 7 and 8.pdf |
| | |
| **Importance:** | High |

## NOTICE OF ELECTRONIC SERVICE OF COURT DOCUMENT

| | |
|---|---|
| Court: | U.S. District Court, Middle District of Florida, Jacksonville Division |
| Case Number: | 3:24-cv-948 |
| Case Name: | Isiah Robinson, etc. v. National Automotive, Inc. |
| Document Served: | Defendant's Amended Answers to Plaintiff Isiah Robinson's First Interrogatories (Interrogatories 7 and 8) with verification |
| Attorney: | Kimberly Held Israel |
| E-mail: | kisrael@mcglinchey.com |
| Telephone: | 904.224.4485 |

Good afternoon - please see the verified amended answers to interrogatories 7 and 8 attached.
Kim

Kimberly "Kim" Held Israel (she/her/hers)
Attorney at Law

kisrael@mcglinchey.com
10407 Centurion Pkwy N, Ste 200, Jacksonville, FL 32256
T (904) 224-4485  F (904) 485-8083

bio | vCard | mcglinchey.com



Alabama California Florida Louisiana Massachusetts Mississippi New York
Ohio Rhode Island Tennessee Texas Washington Washington, DC

EXHIBIT "B"

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ISIAH ROBINSON, and LISA
CLAYTON ROBINSON, Each an
Individual,

      CASE NO. 3:24-cv-00948-WWB-PDB

        Plaintiffs/Counter-Defendants,

v.

NATIONAL AUTOMOTIVE, INC.,
a Florida corporation,

        Defendant/Counter-Plaintiff.

---

**DEFENDANT'S AMENDED ANSWERS TO PLAINTIFF ISIAH**
**ROBINSON'S FIRST INTERROGATORIES**

      COMES NOW Defendant, NATIONAL AUTOMOTIVE, INC. ("NAI"), by and through

its undersigned counsel, and pursuant to Rule 33, Fed. R. Civ. P., hereby serves its amended

answers to Plaintiff Isiah Robinson's First Interrogatories numbered 7 and 8 as follows:[1]

**SPECIFIC ANSWERS TO INTERROGATORIES**

      7.    **Identification of Actors as to Vehicle**.  Identify each person (including the

Transferee Party) known to National Automotive who performed any activity with respect to the

repair, servicing, marketing, sale, transfer, assignment, or disposition of the Vehicle (regardless of

whether the person is an employee or agent of National Automotive). As to any such person,

identify:

      (a)    The activity performed;

---

[1] NAI incorporates its General Answers and Objections previously served in conjunction with its
original answers and objections to Plaintiff Isiah Robinson's First Interrogatories as though fully
set forth herein.

(b)     Whether the person knew the mileage displayed on the Vehicle's odometer was

inaccurate; and

(d)[sic] All communications (both written and oral) between National Automotive and the

person concerning the instant action.

**RESPONSE:** Murray Ford had the Vehicle in its possession, custody and control before NAI did, and NAI believes that Travis Ward had the Vehicle prior to Murray Ford. NAI does not know what activities were performed by Mr. Ward or Murray Ford, if any; nor is NAI able to answer the remaining questions as to Mr. Ward or Murray Ford. Manheim picked up the Vehicle from Murray Ford's wholesale lot, transported the Vehicle to the auction lot and then transported the Vehicle to NAI. NAI is not able to speak for Manheim as to whether it performed any other activities and/or whether it had any knowledge of the mileage of the Vehicle. NAI has not communicated with Manheim about this.

On behalf of NAI, Christopher Caldwell sold the Vehicle to Plaintiffs. Mr. Caldwell would have been dependent on the estimated mileage provided by Murray Ford and is not believed to have spoken to anyone at Murray Ford about the sale of the Vehicle to Plaintiffs. Mrs. Ramaghi signed the Certificate of Title on behalf of NAI, as reflected on the copy attached to NAI's Counterclaim.

After September 8, 2023, Mr. Caldwell and Mrs. Ramaghi spoke to the Plaintiffs in person, as described above. Mrs. Ramaghi also repeatedly attempted to contact Plaintiffs about the disabled GPS unit attached to the Vehicle after NAI discovered that it was no longer sending any data about the Vehicle to NAI. Mr. Robinson refused to return NAI's phone calls. During one phone call between Mrs. Ramaghi and Mrs. Robinson, Mrs. Robinson cursed at Mrs. Ramaghi, saying, "We aren't bringing the damn vehicle back to the fucking dealership two hours away so you can track us. You'll hear from our attorney," at which point she hung up on Mrs. Ramaghi.

8.     **Disposition of Vehicle**. Describe the step-by-step process by which National Automotive marketed, sold, transferred, assigned, inspected or disposed of the Vehicle. In responding to this request, state with particularity how the title transfer documents were executed, who signed the transfer documents on behalf of National Automotive and who signed on behalf of the Plaintiffs.

**RESPONSE:** NAI bought the Vehicle from Murray Ford as part of a wholesale lot of vehicles at auction. Manheim transported the Vehicle from the auction to NAI. NAI inspected the Vehicle for any engine, transmission, and/or any other potential mechanical or operational issues. The Vehicle was cleaned, had a GPS device installed on it, and then stickered and photographed to be marketed for sale on Facebook. NAI then sold the Vehicle to Plaintiffs. When

NAI received the title from Murray Ford, NAI promptly contacted Plaintiffs about the mileage information on the title. Plaintiffs returned to NAI to discuss the situation, and review their options. Despite being given the opportunity to surrender the Vehicle, terminate the contract and receive the return of their deposit, Plaintiffs chose to keep the Vehicle and sign new paperwork with "TMU" clearly marked in multiple places. Murray Ford assigned/transferred the title to the Vehicle to NAI, who in turn assigned the title to Plaintiffs through the Clay County DMV. Mrs. Ramaghi signed the Certificate of Title on behalf of NAI, a copy of which is attached to the Counterclaim. NAI identified those documents as exhibits to its Counterclaim.

**NATIONAL AUTOMOTIVE, INC.**

By:_____
       Robin Ramaghi
Its: President

STATE OF FLORIDA
COUNTY OF DUVAL

      Sworn to and subscribed before me this ____ day of January, 2025, by ROBIN RAMAGHI, as the President of NATIONAL AUTOMOTIVE, INC., and who is personally known to me or who produced _____ as identification and said that the interrogatory answers are true and correct to the best of her knowledge and belief.

                           _____
                           Notary Public, State of Florida
                           My Commission expires:

3

NAI received the title from Murray Ford. NAI promptly contacted Plaintiffs about the mileage information on the title. Plaintiffs returned to NAI to discuss the situation, and review their options. Despite being given the opportunity to surrender the Vehicle, terminate the contract and receive the return of their deposit, Plaintiffs chose to keep the Vehicle and sign new paperwork with "TMU" clearly marked in multiple places. Murray Ford assigned/transferred the title to the Vehicle to NAI, who in turn assigned the title to Plaintiffs through the Clay County DMV. Mrs. Ramaghi signed the Certificate of Title on behalf of NAI, a copy of which is attached to the Counterclaim. NAI identified those documents as exhibits to its Counterclaim.

NATIONAL AUTOMOTIVE, INC.

By: _____
Robin Ramaghi
Its: President

STATE OF FLORIDA
COUNTY OF DUVAL

Sworn to and subscribed before me this 23 day of January, 2025, by ROBIN RAMAGHI, as the President of NATIONAL AUTOMOTIVE, INC., and who is personally known to me or who produced ___FL DL___ as identification and said that the interrogatory answers are true and correct to the best of her knowledge and belief.

_Erin McKelle_____
Notary Public, State of Florida
My Commission expires:

3

1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
2                  JACKSONVILLE DIVISION

3     ISIAH ROBINSON and
      LISA ROBINSON, Each
4     and Individual,

5          Plaintiffs/Counter-Defendants,

6     v.                      CASE NO.: 3:24-cv-948-WWB-PDB

7     NATIONAL AUTOMOTIVE, INC.,
      a Florida corporation, and
8     ROBIN RAMAGHI, an individual,

9          Defendants/Counter-Plaintiffs.
      _____/
10

11           **DEPOSITION OF ISIAH ROBINSON**

12              Via Zoom Videoconference

13      DATE:      Tuesday, July 29, 2025

14      TIME:      2:00 p.m. to 5:00 p.m.

15      PLACE:     Zoom Videoconference
                   Palm Coast, Florida
16

17

18    Examination of the witness taken before:

19             Denice C. Taylor, FPR
            Notary Public, State of Florida
20

21

22

23           FIRST COAST COURT REPORTERS
               2442 ATLANTIC BOULEVARD
24          JACKSONVILLE, FLORIDA 32207
                  (904)396-1050
25               firstcoastcr.com

EXHIBIT "C"

2

```
 1                         APPEARANCES

 2

 3      JOSHUA FEYGIN, ESQUIRE

 4           Sue Your Dealer/Sue Your Credit Report
             Post Office Box 85293
 5           Hallandale, Florida 33008
             (954)228-5674
 6           josh@sueyourdealer.com

 7           Appearing, via Zoom Videoconference, on
             behalf of the Plaintiffs/Counter-Defendants.
 8

 9      KIMBERLY HELD ISRAEL, ESQUIRE

10           McGlinchey Stafford
             10375 Centurion Parkway, North
11           Suite 420
             Jacksonville, Florida 32256
12           (904)224-4452
             kisrael@mcglinchey.com
13
             Appearing, via Zoom Videoconference, on
14           behalf of the Defendants/Counter-Plaintiffs.

15

16           Also present via Zoom Videoconference:

17           Robin Byler-Ramaghi.

18

19

20

21

22

23

24

25
```

```
 1                     INDEX OF PROCEEDINGS

 2                                               PAGE

 3   WITNESS:  ISIAH ROBINSON

 4   Direct Examination by Ms. Israel              4

 5   Cross-Examination by Mr. Feygin             112

 6   Certificate of Oath                         115

 7   Certificate of Reporter                     116

 8   Witness notification letter                 117

 9   Errata Sheet                                118

10                   DEPOSITION EXHIBITS

11   MARKED FOR IDENTIFICATION

12   NUMBER     DESCRIPTION

13     1     Retail Installment and Security Agreement   40

14     2     Bill of Sale/Buyer's Order            43

15     3     As-is No Warranty document            45

16     4     Customer consent to contact           46

17     5     Federal Risk-Based Pricing Notice     46

18     6     State of Florida Odometer Statement   47

19     7     Buyer's Guide                         51

20     8     Power of Attorney                     51

21     9     Application for Title                 53

22    10     Odometer Disclosure Statement         55

23    11     Acknowledgment of Purchase            56

24    12     Repossession Agreement                57

25
```

1                          - - -

2                    ISIAH ROBINSON,

3    having been produced and first duly sworn as a

4    witness, testified as follows:

5              THE WITNESS:  Yes.

6                    DIRECT EXAMINATION

7    BY MS. ISRAEL:

8        Q    Good afternoon, Mr. Robinson.  You can put

9    your hand down now, sir.

