UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(Jacksonville Division)

CASE NO.: 3:24-cv-00948

ISIAH ROBINSON, and,
LISA CLAYTON ROBINSON,
Each an Individual,

    Plaintiffs/Counter-Defendants,

vs.

NATIONAL AUTOMOTIVE, INC., a
Florida Corporation, and
ROBIN RAMAGHI,
an individual

    Defendants/Counter-Plaintiffs.
_____/

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### i.   COUNTER-STATEMENT OF DISPUTED FACTS

1.   Disputed as to the second sentence; Defendant could not recall with certainty when it actually obtained title for the Equinox. *See* Ramaghai Dep. 72:18-24. Defendant completed mileage disclosures on the title at the time of the Robinson's transaction on September 08, 2023. Ramaghai Dep. 74:10-77:9. Further, the mileage disclosure completed by the Defendant on the title on behalf of Murray Ford (Ramaghai Dep. 77:10-12; 21-23) bears the date "9-1-23." DE 30-11, p.3.[1]

2.   Disputed that Equinox was sold shortly after NAI received; Defendant doesn't know when it was delivered. Ramaghai Dep. 58:3-6.

---

[1] Throughout the Statement of Undisputed Facts, Defendant has failed to comply with this Court's order mandating pinpoint citations to the record in support. D.E. 22, ¶ H.1, at 6. Despite the lack of precision, Plaintiffs will attempt to respond to the best of their abilities. Likewise, Defendant has improperly commingled multiple statement of facts in each paragraph.

    3.    Undisputed that a copy was signed; disputed insofar as the version relied upon by the Defendant is not a true and correct rendition of that contract. ECF No. 4 at ¶ 8; Sup. Aff. I. Robinson ¶ 2; Sup. Aff. I. Robinson ¶ 2.

    4.    Undisputed that a copy was signed; disputed insofar as the version relied upon by the Defendant is not a true and correct rendition of that contract. . ECF No. 4 at ¶ 9. 40; Sup. Aff. I. Robinson ¶ 3; Sup. Aff. I. Robinson ¶ 3.

    5.    Undisputed that a copy was signed; disputed insofar as the version relied upon by the Defendant is not a true and correct rendition of that agreement. . ECF No. 4 at ¶ 10, ECF No. 40. ; Sup. Aff. I. Robinson ¶ 4; Sup. Aff. I. Robinson ¶ 4.

    6.    Undisputed.

    7.    Disputed. Defendant could not recall with certainty when it actually obtained title for the Equinox. *See* Ramaghai Dep. 72:18-24. Defendant testified it completed mileage disclosures on the title at the time of the Robinson's transaction on Septemeber 08, 2023. Ramaghai Dep. 74:10-77:9. Further, the mileage disclosure completed by the Defendant on the title on behalf of Murray Ford (Ramghai Dep. 77:10-12; 21-23) bears the date "9-1-23." DE 30-11, p.3.

    10.    Disputed. Defendant could not recall with certainty when it actually obtained title for the Equinox. *See* Ramaghai Dep. 72:18-24. Defendant completed mileage disclosures on the title at the time of the Robinson's transaction on September 08, 2023. Ramaghai Dep. 74:10-77:9. Further, the mileage disclosure completed by the Defendant on the title on behalf of Murray Ford (Ramaghai Dep. 77:10-12; 21-23) bears the date "9-1-23." DE 30-11, p.3.[2]

---

[2] Defendant's Statement of Undisputed Facts omits paragraphs 8-9. To maintain consistency, Plaintiffs have numbered their responses accordingly.

11. Disputed. Plaintiffs never returned to the dealership nor could the Defendant identify with certainty when the Plaintiffs purportedly returned. I. Robinson Aff. ¶16; L. Robinson Aff. ¶16; Ramaghai Dep. 113:23-114:8; 117:11-20;119:17-20. GPS records reveal the Equinox never returned to the dealership. DE 68-2.

12. Disputed. Plaintiffs never returned to the dealership nor could the Defendant identify with certainty when the Plaintiffs purportedly returned. I. Robinson Aff. ¶16; L. Robinson Aff. ¶16; Ramaghai Dep. 113:23-114:8; 117:11-20;119:17-20. GPS records reveal the Equinox never returned to the dealership. DE 68-2. Plaintiffs never consented to the changes, authorized such changes or signed new documents. Robinson Aff. ¶¶13-15; L. Robinson Aff. ¶¶13-15.

