UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ISIAH ROBINSON, and, LISA CLAYTON
ROBINSON, Each an Individual,

        Plaintiffs,

vs.

NATIONAL AUTOMOTIVE, INC., a Florida
corporation, and ROBIN RAMAGHI, an
individual,

        Defendants.

Case No. 3:24-cv-00948

---

**DEFENDANT NATIONAL AUTOMOTIVE, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW Defendant, NATIONAL AUTOMOTIVE, INC., a Florida
corporation ("NAI"), by and through its undersigned counsel, and files this Response in
Opposition to Plaintiffs' Motion for Partial Summary Judgment (the "Motion") (D.E. 69),
and in support hereof states:

**STATEMENT OF MATERIAL FACTS IN DISPUTE**

1.     In early September 2023, NAI purchased, as part of a wholesale lot,
several vehicles from Murray Ford, and among those was a used 2011 Chevrolet
Equinox, VIN ending in 4389 (the "Vehicle"). *See* the Affidavit of Robin Ramaghi
attached hereto as Exhibit "A" at ¶ 4.

2.     On September 8, 2023, Plaintiffs came to NAI to look at, and test drive,
the Vehicle. *See* Exh. "A" at ¶ 10; D.E. 71, at Exh. "A", Comp. Exh. 2; and the Affidavit
of Christopher Caldwell attached hereto as Exhibit "B" at ¶ 4. At Plaintiffs' request, Mr.
Caldwell provided Plaintiffs with a set of the unsigned contract documents to review

while they took the Vehicle for a test drive. *See* Exh. "B" at ¶ 6; D.E. 71, at Exh. "A", Comp. Exh. 2; the Motion, Exh. 8 at 87:25-88:2; 98:12-20; 107:5-108:21.[1]

3.    At the time of the sale on September 8th, NAI did not have the original Certificate of Title from Murray Ford yet. So, when preparing the actual contract documents for Plaintiffs to sign, Mr. Caldwell used the mileage of 118,245 shown on the Vehicle's odometer. This was the only information NAI had at the time to identify and/or disclose the Vehicle's mileage. *See* the Motion, Exh. 8 at 100:20-23; Exh. "A" at ¶¶ 12-13; Exh. "B" at ¶ 8.[2]

4.    On or around September 11th, NAI discovered for the first time that the milage on the odometer of the Vehicle was reported to be "not actual," when NAI received the original Certificate of Title from Murray Ford. *See* the Motion, Exh. 8 at 72:18-24; Exh. "A" at ¶ 22; Exh. "B" at ¶¶ 10- 11. NAI immediately called the Plaintiffs to notify them of the issue and to have them come back to NAI to discuss their options. *See* Exh. "A" at ¶ ¶ 22-23; Exh. "B" at ¶ ¶10, 12-13, 17.

5.    Until it received the original Certificate of Title, NAI had no reason to know or suspect that the mileage on the Vehicle was not accurate. *See* Exh. "A" at ¶¶ 6, 7, 9 and 12; Exh. "B" at ¶ ¶ 8, 10, 17.

6.    On September 14, 2023, Plaintiffs returned to NAI, where Mrs. Ramaghi and Mr. Caldwell explained to them that the Certificate of Title for the Vehicle reflected

---

[1] References to Mrs. Ramaghi's deposition testimony filed by Plaintiffs with their Motion (D.E. 69-8) will follow this format - page number:line numbers. Attached hereto as Exhibit "C" is Mrs. Ramaghi's Errata Sheet corresponding with her deposition testimony.
[2] Plaintiffs allege that NAI "withheld the certificate of title" from them at the time of transfer but rely solely on their own Declarations in support of this accusation. Regardless, they admit that NAI disagrees and asserts otherwise (*see* the Motion at ¶ 34), which in and of itself is a genuine issue of material fact in dispute.

that the mileage was "not actual." Mrs. Ramaghi explained to the Robinsons what "not actual" meant regarding the mileage. *See* the Motion, Exh. 8 at 118:1-9; Exh. "A" at ¶ ¶ 23-24; Exh. "B" at ¶ 12; D.E. 71, at Exh. "A", Comp. Exh. 2.

7.    During this conversation, Mrs. Ramaghi also gave Plaintiffs the chance to return the Vehicle to NAI, terminate the contract without any further financial obligation to NAI, and get a refund of their $2,000 down payment. Plaintiffs told Mr. Caldwell and Mrs. Ramaghi that they did not want to do that but instead wanted to keep the Vehicle. *See* the Motion, Exh. 8 at 163:2-23; Exh. "A" at ¶ 23; Exh. "B" at ¶ ¶ 13-14; D.E. 71, at Exh. "A", Comp. Exh. 2.

8.    During this same meeting, and because Plaintiffs chose to keep the Vehicle rather than return it, Plaintiffs re-signed the contract documents in front of both Mr. Caldwell and Mrs. Ramaghi. Then, in Plaintiffs' presence and with their knowledge and permission, Mrs. Ramaghi put the notation of "TMU" on each contract document that included the Vehicle's mileage. *See* the Motion, Exh. 8 at 118:2-9 and 120:3-121:6; and Exh. "A" at ¶ 24; Exh. "B" at ¶ 14.

9.    Once Plaintiffs signed the contract documents, Mr. Caldwell then signed the Retail Installment Contract and Security Agreement, the Odometer Disclosure Statement, the Bill of Sale, the Warranty Disclaimer, the Separate Odometer Disclosure Statement and Acknowledgment, Condition of Sale, Repossession Agreement, and the Application for Certificate of Motor Vehicle Title on behalf of NAI. *See* the Motion, Exh. 8 at 117:7-25; Exh. "B" at ¶¶ 15-16.

10.    The documents were re-signed on September 14, 2023, but were backdated to reflect the original sale date of September 8, 2023, because NAI had

already issued a temporary tag for the Vehicle and would not have been able to issue another/second temporary tag. *See* Exh. "B" at ¶ 16.

11.  On March 28, 2025, Plaintiffs filed their Amended Complaint (D.E. 30), wherein they alleged they signed a variety of documents in relation to the purchase of the Vehicle from NAI.  A few of the attached documents, however, are not even signed by or on behalf of NAI.  *See, e.g.* Exh. A, B and C.

12.  On April 29, 2025, NAI filed its Amended Answer and Affirmative Defenses to Verified Amended Complaint for Damages and Incidental Relief and Amended Counterclaim (D.E. 39), which attached what NAI asserts are the operative contract documents between the parties.  Contrary to the unsigned exhibits attached to Plaintiffs' Complaint, NAI attached contract documents actually signed by Plaintiffs and NAI. *See, e.g.* Exh. A, B, C, F, J, K and L.

## ARGUMENT

Plaintiffs' Motion should respectfully be denied in all respects as there are genuine issues of material fact in dispute precluding the entry of summary judgment in Plaintiffs' favor as to their claims and NAI's affirmative defenses. For example, the parties' meeting at NAI's office on September 14, 2023, is a genuine material fact in dispute, especially because whether there was a meeting on September 14th bears directly on which are the operative contract documents between the parties, and those facts are likewise at the heart of Plaintiffs' claims and NAI's affirmative defenses. The Court cannot weigh conflicting evidence, nor make credibility determinations, in a summary judgment context.  For these reasons alone, the Motion must be denied.

## I.     Standard of Review

In the Eleventh Circuit, "[s]ummary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Wright v. Sumter Cnty. Bd. of Elections and Registration*, 657 Fed. Appx. 871, 872 (11th Cir. 2016) (internal citations omitted) (quoting Fed. R. Civ. P. 56(a)). "In determining whether the moving party has satisfied the burden of proof, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party." *800 Adept, Inc. v. Murex Sec., Ltd.,* No. 6:02-cv-1354-Orl-28DAB, 2006 WL 5359053, at *3 (M.D. Fla. Aug. 25, 2006) (internal citation omitted). "A court 'may not weigh conflicting evidence or make credibility determinations of [its] own.'" *Buending v. Town of Redington Beach*, 10 F. 4th 1125, 1130 (11th Cir. 2021) (citing *Jones v. UPS Ground Freight*, 683 F. 3d 1283, 1292 (11th Cir. 2012)); *Wright*, 657 Fed. Appx. at 872 (citing *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F. 3d 1149, 1159 (11th Cir. 2015); *Open Sea Dist. Corp. v. Artemis Dist., LLC*, 692 F. Supp. 3d 1151, 1176 (M.D. Fla. 2023); and *800 Adept, Inc.,* 2006 WL 5359053, at *3. "If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then a court must not grant summary judgment." *800 Adept, Inc.,* 2006 WL 5359053, at *3.  In this instance, Plaintiffs have not satisfied their burden, and the Motion should respectfully be denied.

