UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ISIAH ROBINSON, and LISA CLAYTON
ROBINSON, Each an Individual,

    Plaintiffs,

vs.

NATIONAL AUTOMOTIVE, INC., a Florida
corporation, and ROBIN RAMAGHI, an
individual,

    Defendants.

Case No. 3:24-cv-00948

**DEFENDANT NATIONAL AUTOMOTIVE, INC.'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant, NATIONAL AUTOMOTIVE, INC., a Florida corporation ("NAI"), by and through its undersigned counsel, and pursuant to the Court's Case Management and Scheduling Order (D.E. 22, p. 7), files this Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment (the "Response"), and states:

1. Contrary to Plaintiffs' assertion, Mrs. Ramaghi did recall when NAI obtained the original Certificate of Title for the Vehicle from Murray Ford, which was a few days after the sale of the Vehicle to Plaintiffs. (D.E. 68-3, 72:18-73:5; D.E. 70, Exh. A at ¶¶ 12, 20; D.E. 74, Exh. B at ¶¶ 10-11). Plaintiffs have no evidence to the contrary.

2. Contrary to Plaintiffs' assertion, and although Mrs. Ramaghi was unable to provide the precise date that the Vehicle was delivered to NAI, it was delivered following Manheim's auction in early September 2023, which means it was delivered within a matter of days before Plaintiffs purchased it on September 8, 2023. (D.E. 70, Exh. A at ¶ 8). Plaintiffs have no evidence to the contrary.

3. Plaintiffs have not disputed salesman Christopher Caldwell's testimony that Plaintiffs asked him, on September 8th, for a blank set of the contract documents to review while they test drove the Vehicle and that he gave them a blank/unsigned set of documents for their review. (D.E. 74, Exh. B, at ¶ 6).

4. Regarding paragraphs 3-5 of the Response, it is unclear what was meant by Plaintiffs signing "a copy" of the documents.[1] Regardless, certain documents attached to the Amended Complaint are not signed by NAI (D.E. 30-2, 30-3 and 30-4), so those are not proven as the operative documents between the parties. NAI does not agree that they are. (D.E. 74, Exh. B at ¶ 9; D.E. 70, Exh. A at ¶ 13).

5. Plaintiffs mischaracterize Mrs. Ramaghi's testimony about the date on the Certificate of Title throughout their Response. Mrs. Ramaghi testified that the date of September 8, 2023, was "copied over" in order to match the temporary tag that had already been issued and placed on the Vehicle before Plaintiffs returned to NAI on September 14, 2023. (D.E. 68-3, 77:5-9). Mrs. Ramaghi did not say that she filled in the original title on the same date Plaintiffs bought the Vehicle. (D.E. 68-3, 122:17-126:6). Notably, despite her multiple invitations for Plaintiffs' counsel to ask her for more details on this issue, Plaintiffs' counsel deliberately chose not to ask.

6. Further, no finding or conclusion can be drawn from the date of 9-1-23 put on the Certificate of Title for Murray Ford as Mrs. Ramaghi testified she could not recall when she had the phone call with Murray's title clerk, Miranda Wilkerson, to fill in the information. (D.E. 68-3, 77:10-22). The date of 9-1-23 on the Certificate of Title is noted

---

[1] Plaintiffs cite to ECF No. 4 for each of these statements, but on the docket that is the Summons issued to NAI.

as the "Date Sold" and is not evidence of the date that NAI actually picked it up from Murray Ford. Plaintiffs simply have no evidence to support that allegation.

7. NAI has consistently maintained that Plaintiffs returned to NAI several days after the purchase on September 8th. NAI has addressed this return visit in their Affidavits (D.E. 70, Exh. A at ¶ 21; D.E. 74, Exh. B at ¶ 12), as well as in interrogatory answers (D.E. 71, Comp. Exh. 2 at answer to No. 5), and Mrs. Ramaghi's deposition testimony cited by Plaintiffs does not contradict those. Additionally, the fact that Plaintiffs did not return in the Vehicle itself is evidence of their desire to keep it, nothing more. Plaintiffs returned to NAI on September 14th in Mrs. Robinson's Volkswagen (D.E. 74, Exh. B at ¶ 12; D.E. 70, Comp. Exh. D., Mrs. Robinson's answer to No. 7).