10       A    Okay.

11       Q    Thank you.  My name is Kim Israel and I

12   represent National Automotive, Inc., and Robin Ramaghi

13   in the lawsuit that you and your wife have filed in

14   Jacksonville.

15             Are you familiar with the lawsuit that I'm

16   referring to, sir?

17       A    Yes, I am.

18       Q    Very good.  Mr. Robinson, have you ever

19   given a deposition before?

20       A    I might have, but I don't remember.

21       Q    Okay.  I just want to go over a few ground

22   rules with you that will help us hopefully move this

23   along more efficiently.

24             First and foremost, sir, if you would, speak

25   as clearly as you can when giving your answers.  And

1    stars on it.

2        Q    Okay.  Is that your signature, though, at

3    the bottom of the right-hand side?

4        A    Yes, it is.

5        Q    Okay.  Moving to page 2 of the document,

6    still with the Buyer's Order, do you recognize your

7    signature on the bottom of that page?

8        A    Yes, I do.

9        Q    Moving to page 3 of the Buyer's Order, there

10   are two different signatures locations, one on the

11   left side, one on the right.  Do you recognize your

12   signatures on that page?

13       A    Yes, I do.

14       Q    Okay.  Do you recognize the signature on the

15   bottom right side of page 3?

16       A    Yes.

17            MS. ISRAEL:  We will mark this as Exhibit

18       No. 2.

19            (Deposition Exhibit No. 2 was marked for

20   identification.)

21   BY MS. ISRAEL:

22       Q    The next document, Mr. Robinson, is entitled

23   "As Is, Sold Without Warranty."  Do you see that

24   document on my screen?

25       A    Yes.

44

1      Q     Did you read this document before you signed

2   it?

3      A     I'm -- I'm not for sure.

4      Q     Okay.  Do you understand that this document

5   means that National Automotive does not provide any

6   warranties with regard to this vehicle?

7      A     Yes.

8      Q     Have you seen a document such as this in the

9   past in relation to purchasing a used vehicle?

10     A     I believe so.

11     Q     Okay.  Looking at the signatures on this

12   page, do you recognize your signature?

13     A     I don't see -- you got to scroll down lower.

14     Q     Yes, sir.  I'm sorry.

15     A     Yes, that's my signature.  It looks like it.

16     Q     Sir, what is your understanding of a vehicle

17   that is sold as is?  What does that mean to you?

18     A     Well, I mean, it's sold as is unless someone

19   makes some type of verbal agreement to -- to do

20   something, you know, to add a little something to it.

21           I mean, I don't know.  You can always add

22   something to it verbally, but it means sold as is.

23     Q     In this instance, is it your position that

24   National Automotive agreed to do something with this

25   car that is not reflected in the paperwork?

```
 1       A    Not that I know of, no.

 2            MS. ISRAEL:  Okay.  We will go ahead and

 3       mark this document as Exhibit No. 3.

 4            (Deposition Exhibit No. 3 was marked for

 5       identification.)

 6  BY MS. ISRAEL:

 7       Q    Then the next document is entitled "Customer

 8  Consent to Contact Via Telephone and Wireless

 9  Devices."  Are you able to see my screen, sir?

10       A    Yes, I am.

11       Q    Very good.  Do you recognize your initials

12  on the left-hand side of this page?

13       A    Yes, I do.

14       Q    In both places?

15       A    Yes.

16       Q    And then scrolling to the bottom of the

17  page, do you recognize your signature?

18       A    I don't see it.

19       Q    Are you able to see it now?  Let me try it

20  this way.  If I make it a little smaller, I'll try to

21  capture the whole page.

22            Mr. Robinson, are you there?

23       A    Yes, I'm still here.

24       Q    Okay.  It looks like your screen is frozen.

25  That's why I asked.  Are you able to see your
```

 1    Murray Ford.  I don't know anything about Murray Ford.

 2        Q    Okay.  You're not aware that that's where

 3    National Automotive got the car?

 4        A    I have no idea.

 5        Q    Okay.  What statement has National

 6    Automotive made to you directly about the mileage on

 7    the car?

 8        A    I don't remember one.  I don't remember.

 9    Only thing I do remember is the fact that when we

10    bought the car from Chris, that that's what they said,

11    it had 118,000 miles on it.

12        Q    Did you ever have a lady, a female, make any

13    statements to you at all about the mileage on the car?

14        A    No.

15        Q    Do you have any knowledge as to why Chris

16    said the car had 118,000 miles on it?

17        A    Well, ma'am, I just take it as he was trying

18    to be a good salesman.  That's all.

19        Q    So you think by saying that he was trying to

20    trick you intentionally?

21        A    Oh, no, no, no.  No.

22        Q    Well, what do you mean when you say he was

23    trying to be a good salesman?

24        A    I mean, anybody -- I mean, anybody that's

25    trying to sell a car, I mean, yeah, that's what they

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICTOF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO.: 3:24-cv-00948**

ISIAH ROBINSON, and,
LISA CLAYTON ROBINSON,
Each an Individual,

       Plaintiffs,
vs.

NATIONAL AUTOMOTIVE, INC.,
a Florida Corporation,

       Defendant.
_____/


NATIONAL AUTOMOTIVE,
INC., a Florida Corporation,

       Defendant/Counter-Plaintiff,

v.

ISIAH ROBINSON, and,
LISA CLAYTON ROBINSON,
Each an Individual.

       Plaintiffs/Counter-Defendants.
_____/

## <u>PLAINTIFF, ISIAH ROBINSON'S ANSWERS TO NATIONAL AUTOMOTIVE, INC.'S INTERROGATORIES</u>

       PLAINTIFF, ISIAH ROBINSON, by and through counsel, and pursuant to the relevant

rules of civil procedure, hereby respond to the Defendant, NATIONAL AUTOMOTIVE, INC.'s

First Set of Interrogatories and in support thereof state as follows:

COMP EXHIBIT "D"

## GENERAL STATEMENTS

1. The fact that PLAINTIFF has responded to a particular interrogatory request shall not be interpreted as implying that PLAINTIFF acknowledges the appropriateness of that interrogatory request. To the extent that information, documents, and/or other materials are provided in response to these Interrogatories, PLAINTIFF specifically reserves the right to challenge, or object on any grounds to, the admissibility, competency, materiality, relevancy, or truth or accuracy of any term, phrase, or characterization contained in the information, documents, and/or other materials in any subsequent proceeding, hearing, motion, or trial in this or any other action, and nothing herein shall be construed as an admission by PLAINTIFF regarding any of the foregoing.

2. When stating that they will produce documents in conjunction with a particular interrogatory request, PLAINTIFF does not represent that responsive information, documents, and/or other materials exist, but only that such information, documents, and/or other materials will be produced to the extent they do exist, and that PLAINTIFF is able to produce them.

3. These answers are based on the information available at the present time after a search of PLAINTIFF's files. PLAINTIFF reserves the right to supplement or amend these answers at a later date should additional information become known to it and/or further discovery reveals facts that would justify such supplementation or amendment.

## GENERAL OBJECTIONS

1. PLAINTIFF objects to each and every Interrogatory to the extent that they are overly broad, unduly burdensome, vexatious, duplicative, oppressive, designed solely to harass, and/or not reasonably calculated to lead to the discovery of evidence which is material and necessary to the prosecution of this action.

2. PLAINTIFF objects to each and every Interrogatory to the extent that they seek information, documents, or other materials that are neither relevant nor likely to lead to the discovery of admissible evidence.

3. PLAINTIFF objects to each and every Interrogatory to the extent that they seek information, documents, or other materials protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or rules.

4. PLAINTIFF objects to each and every Interrogatory to the extent that they seek information, documents, or other materials in the possession, custody, or control of PLAINTIFF and/or any other entities other than PLAINTIFF.

5. PLAINTIFF objects to each and every Interrogatory to the extent that they seek information, documents, or other materials, which are not in the possession, custody, or control of PLAINTIFF.

6. PLAINTIFF objects to each and every Interrogatory to the extent that they impose obligations upon PLAINTIFF that are broader than those provided by the Florida Rules of Civil Procedure and the rules of this Court.

7. PLAINTIFF objects to each and every Interrogatory to the extent that they are vague and ambiguous and/or use undefined, ambiguous, and/or vague terms and/or phrases.

8. PLAINTIFF objects to each and every Interrogatory to the extent that they fail to define the relevant time period at issue. Such failure to define or limit the time period for the interrogatory request is improper, overbroad, and vexatious.

9. PLAINTIFF objects to each and every Interrogatory to the extent that they are not directed specifically at PLAINTIFF, but rather, to another party to this action.

**SPECIFIC RESPONSES**

1.      List the name, address, telephone number and job title (as applicable) of all persons who are believed or known by You, Your agents, or Your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which the witness has knowledge.

**RESPONSE:**

Lisa A. Clayton Robinson
c/o counsel, Joshua Feygin

Joshua Feygin – Attorney
4601 Sheridan Street
Hollywood, FL 33021
954-321-0507

Michael Citron, Esq. – Co-counsel
4601 Sheridan Street
Hollywood, FL 33021

Casey Root – Service Advisor
Family Kia
2665 U.S. Rte 1,
St. Augustine, FL 32086
(904) 808-0542
Vehicle condition and repairs undertaken to same.

Name unknown – Technician
Grease Monkey
2110 US 1 South
St. Augustine, FL
(904) 794-7016

Vehicle condition and repairs undertaken to same.

Name unknown – Technician
Tom Gibbs Chevrolet, Inc.
5850 State Rte 100,
Palm Coast, FL 32164
(386) 206-8097
Vehicle condition and repairs undertaken to same.

Sylvester E Krzykalski, Compliance Examiner
Motor Vehicle Field Office, Region 4
9550 Regency Sq. Blvd., Suite 100
Jacksonville, FL 32225
(904) 723-2001
Investigative efforts taken with respect to complaint #171760 and
resulting violation of Fla. Stat. 319.225(4) –"DEALER FAILE TO
COMPLETE PROPER ODOMETER DISCLOSURE STATEMENT."
Communications between the dealership and the DHSMV regarding the
same.