13. Undisputed.

### ii.  ADDITIONAL UNDISPUTED FACTS

1. Mr. Robinson testified that, in purchasing the vehicle, he did not rely on any promises or representations beyond those contained in the written purchase documents. I. Robinson Dep. 44:23-45:1.

2. Mr. Robinson understood that the "as is" disclaimers applied solely to mechanical defects and not the mileage representations made by the Defendant. I. Robinson Supp. Aff. ¶ 5.

3. Mrs. Robinson understood that the "as is" disclaimers applied solely to mechanical defects and not the mileage representations made by the Defendant. L. Robinson Supp. Aff. ¶ 5.

4. The "As-Is" Agreement addresses only repairs of defects. DE 39 at 33.

5. The Buyer's Guide limits the disclaimer to "repairs after sale." DE 39 at 41.

### iii. MEMORANDUM OF LAW

#### a. A willful disregard for legal requirements demonstrates an intent to defraud sufficient to impose liability under the Odometer Act.

Defendant first argues that Plaintiffs have failed to adduce sufficient evidence to support a finding of intent to defraud. The Defendant ignores the multiple ways in which it violated the Act and its implementing regulations, each of which evince fraudulent intent through reckless disregard for what the law required.

The Supreme Court has authoritatively defined the very words at issue here: "[T]he words 'to defraud' commonly refer to wronging one in his property rights by dishonest methods or schemes and usually signify the deprivation of something of value by trick, deceit, chicane or overreaching." *McNally v. United States,* 483 U.S. 350, 358, 107 S.Ct. 2875, 2881 (1987) (internal quotes and citation omitted).

Constructive knowledge, recklessness, or even gross negligence in determining and disclosing the actual mileage traveled by a vehicle have been held sufficient to support a finding of intent to defraud under the statute. *Coleman v. Lazy Days RV Ctr., Inc.*, No. 8:05-CV-930-T-17TBM, 2007 U.S. Dist. LEXIS 50514, 2007 WL 2021832, at *2 (M.D. Fla. July 12, 2007); *Fowler v. Elegant Auto Fin. LLC*, 446 F. Supp. 3d 966, 969 (M.D. Fla. 2020); *Nieto v. Pence*, 578 F.2d 640, 642 (5th Cir. 1978).

In Odometer Act claims, intent to defraud is shown through circumstantial evidence. *Tusa v. Omaha Auto Auction, Inc.*, 712 F.2d 1248, 1253 (8th Cir. 1983) That is due to the fact that,

> [f]raudulent intent […] is too often difficult to prove by direct and convincing evidence. In many cases it must be inferred from a series of seemingly isolated acts and instances which have been rather aptly designated as badges of fraud. When these are sufficiently numerous they may in their totality properly justify an inference of a fraudulent intent; and this is true even though each act or instance, standing by itself, may seem rather

> unimportant.
>
> *Aiken v. United States*, 4th Cir., 1939, 108 F.2d 182, 183.

In the context of the Odometer Act, intent to defraud can be found if a dealer prevents the consumer from viewing the title that contains evidence of the mileage discrepancy. *Desamours v. Impact Auto. Depot, Inc.,* No. 21-24151-CV-ALTMAN/REID, 2022 U.S. Dist. LEXIS 115116, at *7 (S.D. Fla. June 29, 2022). Intent to defraud can be inferred from a dealer forging the consumer's signature on the title and not disclosing that the title stated, "not actual mileage." *See Barrett v. Brian Bemis Auto World,* No. 04 C 50149, 2006 U.S. Dist. LEXIS 2874, at *7-8 (N.D. Ill. Jan. 17, 2006). Fraudulent intent can likewise be inferred when a dealer accepts the transfer of a vehicle with an incomplete odometer disclosure statement. *See Mills v. Manse*, 535 N.E.2d 1378 (Ohio Ct. App. 1987). Altering an odometer disclosure after it is provided to the consumer, so that the later disclosure is accurate, is evidence that the dealer knew of the problem with the initial disclosure and shows intent to defraud. *Small v. Savannah Int'l Motors, Inc.*, 275 Ga. App. 12, 17, 619 S.E.2d 738, 743-44 (2005).