## II.     Count I – Alleged Violation of the Federal Odometer Act

To establish a violation of the Federal Odometer Act (the "Act"), a plaintiff must present evidence showing (1) that the defendant violated the Act or its regulations, (2)

with intent to defraud. *Bertolotti v. A&I Int'l Motor Corp.,* No. 16-22185-CIV, 2016 WL 6804624, at *2 (S.D. Fla. Nov. 17, 2016) (internal citations omitted); *Coleman v. Lazy Days RV Venter, Inc.*, Case No. 8:05-cv-00930-T-17TBM, 2007 WL 2021832, at *1 (M.D. Fla. July 12, 2007); *see also,* the Motion, p. 10.  Plaintiffs allege that NAI violated the Act by (i) providing false mileage statements and (ii) accepting an incomplete written disclosure regarding the Vehicle's mileage. *See* the Motion, pp. 10, 12.  NAI disputes Plaintiffs' allegations. *See* Exhibits "A" and "B".  In addition, Plaintiffs' "evidence" that NAI intended to defraud them are their own accusations that NAI made "post-sale alterations" to the contract documents, accusations that are directly contradicted by NAI's Affidavits. The parties' conflicting Affidavits constitute genuine issues of material fact in dispute, would require the Court to weigh conflicting evidence and assess the credibility of the parties, and thus summary judgment is not proper.

## A. Alleged violation of 49 U.S.C. § 32705(a)(2) by providing false mileage statements

Plaintiffs allege that NAI told them the Vehicle had 118,245 actual miles and NAI gave them documents that disclosed the same mileage. *See* the Motion, p. 11. They further allege that, as part of its scheme to defraud them, NAI did not sign any of the documents before giving them copies. *Id.* Notably, Plaintiffs do <u>not</u> claim they asked NAI for signed copies and were turned down. NAI has explained how and why Plaintiffs obtained an unsigned set of the contract documents, which disputes Plaintiffs' allegations. *See* the Motion, Exh. 8 at 87:25-88:2; 98:12-20 and 107:5-108:13; Exh. "B" at ¶ 6. NAI has also explained that Plaintiffs returned to NAI after the test drive on September 8, 2023, and bought the Vehicle, during which contract documents were signed. *See* Exh. "B" at ¶¶ 5, 7 and 9.  NAI did not yet have the original Certificate of

Title on September 8th. *See* Exh. "A" at ¶ 12; Exh. "B" at ¶ 8. Further, NAI has explained that, upon receipt of the Certificate of Title from Murray Ford, NAI immediately contacted Plaintiffs to have them return to NAI to discuss the "not actual" notation on the title and to discuss their options, and Plaintiffs chose to keep the Vehicle rather than surrender it and terminate the contract. *See* Exh. "A" at ¶¶ 22-24; Exh. "B" at ¶¶ 10-17.

Plaintiffs argue that NAI knew or should have known that the mileage representation made to them was false based on the certified title history and the certificate of title. *See* Motion, pp. 11-12. But Plaintiffs have <u>no</u> evidence demonstrating that NAI had a certified title history at the time of sale and/or that NAI already had the Certificate of Title in its possession on September 8th. NAI has repeatedly testified that it had neither. *See* Exh. "A" at ¶ 12; Exh. "B" at ¶ 8; *see also,* the Motion, Exh. 8 at 36:4-23 (Mrs. Ramaghi testified that NAI does not perform vehicle history searches through Carfax or AutoCheck before putting a vehicle up for sale and that NAI does not have an account to do so). Nor do Plaintiffs cite or rely on any law requiring NAI to obtain a "certified title history" for the Vehicle before selling it. NAI maintains that it had no legal obligation to do so.[3] NAI complied with the law by displaying a Buyers Guide on the Vehicle, which informed prospective purchasers, among other things, how to get a vehicle history report. *See* D.E. 39, Exh. G; Exh. "A" at ¶¶ 14, 17, 20. Plaintiffs did not obtain a title history for the Vehicle until after they bought it and had already hired counsel in preparation for this action. (D.E. 30 at ¶ 44). In sum, Plaintiffs do not have

---

[3] *See* the screenshots from www.flhsmv.gov under the heading *Buying from a Licensed Dealer* at D.E. 70, Exh. E, pp. 4 and p. 5 (under the heading *Consumer Tips for Buying from a Licensed Dealer,* the FLHSMV strongly encourages consumers to "consider using a service that can provide details on the history of the vehicle you intend to purchase"). NAI requests the Court take judicial notice of same. Fed. R. Evid. 201.

any evidence that NAI had a certified title history or the Certificate of Title in its possession prior to or at the time of sale on September 8th, and NAI disputes Plaintiffs' unsupported allegations that NAI violated 49 U.S.C. § 32705(a)(2) by providing "false mileage statements" to them.

## B.    Alleged violation of 49 U.S.C. § 32705(a)(3) in the form and manner in which NAI made disclosures

Plaintiffs claim NAI violated the Act by withholding the Certificate of Title at the time of transfer and "routed the sale through extraneous paperwork" to prevent Plaintiffs from viewing the title. *See* the Motion, p. 12.  NAI addressed this allegation in Section II(A) above, reincorporates it here for the sake of efficiency, and clearly disputes it. NAI did not – and could not - withhold the Certificate of Title from Plaintiffs at the time of sale because NAI did not even have it yet. *See* Exh. "A" at ¶¶ 12, 22; Exh. "B" at ¶¶ 10-11. Once it had the Certificate of Title, NAI promptly contacted Plaintiffs and had them come back to review the title in person and discuss its mileage disclosure. *See* Exh. "A" at ¶ 22; Exh. "B" at ¶ 10. Plaintiffs' allegations of purposeful withholding are not only factually untrue and unsupported, but also very much in dispute.

Plaintiffs also take issue with NAI's use of a non-secure power of attorney form, referencing D.E. 30-5. *See* the Motion, p. 5 at ¶¶22-23 and p. 13.[4] First, the language cited in the Motion at ¶ 22 is incomplete and taken out of context.  The preceding sentence references an "odometer disclosure statement," not a certificate of title. Second, even if the wrong power of attorney form were used, which NAI does not concede, that in and of itself is not evidence of an intent to defraud Plaintiffs.  Third, the

---

[4] Mrs. Ramaghi's cited testimony about generally storing original titles off-site is irrelevant and immaterial because NAI did not have the Vehicle's original title on September 8, 2023, but showed it to Plaintiffs in person once NAI received it.

FLHSMV conducted an investigation into the matter in response to Mr. Robinsons' complaint, and there was no agency finding that NAI violated the Act or any of its provisions, that NAI used the wrong form of power of attorney or that NAI used the power of attorney for an improper purpose. To the contrary, NAI was only cited, under a Florida statute, for a failure to "complete proper odometer disclosure statement." *See* the Motion, Exh. C. Mrs. Ramaghi testified that the FLHSMV took issue with the fact that NAI checked multiple boxes on the Odometer Disclosure Statement, that she and the examiner discussed it by phone after receipt of his letter, and that it went no further with the DMV or the Department of Agriculture and Consumer Services. *See* the Motion, Exh. 8 at 169:15-170:17.

In sum, Plaintiffs lack any evidence (including any findings from the FLHSMV, the very agency that presumably would regulate/monitor/enforce and conducted its own investigation at Mr. Robinsons' urging) that NAI violated 49 U.S.C. § 32705(a)(3) in the way in which it provided mileage disclosures to Plaintiffs.

### C.    Plaintiffs do not have evidence to support their allegations that NAI acted with an intent to defraud them.

Plaintiffs argue that reckless disregard or gross negligence in an odometer disclosure supports an intent to defraud. *See* Motion at p. 14.[5] But the Amended Complaint did not allege that NAI violated the Act through reckless disregard or gross negligence in an odometer disclosure. (D.E. 30 at ¶¶ 60-72). Courts have routinely held that issues not pled in the complaint cannot be considered by the trial court on summary judgment. *See Franqui v. Liberty Mut. Fire Ins. Co.,* No. 8:12-CV-01257-T-27, 2013 WL

---

[5] In *Fowler v. Elegant Auto Fin. LLC*, 446 F. Supp. 3d 966 (M.D. Fla. 2020), cited by Plaintiffs, Judge Moody held that factual disputes surrounding the mileage disclosure from dealer to purchaser precluded the entry of summary judgment.