8. Plaintiffs' Amended Complaint did not allege that NAI violated the Odometer Act with an intent to defraud through recklessness or gross negligence. (D.E. 30 at ¶¶ 31, 61). The Response relies heavily on the accusation that NAI had actual knowledge of the mileage disclosure on the Certificate of Title as opposed to constructive knowledge. Regardless, Plaintiffs lack evidence that NAI had actual or constructive knowledge of the "not actual" designation on the Certificate of Title until NAI obtained the original title from Murray Ford on September 11, 2023. Plaintiffs have no evidence that NAI was told by Murray Ford, Manheim or anyone else what the mileage was on the original title before NAI's bought the Vehicle or before NAI retrieved the title. Nor do Plaintiffs dispute what the mileage showed on the odometer of the Vehicle itself on September 8th; that the mileage as listed on the contract documents was consistent with what the odometer actually showed; that Mr. Caldwell pulled the mileage of 118,245 from the Vehicle's odometer because he did not have, or have

- 3 -

access to, any other information from which to identify and disclose the Vehicle's mileage; that NAI did not have a title history or Carfax report putting it on notice that the mileage was "not actual;" that the auctioneer Manheim reported the mileage to be 118,189; and that Plaintiffs signed the Power of Attorney (D.E. 30-5), the Separate Odometer Disclosure Statement and Acknowledgement (D.E. 30-7) and the Odometer Disclosure Statement (D.E. 30-8).

9. Plaintiffs' Supplemental Declarations do not address any alleged conversation with Mr. Caldwell on September 8th about the mileage (any supposed oral misrepresentations). Their Declarations attached to their own Motion (D.E. 69-6 and 69-7) merely (and vaguely) state, "At the time of sale, the dealership represented to me that the Equinox had 118,245 miles and that this figure was its actual mileage."

10. The Court cannot consider an "intent to defraud" based upon recklessness or gross negligence as those allegations were not pled. *Ocean Reef Charters, LLC v. Travelers Prop. Cas. Co. of Am.,* No. 9:23-81222-CIV-BER, 2025 WL 2027496, at *13 (S.D. Fla. July 16, 2025) ("A party cannot raise 'a new legal claim for the first time in response to the opposing party's summary judgment motion.'"). Even if the Court were to do so, however, the parties' positions as to what transpired between them are admittedly contradictory – NAI steadfastly maintains that it met with Plaintiffs in person on September 14th to discuss the mileage shown as "not actual" on the original Certificate of Title and, because Plaintiffs chose to keep the Vehicle, the contract documents were marked "TMU" (true mileage unknown) in their presence and with their knowledge and consent; while Plaintiffs claim this meeting/return visit to NAI, and the corresponding execution of contract documents with "TMU" notations on them, did not

happen. Plaintiffs cite to *Coleman v. Lazy Days RV Ctr., Inc.*, No. 8:05-CV-00930-T-17TBM, 2007 WL 2021832 (M.D. Fla. July 12, 2007), to discuss the means by which a court can find an "intent to defraud," but the *Coleman* court plainly states that "it will not find voluntary disclosure of the odometer reading inherently indicative of an intent to defraud a buyer absent evidence that demonstrates constructive knowledge, recklessness or gross negligence on the part of the seller." *Id.* at *2. Plaintiffs chose to focus on the "voluntary disclosure of the odometer reading" as the basis for Count I (D.E. 30 at ¶¶ 16, 22, 25, 29), even labeling the voluntary disclosure of the odometer reading the "Mileage Representation," and they are restricted to what they pled.[2]

11.     Plaintiffs' effort to distinguish *Witkowski v. Mack Trucks, Inc.*, 712 F.2d 1352 (11th Circ. 1983), is curious, and NAI disagrees that it is not applicable here. While the 11th Circuit may have considered earlier regulations, the burden of proving an "intent to defraud" remains the same.[3]  Further, Plaintiffs discuss multiple regulations that *were not pled* in their Amended Complaint, and therefore cannot and should not be considered at summary judgment. (D.E. 73, p. 8). Plaintiffs only identified 49 C.F.R. § 580.5 in Count I of the Amended Complaint. (D.E. 30, pp. 12-13). Moreover, *Witkowski*

---

[2] Notably, *Coleman* also holds, "When the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact." *Id.* at *3.  Given that Plaintiffs rely on *Coleman* to oppose NAI's Motion for Summary Judgment, the same legal proposition makes clear that Plaintiffs' own motions for summary judgment (D.E. 68 and 69) must be denied, and the issue of "intent to defraud" must be submitted to the trier of fact.