Discovery and investigation continue. Plaintiff reserves the right to supplement upon
further discovery and subsequent proffer.

2.      Do You intend to call any expert witnesses at the trial of this case? If so, state as to
each such witness the name and business address of the witness, the witness' qualifications as an
expert, the subject matter upon which the witness is expected to testify, the substance of the facts
and opinions to which the witness is expected to testify, and a summary of the grounds for each
opinion.

**RESPONSE:**  Plaintiff has not yet made a final determination as to whether expert
witnesses will be called at the trial of this matter. Plaintiff will disclose the identity of any expert
witnesses, along with the information required by Rule 26(a)(2) of the Federal Rules of Civil
Procedure, in accordance with the deadlines established by the Court or any applicable
scheduling order entered in this action. Plaintiff expressly reserves the right to supplement this
response pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

3.      Please state if You have ever been a party, either plaintiff or defendant, in a
lawsuit other than the present matter, and, if so, state whether You were the plaintiff or
defendant, the nature of the action, and the date and court in which such suit was filed, and the
case number for each lawsuit.

**RESPONSE:** In 2012 general liability claim filed against insurance co. for injury on store
property Grand Rapids, Michigan. I do not recall the rest of the details and after diligent search
and inquiry I was unable to find any such details.

4.      Please state whether You have ever been incarcerated, and if so, provide (a) the dates of incarceration; (b) the location (by name and address) of the facility in which you were incarcerated; (c) the crime(s) for which you were convicted, sentenced and incarcerated; (d) the court(s) in which you were convicted, sentenced and incarcerated; and (e) the case number(s) under which you were convicted, sentenced and incarcerated

**RESPONSE:** I was incarcerated in 1984 in Inqham County jail for 1 year for receiving and concealing stolen property. In 1987, I was incarcerated for 2.5 years for receiving and concealing stolen property in the Michigan Department of Corrections. In 1994, I was incarcerated for 4 years in the Michigan Department of Corrections and spent 2 years on parole for failure to appear in court.

5.      Please state how You were employed at the time of Your purchase of the 2011 Chevrolet Equinox in September 2023, including the name and address of Your employer, Your job title and Your duties/responsibilities of employment.

**RESPONSE:** I worked for Volkswagen of St. Augustine 1/2023 until 9/2023 as a service porter.

6.      Please state in detail why You traveled to Jacksonville, Florida and chose to purchase a vehicle, and more specifically the 2011 Chevrolet Equinox, in Jacksonville.

**RESPONSE:** I found online several dealerships with a white SUV, that's what I wanted, and these dealerships were located in Jacksonville.

7.      Please identify how many used vehicles You had purchased prior to the 2011 Chevrolet Equinox over the last 10 years, including the (a) year, make and model of each such vehicle; (b) the mileage for each such vehicle at the time of Your purchase; and (c) the name, address and telephone number of the dealership, seller, auction house, used car lot, etc. from whom You purchased each such vehicle.

**RESPONSE:** I had 6 vehicles in the past 10 years:

1. 2004 Mercedes-Benz 500, 125,000 miles 2015
2. 2007 Chevy Aveo 130,000 miles 2016
3. 2007 Kia Rondo 123,000 miles
4. 2015 Volkswagen Passat 64,000 miles 2018
5. 2019 Ford Edge 108,000 miles 2024
6. MPV Mazda 2006 168,000 miles 2024

8.      Please state in detail why You returned to Defendant's place of business on September 14, 2023, including but not limited to (a) who You spoke to on September 14th (b) what was discussed; and (c) what actions You took on September 14th at Defendant's place of business.

**RESPONSE: OBJECTION:** Plaintiff objects to this Interrogatory as overly broad and not reasonably calculated to lead to the discovery of admissible evidence to the extent it assumes facts not in evidence, specifically that Plaintiff was present at Defendant's place of business on September 14, 2023. Subject to and without waiving this objection, in the spirit of cooperation, Plaintiff responds as follows:

I was not at the Defendant's place of business on September 14, 2023, and therefore I did not speak to anyone, did not discuss anything, and did not take any action there on that date.

9.      Please state in detail how many times You have made a claim against a car seller and/or dealership in which You have alleged any form of misconduct on the part of the seller and/or dealership, including (a) the name and address of the car seller and/or dealership; (b) the date(s) upon which You asserted a claim; (c) the nature of the claim(s) You asserted; and (d) the outcome of each such claim.

**RESPONSE:** I filed 2 complaints with FLHSMV against
   a)  National Automotive, Inc., Complaint #171760 - citation issued. Odometer misrepresentation.
   b)  Nissan of St. Augustine, Complaint # 175391 – bond information issued. Misrepresentation and concealment of vehicle condition.

10.     Please state in detail all facts that support Your allegation, in paragraph 31 of the Verified Amended Complaint, that "Dealership had actual and constructive knowledge that the Equinox's mileage was not accurate at the time the representations were made."

**RESPONSE: OBJECTION.** Plaintiff objects to this Interrogatory on the grounds that it is vague, overly broad, and seeks premature disclosure of Plaintiff's legal theories or mental impressions to the extent it requires "all facts" supporting a single allegation. Plaintiff further objects to the extent the Interrogatory seeks information protected by the attorney work product doctrine. Plaintiff also objects to the extent it seeks to impose an unreasonable burden by requiring an exhaustive narrative account more properly addressed through contention interrogatories at the close of discovery. Plaintiff further objects to this Interrogatory on the grounds that it seeks information that is equally available to or within the possession, custody, or control of the Defendants. Subject to, and without waiving the above objections, in the spirit of cooperation, Plaintiff responds as follows:

The basis for my allegation in paragraph 31 of the Verified Amended Complaint that the Dealership had actual and constructive knowledge that the Equinox's mileage was not accurate includes, but is not limited to, the information contained in the following:

- The certified title history for the vehicle obtained from the Florida Department of Highway Safety and Motor Vehicles (FLHSMV);
- The Carfax vehicle history report;
- The FLHSMV report dated May 8, 2024;
- Complaint #171760 and the findings of Compliance Examiner Sylvester Krzykalski, which included a violation of Florida Statutes § 319.275(4), specifically for the dealership's failure to complete a proper odometer disclosure statement;
- Altered mileage disclosure documents submitted to the DHSMV.

These documents were also provided to Defendant Robin Lynn Taylor Ramaghai, who corresponded with the FLHSMV during the investigation process.

11.    Please state in detail all facts that support Your allegation, in paragraph 33 of the Verified Amended Complaint, that, "Mr. & Mrs. Robinson quickly realized that the Equinox did not reflect the mechanical condition of a vehicle with 118,245 miles."

**RESPONSE: OBJECTION.** Plaintiff objects to this Interrogatory on the grounds that it is vague and overly broad, particularly as to the request for "all facts," which seeks an exhaustive narrative account of Plaintiff's contentions and may encompass information protected by the attorney work product doctrine. Notwithstanding these objections and without waiving same, Plaintiff responds as follows in the spirit of cooperation:

On or about September 12, 2023, I had the head mechanic of Volkswagen of St. Augustine complete an inspection of the vehicle. The diagnostic inspection revealed numerous concerning fault codes inconsistent with the expected mechanical condition of a vehicle purportedly driven only 118,245 miles.

12.    Please state in detail all facts that support Your allegation, in paragraph 34 of the Verified Amended Complaint, that, "Mr. & Mrs. Robinson discovered the nefarious conduct of the Dealership," including (a) when You allegedly discovered "nefarious conduct;" (b) how You allegedly discovered "nefarious conduct;" (c) what the "nefarious conduct" is that You allegedly discovered; and (d) the name, address, telephone number and e-mail address of each person who aided or assisted You in the discovery of the alleged "nefarious conduct."

**RESPONSE: OBJECTION.** Plaintiff objects to this Interrogatory as vague and overly broad, particularly in its use of the term "all facts" and its multi-part subparts, which seek detailed

factual narratives, legal conclusions, and information protected by the attorney work product doctrine. Plaintiff also objects to the extent the Interrogatory seeks information that is equally available to or within the possession of Defendants, including public title history records and documentation submitted to the Florida Department of Highway Safety and Motor Vehicles. Notwithstanding these objections and without waiving same, Plaintiff responds as follows in the spirit of cooperation:

The discovery of the dealership's misconduct began on or about September 13, 2023, when I obtained a Been Verified title history report for the subject vehicle. That report revealed a series of inconsistent mileage entries and transactions suggesting odometer tampering. Specifically, it showed:

- A mileage entry of 192,989 on 9/25/2020;
- A subsequent mileage entry of 112,581 on 2/21/2023;
- Another entry of 112,990 on 2/22/2023;
- And an entry of 118,207 in July 2023.

These discrepancies are inconsistent with a properly maintained mileage record and demonstrated that the represented mileage of 118,245 at the time of sale was not original. This led to the submission of a complaint with the FLHSMV. Documentation later obtained from the FLHSMV investigation confirmed that the dealership failed to submit an accurate odometer disclosure and subsequently altered the documentation in an attempt to fabricate notice to us of the tampered mileage. The individuals who assisted in uncovering these facts include personnel at the FLHSMV any technicians who worked on the vehicle at Volkswagen of St. Augustine, and the FLSHMV compliance examiner, Sylvester E Krzykalski.

13.    Please state in detail all facts that support Your allegation, in paragraph 42 of the Verified Amended Complaint, that, "the DHSMV cited the Dealership for its conduct."

**RESPONSE:** In the letter dated 5/3/2024 in response to Complaint #171760 the DHSMV cited the Dealership for a violation of Florida Statutes § 319.275(4), specifically for the dealership's failure to complete a proper odometer disclosure statement.

14.    Please state in detail all facts that support Your allegation, in paragraph 51 of the Verified Amended Complaint, that "In order to facilitate and conceal the odometer fraud, Dealership forged the signature of Mr. & Mrs. Robinson on the Transfer Title which plainly disclosed that the mileage was not actual on its face."

**RESPONSE:** : The Transfer Title was not signed by me nor did I affix my name in handwriting to the Transfer Title. Not my handwriting or signature. I would have never agreed to purchase the subject vehicle with a rolled back odometer nor would I have ever agreed to affix my name or signature to the Transfer Title knowing the same.

15.    Please state in detail all facts that support Your allegation, in paragraph 55 of the Verified Amended Complaint, that, "circumventing title procedures and the sale of vehicles with tampered odometers is a regular business practice of the Dealership which was implemented or otherwise condoned or ratified by Mrs. Ramaghi."