Here, the Defendant has undertaken each and every one of the above acts. Defendant withheld the certificate of title from examination and inspection. (SOF ¶ 11).[3] It provided mileage disclosures on extraneous documents (SOF ¶¶ 3-5), preventing the Robinsons from viewing the title's preexisting "NOT ACTUAL" designation (SOF ¶ 14) and from providing the mileage disclosures on the Equinox's title during the transfer. (SOF ¶¶ 11-15). Following the transaction, it used a non-secure power of attorney (SOF ¶ 18) with a concocted attorney-in-fact designation (SOF ¶ 19) to complete the odometer disclosure fields on the Equinox's title and forge the Plaintiffs' signatures, signing as both transferor

---

[3] As cited, "*SOF*" refers to the Plaintiffs' Statement of Material Facts. DE 69 at 2-8

Page 5 of 20

and transferee, all outside the presence of the Robinsons. (SOF ¶¶ 15, 20). Under federal law, forgery is defined as "the act of fraudulently making a false document or altering a real one to be used as if genuine," *Debaggis v. U.S. Bank, N.A. (In re Mortg. Elec. Registration Sys.*, 719 F. App'x 550, 552 (9th Cir. 2017), and includes any document "that purports to be genuine but is not because it has been falsely altered, completed, signed, or endorsed." 18 U.S.C. § 513(a). Florida law similarly defines forgery as the false making, altering, forging, or counterfeiting of certain instruments with intent to injure or defraud. *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-cv-61019, 2018 U.S. Dist. LEXIS 112752, at 16–17 (S.D. Fla. July 5, 2018) (citing Fla. Stat. § 831.01).

When taken in their totality each act above justify a finding of intent to defraud. *Yazzie v. Amigo Chevrolet, Inc.*, 189 F. Supp. 2d 1245, 1248 (D.N.M. 2001) (recognizing that unexplained departures from required title and disclosure procedures permit the inference of a knowing and intentional disregard of the Odometer Act to deceive purchasers). Contrary to the Defendant's assertions, Plaintiffs have indeed shown that there is no material fact in dispute.

The Defendant's reliance on Mr. Robinson's deposition testimony, specifically his belief that the salesperson was not "trying to trick" him, is legally irrelevant and factually immaterial. *See* DE 70 at 8. A plaintiff's subjective belief about the defendant's intent is not probative of the defendant's actual intent to defraud. To the contrary, that the plaintiff did not perceive the deception only underscores the strength and success of the defendant's scheme. A defrauded party's impression during the commission of the fraud does not, and cannot, control the legal determination of the perpetrator's intent.

Under both federal and Florida law, the intent to defraud is assessed objectively

based on the totality of the circumstances and independently of the victim's personal interpretation. Federal courts consistently hold that a plaintiff's belief about whether the defendant acted fraudulently is irrelevant. *See* 11 U.S.C. § 523(a)(2)(A); *Souch v. Princo (In re Princo)*, No. 22-20408, 2023 Bankr. LEXIS 518, at *8–9 (Bankr. E.D. Mich. Feb. 27, 2023); *Sheen Falls Strategies, LLC v. Keane (In re Keane)*, 560 B.R. 475, 491 (Bankr. N.D. Ohio 2016) (noting that actual fraud requires evidence of the defendant's state of mind, not the plaintiff's belief). Even in statutory schemes where recklessness is insufficient to show specific intent, fraud requires knowing falsehoods or omissions made with the purpose to deceive. *See* 15 U.S.C.S. § 6605.

Florida law follows the same principle: it is the defendant's knowledge and intent that matter, not a plaintiff's impression. Fraud in Florida requires that the defendant knowingly made a false statement with the intent to induce reliance, and the plaintiff relied to their detriment. See *Hernandez v. Andujar*, No. 8:23-cv-1780, 2024 U.S. Dist. LEXIS 37852, at *8–9 (M.D. Fla. Feb. 27, 2024); *Sec. Inv. Prot. Corp. v. Old Naples Sec., Inc. (In re Old Naples Sec., Inc.)*, No. 02-21699, 2005 Bankr. LEXIS 27, at *45–46 (Bankr. M.D. Fla. Jan. 5, 2005) (holding that fraudulent intent can be inferred from circumstantial evidence, and the plaintiff's belief is irrelevant to that inquiry).

In short, the defendant's intent must be determined through objective evidence- documentary proof, circumstantial facts, and statutory violations -not filtered through the lens of the Mr. Robinson's subjective understanding during the transaction. That he did not perceive the fraud is no defense; rather, it is evidence of how effective it was.

Moreover, the Defendant's reliance on *Witkowski v. Mack Trucks, Inc.*, 712 F. 2d 1352 (11th Cir. 1983) is also misplaced. Witkowski predates the 1986 amendments that

made the certificate of title the exclusive odometer disclosure and required the transferee's signature at transfer. *See* S. Rep. No. 99-47, at 1-2 (1986), reprinted in 1986 U.S.C.C.A.N. 5620, 5621; 49 U.S.C. § 32705(a); 49 C.F.R. § 580.5(c). It applied the earlier regime, 15 U.S.C. § 1988 and 49 C.F.R. § 580.4 (1976). This case arises under the post-1986 title-only framework and NHTSA rules strictly limiting powers of attorney and supplemental forms, *see* 49 C.F.R. §§ 580.5(g), 580.6(h), 580.13, 580.14, so the legal questions in *Witkowski* are inapposite.