5964594 (M.D. Fla. Nov. 7, 2013); *Fernandez v. Florida Nat. Coll., Inc.,* 925 So. 2d 1096 (Fla. 3d DCA 2006); *Johnson v. Space Coast CU*, 184 So. 3d 1247 (Fla. 4th DCA 2016); *FIGA v. Feijoo*, 388 So.3d 1059 (Fla. 3d DCA 2024); *Reddy v. Zurita,* 172 So. 3d 481 (Fla. 5th DCA 2015); and *Wilson v. Jacks*, 310 So. 3d 545 (Fla. 1st DCA 2021). As such, this Court should not consider Plaintiffs' argument regarding reckless disregard or gross negligence as those theories were unpled.

Plaintiffs allege that courts may infer an intent to defraud when there has been no investigation by a dealer. *See* the Motion, at p. 15.  In support, Plaintiffs incorrectly quote Mrs. Ramaghi as admitting that "the dealership does not verify the mileage prior to resale." *Id.* However, Mrs. Ramaghi actually testified that NAI does not verify the mileage on vehicles before <u>NAI</u> purchases them (which vehicles may or may not even be sold by NAI). *See* Motion, Exh. 8 at 23:7-23. But she also testified that if NAI is going to sell a vehicle, she looks at the odometer, verifies it against the title and addresses any issues *as she did in this case. Id.* at 176:18-24; Exh. "C". Mrs. Ramaghi also testified in some detail about the nature and scope of the inspection that NAI's employee/mechanic performs on vehicles before they are sold and performed on the Vehicle within a week of its arrival at NAI. *Id.* at 24:20-25:11; 31:11-33:2; 66:1-7, 14-18; 66:25-67:15; Exh. "C"; Exh. "A" at ¶ 8; D.E. 71, at Exh. "A", Comp. Exh. 2. The fact that Mrs. Ramaghi could not recall – while testifying in August 2025 - the precise date in 2023 that the Vehicle was inspected[6] is not evidence of anything, certainly not an intent to defraud Plaintiffs. Put simply, NAI did not turn a blind eye to the mileage on the

---

[6] Plaintiffs claim that Mrs. Ramaghi "could not identify when the inspection occurred" (*see* the Motion, p. 15), but Mrs. Ramaghi testified that the Vehicle was inspected within a week after it arrived at the dealership. *See* the Motion, Exh. 8 at 66:1-7.

Vehicle, it inspected the Vehicle before it was sold to Plaintiffs, it did not have actual or constructive knowledge of a discrepancy with the mileage at the time Plaintiffs bought it, it acted nearly immediately (within a matter of days) following its receipt of the original title from Murray Ford, and even if the Court were to consider reckless disregard or gross negligence, Plaintiffs simply have no evidentiary support for such a finding.

As to Plaintiffs' argument that Mrs. Ramaghi lacked personal knowledge on various topics (and by extension that somehow translates to NAI intending to defraud), Mrs. Ramaghi is not required to have personal knowledge when testifying as a corporate representative. *See* Fed. R. Civ. P. 30(b)(6); *Critchlow v. Sterling Jewelers Inc.,* No. 8:18-CV-96-T-30JSS, 2019 WL 13062636, at *2 (M.D. Fla. Feb. 26, 2019) ("a Rule 30(b)(6) witness need not have personal knowledge of the designated subject matter."). Regardless, Mrs. Ramaghi testified that the 118,245 mileage disclosure was obtained from the "actual visual odometer on the car when it was brought up to prepare paperwork." *See* the Motion, Exh. 8 at 91:15-21. When asked how she knew that, she testified it was the only place they could get the odometer reading. *Id.;* Exh. "A" at ¶ 13. This mileage was consistent with the mileage reflected by Manheim. *See* Exh. "A" at ¶ 6.  Mr. Caldwell has confirmed that, when preparing the contract documents, he used the mileage shown on the odometer. *See* Exh. "B," ¶ 8.

Next, Plaintiffs claim that NAI ignored "obvious NOT ACTUAL" branding on the face of the title and nevertheless represented to Plaintiffs that the actual mileage was 118,245. *See* Motion at pp. 15-16.  In so arguing, Plaintiffs apparently expect the Court to find, *without any supporting evidence*, that NAI had the Certificate of Title when it sold the Vehicle to Plaintiffs, but it did not. *See* Exh. "A" at ¶ 22; Exh. "B" at ¶¶ 10- 11.

Plaintiffs did not depose Murray Ford or the prior owner of the Vehicle before Murray Ford. The only evidence before the Court is Mrs. Ramaghi's testimony and Mr. Caldwell's testimony on this point, which defeats Plaintiffs' argument (or at a minimum creates genuine issues of material fact in dispute that preclude summary judgment).

Plaintiffs' allegations that NAI altered the contract documents and that supports an intent to defraud are likewise vehemently disputed by NAI. Exh. "A" and "B"; D.E. 71, at Exh. "A", Comp. Exh. 2. Notably, Plaintiffs even admit that these are disputed issues of fact: "Defendant claims these changes occurred after the September 08, 2023 sale, in the Robinsons' presence and with their consent []. The Robinsons, however, have testified that they never authorized these modifications nor where they aware that they occurred [] and they never returned to the dealership after September 8, 2023 to sign the documents or authorize alterations[]." *See* the Motion, p. 16. Whether the Vehicle itself ever returned to the dealership after its purchase proves nothing because Plaintiffs had another car. *See* Lisa Robinson's deposition testimony attached as Exhibit "D" at 15:18-20 (confirming that in September of 2023, she drove a Volkswagen); and Exh. "B" ¶ 12 (Plaintiffs showed up in a purple Volkswagen). Plaintiffs' argument merely corroborates NAI's claim that Plaintiffs refused to make the Vehicle – and GPS unit – available for NAI's inspection.

Plaintiffs allege that Mrs. Ramaghi, in completing the disclosure on Murray Ford's behalf, failed to select the "not actual" box, despite being in possession of the Certificate of Title that showed otherwise. Mrs. Ramaghi testified that there was no reason a box wasn't checked, and that she called Murray Ford's title clerk to fill in the mileage information. *See* the Motion, Exh. 8 at 77:20-25; 78:1-17; 79:1-21. She further explained

that checking a box regarding the accuracy of the mileage was Murray Ford's responsibility, but she had their express permission to fill it in. *Id.* She listed the mileage that the title clerk gave her and said it is typical that NAI gets titles without mileage disclosures on them. *Id.* This testimony only further demonstrates that NAI was not attempting to defraud Plaintiffs, but rather acting in the normal course and scope of NAI's longstanding relationship with Murray Ford. NAI had no reason to know, or to suspect, the mileage was not actual until the original Certificate of Title was in hand.[7]

Plaintiffs' allegations that Mrs. Ramaghi could not identify when she completed the mileage disclosure on Murray Ford's behalf, when it received the title, or where it came into possession of the title are either unsupported or wholly irrelevant. Mrs. Ramaghi testified she could not remember the exact date she talked to Murray Ford's title clerk – understandably so, as the call occurred over two years ago. *See* the Motion, Exh. 8 at 77:13-15. Mrs. Ramaghi has testified when and how NAI received the title from Murray Ford. *See* Motion at Exh. 8 at 72:18-14 and 73:4-11; Exh. "A" at ¶ 22. In sum, Plaintiffs have attacked Mrs. Ramaghi for not having a perfect memory, while refusing to acknowledge the concrete *material* facts she actually testified to.

## II.    Count IV – Alleged Breach of Express Warranty

Plaintiffs' argument on Count IV is based on a Florida statute that was not pled and cannot form the basis for the entry of summary judgment in its favor. *Franqui v. Liberty Mut. Fire Ins. Co.,* No. 8:12-CV-01257-T-27, 2013 WL 5964594 (M.D. Fla. Nov.

---

[7] Further, Mrs. Ramaghi testified that no one from NAI spoke to Murray Ford regarding the Vehicle before it was purchased, nor did Murray Ford make any written representations to NAI regarding the Vehicle. *See* the Motion, Exh. 8 at 54:11-16. NAI was only provided the year, make, model, and VIN for the Vehicle. *Id.* at 56:2-10. Moreover, when purchasing the Vehicle, NAI did not get a vehicle history report nor a Manheim condition report for it. *Id.* at 59:15-20.