[3] In fact, Judge Moody relied on *Witkowski* on the issue of "intent to defraud" in *Fowler v. Elegant Auto Finance LLC*, Case No. 8:19-cv-903-T-30SPF, 2019 WL 3821770, at *2 (M.D. Fla. Aug. 15, 2019).

also addresses a breach of warranty claim, which was discussed in NAI's Motion and is not dependent on any of the federal regulations. *Id.* at pp. 1354-1355.[4]

12. NAI's arguments above as to intent likewise apply to Counts II and III of the Amended Complaint. Plaintiffs have not produced evidence demonstrating that NAI described the mileage on the odometer "recklessly". NAI made the disclosure based on what the odometer *actually showed* (D.E. 74, Exh. B at ¶ 8), and Plaintiffs have not accused NAI of tampering with the odometer. Put simply, there is no evidence that NAI knew Plaintiffs would show up on September 8th looking to purchase *any* car, much less the Vehicle; no evidence that NAI had to make a sale to Plaintiffs that day; and no evidence that Mr. Caldwell imposed any pressure tactics or trickery on them whatsoever, whether intentionally or recklessly. (D.E. 70, Exh. A at ¶ 23; D.E. 74, Exh. A at ¶ 25). To the contrary, he let them take a blank set of documents and an unsupervised test drive of the Vehicle itself.

13. Regarding Counts IV and V, Plaintiffs do not dispute that they failed to plead any Florida law in either count; that the Magnuson-Moss Warranty Act ("MMWA") does not apply to oral warranties; or the statutory definition of "express warranties." Nor do Plaintiffs adequately counter NAI's argument that the MMWA is inapplicable because the contract documents contain no "written warranty" as defined by 15 U.S.C. §2301. Unable to identify a qualifying written warranty, Plaintiffs attempt to alter MMWA's terms

---

[4] *Tuckish v. Pompano Motor Co.*, 337 F. Supp. 2d 1313 (S.D. Fla. 2004), cited by Plaintiffs, is distinguishable as the court noted, "Failure to provide a purchaser with a copy of the certificate of title, *when such title is available*, technically violates the Odometer Act." *Id.* at 1317 (italics added). NAI did not have the title from Murray Ford on September 8th, and by September 14th, NAI met with Plaintiffs to discuss its mileage designation. *See also,* Mrs. Ramaghi's testimony regarding NAI's standard procedure upon receipt of titles. (D.E. 68-3, 40:15-24).

by urging the Court to consider "material conditions" and the "core of the bargain" (D.E. 73, pp. 19-20), but neither is statutorily applicable or required. A mileage disclosure simply does not satisfy the definition of a "written warranty" under the MMWA, which requires that a written warranty relate to the nature of a product's material or the workmanship of the product. Moreover, this particular issue presents a pure question of law suitable for resolution on summary judgment. *Davis v. Bob Evans Farms, LLC*, No. 2:14-CV-14341-ROSENBERG/LYNCH, 2015 WL 12857345 (S.D. Fla. Apr. 13, 2015), *aff'd,* 649 Fed. Appx. 869 (11th Cir. 2016).

WHEREFORE, Defendant, NATIONAL AUTOMOTIVE, INC., respectfully requests the Court enter summary judgment in its favor on Plaintiffs' Amended Complaint, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

**McGLINCHEY STAFFORD**

*/s/ Kimberly Held Israel*
Kimberly Held Israel, Esq.
Florida Bar # 47287
10375 Centurion Parkway N., Suite 420
Jacksonville, FL 32256
(904) 224-4449 (Telephone)
(904) 485-8083 (Facsimile)
Primary E-mail: kisrael@mcglinchey.com
Secondary E-mail: cgipson@mcglinchey.com
***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served, via the Court's e-Portal, this **13th** day of **November, 2025**, to: **Josh Feygin, Esq.**, josh@sueyourdealer.com, and **Michael Citron, Esq.**, michael@maclegalpa.com, *Counsel for Plaintiffs.*

*/s/ Kimberly Held Israel*
ATTORNEY