**RESPONSE:** Defendant's interrogatory responses confirm that Mrs. Ramaghai and another employee executed the mileage disclosures. Her signature appears on the disputed documents, and the absence of my handwriting or signatures suggests she carried out, approved, or ratified the conduct.

16.    Please itemize and describe in detail any and all damages that You claim to have sustained as a result of the conduct at issue in the Lawsuit, including a description of the damages and the dollar amount(s) associated therewith.

**RESPONSE:** Plaintiff states that he seeks statutory damages under the Federal Odometer Act in the amount of the greater of $10,000 or three times his actual damages, pursuant to 49 U.S.C. § 32710(a).

Plaintiff's actual damages include:

- The difference in value between the vehicle as delivered and the value it would have had if the odometer reading had been accurate, which Plaintiff estimates to be approximately 25% of the purchase price;
- All unexpected repair costs Plaintiff was forced to incur as a result of the vehicle's true mechanical condition, which was inconsistent with the mileage represented at sale;
- Insurance costs incurred under the false belief that the vehicle was of a higher condition and value;
- Increased financing costs and inflated sales tax attributable to the difference between the price Plaintiff paid and the actual fair market value of the vehicle at the time and place of delivery.
- Alternate transportation costs.

In the alternative, Plaintiff seeks revocation of acceptance, including a refund of the entire purchase price paid for the vehicle, all monthly installments paid to date, and all repair costs incurred that are directly attributable to the mileage impairment.

Discovery and investigation remain ongoing. Plaintiff reserves the right to amend or supplement this response as additional facts or expert analyses become available. Plaintiff further reserves the right to seek punitive damages upon appropriate proffer.

17.    Please state as follows regarding the Certificate of Title for the 2011 Chevrolet Equinox: (a) when You first saw it in person; (b) who showed it to You; (c) where You were when You first saw it in person (including the physical address of Your location); (d) what the Certificate of Title stated for the mileage of the vehicle; (e) whether the Certificate of Title stated the mileage

was "Not Actual;" and (f) who (by name, address and telephone number) was with You and/or
present at the time that You first saw the Certificate of Title in person.

>    **RESPONSE:** The one filed with the State:
>    a.   Never.
>    b.   No one.
>    c.   Never in person.
>    d.   On the one filed, it was blank.
>    e.   On the one filed, it was blank.
>    f.   I have never seen the one filed "in person."

18.    Please state in detail why You did not surrender the 2011 Chevrolet Equinox to
Defendant on September 14, 2023, while you were at Defendant's place of business.

>    **RESPONSE: OBJECTION:** Plaintiff objects to this Interrogatory as overly broad and not
reasonably calculated to lead to the discovery of admissible evidence to the extent it assumes facts
not in evidence, specifically that Plaintiff was present at Defendant's place of business on
September 14, 2023. Subject to and without waiving this objection, in the spirit of cooperation,
Plaintiff responds as follows:

>    I was never there to begin with nor was I ever provided an opportunity to surrender the
subject vehicle.

19.    Please state in detail all facts that support Your allegation, in paragraph 94 of the
Verified Amended Complaint, that, "Dealership refused and continues to refuse to correct the
nonconformities present in the Equinox," including but not limited to (a) what "nonconformities"
You are referring to; (b) when (if ever) You requested that Defendant correct such
"nonconformities;" (c) how (if ever) You requested that Defendant correct such
"nonconformities," e.g. the method and manner by which You allege that You made this request or
demand on Defendant; (d) how You believe Defendant is supposed to have corrected such
"nonconformities;" and (d) what response You received from or on behalf of Defendant to Your
alleged request(s).

>    **RESPONSE:** Defendant was provided ample opportunities to resolve the issues raised in
the lawsuit, including throughout the FLHSMV investigation process and following receipt of
Plaintiff's pre-suit demands dated 06/05/2024 on or about 06/04/2024 bearing USPS Tracking
No. 9405503699300692978693. Defendant could have unwound the transaction and paid for our
damages. Defendant refused to do so.

20.    Please state in detail all facts that support Your allegation, in paragraph 96 of the
Verified Amended Complaint, that, "Mr. and Mrs. Robinson, notified Dealership, verbally and in
writing, that they were revoking acceptance," including but not limited to (a) when You "notified
Dealership verbally" that You were revoking acceptance; (b) to whom (by name and address) You
gave such verbal notification; (c) where You were (by address and location) when You gave such
verbal notification; (d) when You "notified Dealership...in writing" that You were revoking
acceptance; (e) to whom (by name and address) You gave such written notification; (f) the method

and manner by which You transmitted Your written notification to Defendant; (g) the identity (by name and address) of all people who have copies of Your written notification to Defendant; and (h) the response You received, if any, from Defendant.

**RESPONSE:** They were notified when they received the DMV complaint on or around 10/31/2023 – 11/03/2023. They were further notified when our attorney delivered a Notice of Revocation of Acceptance dated 06/05/2024 on or about 06/04/2024 bearing USPS Tracking No. 9405503699300692978693.

21.    Identify in detail all communications by and between You, Lisa Clayton Robinson and/or Defendant regarding the 2011 Chevrolet Equinox, including but not limited to (a) the people involved in each such communication; (b) the date of each communication; (c) the method and/or manner by which such communication occurred, e.g. by telephone, e-mail, in person conversation, etc.; and (d) the substance of each communication, e.g. what was discussed.

**RESPONSE:** On 9/8/2023 – I and my wife purchased the car.
9/12/2023 – After codes came up in the diagnosis, talked to the manager at National Automotive over the phone on 9/12/2023, explaining to her about the issues with the SUV, she said I can bring the car and let her mechanics look at it for $55/hr. I said you should have fixed the car before you sold it to me and my wife. I said I just wanted to return the car and get my money back, she stated the down payment was non-refundable. She said she did not have time for this and hung up the phone. We started to research the car and them based on negative reviews we decided to resolve it another way. Payments 4-23 only speaking to the cashier and getting a receipt.

22.    Have You ever been convicted of a crime, other than a juvenile adjudication, which under the law under which You were convicted was punishable by death or imprisonment in excess of 1 year, or that involved dishonesty or a false statement regardless of the punishment? If so, state as to each conviction the specific crime and the date and place of conviction.

**RESPONSE:** See response to Interrogatory No. 4.

23.    List the names and addresses of all persons who are believed or known by You, Your agents, or Your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which the witness has knowledge.

**RESPONSE:** See response to interrogatory No. 1.

24.    State the name and address of every person known to You, Your agents, or Your attorneys, who has knowledge about, or possession, custody, or control of, any model, plat, map, drawing, audio recording, visual recording, audiovisual recording, or photograph pertaining to any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

**RESPONSE:** See response to interrogatory No. 1.

**VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the foregoing answers to interrogatories are true and correct to the best of my knowledge, information, and belief.

Executed on this 28th day of July, 2025.

*Isiah Robinson*
ISIAH ROBINSON

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICTOF FLORIDA
### JACKSONVILLE DIVISION

### CASE NO.: 3:24-cv-00948

ISIAH ROBINSON, and,
LISA CLAYTON ROBINSON,
Each an Individual,

      Plaintiffs,

vs.

NATIONAL AUTOMOTIVE, INC., a Florida Corporation,

      Defendant.

_____/


NATIONAL AUTOMOTIVE,
INC., a Florida Corporation,

      Defendant/Counter-Plaintiff,

v.

ISIAH ROBINSON, and,
LISA CLAYTON ROBINSON,
Each an Individual.

      Plaintiffs/Counter-Defendants.

_____/

## PLAINTIFF, LISA CLAYTON ROBINSON'S ANSWERS TO NATIONAL AUTOMOTIVE, INC.'S INTERROGATORIES

    PLAINTIFF, LISA CLAYTON ROBINSON, by and through counsel, and pursuant to the

relevant rules of civil procedure, hereby respond to the Defendant, NATIONAL AUTOMOTIVE,

INC.'s First Set of Interrogatories and in support thereof state as follows:

### GENERAL STATEMENTS

    1. The fact that PLAINTIFF has responded to a particular interrogatory request shall not be

interpreted as implying that PLAINTIFF acknowledges the appropriateness of that interrogatory

request. To the extent that information, documents, and/or other materials are provided in response to these Interrogatories, PLAINTIFF specifically reserves the right to challenge, or object on any grounds to, the admissibility, competency, materiality, relevancy, or truth or accuracy of any term, phrase, or characterization contained in the information, documents, and/or other materials in any subsequent proceeding, hearing, motion, or trial in this or any other action, and nothing herein shall be construed as an admission by PLAINTIFF regarding any of the foregoing.

2. When stating that they will produce documents in conjunction with a particular interrogatory request, PLAINTIFF does not represent that responsive information, documents, and/or other materials exist, but only that such information, documents, and/or other materials will be produced to the extent they do exist, and that PLAINTIFF is able to produce them.

3. These answers are based on the information available at the present time after a search of PLAINTIFF's files. PLAINTIFF reserves the right to supplement or amend these answers at a later date should additional information become known to it and/or further discovery reveals facts that would justify such supplementation or amendment.

## GENERAL OBJECTIONS

1. PLAINTIFF objects to each and every Interrogatory to the extent that they are overly broad, unduly burdensome, vexatious, duplicative, oppressive, designed solely to harass, and/or not reasonably calculated to lead to the discovery of evidence which is material and necessary to the prosecution of this action.

2. PLAINTIFF objects to each and every Interrogatory to the extent that they seek information, documents, or other materials that are neither relevant nor likely to lead to the discovery of admissible evidence.

3. PLAINTIFF objects to each and every Interrogatory to the extent that they seek information, documents, or other materials protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or rules.

4. PLAINTIFF objects to each and every Interrogatory to the extent that they seek information, documents, or other materials in the possession, custody, or control of PLAINTIFF and/or any other entities other than PLAINTIFF.

5. PLAINTIFF objects to each and every Interrogatory to the extent that they seek information, documents, or other materials, which are not in the possession, custody, or control of PLAINTIFF.

6. PLAINTIFF objects to each and every Interrogatory to the extent that they impose obligations upon PLAINTIFF that are broader than those provided by the Florida Rules of Civil Procedure and the rules of this Court.

7. PLAINTIFF objects to each and every Interrogatory to the extent that they are vague and ambiguous and/or use undefined, ambiguous, and/or vague terms and/or phrases.