The decision in *Witkowski* also rested on a record with no evidence of tampering and two odometers that matched and there, the court found no proof of intent to defraud. Here, in stark contrast, however, the title already carried a "NOT ACTUAL" designation before Defendant's acquisition (SOF ¶ 13) with a series of mileage entries in the title history exceeding the mileage represented to the Robinsons (SOF ¶ 12); Defendant accepted a blank odometer disclosure and back-filled mileage disclosures on the penultimate seller's behalf (SOF ¶ 42); and it later added "TMU/Not Actual" notations accompanying the mileage disclosures made to the Plaintiffs- after the sale and outside of the Plaintiffs' purview. (SOF ¶¶ 33, 35-36). Most critically, the Defendant in this case withheld the certificate of title and used an unauthorized power of attorney to replace title-based odometer disclosures. Withholding of a certificate title is a violation of Odometer Act and a dealership shows requisite intent to defraud by replacing title-based disclosures with a power of attorney. *Yazzie*, 189 F. Supp.2d at 1249. In sum, there are multiple and independent ways in which fraudulent intent has been shown by the Robinsons.

The Defendant's opposition devotes pages to why dealers are not required to obtain a CARFAX report or a title history and cites a DHSMV website "consumer tips"

page, which utterly fails to support the proposition being advanced- namely, whether or not a dealer must give a CARFAX report or obtain a title history has nothing to do with the independent federal duty imposed on transferors, such as the Defendant, to make and present truthful and accurate mileage disclosures solely on the title and at the time of transfer. *See* 49 C.F.R. § 580.5(c); *Tuckish v. Pompano Motor Co.*, 337 F. Supp. 2d 1313, 1318 (S.D. Fla. 2004) (violation where dealer failed to provide the actual title for examination and signature at the time of sale). The record before the Court makes clear there is no dispute of material fact that the Defendant failed to meet these obligations. (SOF ¶¶ 11, 15, 20). Defendant's Motion ought to be denied and summary judgment entered in the Plaintiffs' favor.

### b. No dispute of material fact exists that the Robinsons have established the requisite scienter for fraud.

The Defendant next contends that summary judgment is warranted because "Plaintiffs have no evidence upon which to base a finding that [NAI] knew that the mileage on the Vehicle was not accurate at the time of the sale." DE 70 at 11. This argument fails both legally and factually.

Florida law does not limit scienter to proof of actual knowledge of falsity; it may be established where the representation was made without knowing whether it was true or false, or under circumstances in which the representor ought to have known of its falsity because of its position and means of knowledge. *Joiner v. McCullers*, 158 Fla. 562, 565, 28 So. 2d 823, 824 (1947); *Nantell v. Lim-Wick Constr. Co.*, 228 So. 2d 634, 637 (Fla. Dist. Ct. App. 1969). A misrepresentation of a material fact made to induce reliance and resulting in damages is actionable. *Finney v. Frost*, 228 So. 2d 617 (Fla. Dist. Ct. App. 1969); *Nantell*, 228 So. 2d at 637. Mileage is indisputably material, as Congress has found

that buyers rely on odometer readings as an index of condition and value. 49 U.S.C. § 32701(a)(1)–(3).

The record supports scienter under all three *Joiner* pathways. First, actual knowledge: Defendant's corporate representative testified that she completed the mileage entries on the certificate of title on the same day as the Robinson transaction (SOF ¶ 54). That title already reflected a "NOT ACTUAL" mileage designation prior to the Defendant's acquisition. (SOF ¶¶ 13, 47). The only reasonable inference is that the Defendant had the title in hand and knew the "actual mileage" statements were false when made. Even assuming a factual dispute as to when the Defendant obtained the title, scienter still exists under the second and third *Joiner* pathways. The Defendant made categorical "actual mileage" assertions in multiple documents- including the Odometer Disclosure Statement, Application for Certificate of Title (HSMV 82040), Odometer Acknowledgment (HSMV 82933), Bill of Sale, and Retail Installment Sales Contract (SOF ¶¶ 3-6). Yet the Defendant had no factual basis for those unqualified affirmations and ignored readily available means of verification.