7, 2013); *Fernandez v. Florida Nat. Coll., Inc.,* 925 So. 2d 1096 (Fla. 3d DCA 2006);
*Johnson v. Space Coast CU*, 184 So. 3d 1247 (Fla. 4th DCA 2016); *FIGA v. Feijoo,* 388
So.3d 1059 (Fla. 3d DCA 2024); *Reddy v. Zurita,* 172 So. 3d 481 (Fla. 5th DCA 2015);
and *Wilson v. Jacks*, 310 So. 3d 545 (Fla. 1st DCA 2021). Plaintiffs rely on Fla. Stat.
§672.313(1)(a)-(b) in the Motion (*see* pp. 20-21), but that is not pled in the Amended
Complaint. Plaintiffs alleged that NAI's "Mileage Representations" constituted an
express warranty pursuant to Section 2-313 of the Uniform Commercial Code ("UCC"),
and that NAI subsequently breached that warranty. (D.E. 30 at ¶¶ 85-86). Plaintiffs did
not identify Fla. Stat. § 672.313(1)(a)-(b) in their Complaint, nor make any allegations
against NAI stemming from or based upon that statute, and as such, the Court should
deny the Motion accordingly.

Were the Court to consider the argument substantively, Plaintiffs signed *multiple*
contract documents that disclaim any and all warranties and state that the Vehicle is
being sold "as is".[8] *Witkowski v. Mack Trucks, Inc.,* 712 F.2d 1352, 1354 (11th Cir. 1983)
(finding that plaintiffs signatures on a purchase order and delivery receipt stating the
truck was being sold "as is" evidenced a reasonable understanding that defendants'
disclaimer of all warranties was a term of the contract); *see also,* Exhibit "D" at 51:22-

---

[8] "'Under Florida law, where two or more documents are executed by the same parties,
at or near the same time and concerning the same transaction or subject matter, the
documents are generally construed together as a single contract.' *Clayton v. Howard
Johnson Franchise Systems, Inc.,* 954 F.2d 645, 648 (11th Cir. 1992); *Quix Snaxx., Inc.
v. Sorensen,* 710 So. 2d 152, 153 (Fla 3d DCA 1998)." *Bragg v. Bill Heard Chevrolet,
Inc.,* 374 F.3d 1060, 1067 (11th Cir. 2004); *Ballou v. Talari,* Case No.: 8:16-cv-0598-T-
Map, 2017 WL 11473714, at *7 (M.D. Fla. Nov. 29, 2017); *Audiology Dist., LLC v.
Simmons,* Case No. 8:12-cv-02427-JDW-AEP, 2014 WL 7672536, at *5 (M.D. Fla. May
27, 2014) (holding the same, in reliance on *Bragg,* and holding, "In other words, if two or
more contracts are 'functionally intertwined,' they must be 'read and construed
together.'" (internal citations omitted)).

52:1 (testifying that she and Mr. Robinson discussed the fact that they signed an as-is warranty or no warranty document in relation to the purchase of the Vehicle and knew it was as-is); and Exh. "E" at 44:4-7 (Mr. Robinson testified that NAI does not provide any warranties with regard to this Vehicle and that NAI did not agree to do something with the Vehicle that was not reflected in the paperwork).

In Florida, sellers may exclude both express and implied warranties in the sale of goods. *Vision Power, LLC v. Midnight Express Power Boats, Inc., No. 18-61700, 2019 WL 5291042, at *6 (S.D. Fla. July 26, 2019)(citing Ames v. Winnebago Indus., Inc.,* 2005 WL 2614614, at *4 (M.D. Fla. Oct. 14, 2005). In this instance, Plaintiffs signed the Bill of Sale Buyer's Order, which includes multiple disclaimers of warranty. D.E. 39, Exh. B; Exh. "A" at ¶ 16. At the bottom of each page of the Buyer's Order, directly above Plaintiffs' signatures, is the following language in bold: "THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL." *Id.* In addition to the Buyer's Order, Plaintiffs executed the "As Is – Sold Without Warranty" agreement and Buyers Guide, each of which contain express warranty disclaimers. D.E. 39, Exh. C and G; Exh. "A" at ¶¶19-20.

### III.    Plaintiffs' Motion directed to NAI's Affirmative Defenses

NAI relies on and has submitted evidence in support of its affirmative defenses that constitute genuine issues of material fact in dispute precluding the entry of summary judgment in Plaintiffs' favor.

      *i.*    *Failure to State a Cause of Action:*

This Court has found that failure to state a claim a cause of action is a proper affirmative defense. *Schmidt v. Wells Fargo Bank, N.A.,* No. 8:20-CV-150-T-33AAS, 2020 WL 1703801, at *2 (M.D. Fla. Apr. 8, 2020); *see also Galeano v. Elbardi Int'l Mgmt., LLC*, No. 1:20-CV-24017-UU, 2021 WL 8821542, at *2 (S.D. Fla. Feb. 22, 2021) (failure to state a claim is a recognized defense).

Rule 9(b), Fed. R. Civ. P., requires that allegations of fraud be stated with particularity. "Because a private cause of action requires the allegation of intent-to-defraud, courts have held that the stringent pleading standards of Federal Rule of Civil Procedure 9(b) apply to Federal Odometer Act claims." *Bertolotti v. A&I International Motor Corp.,* No. 16-22185-CIV; 2016 WL 6804624, at *2 (S.D. Fla. Nov. 17, 2016) (internal citations omitted). "The Rule 9(b) standard is satisfied when a plaintiff alleges: '(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiff[]; and (4) what the Defendants gained by the alleged fraud.'" Plaintiffs failed to allege what NAI gained by the alleged fraud. As such, they have failed to plead a viable cause of action under the Federal Odometer Act, Fraud, and Fraud in the Inducement. Summary judgment is not warranted.

      *ii.*    *There are genuine issues of material fact in dispute as to NAI's affirmative defenses of waiver, estoppel, unclean hands, laches, and accord and satisfaction.*

As stated above, Plaintiffs returned to NAI on September 14, 2023, after NAI received the Certificate of Title from Murray Ford and discovered the mileage was listed as "not actual." *See* Exh. "A;" Exh. "B." During this meeting, NAI gave Plaintiffs the

opportunity to inspect the original Certificate of Title received from Murray Ford, and to return the Vehicle in exchange for a return of their cash down payment and termination of all contractual obligations to NAI. *See* Exh. "A" at ¶ 23; Exh. "B" at ¶¶ 10, 13. Plaintiffs declined this option and chose to keep the Vehicle. *Id.* In fact, Mr. Robinson physically tore the $2,000 check that NAI issued to Plaintiffs for the return of their down payment and left it with NAI. *Id.;* the Motion, Exh. 8 at 163:8-20. This conduct is directly contrary to their claims that they have been damaged.  NAI also relied on Plaintiffs' actions, e.g. their representations that they wanted to keep/continue using the Vehicle, and corresponding refusal to accept the return of their down payment and termination of the contract. Because Plaintiffs deny that this meeting with NAI on September 14th occurred, there are genuine issues of material fact in dispute as to each of these particular affirmative defenses, each of which relies on the same set of operative facts, and Plaintiffs' Motion must therefore be denied.

iii.    *As-Is Waiver is a proper affirmative defense.*

As stated in Section II, Plaintiffs failed to plead § 672.313(1)(a). Therefore, they cannot use it as a basis for summary judgment as to the "as-is" defense.  NAI otherwise reincorporates its arguments made above.

iv.    *Failure to mitigate damages*

As discussed in sub-section ii above, Plaintiffs had the opportunity to return the Vehicle to NAI, receive their down payment, and terminate the contract with NAI. *See* Exh. "A" at ¶ 23; Exh. "B" at ¶¶ 10, 13. Plaintiffs chose not to accept NAI's offer and instead kept the Vehicle. *Id.* These facts not only support this particular affirmative defense, but also stem directly from Plaintiffs' second visit to NAI, which is disputed.  As

such, the facts underpinning this defense are material facts in dispute that cannot be resolved by way of summary judgment.

## IV.     <u>Conclusion</u>

For all of the reasons discussed above, there are multiple genuine issues of material fact in dispute that preclude the entry of summary judgment in Plaintiffs' favor.

WHEREFORE, Defendant NATIONAL AUTOMOTIVE INC., respectfully requests that the Court enter an Order denying Plaintiffs' Motion for Partial Summary Judgment, and grant such further relief as the Court deems just and proper.

**McGLINCHEY STAFFORD**

*/s/ Kimberly Held Israel*
Kimberly Held Israel, Esq.
Florida Bar # 47287
10375 Centurion Parkway N., Suite 420
Jacksonville, FL 32256
(904) 224-4449 (Telephone)
(904) 485-8083 (Facsimile)
Primary E-mail: kisrael@mcglinchey.com
Secondary E-mails:
jeldemire@mcglinchey.com
cgipson@mcglinchey.com
***Counsel for Defendants***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been served, via the Court's e-Portal, this **30th** day of **October, 2025**, to: **Josh Feygin, Esq.**, josh@sueyourdealer.com, and **Michael Citron, Esq.**, michael@maclegalpa.com, *Counsel for Plaintiffs*.