8. PLAINTIFF objects to each and every Interrogatory to the extent that they fail to define the relevant time period at issue. Such failure to define or limit the time period for the interrogatory request is improper, overbroad, and vexatious.

9. PLAINTIFF objects to each and every Interrogatory to the extent that they are not directed specifically at PLAINTIFF, but rather, to another party to this action.

**SPECIFIC RESPONSES**

1.     List the name, address, telephone number and job title (as applicable) of all persons who are believed or known by You, Your agents, or Your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which the witness has knowledge.

**RESPONSE:**

Isiah Robinson
c/o counsel, Joshua Feygin

Joshua Feygin – Attorney
4601 Sheridan Street
Hollywood, FL 33021
954-321-0507

Michael Citron, Esq. – Co-counsel
4601 Sheridan Street
Hollywood, FL 33021

Casey Root – Service Advisor
Family Kia
2665 U.S. Rte 1,
St. Augustine, FL 32086
(904) 808-0542
Vehicle condition and repairs undertaken to same.

Name unknown – Technician
Grease Monkey
2110 US 1 South
St. Augustine, FL
(904) 794-7016
Vehicle condition and repairs undertaken to same.

Name unknown – Technician
Tom Gibbs Chevrolet, Inc.

5850 State Rte 100,
Palm Coast, FL 32164
(386) 206-8097
Vehicle condition and repairs undertaken to same.

Sylvester E Krzykalski, Compliance Examiner
Motor Vehicle Field Office, Region 4
9550 Regency Sq. Blvd., Suite 100
Jacksonville, FL 32225
(904) 723-2001
Investigative efforts taken with respect to complaint #171760 and resulting violation of Fla. Stat. 319.225(4) –"DEALER FAILE TO COMPLETE PROPER ODOMETER DISCLOSURE STATEMENT." Communications between the dealership and the DHSMV regarding the same.

Discovery and investigation continue. Plaintiff reserves the right to supplement upon further discovery and subsequent proffer.

2.      Do You intend to call any expert witnesses at the trial of this case? If so, state as to each such witness the name and business address of the witness, the witness' qualifications as an expert, the subject matter upon which the witness is expected to testify, the substance of the facts and opinions to which the witness is expected to testify, and a summary of the grounds for each opinion.

**RESPONSE:**   Plaintiff has not yet made a final determination as to whether expert witnesses will be called at the trial of this matter. Plaintiff will disclose the identity of any expert witnesses, along with the information required by Rule 26(a)(2) of the Federal Rules of Civil Procedure, in accordance with the deadlines established by the Court or any applicable scheduling order entered in this action. Plaintiff expressly reserves the right to supplement this response pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

3.      Please state if You have ever been a party, either plaintiff or defendant, in a lawsuit other than the present matter, and, if so, state whether You were the plaintiff or defendant, the nature of the action, and the date and court in which such suit was filed, and the case number for each lawsuit.

**RESPONSE:** I have not.

4.      Please state whether You have ever been incarcerated, and if so, provide (a) the dates of incarceration; (b) the location (by name and address) of the facility in which you were incarcerated; (c) the crime(s) for which you were convicted, sentenced and incarcerated; (d) the court(s) in which you were convicted, sentenced and incarcerated; and (e) the case number(s) under which you were convicted, sentenced and incarcerated

**RESPONSE:** Never.


5.      Please state how You were employed at the time of Your purchase of the 2011 Chevrolet Equinox in September 2023, including the name and address of Your employer, Your job title and Your duties/responsibilities of employment.

**RESPONSE:**              Hampton Inn & Suites Palm Coast
                          150 Flagler Plaza Dr
                          Palm Coast, FL 32137
                          General Manager (386-489-8999)
                          I run all operations at this Hilton Branded Hotel.


6.      Please state in detail why You traveled to Jacksonville, Florida and chose to purchase a vehicle, and more specifically the 2011 Chevrolet Equinox, in Jacksonville.

**RESPONSE:** My husband was actively searching for a white SUV to purchase. At the time, Jacksonville, Florida had multiple listings for such vehicles, including the 2011 Chevrolet Equinox at issue in this lawsuit.


7.      Please identify how many used vehicles You had purchased prior to the 2011 Chevrolet Equinox over the last 10 years, including the (a) year, make and model of each such vehicle; (b) the mileage for each such vehicle at the time of Your purchase; and (c) the name, address and telephone number of the dealership, seller, auction house, used car lot, etc. from whom You purchased each such vehicle.

**RESPONSE:  O B J E C T I O N:**  Plaintiff objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably limited in time or subject matter. The Interrogatory seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Specifically, Plaintiff's prior vehicle purchases have no bearing on the claims or defenses at issue in this action, which relate to the specific facts surrounding the sale of the 2011 Chevrolet Equinox and the conduct of the Defendant in connection therewith. This Interrogatory also seeks to impose an unreasonable burden by requiring Plaintiff to recall or research detailed historical information regarding unrelated transactions over a ten-year period.

Subject to, and without waiving the above objections, in the spirit of cooperation, Plaintiff responds as follows:

Purchased 2018 – VW Passat 205 64,000 miles
Gunther VW
1270 N. Tomoka Farms Rd

Daytona Beach, FL 32124
1-724-220-4593

Purchased 2024 – 2015 Ford Fusion 47,000 miles
Gary Yeoman Honda
152 N Tomoka Farms Rd
Daytona Beach, FL 32124
1-386-310-3828

8.    Please state in detail why You returned to Defendant's place of business on
September 14, 2023, including but not limited to (a) who You spoke to on September 14th (b) what
was discussed; and (c) what actions You took on September 14th at Defendant's place of business.

**RESPONSE: OBJECTION:** Plaintiff objects to this Interrogatory as overly broad and not
reasonably calculated to lead to the discovery of admissible evidence to the extent it assumes facts
not in evidence, specifically that Plaintiff was present at Defendant's place of business on
September 14, 2023. Subject to and without waiving this objection, in the spirit of cooperation,
Plaintiff responds as follows:

I was not at the Defendant's place of business on September 14, 2023, and therefore I did
not speak to anyone, did not discuss anything, and did not take any action there on that date.

9.    Please state in detail how many times You have made a claim against a car seller
and/or dealership in which You have alleged any form of misconduct on the part of the seller and/or
dealership, including (a) the name and address of the car seller and/or dealership; (b) the date(s)
upon which You asserted a claim; (c) the nature of the claim(s) You asserted; and (d) the outcome
of each such claim.

**RESPONSE:** I have never made a claim against any car seller or dealership alleging
any form of misconduct. Accordingly, I have no information responsive to subparts (a)
through (d) of this Interrogatory.

10.    Please state in detail all facts that support Your allegation, in paragraph 31 of the
Verified Amended Complaint, that "Dealership had actual and constructive knowledge that the
Equinox's mileage was not accurate at the time the representations were made."

**RESPONSE: OBJECTION**. Plaintiff objects to this Interrogatory on the grounds that
it is vague, overly broad, and seeks premature disclosure of Plaintiff's legal theories
or mental impressions to the extent it requires "all facts" supporting a single allegation.
Plaintiff further objects to the extent the Interrogatory seeks information protected by the
attorney work product doctrine. Plaintiff also objects to the extent it seeks to impose an

unreasonable burden by requiring an exhaustive narrative account more properly addressed through contention interrogatories at the close of discovery. Plaintiff further objects to this Interrogatory on the grounds that it seeks information that is equally available to or within the possession, custody, or control of the Defendants. Subject to, and without waiving the above objections, in the spirit of cooperation, Plaintiff responds as follows:

The basis for my allegation in paragraph 31 of the Verified Amended Complaint that the Dealership had actual and constructive knowledge that the Equinox's mileage was not accurate includes, but is not limited to, the information contained in the following:

- The certified title history for the vehicle obtained from the Florida Department of Highway Safety and Motor Vehicles (FLHSMV);
- The Carfax vehicle history report;
- The FLHSMV report dated May 8, 2024;
- Complaint #171760 and the findings of Compliance Examiner Sylvester Krzykalski, which included a violation of Florida Statutes § 319.275(4), specifically for the dealership's failure to complete a proper odometer disclosure statement;
- Altered mileage disclosure documents submitted to the DHSMV.

These documents were also provided to Defendant Robin Lynn Taylor Ramaghai, who corresponded with the DHSMV during the investigation process.

11.    Please state in detail all facts that support Your allegation, in paragraph 33 of the Verified Amended Complaint, that, "Mr. & Mrs. Robinson quickly realized that the Equinox did not reflect the mechanical condition of a vehicle with 118,245 miles."

**RESPONSE: OBJECTION.** Plaintiff objects to this Interrogatory on the grounds that it is vague and overly broad, particularly as to the request for "all facts," which seeks an exhaustive narrative account of Plaintiff's contentions and may encompass information protected by the attorney work product doctrine. Notwithstanding these objections and without waiving same, Plaintiff responds as follows in the spirit of cooperation:

On or about September 12, 2023, Mr. Robinson drove the Equinox to his place of employment at Volkswagen of St. Augustine, where the head mechanic performed a diagnostic inspection of the vehicle. The diagnostic scan revealed numerous concerning fault codes inconsistent with the expected mechanical condition of a vehicle purportedly driven only 118,245 miles.

12.    Please state in detail all facts that support Your allegation, in paragraph 34 of the Verified Amended Complaint, that, "Mr. & Mrs. Robinson discovered the nefarious conduct of the

Dealership," including (a) when You allegedly discovered "nefarious conduct;" (b) how You allegedly discovered "nefarious conduct;" (c) what the "nefarious conduct" is that You allegedly discovered; and (d) the name, address, telephone number and e-mail address of each person who aided or assisted You in the discovery of the alleged "nefarious conduct."

**RESPONSE: OBJECTION.** Plaintiff objects to this Interrogatory as vague and overly broad, particularly in its use of the term "all facts" and its multi-part subparts, which seek detailed factual narratives, legal conclusions, and information protected by the attorney work product doctrine. Plaintiff also objects to the extent the Interrogatory seeks information that is equally available to or within the possession of Defendants, including public title history records and documentation submitted to the Florida Department of Highway Safety and Motor Vehicles. Notwithstanding these objections and without waiving same, Plaintiff responds as follows in the spirit of cooperation:

The discovery of the dealership's misconduct began on or about September 13, 2023, when I obtained a Been Verified title history report for the subject vehicle. That report revealed a series of inconsistent mileage entries and transactions suggesting odometer tampering. Specifically, it showed:

- A mileage entry of 192,989 on 9/25/2020;
- A subsequent mileage entry of 112,581 on 2/21/2023;
- Another entry of 112,990 on 2/22/2023;
- And an entry of 118,207 in July 2023.