Federal law requires Defendant to disclose accurate mileage on the title presented to and signed by the buyer at the time of transfer, with power-of-attorney or supplemental forms permitted only in narrow, inapplicable circumstances. *See* 49 U.S.C. § 32705(a)(1)–(3); 49 C.F.R. §§ 580.5(c), 580.5(g), 580.6(h), 580.13. These provisions necessarily placed Defendant in a "special situation" with defined means of knowledge, triggering a duty to know the truth before certifying "actual mileage." Having been required to possess and disclose on the title itself, Defendant should have known its representations were false, given the visible "NOT ACTUAL" designation. As one court

Page **10** of **20**

aptly noted, "[c]laiming ignorance, even truthfully, is not enough to avoid liability for giving a certification showing an odometer figure rather than 'unknown.' Care must be taken to learn and reveal the facts, rather than care to avoid or hide them." *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387 (D. Neb. 1977).

The remaining elements are satisfied on the record: the "actual mileage" representations were material, induced the purchase and the Plaintiffs completed the sale in reliance on those misrepresentations. I. Robinson Aff. ¶¶ 9 -11; L. Robinson Aff. ¶¶ 9-11. And, they suffered financial harm from the misstated mileage in the form of buying a vehicle they would not have otherwise purchased I. Robinson Aff. ¶ 12; L. Robinson Aff. ¶ 12. The Motion must fail as to Count II as a result.

### c. No dispute of material fact exists that the Robinsons have also established the requisite scienter for fraudulent inducement.

The Defendant contends that Plaintiffs' fraudulent inducement claim should fail for the same reasons it challenges the fraud claim. *See* DE 70 at 12. However, the same legal and factual grounds that defeat Defendant's argument on fraud equally compel denial of its motion as to fraudulent inducement. The claims are distinct in form but rest on overlapping facts that, when viewed in the light most favorable to Plaintiffs, preclude summary judgment.

Defendant's position that somehow Plaintiffs must show subjective intent to defraud in order to prove fraudulent inducement is contrary to Florida law on the tort . The elements of a fraudulent inducement claim are: "(a) the representor made a misrepresentation of a material fact; (b) the representor knew **or should have known** of the falsity of the statement; (c) the representor intended that the representation would induce another to rely and act on it; and (d) the plaintiff suffered injury in justifiable reliance

on the representation." *White Holding Co., Ltd. Liab. Co. v. Martin Marietta Materials, Inc.*, 423 F. App'x 943, 945 (11th Cir. 2011). (emphasis supplied).

As previously discussed, the evidence in this case satisfies those elements. Defendant represented in multiple transactional documents, such as the Odometer Disclosure Statement, Application for Certificate of Title, and Odometer Acknowledgment, that the Equinox's odometer reading of 118,245 miles was "actual." (SOF ¶¶ 3-5). Yet the Defendant's corporate representative admitted that she personally completed the mileage disclosure on the certificate of title on the very date of the Robinsons' purchase (SOF ¶54), and that the certificate already bore a "NOT ACTUAL" designation on its face (SOF ¶¶13-47). The Defendant, therefore, either knew its representations were false or made them with reckless disregard for the truth. The Odometer Act required the dealership to make accurate title-time disclosures on the title presented to the transferee. 49 U.S.C. § 32705(a)(1)–(3); 49 C.F.R. § 580.5(c). By virtue of Congressional mandate, the Dealership had to make the disclosures on the title itself and therefore should have known that the mileage disclosures it was making were inaccurate in light of the "NOT ACTUAL" designation on its face. By disregarding that statutory duty and affirmatively certifying "actual" mileage while the branded title was in its possession, or at the very least should have been in its possession, Defendant acted at least recklessly, satisfying the scienter requirements.

And, as discussed *supra*, the Defendant's remaining elements of materiality, intent to induce, reliance, and damages are also met. Mileage is a material fact affecting value and safety, and the record shows that Defendant's representations were designed to induce Plaintiffs to purchase and finance the vehicle. The Plaintiffs relied on those

statements in entering the transaction and sustained pecuniary injury once the true high-mileage condition was revealed. See *Lou Bachrodt Chevrolet*, 570 So. 2d at 308 (fraudulent-inducement claim arises where buyer acts in reliance on false vehicle representations). Thus, under the controlling Florida authorities addressing fraudulent inducement, the evidence affirmatively establishes each element. Summary judgment for Defendant on Count III must therefore be denied.

### d. Having made an express warranty, defendant cannot negate it through disclaimers.

Defendant's argument misstates both the nature and effect of an "as-is" disclaimer when an express warranty has been created by affirmation of fact or promise under Fla. Stat. § 672.313 (U.C.C. § 2-313).