*/s/ Kimberly Held Israel*
ATTORNEY

EXHIBIT "A"

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ISIAH ROBINSON, and LISA              CASE NO. 3:24-cv-00948-WWB-PDB
CLAYTON ROBINSON, Each an
Individual,

      Plaintiffs,

v.

NATIONAL AUTOMOTIVE, INC.,
a Florida corporation,

      Defendant.

_____

## AFFIDAVIT OF ROBIN RAMAGHI ON BEHALF OF NATIONAL AUTOMOTIVE, INC. IN RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

STATE OF FLORIDA
COUNTY OF DUVAL

BEFORE ME this day personally appeared ROBIN BYLER RAMAGHI, who, first being duly sworn, deposes and says:

1. I am over the age of 18 and am competent to testify to the matters contained herein.

2. I am the President of National Automotive, Inc. ("NAI") and was the President at the time of the events discussed in NAI's Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment (the "Motion").

3. As the President of NAI, I am familiar with the business records maintained by NAI in relation to the purchase and sale of vehicles, including but not limited to the various documents that the parties enter into, such as: the Retail Installment Contract and Security Agreement, the Odometer Disclosure Statement, the Bill of Sale, the Warranty

1

Disclaimer, the Separate Odometer Disclosure Statement and Acknowledgment, the Buyer's Guide, the Power of Attorney, and the Application for Certificate of Motor Vehicle Title. These business records are made at or near the time of the occurrences or transactions recorded therein by a person with knowledge, or from information provided by a person with knowledge, and are kept in the course of NAI's regularly conducted business activities.

4.  In approximately August 2023, NAI expressed an interest and intent to purchase a used 2011 Chevrolet Equinox, VIN ending in 4389 (the "Vehicle") from Murray Ford, which is located in Starke, Florida, through a wholesale purchase of multiple vehicles at Murray Ford.  At the time that NAI expressed its intent to purchase the Vehicle, NAI did not know the actual mileage of the Vehicle, but was provided the year, make and model of the Vehicle as well as its Vehicle Identification Number ("VIN").

5.  Further, although NAI had expressed its intent to buy the Vehicle from Murray Ford in August 2023, NAI had not yet paid Murray Ford for the Vehicle and did not have possession, custody or control of the Vehicle at that time. In other words, the purchase was not completed at that time. Rather, the Vehicle was run through an auction conducted by Manheim, on behalf of Murray Ford, in the lane in which other NAI vehicles are run, in the event that a third party wanted to pay more for the Vehicle than NAI was willing to pay Murray Ford for it.

6.  Based on the information from Manheim, the mileage on the Vehicle was reported to be 118,189.

7.  NAI did not review the mileage for the Vehicle in deciding whether to buy it as part of a wholesale lot of cars being purchased from Murray Ford.

2

8.  Following Manheim's auction in early September 2023, Manheim transported the Vehicle to NAI where NAI promptly inspected the Vehicle for any engine, transmission, and/or any other potential mechanical or operational issues before offering the Vehicle for sale.

9.  Prior to NAI's receipt of the Vehicle in early September 2023, NAI was not told by anyone employed by Murray Ford or Manheim that the Vehicle's mileage was "not actual" or not as reflected on the odometer itself.

10. On September 8, 2023, Isiah Robinson and Lisa Clayton Robinson ("Plaintiffs") came to NAI's location to look at, and test drive, the Vehicle for possible purchase.

11. Later that same day, Plaintiffs came back to NAI and purchased the Vehicle. I did not sell the Vehicle to Plaintiffs on behalf of NAI, and I did not have any conversations with Plaintiffs on September 8th regarding the Vehicle, its mileage and/or the purchase and sale of the Vehicle.

12. At the time NAI sold the Vehicle to Plaintiffs, NAI did not have the original Certificate of Title in its possession because it had not yet received it from Murray Ford. NAI was unaware of any discrepancies with the odometer reading or the Vehicle's mileage at the time NAI took delivery of the Vehicle and when it sold the Vehicle to Plaintiffs.

13. For the contract documents signed by Plaintiffs on September 8, 2023 that included the mileage for the Vehicle, that mileage figure was based on a review of the Vehicle's odometer itself, as that was the only source of information that NAI had for the mileage at the time Plaintiffs bought the Vehicle

3

14. At the time NAI sold the Vehicle to Plaintiffs, NAI did not have the certified title
history for the Vehicle or a Carfax history report. Nor did Plaintiffs ask for either of these
types of documents before purchasing the Vehicle and signing all of the contract
documents, including the documents that make clear that this was an "As Is" purchase.
Copies of all of the contract documents signed by Plaintiffs are attached to NAI's
Amended Counterclaim filed in this case.

15. More specifically, and by way of example, in conjunction with the purchase of the
Vehicle, Plaintiffs signed a Retail Installment Contract and Security Agreement with NAI,
which is attached to the Amended Counterclaim as Exhibit "A."

16. In addition, Plaintiffs signed a Bill of Sale Buyer's Order, which expressly states
that the Vehicle is being sold "AS IS" and without any express or implied warranties.  This
document is attached as Exhibit "B" to NAI's Amended Counterclaim.  It specifically
states, in bold, under the heading "Warranty Information":  Warranty.  We make no
express or implied warranties. Except as required by law, we make no implied warranty
of merchantability and no warranty that the Vehicle is fit for a particular purpose. We sell
the Vehicle AS IS – NOT EXPRESSLY WARRANTED OR GUARANTEED, WITH ALL
FAULTS."  The "Vehicle Inspection" section on page 2 also states, "You are purchasing
the Vehicle based upon your personal inspection, and are not relying upon any opinion,
statement, promise or representation of the salesperson, or any other of our employees
that is not contained in the written agreements you are signing today."

17. Plaintiffs also signed an "As Is – Sold Without Warranty" agreement as well as a
Buyers Guide stating that NAI was selling the Vehicle "as is" and without any warranties.
Both documents were fully disclosed to Plaintiffs and acknowledged by their signatures.

4

These documents are attached as Exhibits "C" and "G" to NAI's Amended Counterclaim, respectively.

18. The "As Is – Sold Without Warranty" agreement states, in bold and all capital letters:

> SELLER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESSED OR IMPLIED INCLUDING ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND SELLER NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF THE VEHICLE.

> "NOTICE OF VEHICLE SOLD WITHOUT ANY WARRANTY"

> THIS VEHICLE IS SOLD AS IS, WHERE IS AND WITHOUT ANY WARRANTY. THE PURCHASER WILL BEAR THE ENTIRE EXPENSE OF REPAIRING OR CORRECTING ANY DEFECTS THAT PRESENTLY EXIST AND/OR MAY OCCUR IN THE VEHICLE UNLESS THE SALESPERSON PROMISES IN WRITING AT THE TIME OF THE SALE TO CORRECT SUCH DEFECTS.

> BUYER HEREBY ACKNOWLEDGES HE HAS READ, UNDERSTANDS, AND ACCEPTS THE PROVISIONS OF THIS WARRANTY STATEMENT FOR THE ABOVE IDENTIFIED VEHICLE.

19. The Buyers Guide attached as Exhibit "G" to NAI's Amended Counterclaim states, in bold and/or all capital letters:  AS IS – NO DEALER WARRANTY. THE DEALER DOES NOT PROVIDE A WARRANTY FOR ANY REPAIRS AFTER SALE. In short, NAI did not provide, nor make (whether verbally or in writing) any warranties at all with regard to the Vehicle, whether express or implied.

20. The Buyers Guide also recommends that a prospective purchaser OBTAIN A VEHICLE HISTORY REPORT AND CHECK FOR OPEN SAFETY RECALLS.  *See* Exhibit "G" to the Amended Counterclaim. As far as NAI is aware, Plaintiffs did not obtain a vehicle history report prior to deciding to purchase the Vehicle.

21. Plaintiffs accuse NAI of withholding the certificate of title from them, which is absolutely untrue.

22. On September 11, 2023, NAI picked up the Vehicle's Certificate of Title from Murray Ford as was NAI's standard practice. Upon receipt and review of the Certificate of Title, NAI discovered for the first time that the mileage on the odometer of the Vehicle was reported to be "not actual." As a result of this discovery, NAI promptly contacted Plaintiffs by telephone to report that there was an issue with the mileage and to ask them to come back to NAI to review and discuss their options.