These discrepancies are inconsistent with a properly maintained mileage record and demonstrated that the represented mileage of 118,245 at the time of sale was not original. This led to the submission of a complaint with the FLHSMV. Documentation later obtained from the FLHSMV investigation confirmed that the dealership failed to submit an accurate odometer disclosure and subsequently altered the documentation in an attempt to fabricate notice to us of the tampered mileage. The individuals who assisted in uncovering these facts include personnel at the FLHSMV any technicians who worked on the vehicle at Volkswagen of St. Augustine, and the FLSHMV compliance examiner, Sylvester E Krzykalski.

13.   Please state in detail all facts that support Your allegation, in paragraph 42 of the Verified Amended Complaint, that, "the DHSMV cited the Dealership for its conduct."

**RESPONSE:**  In the letter dated 5/3/2024 in response to Complaint #171760 the DHSMV cited the Dealership for a violation of Florida Statutes § 319.275(4), specifically for the dealership's failure to complete a proper odometer disclosure statement.

14.   Please state in detail all facts that support Your allegation, in paragraph 51 of the Verified Amended Complaint, that "In order to facilitate and conceal the odometer fraud, Dealership forged the signature of Mr. & Mrs. Robinson on the Transfer Title which plainly disclosed that the mileage was not actual on its face."

**RESPONSE:** The Transfer Title was not signed by me nor did I affix my name in handwriting to the Transfer Title. Not my handwriting or signature. I would have never agreed to purchase the subject vehicle with a rolled back odometer nor would I have ever agreed to affix my name or signature to the Transfer Title knowing the same.

15.    Please state in detail all facts that support Your allegation, in paragraph 55 of the Verified Amended Complaint, that, "circumventing title procedures and the sale of vehicles with tampered odometers is a regular business practice of the Dealership which was implemented or otherwise condoned or ratified by Mrs. Ramaghi."

**RESPONSE:** Defendant's interrogatory responses confirm that Mrs. Ramaghai and another employee executed the mileage disclosures. Her signature appears on the disputed documents, and the absence of my handwriting or signatures suggests she carried out, approved, or ratified the conduct.

16.    Please itemize and describe in detail any and all damages that You claim to have sustained as a result of the conduct at issue in the Lawsuit, including a description of the damages and the dollar amount(s) associated therewith.

**RESPONSE:** Plaintiff states that she seeks statutory damages under the Federal Odometer Act in the amount of the greater of $10,000 or three times her actual damages, pursuant to 49 U.S.C. § 32710(a).

Plaintiff's actual damages include:

- The difference in value between the vehicle as delivered and the value it would have had if the odometer reading had been accurate, which Plaintiff estimates to be approximately 25% of the purchase price;
- All unexpected repair costs Plaintiff was forced to incur as a result of the vehicle's true mechanical condition, which was inconsistent with the mileage represented at sale;
- Insurance costs incurred under the false belief that the vehicle was of a higher condition and value;
- Increased financing costs and inflated sales tax attributable to the difference between the price Plaintiff paid and the actual fair market value of the vehicle at the time and place of delivery.
- Alternate transportation costs.

In the alternative, Plaintiff seeks revocation of acceptance, including a refund of the entire purchase price paid for the vehicle, all monthly installments paid to date, and all repair costs incurred that are directly attributable to the mileage impairment.

Discovery and investigation remain ongoing. Plaintiff reserves the right to amend or supplement this response as additional facts or expert analyses become available. Plaintiff further reserves the right to seek punitive damages upon appropriate proffer.

17.    Please state as follows regarding the Certificate of Title for the 2011 Chevrolet Equinox: (a) when You first saw it in person; (b) who showed it to You; (c) where You were when You first saw it in person (including the physical address of Your location); (d) what the Certificate of Title stated for the mileage of the vehicle; (e) whether the Certificate of Title stated the mileage was "Not Actual;" and (f) who (by name, address and telephone number) was with You and/or present at the time that You first saw the Certificate of Title in person.

RESPONSE: The one filed with the State:
a.  Never.
b.  No one.
c.  Never in person.
d.  On the one filed, it was blank.
e.  On the one filed, it was blank.
f.  I have never seen the one filed "in person."

18.    Please state in detail why You did not surrender the 2011 Chevrolet Equinox to Defendant on September 14, 2023, while you were at Defendant's place of business.

RESPONSE: OBJECTION: Plaintiff objects to this Interrogatory as overly broad and not reasonably calculated to lead to the discovery of admissible evidence to the extent it assumes facts not in evidence, specifically that Plaintiff was present at Defendant's place of business on September 14, 2023. Subject to and without waiving this objection, in the spirit of cooperation, Plaintiff responds as follows:

I was never there to begin with nor was I ever provided an opportunity to surrender the subject vehicle.

19.    Please state in detail all facts that support Your allegation, in paragraph 94 of the Verified Amended Complaint, that, "Dealership refused and continues to refuse to correct the nonconformities present in the Equinox," including but not limited to (a) what "nonconformities" You are referring to; (b) when (if ever) You requested that Defendant correct such "nonconformities;" (c) how (if ever) You requested that Defendant correct such "nonconformities," e.g. the method and manner by which You allege that You made this request or demand on Defendant; (d) how You believe Defendant is supposed to have corrected such "nonconformities;" and (d) what response You received from or on behalf of Defendant to Your alleged request(s).

RESPONSE: Defendant was provided ample opportunities to resolve the issues raised in the lawsuit, including throughout the FLHSMV investigation process and following receipt of Plaintiff's pre-suit demands dated 06/05/2024 on or about 06/04/2024 bearing USPS Tracking No.

9405503699300692978693. Defendant could have unwound the transaction and paid for our damages. Defendant refused to do so.

20.    Please state in detail all facts that support Your allegation, in paragraph 96 of the Verified Amended Complaint, that, "Mr. and Mrs. Robinson, notified Dealership, verbally and in writing, that they were revoking acceptance," including but not limited to (a) when You "notified Dealership verbally" that You were revoking acceptance; (b) to whom (by name and address) You gave such verbal notification; (c) where You were (by address and location) when You gave such verbal notification; (d) when You "notified Dealership…in writing" that You were revoking acceptance; (e) to whom (by name and address) You gave such written notification; (f) the method and manner by which You transmitted Your written notification to Defendant; (g) the identity (by name and address) of all people who have copies of Your written notification to Defendant; and (h) the response You received, if any, from Defendant.

**RESPONSE:** They were notified when they received the DMV complaint on or around 10/31/2023 – 11/03/2023. They were further notified when our attorney delivered a Notice of Revocation of Acceptance dated 06/05/2024 on or about 06/04/2024 bearing USPS Tracking No. 9405503699300692978693.

21.    Identify in detail all communications by and between You, Isiah Robinson and/or Defendant regarding the 2011 Chevrolet Equinox, including but not limited to (a) the people involved in each such communication; (b) the date of each communication; (c) the method and/or manner by which such communication occurred, e.g. by telephone, e-mail, in person conversation, etc.; and (d) the substance of each communication, e.g. what was discussed.

**RESPONSE:**
9/8/2023    -    Sale    of    car    spoke    to    salesman    and    co-signed    car
11/03/2023 – Cashapp payment was returned; got up from my desk in Palm Coast, drove to Jacksonville to pay in cash. Cashier asked me if I wanted to change from my $180.00, I said yes, since no one is paying my gas!
7/26/2024 – Cash payment was refused. My husband called me inside dealership to call Mr. Feygin. Lady with long hair asked if we had attorney I told her yes. She said our attorney should have told us to send payment to her attorney. I said I'm emailing him now. Then she proceeded to give me a piece of paper with the attorney's name and address.

22.    Have You ever been convicted of a crime, other than a juvenile adjudication, which under the law under which You were convicted was punishable by death or imprisonment in excess of 1 year, or that involved dishonesty or a false statement regardless of the punishment? If so, state as to each conviction the specific crime and the date and place of conviction.

**RESPONSE:** See response to Interrogatory No. 4.

23.    List the names and addresses of all persons who are believed or known by You, Your agents, or Your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which the witness has knowledge.

**RESPONSE:** See response to interrogatory No. 1.

24.    State the name and address of every person known to You, Your agents, or Your attorneys, who has knowledge about, or possession, custody, or control of, any model, plat, map, drawing, audio recording, visual recording, audiovisual recording, or photograph pertaining to any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

**RESPONSE:** See response to interrogatory No. 1.

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing answers to interrogatories are true and correct to the best of my knowledge, information, and belief.

Executed on this 28th day of July, 2025.

*Lisa Clayton Robinson*
LISA CLAYTON ROBINSON

- Driver Licenses & ID Cards

## Driver Licenses & ID Cards

- Renew or Replace Your License
  - What to Bring
  - Florida's NEW Driver License and ID Card
  - Fees
  - Emergency Contact Information
- Driver Licenses & ID Cards
  - Education & Courses
  - Driver License Check & ID Tracking System
  - For Commercial Vehicle Drivers
  - Driver License Handbook
- Florida Visitors
  - Military & Veterans Information
  - Driver Record
  - Name and Address Changes
  - New Resident
- Make an Appointment
  - Motorist Modernization
  - Fraud
  - Have A Public Records Request?
  - Email Us!

- Motor Vehicles, Tags & Titles

## Motor Vehicles, Tags & Titles

- Renew or Replace Your Registration
  - Motor Vehicle Information Check
  - Fraud
  - Fees
  - Emergency Contact Information
- Liens & Titles
  - License Plates & Registration
  - Personalized and Specialty License Plates
  - Dealers, Installers, Manufacturers, Distributors, and Importers
  - For Commercial Vehicle Drivers
- Vessels
  - Military & Veterans Information
  - Disabled Person Parking Permits
  - Covered Farm Vehicles
  - Motorist Modernization
- New Resident
  - Name and Address Changes
  - Make an Appointment
  - Have A Public Records Request?
  - Email Us!

- Florida Highway Patrol

## Florida Highway Patrol

- Be a Trooper
  - Live Traffic Crash & Road Condition Report
  - Traffic Crash Reports
  - Emergency Contact Information
- About FHP
  - Commercial Vehicle Enforcement
  - Specialized Areas
  - Be A Dispatcher
  - Troop Boundaries & Information
- FHP Memorial
  - FHP Surveys
  - Member Recognition
  - Patrol Support
  - Covered Farm Vehicles
- Contact FHP
  - Useful Info & Links
  - Sign up for AMBER, Silver, Purple and Blue Alerts

- Home – Navbar
- About
  - About the Director
  - Department Overview
  - Department History
- News
- Safety Center

Need Help?