#### i. Defendant's mileage representations created an express warranty.

Under § 672.313(1)(a), an express warranty arises from "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," and under § 672.313(1)(b), from "[a]ny description of the goods which is made part of the basis of the bargain." Once created, such a warranty cannot be negated by general "as-is" language or boilerplate disclaimers. Section 672.316(1) makes clear that any attempted limitation is "inoperative to the extent that such construction is unreasonable."

Defendant's mileage statements declaring 118,245 "actual" miles in the Odometer Disclosure Statement, Title Application, Odometer Acknowledgment, Bill of Sale, and Retail Installment Sales Contract (SOF ¶¶ 2-6) were explicit affirmations of fact that formed part of the basis of the bargain. See *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1100 (11th Cir. 1983) (statements of fact forming part of the basis

of the bargain constitute express warranties). Plaintiffs relied on those representations in purchasing the Equinox (I. Robinson Aff. ¶¶ 9-11; L. Robinson Aff. ¶¶ 9-11), and the Federal Odometer Act independently required those disclosures to be truthful. *See* 49 U.S.C. § 32705(a); 49 C.F.R. § 580.5(c). Having chosen to certify "actual mileage," Defendant made an express warranty that cannot be waived through disclaimers. *See Curry Motor Co. v. Hasty*, 505 So. 2d 347 (Ala. 1987); *Gobran Auto Sales, Inc. v. Bell*, 783 S.E.2d 389, 394 (Ga. Ct. App. 2016). The undisputed evidence shows the Defendant's mileage statements in the transaction resulting in this litigation were false. The title already bore a "NOT ACTUAL" designation (SOF ¶¶ 13, 47), and the title history reveals a steadily increasing mileage. (SOF ¶ 12.) The breach occurred when Defendant delivered the vehicle with those inaccurate disclosures. Because the mileage representations, not the disclaimers, formed the basis of the bargain, the "as-is" clauses are repugnant to the express warranties and legally ineffective to negate the express warranty.

The Defendant's reliance on *Witkowski v. Mack Trucks, Inc.*, 712 F.2d 1352 (11th Cir. 1983) provides little guidance for the Court. The opinion contains no discussion suggesting that mileage representations formed the basis of any warranty, nor did the court consider whether affirmative odometer disclosures could constitute express warranties. By contrast, in *Robinson*, the dealership's express warranty claim arises directly from written representations concerning the vehicle's mileage, statements mandated by federal regulation to be truthful and accurate on the title and accompanying documents. Thus, *Witkowski*'s vague reasoning about disclaimers that are not specifically tied to mileage representations provides no guidance as to the issues before the Court.

Page **14** of **20**

      **ii.** **Defendant's disclaimer carved out the very representations made.**

The very disclaimers the Defendant relies upon fail to support its position that it disclaimed the express affirmation that the mileage was accurate, given the language of its own disclaimers.

Crucially, the Buyer's Order states that:

> You are purchasing the Vehicle based upon your personal inspection, and are not relying upon any opinion, statement, promise or representation of the salesperson, or any other of our employees **that is not contained in the written agreements you are signing today**. ("Carve Out.").

[DE 69-1 at 3](emphasis supplied).

The Odometer Disclosure Statement, Title Application, and Odometer Acknowledgment each represented that the vehicle's mileage was 118,245 and that it was actual. (SOF ¶¶ 3-5). Same for the Bill of Sale and Retail Installment Sales Contract. (SOF ¶¶ 6). As correctly noted by the Defendant, "[u]nder Florida law, where two or more documents are executed by the same parties, at or near the same time and concerning the same transaction or subject matter, the documents are generally construed together as a single contract." *Clayton v. Howard Johnson Franchise Systems, Inc*., 954 F. 2d 645, 648 (11th Cir. 1992). Thus, these documents were part and parcel to the universe of written agreements signed by the Robinsons. In the absence of a disclosure to the contrary, the logical and reasonable conclusion was that the disclosure of the mileage therein was accurate. And the Plaintiffs certainly believed that was the case. (SOF ¶ 7). Given that these representations were expressly made in the written agreements signed by the Robinsons, they fall squarely within the Carve Out found in the Buyer's Order form.