23. On September 14, 2023, NAI's salesman, Christopher Caldwell, and I met with and talked to Plaintiffs in person at NAI's office to disclose that the mileage of the Vehicle was reported as being "not actual" on the Certificate of Title. During this conversation, NAI gave Plaintiffs the option to surrender the Vehicle back to NAI, to terminate their contract with NAI, and to receive a return of their deposit. Notably, Plaintiffs did not come to NAI in the Vehicle itself, but rather drove to Jacksonville in a Volkswagen. Plaintiffs told me and Mr. Caldwell that they did not want to surrender the Vehicle, receive their deposit back and terminate the contract, but instead wanted to keep the Vehicle, because other dealers would not sell them a financed vehicle due to their credit limits and past history.

24. Plaintiffs watched me put the notation of "TMU," which stands for "true mileage unknown," on the contract documents before Plaintiffs re-signed the contract documents. During this same conversation, I specifically explained to Plaintiffs that "TMU" stands for "true mileage unknown." I made these notations on the contract documents with Plaintiffs' knowledge and consent and in their presence. Plaintiffs' accusation that I altered the

6

contract documents without their knowledge or permission is untrue. They came back to NAI's office after September 8th, at my request, as I have described here.

25. NAI did not know, nor have any reason to suspect, that the odometer reading on the Vehicle was inaccurate at the time that NAI bought the Vehicle from Murray Ford, nor at the time NAI sold the Vehicle to Plaintiffs. As soon as NAI became aware of the discrepancy with the mileage disclosure, NAI promptly notified Plaintiffs of it and presented them with the options I described in paragraph 21 above. Put simply, NAI had absolutely no reason, nor any intent, to deceive or defraud Plaintiffs in any way with regard to the mileage disclosure on the Vehicle, or in any other respect with regard to the sale of the Vehicle to Plaintiffs.

FURTHER AFFIANT SAYETH NAUGHT.


**NATIONAL AUTOMOTIVE, INC.**

By: _____
        Robin Ramaghi, as President


STATE OF FLORIDA
COUNTY OF DUVAL

Sworn to and subscribed before me by means of physical presence this 30TH day of October, 2025, by ROBIN RAMAGHI, as the President of NATIONAL AUTOMOTIVE, INC., who is personally known to me.

ERIN MIKELL
Notary Public - State of Florida
Commission # HH 288790
My Comm. Expires Jul 17, 2026
Bonded through National Notary Assn.

_____
NOTARY PUBLIC, STATE OF FLORIDA
My Commission Expires:

EXHIBIT "B"

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ISIAH ROBINSON, and LISA                         CASE NO. 3:24-cv-00948-WWB-PDB
CLAYTON ROBINSON, Each an
Individual,

     Plaintiffs,

v.

NATIONAL AUTOMOTIVE, INC.,
a Florida corporation,

     Defendant.

_____

**AFFIDAVIT OF CHRISTOPHER CALDWELL**

STATE OF FLORIDA
COUNTY OF DUVAL

     BEFORE ME this day personally appeared CHRISTOPHER CALDWELL, who,
first being duly sworn, deposes and says:

     1. I am over the age of 18 and am competent to testify to the matters contained
herein.

     2. I am an employee of National Automotive, Inc. ("NAI") and have been an
employee for three years.

     3. As an employee of NAI, and in particular in my role as a salesman, I am familiar
with the business records maintained by NAI in relation to the purchase and sale of
vehicles, including but not limited to the various documents that the parties enter into,
such as the Retail Installment Contract and Security Agreement, the Odometer
Disclosure Statement, the Bill of Sale, the Warranty Disclaimer, the Separate Odometer
Disclosure Statement and Acknowledgment, the Buyer's Guide, the Power of Attorney,
and the Application for Certificate of Motor Vehicle Title.

1

4. On September 8, 2023, Isiah Robinson and Lisa Clayton Robinson (the "Robinsons") came to NAI's location to look at, and test drive, a 2011 Chevrolet Equinox (the "Vehicle") in order to potentially buy it.

5. I was the salesman on behalf of NAI that spoke with the Robinsons on September 8th regarding the Vehicle.

6. The Robinsons asked me if they could have a blank set of all of the contract documents to review while they took the Vehicle for a test drive. I asked my direct supervisor, Robin Ramaghi, for permission to give the Robinsons a blank/unsigned set of documents, and Mrs. Ramaghi gave me that permission, so I gave the Robinsons a set of the contract documents for their review.

7. Following their test drive of the Vehicle, the Robinsons came back to NAI and bought the Vehicle. I am the one that sold them the Vehicle that day – September 8th – and I don't recall the Robinsons speaking to Mrs. Ramaghi that day.

8. At the time of sale on September 8th, NAI didn't have the original Certificate of Title from Murray Ford yet. So when preparing the actual contract documents for the Robinsons to sign, I used the mileage of 118,245 that was shown on the Vehicle's odometer itself. On September 8th, I didn't have – or have access to – any other information from which to identify and/or disclose the Vehicle's mileage.

9. Before the Robinsons signed each of the contract documents, I reviewed and explained to them each and every document. As the Robinsons were signing the contrct documents, I signed the ones that required a signature on behalf of NAI.

10. NAI discovered for the first time that the mileage on the odometer of the Vehicle was reported to be "not actual" after September 8th, when NAI received the original

2

Certificate of Title from Murray Ford, and immediately called the Robinsons to notify them of the issue and to discuss their options.

11. To the best of my recollection, NAI received the original Certificate of Title from Murray Ford on or around September 11, 2023.

12. On September 14, 2023, the Robinsons returned to NAI's office, but did not drive the Vehicle. Instead, they showed up in a purple Volkswagen. Mrs. Ramaghi and I met with and talked to the Robinsons in person in NAI's office to disclose that the Certificate of Title for the Vehicle reflected that the mileage was "not actual." Mrs. Ramaghi explained to the Robinsons what "not actual" meant regarding the mileage.

13. During this conversation, Mrs. Ramaghi, on behalf of NAI, gave the Robinsons the choice to return the Vehicle to NAI, to terminate the contract (which would mean that they wouldn't have any further financial obligation to pay for the Vehicle), and to get a refund of their $2,000 down payment. Despite being given this option, the Robinsons told me and Mrs. Ramaghi that they didn't want to return the Vehicle, terminate the contract and get their down payment back, but instead wanted to keep the Vehicle.

14. During this same meeting, and because the Robinsons chose to keep the Vehicle rather than return it, the Robinsons re-signed the contract documents in front of me and Mrs. Ramaghi. Then, in front of the Robinsons and with their permission, Mrs. Ramaghi put the notation of "TMU" on each contract document that included the Vehicle's mileage.

15. Once the Robinsons had signed the contract documents, I then signed the Retail Installment Contract and Security Agreement, the Odometer Disclosure Statement, the Bill of Sale, the Warranty Disclaimer, the Separate Odometer Disclosure Statement and

Acknowledgment, Condition of Sale, Repossession Agreement, and the Application for
Certificate of Motor Vehicle Title on behalf of NAI.

16. The documents were re-signed on September 14, 2023, but were backdated to
reflect the original sale date of September 8, 2023, because NAI had already issued a
temporary tag for the Vehicle and would not have been able to issue another/second
temporary tag.

17. I did not know, nor did I have any reason to suspect or believe, that the odometer
reading on the Vehicle was inaccurate at the time that the Robinsons purchased the
Vehicle.  But, as soon as NAI became aware of what the Certificate of Title said, which
was just a few days following the September 8th sale, we immediately reached out to the
Robinsons to notify them of the issue, to ask them to come back to NAI to discuss it and
to present them with their options when they did come back.

18. In 2024, after the GPS device installed on the Vehicle stopped working, e.g. NAI
became unable to locate the Vehicle because the GPS device was either not sending
any data at all or was intermittently sending data, I tried to reach the Robinsons by
phone to ask them to bring the Vehicle to NAI so we could inspect it.   To my
recollection, I was not able to reach the Robinsons, and they never brought the Vehicle
back to NAI after they bought it to allow or enable NAI to perform an inspection of the
Vehicle and the GPS device.

FURTHER AFFIANT SAYETH NAUGHT.

_____
CHRISTOPHER CALDWELL

STATE OF FLORIDA
COUNTY OF DUVAL

4

Sworn to and subscribed before me this ___ day of October, 2025, by
CHRISTOPHER CALDWELL, who appeared before me by means of physical presence
and is personally known to me.