EXHIBIT "E"

- - Arrive Alive
  - Driving Safely
  - Child Safety
  - Vehicle Safety
  - Human Trafficking
  - Consumer Education
  - Podcasts
- Insurance
  - General Information
  - Have You Received a Letter?
  - Involved in a Crash?
- Resources
  - Open Government
  - Crash and Citation Reports & Statistics
  - Cabinet and Legislature Reports & Statistics
  - Driver and Vehicle Reports & Statistics
  - Forms
  - Handbooks & Manuals
  - Hope Florida
  - Regulatory Plan
  - Related Links
- Locations
- Careers
  - Working at FLHSMV
  - Career Opportunities
  - Internships
  - Benefits
  - Veteran Resources
- Contact

☐

**Consumer Education**

- Buying a Vehicle
  - **Licensed Dealer**
  - Private Sales
- Selling a Vehicle
- Consumer Complaints & Resources
- Flooded Vehicles
- Fraud
  - Identity Theft & Driver License Fraud Protection
  - Motor Vehicle Fraud
- Low Speed Vehicles
- Mobile & Manufactured Home Safety
- Off-Highway and All-Terrain Vehicles
- Protect Yourself Against Staged Crashes
- Safety Warnings
- Vehicle Theft Prevention
- Vessels



A-Z Guide

Search FLHSMV:   Search FLHSMV...   🔍Search

Dave Kerner, Executive Director

- ❎Twitter
- f Facebook



- ☐YouTube
- ◎Instagram

Menu

- 🏠Home – Navbar
- About
  - About the Director
  - Department Overview
  - Department History
- News
- Safety Center
  - Arrive Alive
  - Driving Safety
  - Child Safety
  - Vehicle Safety
  - Human Trafficking
  - Consumer Education
  - Podcasts
- Insurance
  - General Information
  - Have You Received a Letter?
  - Involved in a Crash?
- Resources
  - Open Government
  - Crash and Citation Reports & Statistics
  - Cabinet and Legislature Reports & Statistics
  - Driver and Vehicle Reports & Statistics
  - Forms
  - Handbooks & Manuals
  - Hope Florida
  - Regulatory Plan
  - Related Links
- Locations
- Careers
  - Working at FLHSMV
  - Career Opportunities
  - Internships
  - Benefits
  - Veteran Resources
- Contact

Submenu

- Driver Licenses & ID Cards

## Driver Licenses & ID Cards

  - 🚗Renew or Replace Your License
  - 📑What to Bring
  - 🪪Florida's NEW Driver License and ID Card
  - $Fees
  - ⚠Emergency Contact Information
  - Driver Licenses & ID Cards
  - Education & Courses
  - Driver License Check & ID Tracking System
  - For Commercial Vehicle Drivers
  - Driver License Handbook
  - Florida Visitors
  - Military & Veterans Information
  - Driver Record
  - Name and Address Changes
  - New Resident
  - Make an Appointment
  - Motorist Modernization
  - Fraud
  - Have A Public Records Request?
  - Email Us!
- Motor Vehicles, Tags & Titles

## Motor Vehicles, Tags & Titles

  - 🚙Renew or Replace Your Registration
  - ✅Motor Vehicle Information Check
  - 🚗Fraud
  - $Fees
  - ⚠Emergency Contact Information
  - Liens & Titles
  - License Plates & Registration
  - Personalized and Specialty License Plates

Need Help?

- - - Dealers, Installers, Manufacturers, Distributors, and Importers
    - For Commercial Vehicle Drivers
  - ○ - Vessels
    - Military & Veterans Information
    - Disabled Person Parking Permits
    - Covered Farm Vehicles
    - Motorist Modernization
  - ○ - New Resident
    - Name and Address Changes
    - Make an Appointment
    - Have A Public Records Request?
    - Email Us!
- • Florida Highway Patrol

## Florida Highway Patrol

- ○ - 🚩Be a Trooper
    - 🚓Live Traffic Crash & Road Condition Report
    - 📄Traffic Crash Reports
    - 👤Emergency Contact Information
  - ○ - About FHP
    - Commercial Vehicle Enforcement
    - Specialized Areas
    - Be A Dispatcher
    - Troop Boundaries & Information
  - ○ - FHP Memorial
    - FHP Surveys
    - Member Recognition
    - Patrol Support
    - Covered Farm Vehicles
  - ○ - Contact FHP
    - Useful Info & Links
    - Sign up for AMBER, Silver, Purple and Blue Alerts

Buying a Vehicle

# Buying from a Licensed Dealer

Language | Idioma

Florida's motor vehicle laws protect consumers, when buying from a licensed Florida dealer. Visit our Licensed Dealers page for a complete list of licensed motor vehicle dealers in the state of Florida.

### New Vehicle Warranty

New cars carry a manufacturer's warranty, which will vary in months and/or miles. Some dealers offer extended warranties sold by the manufacturer or an insurance company. The Florida Department of Financial Services (DFS) regulates warranties that insurance companies offer. Buyers should read all warranties to find out what it covers, for how long, who will honor the warranty and what is required to keep it valid. Visit DFS's website regarding service warranties for more information.

**Used vehicles are not required to have a warranty.** Federal law requires all dealers to post a Buyers Guide in the window of each vehicle they offer for sale. The Buyers Guide notifies the buyer whether the vehicle is being sold with a warranty or AS-IS with no warranty of any kind. Buyers purchasing an AS-IS vehicle should be aware that all repairs are their responsibility. Buyers should read warranties carefully, especially the fine print, and be sure to obtain copies of all signed documents. Remember, there is no warranty or agreement unless it is in writing and signed by all parties. Get any promises made in writing.

### Florida's New Car Lemon Law

Florida's Lemon Law applies only to new or demonstrator motor vehicles or recreational vehicles sold or long-term leased in the state. **There is no Lemon Law for used cars in Florida.** When consumers buy or lease a new or demonstrator motor vehicle, they must receive the Consumer Guide to the Florida Lemon Law from the dealer or lessor. To obtain a guide, or to speak with someone about the Lemon Law, consumers in Florida may call the Lemon Law Hotline at (800) 321-5366. Consumers outside of Florida should call (850) 488-2221. Visit the Florida Attorney General's website for more information on the Lemon Law.

Back to Top →

### Trade-Ins

Need Help?

Get the assessed value of the vehicle being traded in writing on the contract. The value will not change unless more miles are put on the car than agreed to in ⋮ ntract, parts are removed, or the vehicle is damaged before trading it in.

Consumers can bring a vehicle with an existing lien into a dealership and sell their vehicle. The dealer will have 10 days to satisfy the existing lien prior to selling it to another customer.

**Buying a Used Car**

Before you start shopping for a used car, do some homework. It may save you serious money. Consider your driving habits, what the car will be used for, and your budget. Research models, options, costs, repair records, safety tests, and mileage — online and through libraries and bookstores.

Used cars are sold through a variety of outlets: franchised and independent dealers, rental car companies, leasing companies, used car superstores, and online. Ask friends, relatives, and co-workers for recommendations.

For more information on buying a used car, visit the Federal Trade Commission's consumer Information page.

**Buyers Guide**

The Federal Trade Commission's (FTC) Used Car Rule requires dealers to display a Buyers Guide in every used car they offer for sale, and to give it to buyers after the sale.

The Buyers Guide tells you:

- The major mechanical and electrical systems on the car, including some of the major problems you should look out for;
- Whether the vehicle is being sold "as is" or with a warranty;
- What percentage of the repair costs a dealer will pay under the warranty;
- To get all promises in writing;
- To ask to have the car inspected by an independent mechanic before you buy;
- To get a vehicle history report and to visit consumer.ftc.gov/usedcars for information on how to get a vehicle history report, how to check for safety recalls, and other topics;
- To ask for a Spanish Buyers Guide if the sale is conducted in Spanish;
- The dealer's contact information, including the contact for complaints; and
- To remember: spoken promises are difficult to enforce.

Keep the Buyers Guide for reference after the sale.

**Warranty**

As a vehicle owner, you want to ensure your factory/dealer warranty stays intact. The Magnuson-Moss Warranty Act may be helpful. The Magnuson-Moss Warranty Act is the federal law that governs consumer product warranties. Passed by Congress in 1975, the Act requires warrantors of consumer products to provide consumers with detailed information about warranty coverage. The Magnuson Moss Warranty Act outlines the requirements of a warrantor and explains that consumers are not required to use branded vehicle parts or complete repairs at a dealership to maintain the warranty. Independent repair shops can service the vehicle.



Your Warranty Explained--The Magnuson Moss Act

Need Help?

Learn more about keeping your vehicle warranty intact and your responsibility as a vehicle owner by visiting the Florida Chief Financial Officer Division of Consumer Services' Consumer Protections website.

## Sealing the Deal

### You Sign, You Buy – Understanding the Contract

Buyers should read and understand the purchase contract before signing. Many consumers mistakenly believe they have three days to cancel the purchase contract. **There is no cooling off period under Florida law.**

The contract should include the following information about the purchase:

- Whether the vehicle is being purchased with a warranty or AS-IS;
- Date the vehicle will be delivered;
- Other conditions of sale, including promises in writing on the contract; and
- Itemized list of costs including tax, title and registration fees.

### Signing the Contract

Under no circumstances should a buyer sign any blank forms. Obtain copies of all signed paperwork involved in the sale at the time the paperwork is prepared. If trading a vehicle, the buyer should maintain control of the title until the transaction is complete.

Once a deposit is made, if the customer changes his/her mind and decides not to purchase the vehicle, the decision may result in a lost deposit. If placing a deposit on a vehicle, be sure that the receipt and/or contract specify that it is refundable. Buyers should be certain that they understand all the terms of the contract.

Contracts are often written pending credit approval. In this case, the buyer may deposit a credit application fee and leave with the vehicle while the dealer begins processing the application. If the lending institution denies the credit application, the dealer may process the application with another lending institution but at a higher interest rate. Buyers should get all agreed upon terms in writing. If consumers have questions about whether a dealership has a license to finance vehicles, check with the Florida Office of Financial Regulation (OFR).

Buyers should receive copies of the following documents from the dealer at the time of signing:

- Motor vehicle purchase contract;
- Odometer statement from the dealer;
- Window disclosure labels or Buyer's Guide;
- Warranty or service agreement, if applicable;
- Finance contract, if applicable;
- Insurance contract;
- Copy of certification of pollution control devices or systems; and
- All other signed documents.