The Alabama Supreme Court's decision in *Curry Motor Co. v. Hasty*, 505 So. 2d 347 (Ala. 1987), is directly on point. In *Curry*, the dealer attempted to rely on a broad

disclaimer of warranties in the bill of sale, which stated that the vehicle was sold "as is" with no warranty "as to mechanical condition, equipment, previous use, year and model, or mileage." *Id.* at 350. However, the Alabama Supreme Court rejected that defense because the disclaimer itself carved out representations "specifically set forth in writing by an authorized representative of Seller," and the dealer had, on the bill of sale, specifically listed the odometer reading. The court held that these written representations created binding express warranties, despite the general disclaimer. *Id.* at 350–51 ("there were express warranties made in writing by the seller").

That reasoning applies squarely to the facts here. Where a contract includes a general disclaimer but expressly preserves warranties "specifically set forth in writing," the specific controls over the general. In *Curry*, the bill of sale listed the vehicle's mileage as "88,419," and the court affirmed a breach-of-warranty verdict based on that written statement alone. *Id.* at 351.

The same logic governs here. Defendant's Buyer's Order includes a reservation of warranties "contained in the written agreements you are signing today." The contemporaneously executed Odometer Disclosure Statement, Title Application, Odometer Acknowledgment, and Retail Installment Sales Contract each affirmatively state "118,245" miles. These representations fall squarely within the express written warranty exception to the general "as is/no warranty" language and operate as binding affirmations of fact, just as in *Curry*.

This Court may properly consider the Alabama Supreme Court's opinion in *Curry* because federal courts routinely rely on state high court decisions when interpreting or applying state law, even where the case arises in a different jurisdiction. See *WM Mobile*

*Bay Envtl. Ctr., Inc. v. City of Mobile Solid Waste Auth.*, 972 F.3d 1240, 1244–45 (11th Cir. 2020) (certifying questions of Alabama law to the Alabama Supreme Court and deferring to its interpretation); *Barnes v. Atl. & Pac. Life Ins. Co.*, 530 F.2d 98, 99 (5th Cir. 1976) (same); *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003). Indeed, the Eleventh Circuit and its predecessor courts have consistently recognized the Alabama Supreme Court as the authoritative voice on Alabama law, and federal courts give full effect to its holdings when applying or predicting state law. See, e.g., *McGuire Oil Co. v. Mapco, Inc.*, 986 F.2d 444, 446 (11th Cir. 1993); *Clark v. Riley*, 595 F.3d 1258, 1264 (11th Cir. 2010).

Moreover, Florida courts, including this District, have relied on Alabama law when relevant, consistent with principles of comity and cooperative judicial federalism. *See*, e.g., *Nicholson v. Good Samaritan Hosp.*, 145 Fla. 360, 364 (Fla. 1940); *Heartland Express, Inc. v. Farber*, 230 So. 3d 146, 149 (Fla. 1st DCA 2017); *Baker v. Bennett*, 633 So. 2d 91, 93 (Fla. 4th DCA 1994); *Lescard v. Keel*, 211 So. 2d 868, 869–70 (Fla. 2d DCA 1968). Accordingly, this Court should give due weight to *Curry*'s reasoning, which is not only directly applicable, but indistinguishable from the facts presented here.

### iii. A factual dispute exists over the scope of the disclaimers.

The record reveals that the Parties sharply disagree over the scope of the "as-is" provisions. Defendant contends that these clauses broadly waived all representations concerning the Equinox, including its mileage. Yet, none of the cited documents expressly disclaim mileage representations. Indeed, the "As-Is" Agreement addresses only repairs of defects (ADDT'L FACTS ¶ 4), and the Buyer's Guide limits the disclaimer to "repairs after sale." (ADDT'L FACTS ¶ 5). Mr. Robinson understood and expected that all material representations, including the vehicle's mileage as it was disclosed to him at the time of

sale, were memorialized in the documents he signed at the purchase. (ADDT'L FACTS ¶ 1). Simply put, both Mr. and Mrs. Robinsons' understood that the "as is" disclaimers operated solely with respect to mechanical defects. (ADDT'L FACTS ¶¶ 2-3). As Florida courts recognize, "[t]he most prominent principle in the construction of warranties is the ascertainment of the intentions of the parties in light of the surrounding circumstances." *Knipp v. Weinbaum*, 351 So. 2d 1081, 1085 (Fla. Dist. Ct. App. 1977). At a minimum, these differing interpretations create a jury question as to the parties' mutual understanding. *Id.*; *See also Holl v. Talcott,* 191 So.2d 40 (Fla.1966).