NOTARY PUBLIC, STATE OF FLORIDA
My Commission Expires:

5

EXHIBIT "C"

**Florida Court Reporting**

Robinson v. National Automotive, Inc., Case No. 3:24-cv-00948
Deposition of Robin Ramaghi on behalf of National Automotive, Inc., taken on 8/15/25
**Deposition Errata Sheet**

---

Page No.   11    Line No.   8     Change:  Change "withhold" to "hold"

Reason for change:  Court reporter misheard me/typographical error

---

Page No.   24    Line No.   25    Change:  Change "base" to "bay"

Reason for change:  Court reporter misheard me/typographical error

---

Page No.   28    Line No.   1     Change:  Change "bleaking" to "breaking"

Reason for change:  Typographical error

---

Page No.   29    Line No.   2    Change:  Change "Fuzz" to "Phase"

Reason for change:  Court reporter misheard me/typographical error

---

Page No.  29    Line No.  24    Change:  Delete entire answer

Reason for change:  I didn't hear the question and misunderstood what was being asked.  He asked
the question again at p. 29, li. 5 – p. 30, li. 2 and I answered it at p. 30, li. 3.

---

Page No.   32    Line No.    5  Change:  Replace "safety issue, law issue" with "for safety issues,
brake issues"

Reason for change:  Clarifying and correcting my answer as the way it was transcribed is not what I
recall saying.

---

Page No.   32    Line No.   7  Change:  Delete "gliding"

Reason for change:  Court reporter misheard me/correcting my answer as I do not recall using the
word "gliding" nor does it make sense in the context of the rest of my answer.

---

Robinson v. National Automotive, Inc., Case No. 3:24-cv-00948
Deposition of Robin Ramaghi on behalf of National Automotive, Inc., taken on 8/15/25
**Deposition Errata Sheet**

---

Page No.   33     Line No.   10     Change:  Replace "very local to" with "local in"

Reason for change:  Clarifying and correcting my answer.

---

Page No.   33     Line No.   16     Change:  Replace "any real issue of things" with "something"

Reason for change:  Clarifying and correcting my answer as the way it was transcribed does not
make sense.

---

Page No.   34     Line No.   15     Change:  Replace "old-skill" with "old-school"

Reason for change: Typographical error.

---

Page No.   39     Line No.   24     Change:  Replace "which is the majority" with "which is what the
majority"

Reason for change: Typographical error.

---

Page No.   40     Line No.   9     Change:  Replace "a lot of times me" with "a lot of times not me"

Reason for change:  Clarifying and correcting my answer as the way it was transcribed is not what I
recall saying.

---

Page No.   42     Line No.   13     Change:  Replace "get us their – get us" with "get our"

Reason for change:  Clarifying my answer as the way it was transcribed is confusing and unclear.

---

Page No.   42     Line No.   14     Change:  Replace "Sometimes walk up to us. Sometimes wave at
us" with "Sometimes they walk up to us. Sometimes they wave at us."

Reason for change:  Clarifying my answer.

---

Page No.   44     Line No.   22     Change:  Replace "do" with "go"

Reason for change: Typographical error.

---

Robinson v. National Automotive, Inc., Case No. 3:24-cv-00948
Deposition of Robin Ramaghi on behalf of National Automotive, Inc., taken on 8/15/25
**Deposition Errata Sheet**

---

Page No.  58    Line No.  13    Change:  Replace "Four" with "Road"

Reason for change: Typographical error.

---

Page No.  96    Line No.  13    Change:  Replace "$177.89, sir" with "$177.89 is their biweekly payment so $177.89 times two"

Reason for change:  Clarifying and correcting my answer.

---

Page No.  96    Line No.  17    Change:  Replace "technicality" with "technically"

Reason for change:  Typographical error or incorrect word choice.

---

Page No.  107    Line No.  21    Change:  Add "Mr. and" to "Mrs. Robinson"

Reason for change:  Clarifying and correcting my answer.

---

Page No.  107    Line No.  22    Change:  Replace "her" with "their"

Reason for change:  Clarifying and correcting my answer.

---

Page No.  114    Line No.  18    Change:  Replace "tight" with "title"

Reason for change:  Typographical error.

---

Page No.  132    Line No.  16    Change:  Replace "at" with "as"

Reason for change:  Typographical error.

---

Page No.  134    Line No.  21    Change:  Replace "preposition" with "preparation"

Reason for change:  Typographical error.

---

Page No.  162    Line No.  13-14    Change:  Add "do not" so that the answer reads "And I do not appreciate you trying to word it as such."

Robinson v. National Automotive, Inc., Case No. 3:24-cv-00948
Deposition of Robin Ramaghi on behalf of National Automotive, Inc., taken on 8/15/25
**Deposition Errata Sheet**

Reason for change:  Clarifying and correcting my answer as the way it was transcribed is not what I recall saying.

_____

Page No.  164    Line No.  19    Change:  Replace "morale" with "moral"

Reason for change:  Typographical error/misspelled word.

_____

Page No.  176    Line No.  24    Change:  Add "if there is a customer to be contacted" to the end of the sentence

Reason for change:  Clarifying my answer as not every instance would involve a car that has already been sold.

_____


_____        DATE: ___10/21/25___
ROBIN RAMAGHI

4

EXHIBIT "D"

1

```
 1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
 2                JACKSONVILLE DIVISION

 3   ISIAH ROBINSON and
     LISA ROBINSON, Each
 4   and Individual,

 5       Plaintiffs/Counter-Defendants,

 6   v.                        CASE NO.: 3:24-cv-948-WWB-PDB

 7   NATIONAL AUTOMOTIVE, INC.,
     a Florida corporation, and
 8   ROBIN RAMAGHI, an individual,

 9       Defendants/Counter-Plaintiffs.
     _____/
10

11          DEPOSITION OF LISA CLAYTON ROBINSON

12              Via Zoom Videoconference

13       DATE:     Tuesday, July 29, 2025

14       TIME:     10:34 a.m. to 1:11 p.m.

15       PLACE:    Zoom Videoconference
                   Palm Coast, Florida
16

17


18      Examination of the witness taken before:

19              Denice C. Taylor, FPR
             Notary Public, State of Florida
20

21

22

23            FIRST COAST COURT REPORTERS
                2442 ATLANTIC BOULEVARD
24           JACKSONVILLE, FLORIDA 32207
                   (904)396-1050
25                 firstcoastcr.com
```

2

```
 1                        APPEARANCES

 2

 3     JOSHUA FEYGIN, ESQUIRE

 4          Sue Your Dealer/Sue Your Credit Report
            Post Office Box 85293
 5          Hallandale, Florida 33008
            (954)228-5674
 6          josh@sueyourdealer.com

 7          Appearing, via Zoom Videoconference, on
            behalf of the Plaintiffs/Counter-Defendants.
 8

 9     KIMBERLY HELD ISRAEL, ESQUIRE

10          McGlinchey Stafford
            10375 Centurion Parkway, North
11          Suite 420
            Jacksonville, Florida 32256
12          (904)224-4452
            kisrael@mcglinchey.com
13
            Appearing, via Zoom Videoconference, on
14          behalf of the Defendants/Counter-Plaintiffs.

15

16          Also present via Zoom Videoconference:

17          Robin Byler-Ramaghi.

18

19

20

21

22

23

24

25
```

3

1                    INDEX OF PROCEEDINGS

2                                                      PAGE

3   WITNESS:  LISA CLAYTON ROBINSON

4   Direct Examination by Ms. Israel                    4

5   Cross-Examination by Mr. Feygin                    88

6   Redirect Examination by Ms. Israel                 92

7   Certificate of Oath                                96

8   Certificate of Reporter                            97

9   Witness notification letter                        98

10  Errata Sheet                                       99

11                    DEPOSITION EXHIBITS

12  MARKED FOR IDENTIFICATION

13  NUMBER     DESCRIPTION

14    1     Retail Installment and Security Agreement   25

15    2     Bill of Sale/Buyer's Order                  27

16    3     As-is No Warranty document                  28

17    4     Customer consent to contact                 29

18    5     Federal Risk-Based Pricing Notice           30

19    6     State of Florida Odometer Statement         32

20    7     Buyer's Guide                               33

21    8     Power of Attorney                           33

22    9     Application for Title                       34

23   10     Odometer Disclosure Statement               36

24   11     Acknowledgment of Purchase                  38

25   12     Repossession Agreement                      40

```
1                          -  -  -
2                    LISA C. ROBINSON,
3    having been produced and first duly sworn as a
4    witness, testified as follows:
5              THE WITNESS:  Yes, ma'am.
6                    DIRECT EXAMINATION
7    BY MS. ISRAEL:
8         Q    Good morning, Mrs. Robinson.  Again, my name
9    is Kim Israel.  I represent the defendants in the
10   lawsuit that you filed in Jacksonville against
11   National Automotive, Inc., and Robin Ramaghi.  You're
12   familiar with the lawsuit I'm referring to?
13        A    Yes, ma'am.
14        Q    Have you ever given a deposition before?
15        A    Probably about 30 years ago.
16        Q    Okay.  And was that -- what type of case was
17   that?
18        A    It was some military stuff.
19        Q    Okay.  Very good.  I will ask you questions.
20   Please, please, for the sake of creating a clear
21   record, let me finish my question before you begin
22   your answer; and, of course, I will do the same as you
23   are answering the questions.
24             If you would, to the extent that an answer
25   calls for a yes or no, please use the words rather
```

1    they had a bunch listed online during that time.