## Tax, Tag and Title

A licensed dealer is required to apply for a tag and title within 30 days, during which the buyer will be issued a temporary paper tag. Consumers should report issues receiving their tag and title **immediately** by faxing or mailing form HSMV 84901 to your nearest regional Division of Motorist Services' office, found on page 2 of the form.

**Florida law requires that all vehicles registered in the state be insured. Without proof of insurance, the dealer cannot complete the transfer of title and registration to the buyer.**

Dealers can charge only the actual amount of fees paid for tax, tag and title transfer. Generally, the tax, tag and title fees are not included in the contract; however, some dealers will charge a processing or handling fee. If they do, they must disclose it separately.

A licensed dealer may require the consumer to sign a cash on delivery (COD) form; meaning the dealer will pay up front for the registration of the vehicle and the consumer will reimburse the dealer upon delivery of the registration and, if no lien, title. If the consumer fails to pay for the title and registration, the dealer can place a stop on the vehicle registration until payment is received and the stop is cleared.

Back to Top →

## Consumer Tips for Buying from a Licensed Dealer

- Do your research. There are several online sources available to determine the value of your trade-in as well as the value of the vehicle you intend to purchase. If purchasing a pre-owned vehicle, visit the FLHSMV Motor Vehicle Information Check to verify the odometer reading and title.
- Carefully read window labels listing vehicle price and condition. Read the title, odometer statement and any warranties.
- Check the vehicle for outstanding recalls, visit nhtsa.gov/recalls.
- Test drive the vehicle.
- If purchasing a used vehicle, ask about the vehicle's title history, condition, mileage and use. Consider using a service that can provide details on the history of the vehicle you intend to purchase.
- Get all promises in writing on the contract.
- Read all documents thoroughly before signing to ensure information is correct.
- Do not sign a contract until you are ready to buy. Once you sign it, there is little, if anything, that can be done to cancel it.
- Never sign a blank document. It is a wise practice to enter "N/A" for "not applicable," where appropriate.
- Keep copies of all signed documents.

Need Help?



## Additional Resources

Florida Attorney General Lemon Law

Recall Search

Motor Vehicle Check

FLHSMV Complaint Form

National Automobile Dealers Association Web site

Motor Vehicle Fraud Brochure

Buying and Selling a Vehicle Brochure

Back to Top →

**Consumer Education**

- Buying a Vehicle
  - **Licensed Dealer**
  - Private Sales
- Selling a Vehicle
- Consumer Complaints & Resources
- Flooded Vehicles
- Fraud
  - Identity Theft & Driver License Fraud Protection
  - Motor Vehicle Fraud
- Low Speed Vehicles
- Mobile & Manufactured Home Safety
- Off-Highway and All-Terrain Vehicles
- Protect Yourself Against Staged Crashes
- Safety Warnings
- Vehicle Theft Prevention
- Vessels

- Privacy Statement
- Email Notice
- Disclaimer
- MyFlorida.com
- ADA Notice
- Contact Us

© Copyright 2014 – 2025 Florida Department of Highway Safety and Motor Vehicles. All Rights Reserved.

Need Help?

1                    UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
2                        JACKSONVILLE DIVISION

3     ISIAH ROBINSON and
      LISA ROBINSON, Each
4     and Individual,

5          Plaintiffs/Counter-Defendants,

6     v.                         CASE NO.: 3:24-cv-948-WWB-PDB

7     NATIONAL AUTOMOTIVE, INC.,
      a Florida corporation, and
8     ROBIN RAMAGHI, an individual,

9          Defendants/Counter-Plaintiffs.

10    _____/

11              **DEPOSITION OF LISA CLAYTON ROBINSON**

12                   Via Zoom Videoconference

13         DATE:       Tuesday, July 29, 2025

14         TIME:       10:34 a.m. to 1:11 p.m.

15         PLACE:      Zoom Videoconference
                       Palm Coast, Florida
16

17

18        Examination of the witness taken before:

19              Denice C. Taylor, FPR
              Notary Public, State of Florida
20

21

22

23              FIRST COAST COURT REPORTERS
                 2442 ATLANTIC BOULEVARD
24            JACKSONVILLE, FLORIDA 32207
                     (904)396-1050
25                  firstcoastcr.com

EXHIBIT "F"

```
 1                        APPEARANCES

 2

 3     JOSHUA FEYGIN, ESQUIRE

 4          Sue Your Dealer/Sue Your Credit Report
            Post Office Box 85293
 5          Hallandale, Florida 33008
            (954)228-5674
 6          josh@sueyourdealer.com

 7          Appearing, via Zoom Videoconference, on
            behalf of the Plaintiffs/Counter-Defendants.
 8

 9     KIMBERLY HELD ISRAEL, ESQUIRE

10          McGlinchey Stafford
            10375 Centurion Parkway, North
11          Suite 420
            Jacksonville, Florida 32256
12          (904)224-4452
            kisrael@mcglinchey.com
13
            Appearing, via Zoom Videoconference, on
14          behalf of the Defendants/Counter-Plaintiffs.

15

16          Also present via Zoom Videoconference:

17          Robin Byler-Ramaghi.

18

19

20

21

22

23

24

25
```

3

```
 1                      INDEX OF PROCEEDINGS

 2                                                    PAGE

 3  WITNESS:  LISA CLAYTON ROBINSON

 4  Direct Examination by Ms. Israel                    4

 5  Cross-Examination by Mr. Feygin                    88

 6  Redirect Examination by Ms. Israel                 92

 7  Certificate of Oath                                96

 8  Certificate of Reporter                            97

 9  Witness notification letter                        98

10  Errata Sheet                                       99

11                    DEPOSITION EXHIBITS

12  MARKED FOR IDENTIFICATION

13  NUMBER    DESCRIPTION

14    1    Retail Installment and Security Agreement   25

15    2    Bill of Sale/Buyer's Order                  27

16    3    As-is No Warranty document                  28

17    4    Customer consent to contact                 29

18    5    Federal Risk-Based Pricing Notice           30

19    6    State of Florida Odometer Statement         32

20    7    Buyer's Guide                               33

21    8    Power of Attorney                           33

22    9    Application for Title                       34

23   10    Odometer Disclosure Statement               36

24   11    Acknowledgment of Purchase                  38

25   12    Repossession Agreement                      40
```

```
 1                         -  -  -
 2                    LISA C. ROBINSON,
 3    having been produced and first duly sworn as a
 4    witness, testified as follows:
 5               THE WITNESS:  Yes, ma'am.
 6                    DIRECT EXAMINATION
 7    BY MS. ISRAEL:
 8         Q    Good morning, Mrs. Robinson.  Again, my name
 9    is Kim Israel.  I represent the defendants in the
10    lawsuit that you filed in Jacksonville against
11    National Automotive, Inc., and Robin Ramaghi.  You're
12    familiar with the lawsuit I'm referring to?
13         A    Yes, ma'am.
14         Q    Have you ever given a deposition before?
15         A    Probably about 30 years ago.
16         Q    Okay.  And was that -- what type of case was
17    that?
18         A    It was some military stuff.
19         Q    Okay.  Very good.  I will ask you questions.
20    Please, please, for the sake of creating a clear
21    record, let me finish my question before you begin
22    your answer; and, of course, I will do the same as you
23    are answering the questions.
24               If you would, to the extent that an answer
25    calls for a yes or no, please use the words rather
```

1              Do you see this document on my screen?

2        A    Yes, I do.

3        Q    Do you recognize your initials?  I'm going

4   to scroll down, ma'am, just on the form to try to

5   capture the section that has initials on it.

6              Do you recognize your initials on each of

7   those lines?

8        A    Yes, I do.

9        Q    Do you recognize your signature at the

10  bottom of this page on the left as next to co-buyer?

11       A    Yes, I do.

12       Q    Did you read this document before but signed

13  it?

14       A    No, I didn't.

15       Q    Mrs. Robinson, did you read any of the

16  documents that we have identified and discussed

17  already before you initialed or signed them?

18       A    Yes, I read -- I read most of them.  I

19  just -- this one, I just read the top of it where it

20  said they had a GPS on it.  So I didn't have an issue

21  with it, so. . .

22       Q    All right.  Do you recognize your husband's

23  initials and signature on this document?

24       A    Yes, it looks like it.

25             MS. ISRAEL:  We'll go ahead and mark this as

1    weird codes that he wasn't comfortable with.

2            And so I said, well, this couldn't be a car

3    with 118,000 miles, because I have driven Chevys in my

4    life that's got all these wiring problems.  So it

5    didn't make sense.  So I said, let me run this VIN

6    number and see what else I can come up with.

7        Q    Who was he speaking to that day on the 13th

8    at National Automotive?

9        A    You'll have to ask him.

10        Q    Okay.  Did he tell you about that phone

11    call?

12        A    Yes.  He was upset when he called me and --

13    and said that -- that -- something about he wasn't

14    going to get his deposit back and he doesn't want the

15    car, and the car had bad codes, and the person told

16    him that they don't have time for whatever he's

17    talking about.

18        Q    Did you go back at that time to review the

19    paperwork that you had signed in relation to the

20    purchase of the car?

21        A    I did not.

22        Q    Did you and he discuss the fact that you had

23    signed an as-is warranty or no warranty document in

24    relation to the purchase of the car?

25        A    Yes, we knew it was an as-is warranty to the

1    car.

2        Q    So why was he attempting to return it?

3        A    Because it could be as-is, but it should be

4    functioning if you're financing it.  So if it's not

5    functioning the way the person wants to -- wants to,

6    you know, have the car, they should have the right to

7    be able to make it right.

8            It's not -- it's not a normal purchase.  We

9    never had a car -- never had a car -- let me say this.

10   We never had a car in our whole relationship that

11   somebody wanted to return in two or three days.

12       Q    How was it not functioning at that time?

13       A    You have to ask him.

14       Q    You don't know the answer to that?

15       A    I know he didn't like the way it was riding.

16   I know it was given to us without oil in it.  I know

17   he didn't feel that he could pick up speed.  I know

18   those type of things about the car.  I've never driven

19   that car.

20       Q    Since the car was purchased, you have not

21   driven it once?

22       A    I have never driven that car ever.

23       Q    Okay.  Isn't it true, Mrs. Robinson, that

24   National Automotive actually did offer to give

25   Mr. Robinson his deposit back and tc terminate the