### iv. To apply a disclaimer to federally mandated disclosures would contravene public policy.

The Court must also be mindful of the upshot of the Defendant's position. If accepted, it would let a contractual disclaimer nullify the accuracy of federally mandated mileage disclosures, contrary to the Odometer Act's text and purpose to ensure the accuracy of mileage statements so that consumers may rely on them when deciding whether to purchase a vehicle. *See* 49 U.S.C. §§ 32701(a-b). Courts construing similar disclosure regimes reject waivers that undercut consumer-protection mandates, holding such provisions unenforceable as against public policy. See *Holt v. O'Brien Imports of Fort Myers, Inc.*, 862 So. 2d 87, 89 (Fla. 2d DCA 2003); *White v. Ferco Motors Corp.*, 260 So. 3d 388, 391 (Fla. Dist. Ct. App. 2018); *Nw. Nat'l Cas. Co. v. McNulty*, 307 F.2d 432, 442–43 (5th Cir. 1962) (waiver doctrines disfavored when they contravene public policy). Allowing a dealer to invoke an *as-is* clause to disclaim responsibility for mileage affirmations would run directly counter to the public policy and statutory purposes of the federal Odometer Act. The Court should not condone the Defendant's position.

### e. Written "actual mileage" affirmations go to material condition and thus qualify as MMWA warranties despite "as-is" language

Page **18** of **20**

Defendant's motion misreads the Magnuson–Moss Warranty Act and ignores Congress's express findings about the import of mileage representations.

The Magnuson–Moss Warranty Act authorizes "damages and other legal and equitable relief" to a consumer damaged by a supplier's failure to comply with obligations "under this chapter, or under a written warranty." 15 U.S.C. § 2310(d)(1); *see Am. Honda Motor Co. v. Cerasani*, 955 So. 2d 543, 545 (Fla. 2007).

Remedies under the MMWA derive largely from state law. *See* 15 U.S.C. § 2311(b)(1); *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 453 (Fla. 3d DCA 2005) (state law governs damages under the MMWA). Once Defendant's mileage certifications are recognized as express warranties, Florida's U.C.C. provides the substantive remedies, including revocation of acceptance where a nonconformity substantially impairs value. §§ 672.714(2), 672.715, 672.608, Fla. Stat.; see *Tom Bush Volkswagen, Inc. v. Kuntz*, 429 So. 2d 398, 399–401 (Fla. 1st DCA 1983). Revocation, at is core, is an equitable remedy. *McGoey v. Sun Tobacco, Inc.*, 941 So. 2d 474 (Fla. 3d DCA 2006).

Congress determined that purchasers "rely heavily on the odometer reading as an index of the condition and value of motor vehicles," that they are "entitled to rely on the odometer reading as an accurate indication of the mileage," and that accurate mileage "assists a purchaser in determining a vehicle's safety and reliability." 49 U.S.C. § 32701(a)(1)–(3). In light of those findings, a written certification of "118,245 actual miles" is not peripheral sales language; it is a written affirmation of fact about the product's material condition and expected performance that goes to the core of the bargain. SOF

The MMWA defines a written warranty to include any written affirmation of fact made in connection with the sale that relates to the nature of the material or workmanship

Page **19** of **20**

and becomes part of the basis of the bargain. 15 U.S.C. § 2301(6)(a). Defendant's mileage certifications in the Odometer Disclosure Statement, Title Application, Odometer Acknowledgment, Bill of Sale, and Retail Installment Sales Contract are written affirmations that the vehicle had only the use, wear, and degradation implied by that mileage, which directly concerns the vehicle's materials and workmanship and the level of performance a buyer can reasonably expect. And as discussed *supra*, these warranties could not be disclaimed. To the extent the Court disagrees, there is a dispute of material fact as to the scope of the disclaimer, which must be left to the jury to resolve. *Knipp*, 351 So. 2d at 1085.

### iv. CONCLUSION

For these reasons, the Defendant's Motion for Summary Judgment is due to be denied, *in-toto*.

Respectfully submitted on October 30, 2025:

> */s/ Joshua E. Feygin*
> **JOSHUA FEYGIN, ESQ.**
> FL Bar No.: 124685
> Email: Josh@sueyourdealer.com
> **SUE YOUR DEALER – A LAW FIRM**
> 4601 Sheridan St #205,
> Hollywood, FL 33021
> Tel: (954) 228-5674
> Fax: (954) 697-0357
> *Counsel for the Plaintiffs*

### CERTIFICATE OF SERVICE

I certify that on Thursday, October 30, 2025, a copy of the foregoing was filed via the Court's Electronic Filing system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> */s/ Joshua E. Feygin*
> JOSHUA FEYGIN, ESQ.
> FL Bar No.: 124685