2        Q    Were there not SUVs available in the Palm

3    Coast area at that time?

4        A    There might have been, but they weren't what

5    he wanted.

6        Q    What it is that he wanted?

7        A    I don't know.  He wanted particular

8    four-wheel drives and all these particulars.  You'll

9    have to ask him, but they didn't -- they have more

10   foreign cars down here.  So I do remember that.

11       Q    They have more foreign cars?

12       A    Yeah.  At the time they had, like, cars that

13   were like four-wheel drive and all of this stuff -- I

14   remember that part -- that he didn't want.

15       Q    And you said that your husband was supposed

16   to be the primary driver of the car?

17       A    Oh, yes, he is.

18       Q    Okay.  What were you driving at that time?

19   And at that time meaning in September of 2023.

20       A    My 2015 Volkswagen Passat.

21       Q    Are you still driving that vehicle?

22       A    No.  It was traded for the car I have now.

23       Q    When did you trade it in?

24       A    2024, February.

25       Q    What are you driving now?

 1    weird codes that he wasn't comfortable with.

 2         And so I said, well, this couldn't be a car

 3    with 118,000 miles, because I have driven Chevys in my

 4    life that's got all these wiring problems.  So it

 5    didn't make sense.  So I said, let me run this VIN

 6    number and see what else I can come up with.

 7    Q    Who was he speaking to that day on the 13th

 8    at National Automotive?

 9    A    You'll have to ask him.

10    Q    Okay.  Did he tell you about that phone

11    call?

12    A    Yes.  He was upset when he called me and --

13    and said that -- that -- something about he wasn't

14    going to get his deposit back and he doesn't want the

15    car, and the car had bad codes, and the person told

16    him that they don't have time for whatever he's

17    talking about.

18    Q    Did you go back at that time to review the

19    paperwork that you had signed in relation to the

20    purchase of the car?

21    A    I did not.

22    Q    Did you and he discuss the fact that you had

23    signed an as-is warranty or no warranty document in

24    relation to the purchase of the car?

25    A    Yes, we knew it was an as-is warranty to the

1    car.

2        Q    So why was he attempting to return it?

3        A    Because it could be as-is, but it should be

4    functioning if you're financing it.  So if it's not

5    functioning the way the person wants to -- wants to,

6    you know, have the car, they should have the right to

7    be able to make it right.

8             It's not -- it's not a normal purchase.  We

9    never had a car -- never had a car -- let me say this.

10   We never had a car in our whole relationship that

11   somebody wanted to return in two or three days.

12       Q    How was it not functioning at that time?

13       A    You have to ask him.

14       Q    You don't know the answer to that?

15       A    I know he didn't like the way it was riding.

16   I know it was given to us without oil in it.  I know

17   he didn't feel that he could pick up speed.  I know

18   those type of things about the car.  I've never driven

19   that car.

20       Q    Since the car was purchased, you have not

21   driven it once?

22       A    I have never driven that car ever.

23       Q    Okay.  Isn't it true, Mrs. Robinson, that

24   National Automotive actually did offer to give

25   Mr. Robinson his deposit back and to terminate the

EXHIBIT "E"

1

```
 1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
 2                 JACKSONVILLE DIVISION

 3   ISIAH ROBINSON and
     LISA ROBINSON, Each
 4   and Individual,

 5        Plaintiffs/Counter-Defendants,

 6   v.                        CASE NO.: 3:24-cv-948-WWB-PDB

 7   NATIONAL AUTOMOTIVE, INC.,
     a Florida corporation, and
 8   ROBIN RAMAGHI, an individual,

 9        Defendants/Counter-Plaintiffs.
     _____/
10

11            DEPOSITION OF ISIAH ROBINSON

12              Via Zoom Videoconference

13        DATE:      Tuesday, July 29, 2025

14        TIME:      2:00 p.m. to 5:00 p.m.

15        PLACE:     Zoom Videoconference
                     Palm Coast, Florida
16

17

18        Examination of the witness taken before:

19              Denice C. Taylor, FPR
            Notary Public, State of Florida
20

21

22

23            FIRST COAST COURT REPORTERS
                2442 ATLANTIC BOULEVARD
24           JACKSONVILLE, FLORIDA 32207
                   (904)396-1050
25                firstcoastcr.com
```

1                                 APPEARANCES

2

3        JOSHUA FEYGIN, ESQUIRE

4                Sue Your Dealer/Sue Your Credit Report
                 Post Office Box 85293
5                Hallandale, Florida 33008
                 (954)228-5674
6                josh@sueyourdealer.com

7                Appearing, via Zoom Videoconference, on
                 behalf of the Plaintiffs/Counter-Defendants.
8

9        KIMBERLY HELD ISRAEL, ESQUIRE

10               McGlinchey Stafford
                 10375 Centurion Parkway, North
11               Suite 420
                 Jacksonville, Florida 32256
12               (904)224-4452
                 kisrael@mcglinchey.com
13
                 Appearing, via Zoom Videoconference, on
14               behalf of the Defendants/Counter-Plaintiffs.

15

16               Also present via Zoom Videoconference:

17               Robin Byler-Ramaghi.

18

19

20

21

22

23

24

25

```
 1                    INDEX OF PROCEEDINGS

 2                                                    PAGE

 3    WITNESS:  ISIAH ROBINSON

 4    Direct Examination by Ms. Israel               4

 5    Cross-Examination by Mr. Feygin              112

 6    Certificate of Oath                          115

 7    Certificate of Reporter                      116

 8    Witness notification letter                  117

 9    Errata Sheet                                 118

10                    DEPOSITION EXHIBITS

11    MARKED FOR IDENTIFICATION

12    NUMBER     DESCRIPTION

13      1      Retail Installment and Security Agreement  40

14      2      Bill of Sale/Buyer's Order             43

15      3      As-is No Warranty document             45

16      4      Customer consent to contact            46

17      5      Federal Risk-Based Pricing Notice      46

18      6      State of Florida Odometer Statement    47

19      7      Buyer's Guide                          51

20      8      Power of Attorney                      51

21      9      Application for Title                  53

22     10      Odometer Disclosure Statement          55

23     11      Acknowledgment of Purchase             56

24     12      Repossession Agreement                 57

25
```

4

```
 1                          -  -  -
 2                      ISIAH ROBINSON,
 3    having been produced and first duly sworn as a
 4    witness, testified as follows:
 5               THE WITNESS:  Yes.
 6                    DIRECT EXAMINATION
 7    BY MS. ISRAEL:
 8        Q    Good afternoon, Mr. Robinson.  You can put
 9    your hand down now, sir.
10        A    Okay.
11        Q    Thank you.  My name is Kim Israel and I
12    represent National Automotive, Inc., and Robin Ramaghi
13    in the lawsuit that you and your wife have filed in
14    Jacksonville.
15               Are you familiar with the lawsuit that I'm
16    referring to, sir?
17        A    Yes, I am.
18        Q    Very good.  Mr. Robinson, have you ever
19    given a deposition before?
20        A    I might have, but I don't remember.
21        Q    Okay.  I just want to go over a few ground
22    rules with you that will help us hopefully move this
23    along more efficiently.
24               First and foremost, sir, if you would, speak
25    as clearly as you can when giving your answers.  And
```

1      Q    Did you read this document before you signed

2    it?

3      A    I'm -- I'm not for sure.

4      Q    Okay.  Do you understand that this document

5    means that National Automotive does not provide any

6    warranties with regard to this vehicle?

7      A    Yes.

8      Q    Have you seen a document such as this in the

9    past in relation to purchasing a used vehicle?

10     A    I believe so.

11     Q    Okay.  Looking at the signatures on this

12   page, do you recognize your signature?

13     A    I don't see -- you got to scroll down lower.

14     Q    Yes, sir.  I'm sorry.

15     A    Yes, that's my signature.  It looks like it.

16     Q    Sir, what is your understanding of a vehicle

17   that is sold as is?  What does that mean to you?

18     A    Well, I mean, it's sold as is unless someone

19   makes some type of verbal agreement to -- to do

20   something, you know, to add a little something to it.

21          I mean, I don't know.  You can always add

22   something to it verbally, but it means sold as is.

23     Q    In this instance, is it your position that

24   National Automotive agreed to do something with this

25   car that is not reflected in the paperwork?