**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO.: 3:24-cv-00948**

ISIAH ROBINSON, and,
LISA CLAYTON ROBINSON,
each an Individual,

      Plaintiffs/Counter-Defendants,

vs.


NATIONAL AUTOMOTIVE, INC., a
Florida Corporation,


      Defendants/Counter-Plaintiffs.

_____/

**JOINT FINAL PRETRIAL STATEMENT**

### 1. Basis of Jurisdiction

This Court has federal-question jurisdiction under 28 U.S.C. § 1331 for claims arising under the Federal Odometer Act, 49 U.S.C. § 32701 et seq., and the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 et seq. The Court has supplemental jurisdiction over Plaintiffs' related state-law claims, as well as Defendant's related state law claim, under 28 U.S.C. § 1367(a). Venue and personal jurisdiction are admitted.

### 2. Statement of the Case

This action arises from Plaintiffs' purchase of a used motor vehicle from Defendant, National Automotive, Inc. Plaintiffs allege that Defendant misrepresented the vehicle's mileage and violated the Federal Odometer Act and related state law in connection with the sale and subsequent conduct involving the vehicle. Defendant denies Plaintiffs'

allegations and contends that all required disclosures were properly made and that it acted lawfully and without any intent to defraud Plaintiffs. Defendant has asserted a counterclaim against Plaintiffs for breach of contract, which Plaintiffs dispute and contend is barred or subject to offset.

### 3.  Concise Statement of Each Parties' Position

Plaintiffs assert that this action concerns a consumer vehicle transaction reflected in documents dated September 08, 2023 involving a 2011 Chevrolet Equinox. Plaintiffs allege that Defendant National Automotive, Inc. violated the Federal Odometer Act's disclosure requirements by making inaccurate mileage disclosures and by using non-title paperwork and a power of attorney in a manner inconsistent with federal regulations. Plaintiffs also assert Florida common-law fraud/fraudulent inducement and breach of express warranty under Florida's U.C.C., and revocation of acceptance through the Magnusson Moss Warranty Act. Defendant denies liability under each of the claims asserted against it and denies that Plaintiffs have been damaged.

Defendant asserts a counterclaim alleging that Plaintiffs breached contractual obligations related to a GPS tracking device installed on the vehicle, including tampering with, disabling or removing the device, and seeks monetary damages caused by the breach. Plaintiffs deny liability and that Defendant has shown nor is entitled to recover any damages.

### 4.  Exhibits

a)  <u>Plaintiffs'/Counter-Defendants' Exhibits</u>:

See Plaintiffs' Exhibit List attached as Exhibit "A."

b) Defendant's/Counter-Plaintiff's Exhibits:

See Defendant's Exhibit List attached as Exhibit "B".

**5. Witnesses**

a) Witnesses Plaintiffs/Counter-Defendants Will Likely Call:[1]

| Name | Objection |
|------|-----------|
| Isiah Robinson | |
| Lisa Clayton Robinson | |
| Robin Ramaghi | |
| Reza Ramaghi | |
| Christopher Caldwell | |
| Peirson Satterthwaite | |
| Jim Schumacher | |
| Marck Manga | |

---

[1] No objections from Defendant/Counter-Plaintiffs

|  |  |
|---|---|
| Miranda Wilkerson |  |

b) Witnesses Plaintiffs/Counter-Defendants May Call If the Need Arises

| Name | Objection |
|---|---|
| Florida Department of Highway Safety and Motor Vehicles – Records Custodian(s) |  |
| National Automotive, Inc. – FRCP 30(b)(6) Corporate Representative(s) |  |
| Jim Schumacher LLC – FRCP 30(b)(6) Corporate Representative(s) |  |
| National Automotive, Inc. – Records Custodian(s) |  |
| Murray Ford of Starke, Inc. – FRCP 30(b)(6) Corporate Representative(s) |  |
| Murray Ford of Starke, Inc. – Records Custodian(s) |  |
| Positioning Universal, Inc. / SVR Tracking, Inc. – FRCP 30(b)(6) Corporate Representative(s) |  |

| | |
|---|---|
| Positioning Universal, Inc. / SVR Tracking, Inc. – Records Custodian | |
| CARFAX, Inc. – Records Custodian(s) | |
| Governmental Designee – Motor Vehicle Fraud Unit (State of Florida) | Objection as to relevance and materiality and potentially cumulative witness depending on the subject matter this witness may testify to and/or which document(s) |
| Any witnesses listed on Defendant's / Counter-Plaintiff's witness list. | |

 

   c) <u>Witnesses Defendant/Counter-Plaintiff Will Likely Call</u>:[2]

     1.  Robin Ramaghi

     2.  Reza Ramaghi

     3.  Christopher Caldwell

     4.  Erin Mikell

     5.  Peirson Satterthwaite

     6.  Jim Schumacher

---

[2] No objections from Plaintiffs/Counter-Defendants

    7.  Gary Twelkemeier/Manheim

    8.  Isiah Robinson

    9.  Lisa Clayton-Robinson

d)  <u>Witnesses Defendant/Counter-Plaintiff May Call If the Need Arises</u>:

    1.  Corporate representative of Murray Ford-Mercury, Inc.

    2.  Corporate representative of Bolotina, Co.

    3.  Corporate representative of Manheim Jacksonville

    4.  Any witnesses listed by Plaintiffs/Counter-Defendants

## 6.  Expert Witnesses

NONE

## 7.  Damages and Other Relief

a)  <u>Plaintiffs' Damages related to their Amended Complaint (DE 30)</u>

Under Count I (Federal Odometer Act), 49 U.S.C. § 32710(a), Plaintiffs seek recovery of three times their actual damages or $10,000, whichever is greater. Plaintiffs' actual damages total $7,070.20, consisting of $4,000.00 in diminution in value attributable to the inaccurate mileage and branded "Not Actual Mileage" title; $848.41 in repair expenses; $289.38 in excess sales tax paid on the overstated vehicle value; and $1,932.41 in excess finance charges incurred as a direct result of financing the inflated purchase price under the Retail Installment Contract. Accordingly, Plaintiffs seek treble

actual damages in the amount of $21,210.60, or in the alternative, the statutory minimum of $10,000, whichever is greater, together with reasonable attorney's fees and taxable costs pursuant to 49 U.S.C. § 32710(b).

Under Counts II and III (Fraud and Fraudulent Inducement), Plaintiffs seek restoration of the parties to their pre-contract positions. As of March 26, 2026, Plaintiffs have made sixty-two (62) biweekly installment payments of $177.89 under the Retail Installment Contract beginning September 22, 2023, totaling $11,053.02, in addition to the $2,000.00 down payment, for total payments to date of approximately $13,053.02. In the event relief is not awarded under the Federal Odometer Act or the Magnuson-Moss revocation claim, Plaintiffs seek rescission of the transaction under their fraud claims, including return of the $2,000.00 down payment; restitution of all installment payments made to date totaling $11,053.02; plenary damages for all additional installment payments made after the filing of the Pretrial Statement and through the date of verdict; cancellation of any remaining indebtedness under the Retail Installment Contract. Plaintiffs expressly seek rescission under fraud only in the alternative and do not seek duplicative recovery.

Under Count V (Revocation of Acceptance pursuant to the Magnuson-Moss Warranty Act), Plaintiffs seek revocation of acceptance, together with restoration of the parties to their pre-contract positions. As of March 26, 2026, Plaintiffs have made sixty-two (62) biweekly installment payments of $177.89 under the Retail Installment Contract beginning September 22, 2023, totaling $11,053.02, in addition to the $2,000.00 down payment, for total payments to date of approximately $13,053.02. Plaintiffs therefore seek restitution of the $2,000.00 down payment; restitution of all installment payments made

to date totaling $11,053.02; plenary damages for all additional installment payments made after the filing of the Pretrial Statement and through the date of the rendition of a verdict; cancellation of any remaining indebtedness under the Retail Installment Contract; and restoration of the parties to their pre-contract positions. Plaintiffs further seek incidental and consequential damages recoverable under the Uniform Commercial Code, including $848.41 in repair expenses. Plaintiffs plead this remedy in the alternative and do not seek duplicative recovery.

b) <u>Defendant/Counter-Plaintiff's Damages related to its Amended Counterclaim (DE 39)</u>

Defendant/Counter-Plaintiff seeks damages caused by Plaintiffs/Counter-Defendants' breach of contract including but not limited to the price of the GPS unit installed in the Equinox. NAI seeks money damages plus prejudgment interest, attorney's fees and taxable costs.

## 8. Depositions

See Plaintiffs' Deposition Designations attached as Exhibit "C."

See Defendant's Deposition Designations attached as Exhibit "D."

## 9. Concise Statement of Each Admitted Fact

1.    Plaintiffs, Isiah Robinson and Lisa Clayton Robinson, purchased a used 2011 Chevrolet Equinox (VIN ending 4389) (the "Equinox") from Defendant on September 8, 2023.

2.    Plaintiffs, Isiah Robinson and Lisa Clayton Robinson, are husband and wife.

3.    Defendant is a licensed motor vehicle dealer located at 6600 Blanding Blvd.,

Jacksonville, Florida.

4.  Robin Ramaghi is the General Manager/Owner of Defendant.

5.  Reza Ramaghi is Robin Ramaghi's husband.

6.  Defendant is a buy-here/pay-here dealership and prepares its own contracts.

7.  Defendant purchased the Equinox from Murray Ford located in Starke, Florida as part of a wholesale lot of vehicles.

8.  Defendant did not inspect the Equinox prior to purchasing it from Murray Ford.

9.  Reza Ramaghi handled the purchase of the wholesale lot of vehicles from Murray Ford.

10. Defendant did not verify the mileage of the Equinox before buying it from Murray Ford.

11. The face of the original Certificate of Title for the Equinox states that the mileage was "not actual" as of "02/22/23".

12. Robin Ramaghi did not speak to Plaintiffs on September 8, 2023.

13. Defendant did not yet have the Equinox's original Certificate of Title from Murray Ford on September 8, 2023.

14. Defendant did not give Plaintiffs the Equinox's Certificate of Title on September 8, 2023.

15. As of March 26, 2026, Plaintiffs have tendered 62 monthly installment payments due under the Retail Installment Contract and Security Agreement.

16. The Retail Installment Contract and Security Agreement requires Plaintiffs to make seventy-eight (78) bi-weekly payments of $177.89, beginning on September 22, 2023.

17. Defendant retains a security interest in the Equinox.

18. All payments made by Plaintiffs towards the purchase of the Equinox have been accepted by Defendant and applied to Plaintiffs' account.

19. Robin Ramaghi is the only person authorized to sign vehicle titles on behalf of Defendant.

20. The HSMV Form 82040 Application for Certificate of Motor Vehicle Title submitted by Defendant has the "REFLECTS ACTUAL MILEAGE" and "IS NOT THE ACTUAL MILEAGE" boxes checked off.

21. The acronym "*TMU*" stands for "true mileage unknown."

22. Plaintiffs submitted a complaint to the Florida Department of Highway Safety and Motor Vehicles against Defendant before filing this lawsuit.

23. Defendant did not inspect the Equinox after Plaintiffs filed their lawsuit against Defendant.

24. In conjunction with the purchase of the Equinox, Plaintiffs signed an Acknowledgement of Purchase of Vehicle Containing Past Due Starter Interrupt and/or Electronic Tracking (GPS) Device.

25.     In conjunction with the purchase of the Equinox, Plaintiffs signed an "As Is – Sold Without Warranty" agreement.

**10. Concise Statement of Each Agreed Principle of Law**

1.     <u>Federal Odometer Act</u>.

a.     A transferor of a motor vehicle shall give the transferee the written disclosure of the cumulative mileage registered on the odometer and disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled; and it must make the disclosure in the form and manner prescribed. 49 U.S.C. § 32705(a)(1)–(3); 49 C.F.R. § 580.5(c).

b.     In order for a civil plaintiff to recover damages under the Federal Odometer Act, he or she must prove (1) that the defendant violated the Act or its regulations, (2) with the intent to defraud. *Bertolotti v. A&I Int'l Motor Corp.*, No. 16-22185-CIV, 2016 WL 6804624 at *2 (S.D. Fla. Nov. 17, 2016) (internal citations omitted); *Coleman v. Lazy Days RV Ctr., Inc.*, No. 805CV00930T17TBM, 2006 WL 2131303, at *3 (M.D. Fla. July 28, 2006); *Owens v. Samkle Automotive, Inc.*, 425 F.3d 1318, 1321 (11th Cir. 2005).

2.  <u>Common-law fraud & fraudulent inducement.</u>

a.     The essential elements of a claim for fraudulent misrepresentation in Florida is (1) a false statement concerning a material fact; (2) made with the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the

representation. *Hardin v. Oakley Transport, Inc.*, 773 F.Supp.3d 1320, 1334 (M.D. Fla. 2025) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).

b.      The elements of a fraudulent inducement claim are: "(a) the representor made a false statement concerning a material fact; (b) the representor knew or should have known that the representation was false; (c) the representor intended that the representation would induce another to rely and act on it; and (d) the party acted in justifiable reliance on the representation and was injured as a result." *Global Quest, LLC v. Horizon Yachts, Inc.,* 849 F.3d 1022, 1029–30 (11th Cir. 2017).

c.      Generally, the false statement of material fact necessary to establish fraud must concern a past or existing fact. *Prieto v. Smook, Inc.*, 97 So. 3d 916, 917 (Fla. 4th DCA 2012).Actual damages are required in an action for fraud. Fraud cannot form the basis for recovery of damages unless the damages directly arise from the fraud and are causally connected to the fraud. *Simon v. Celebration Co.,* 883 So. 2d 826, 833 (Fla. 5th DCA 2004).

d.      In a claim for fraud in the inducement, "[g]enerally speaking, to satisfy the element of an injury, the claimant must establish that he or she has sustained pecuniary damage or injury by which he or she has been placed in a worse position than he or she would have been absent the fraud." *Geico Gen. Ins. Co. v. Hoy*, 136 So. 3d 647, 651 (Fla. 2d DCA 2013).

e.      Florida has developed a "flexibility theory" of damages in cases of fraudulent misrepresentation, meaning that an injured party may recover either the out-of-pocket loss or the benefit of the bargain loss. *Minotty v. Baudo*, 42 So. 3d 824, 835 (Fla. 4th DCA

2010).

f.       The benefit-of-the-bargain rule awards as damages the difference between the actual value of the property and its value had the alleged facts regarding it been true. *Minotty v. Baudo*, 42 So. 3d 824, 835 (Fla. 4th DCA 2010), citing *Martin v. Brown*, 566 So. 2d 890, 891-892 (Fla. 4th DCA 1990).

g.       The out-of-pocket rule awards as damages the difference between the purchase price and the real or actual value of the property. *Minotty v. Baudo*, 42 So. 3d 824, 835 (Fla. 4th DCA 2010), citing *Martin v. Brown*, 566 So. 2d 890, 891-892 (Fla. 4th DCA 1990).

h.       "A double recovery based on the same elements of damages is prohibited." *Minotty v. Baudo*, 42 So. 3d 824, 835 (Fla. 4th DCA 2010), citing *Montage Group, Ltd. V. Athle-Tech Computer Sys., Inc.*, 889 So. 2d 180, 199 (Fla. 2d DCA 2004).

3.   <u>Revocation of Acceptance under the Magnuson-Moss Warranty Act (MMWA).</u>

a.       The MMWA defines a "written warranty" as any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect fee or will meet a specified level of performance over a specified period of time…which written affirmation or promise becomes part of the basis of the bargain between a supplier and a buyer for purposes other than the resale of such product. 15 USC § 2301(6)(A).

b.       The MMWA defines a "consumer" as a buyer (other than for purposes of

resale) of any consumer product, any person to whom such product is transferred during the duration of a…written warranty…applicable to the product, and any other person who is entitled by the terms of such warranty…or under applicable State law to enforce against the warrantor…the obligations of the warranty. 15 U.S.C. § 2301(3).

c.      The MMWA defines a "supplier" as any person engaged in the business of making a consumer product directly or indirectly available to consumers. 15 U.S.C. §2301(4).

d.      The MMWA defines a "warrantor" as any supplier or other person who gives or offers to give a written warranty. 15 U.S.C. § 2301(5).

e.      The MMVA defines a "consumer product" as any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes. 15 U.S.C. § 2301.

4.      <u>Breach of contract – Defendant/Counter-Plaintiff's Counterclaim</u>

a.      The elements of a claim for breach of contract are: (1) a valid contract existed; (2) a material breach of the contract; and (3) damages. *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017); *Bedgood v. Wyndham Vacation Resorts, Inc.*, 2025 WL 1827649, at *2 (M.D. Fla. July 2, 2025); *Arch Ins. Co. v. A3 Dev., LLC*, 2026 WL 632330, at * 8,  n. 8 (S.D. Fla. March 6, 2026).

b.      It is well established in Florida that where the allegations of a complaint show the invasion of a legal right, the plaintiff on the basis thereof may recover at least nominal damages. *Hutchison v. Tompkins*, 259 So. 2.d 129, 132 (Fla. 1972); *Land & Sea*

*Petroleum Holdings, Inc. v. Leavitt*, 321 So. 3d 810, 816 (Fla. 4th DCA 2021).

   11. **A Concise Statement of Each Issue of Fact.**

   1.     Which documents comprise the parties' contract for the purchase and sale of the Equinox.

   2.     Whether Defendant had actual knowledge that the mileage on the Equinox was not accurate on September 8, 2023.

   3.     Whether Defendant inspected the Equinox and if so, when.

   4.     When Defendant received the Equinox from Murry Ford.

   5.     Whether Defendant was in possession of the Equinox's Certificate of Title on September 8, 2023.

   6.     When Defendant received the Equinox's Certificate of Title from Murray Ford.

   7.     Whether Plaintiffs authorized Robin Ramaghi to affix their signatures to the Equinox's Certificate of Title.

   8.     Whether Defendant contacted Plaintiffs regarding the Equinox's mileage after September 8, 2023.

   9.     Whether Plaintiffs returned to Defendant's premises after September 8, 2023.

   10.     Whether Defendant offered to cancel the purchase, retake possession of

the Equinox and presented a $2,000 check to Plaintiffs for the refund of their down payment.

11.     Whether Defendant added "TMU" notations to any documents with Plaintiffs' knowledge and consent.

12.     Whether Plaintiffs understood that "TMU" meant "*TRUE MILEAGE UNKNOWN.*"

13.     Whether Defendant added "TMU" notations to any documents in Plaintiffs' presence.

14.     Whether Plaintiffs intentionally tampered with the GPS device on the Equinox.

15.     Whether Plaintiffs intentionally disabled the GPS device on the Equinox.

16.     Whether Plaintiffs removed the GPS device on the Equinox.

17.     Whether Plaintiffs breached the contract documents.

18.     Whether Defendant suffered any damages as a result of the disablement, tampering or removal of the GPS device on the Equinox.

19.     Whether Plaintiffs, Isiah Robinson and Lisa Clayton Robinson, are each a "consumer".

20.     Whether the Equinox is a "consumer product" within the meaning of applicable law.

21.    Whether Reza Ramaghi is employed by Defendant

22.    Whether Defendant sells approximately 300 vehicles per year.

23.    Whether Defendant received the Equinox's Certificate of Title from Murray Ford in a condition that was incomplete.

24.    What Defendant, through Robin Ramaghi, filled in on the Equinox's Certificate of Title.

25.    Where Robin Ramaghi obtained any information she put on the Equinox's Certificate of Title.

26.    Whether it is Defendant's regular business practice to fill in mileage disclosures on certificates of title received incomplete from selling dealers.

27.    Whether Defendant represented to Plaintiffs on September 8, 2023 that the mileage of the Equinox was 118,245 miles.

28.    Whether Defendant gave Plaintiffs any indication on September 8, 2023 that the mileage disclosure was not actual or inaccurate.

29.    Whether any representation by Defendant regarding the Equinox's mileage constituted a written warranty.

30.    Whether any representation by Defendant regarding the Equinox's mileage constituted an express warranty.

31.    Whether the Odometer Disclosure Statement given to Plaintiffs on September 8, 2023 listed "118,245" with the "not actual" accuracy box left unchecked.

32.    Whether the HSMV Form 82040 Application for Certificate of Motor Vehicle Title given to Plaintiffs on September 8, 2023 certified "118,245" as reflecting actual mileage.

33.    Whether the Separate Odometer Disclosure Statement and Acknowledgment (HSMV Form 82933) given to Plaintiffs on September 8, 2023 represented under penalty of perjury that 118,245 miles was accurate.

34.    Whether the Bill of Sale/Buyer's Order and Retail Installment Contract given to Plaintiffs on September 8, 2023 stated "118,245" without any qualification that the mileage was not actual.

35.    Whether Plaintiffs relied on mileage representations made on September 8, 2023 in deciding to purchase the Equinox.

36.    Whether Plaintiffs would not have purchased the Equinox had they known the mileage was not actual.

37.    Whether the transaction by which Plaintiffs purchased the Equinox was a financed transaction.

38.    Whether the amount financed under the Retail Installment Contract was $9,355.34, with a finance charge of $4,520.08 and total scheduled payments of $13,875.42.

39.    Whether the total sale price of the Equinox, including the $2,000.00 down payment, was $15,875.42.

40.    Whether Plaintiffs tendered installment payments to Defendant following

the September 8, 2023 transaction.

41.    Whether the Retail Installment Sales Contract required Plaintiffs to make seventy-eight (78) bi-weekly payments of $177.89.

42.    Whether Defendant's authorized representative signed or countersigned the transaction documents given to Plaintiffs on September 8, 2023.

43.    Whether Robin Ramaghi is the only person authorized to sign certificates of title on behalf of Defendant.

44.    Whether Robin Ramaghi signed the Equinox's Certificate of Title on behalf of Defendant as the transferor.

45.    Whether Robin Ramaghi signed the Equinox's Certificate of Title on behalf of Isiah Robinson, with Mr. Robinson's knowledge and consent, using the notation "Isiah Robinson POA By Robert Karr."

46.    Whether Robin Ramaghi signed the Equinox's Certificate of Title on behalf of Lisa Clayton Robinson, with Mrs. Robinson's knowledge and consent, using the notation "Lisa Clayton Robinson POA By R Karr."

47.    Whether the power-of-attorney form (HSMV Form 82053) used by Defendant for Plaintiffs' transaction was printed on paper that is not secure paper issued by the Florida Department of Highway Safety and Motor Vehicles.

48.    Whether the power-of-attorney form used for Plaintiffs' transaction was dated "09/08/23."

49.     Whether the power-of-attorney form used for Plaintiffs' transaction contained any mileage disclosures.

50.     Whether "Robert Karr" — the named attorney-in-fact on the power-of-attorney form — is a fictitious person who does not actually exist.

51.     Whether Robert Karr worked for or was paid by Defendant.

52.     Whether it was Defendant's regular practice to use a fictitious third-party name on power-of-attorney forms.

53.     Whether the Equinox's Certificate of Title was held by a lienholder at the time the power of attorney was executed.

54.     Whether the Equinox's Certificate of Title was lost at the time the power of attorney was executed.

55.     Whether the physical certificate of title existed and was in Defendant's possession at the time of the transaction.

56.     Where Defendant stores certificates of title.

57.     Whether Defendant created a second set of transaction documents bearing "TMU" and "NOT ACTUAL" notations.

58.     Whether the Odometer Disclosure Statement given to Plaintiffs on September 8, 2023 had the "not actual" accuracy box checked at the time it was given to Plaintiffs.

59.     Whether Robin Ramaghi handwrote "TMU" on the Odometer Disclosure

Statement, with Plaintiffs' knowledge and consent, after September 8, 2023.

60.    Whether the "TMU" notation on the Odometer Disclosure Statement appeared on the document given to Plaintiffs on September 8, 2023.

61.    Whether Robin Ramaghi handwrote "TMU" in the upper left area of the Bill of Sale/Buyer's Order, with Plaintiffs' knowledge and consent, after September 8, 2023.

62.    Whether the "TMU" notation in the upper left area of the Bill of Sale/Buyer's Order appeared on the document given to Plaintiffs on September 8, 2023.

63.    Whether Robin Ramaghi handwrote "TMU" above Isiah Robinson's signature on page three of the Bill of Sale/Buyer's Order, with Plaintiffs' knowledge and consent, after September 8, 2023.

64.    Whether the "TMU" notation above Isiah Robinson's signature on the Bill of Sale/Buyer's Order appeared on the document given to Plaintiffs on September 8, 2023.

65.    Whether Robin Ramaghi handwrote "TMU" to the right of the mileage disclosure on the first page of the Retail Installment Contract, with Plaintiffs' knowledge and consent, after September 8, 2023.

66.    Whether the "TMU" notation to the right of the mileage disclosure on the Retail Installment Sales Contract appeared on the document given to Plaintiffs on September 8, 2023.

67.    Whether Robin Ramaghai handwrote "TMU" above Isiah Robinson's initials on the bottom of the first page of the Retail Installment Contract, with Plaintiffs' knowledge and consent, after September 8, 2023.

68.     Whether the "TMU" notation above Isiah Robinson's initials on the Retail Installment Sales Contract appeared on the document given to Plaintiffs on September 8, 2023.

69.     Whether Robin Ramaghi handwrote "NOT ACTUAL TMU" on the left-hand side of the Separate Odometer Disclosure Statement and Acknowledgment, with Plaintiffs' knowledge and consent, after September 8, 2023.

70.     Whether the "NOT ACTUAL TMU" notation appeared on the left-hand side of the Separate Odometer Disclosure Statement and Acknowledgment given to Plaintiffs on September 8, 2023.

71.     Whether Robin Ramaghi handwrote "TMU – TMU – TMU" on the right-hand side of the Separate Odometer Disclosure Statement and Acknowledgment, with Plaintiffs' knowledge and consent, after September 8, 2023.

72.     Whether the "TMU – TMU – TMU" notation appeared on the right-hand side of the Separate Odometer Disclosure Statement and Acknowledgment given to Plaintiffs on September 8, 2023.

73.     Whether Plaintiffs consented to the addition of "TMU" or "NOT ACTUAL" notations on any of the transaction documents.

74.     Whether the "TMU" and "NOT ACTUAL" notations on the transaction documents were made in Plaintiffs' presence.

75.     Whether Defendant's addition of post-sale "TMU" and "NOT ACTUAL" notations to documents already bearing the date of September 8, 2023 constituted an

alteration of those documents.

76.    Whether the use of "NOT ACTUAL" or "TMU" notations by Defendant was intended to signify that the mileage disclosure on the Equinox was not accurate.

77.    Whether the HSMV Form 82040 Application for Certificate of Motor Vehicle Title submitted by Defendant to the DHSMV for Plaintiffs' transaction had any accuracy designation checked at the time the document was given to Plaintiffs on September 8, 2023.

78.    Which mileage designation boxes were checked on the HSMV Form 82040 and whether the form was submitted by Defendant to the DHSMV in relation to Plaintiffs' transaction.

79.    Whether creating the transaction paperwork in Defendant's dealer management software takes approximately 20–30 minutes.

80.    Whether Defendant maintains any written inspection policies or procedures for the vehicles it sells.

81.    Whether the Florida Department of Highway Safety and Motor Vehicles cited Defendant for violating Florida Statute § 319.225(4) in connection with Plaintiffs' transaction.

82.    Whether the Florida Department of Highway Safety and Motor Vehicles determined that Defendant "FAILED TO COMPLETE PROPER ODOMETER DISCLOSURE STATEMENT" in connection with Plaintiffs' transaction.

83.    Whether Plaintiffs mailed pre-suit written notices to Defendant on June 5,

2024, consisting of: (1) a Notice of Revocation of Acceptance; and (2) a notice of violations of the Motor Vehicle Information and Cost Savings Act (Odometer Act); and (4) a letter requesting preservation of evidence, as part of Plaintiffs' efforts to mitigate their damages.

84.     Whether the battery in the GPS tracking device installed in the Equinox is charged by the Equinox's own battery and/or alternator.

85.     What the GPS tracking records reflect and describe regarding the GPS device and the Equinox.

86.     Whether the GPS tracking records could reflect tampering or interference by Plaintiffs and/or a vehicle battery failure.

87.     Whether Defendant inspected the Equinox during the period between the filing of Plaintiffs' original Complaint and the filing of Defendant's Answer, Affirmative Defenses, and Counterclaim.

88.     Whether Defendant inspected the Equinox during the period between the filing of Plaintiffs' Amended Complaint and the filing of Defendant's Answer, Affirmative Defenses, and Counterclaim to the Amended Complaint.

89.     Whether Robin Ramaghi completed the mileage disclosures on the Equinox's Certificate of Title on behalf of Murray Ford, and when.

90.     Whether Plaintiffs drove to NAI's dealership on or around September 14, 2023 and in what vehicle.

91.     Whether Defendant offered and tendered a $2,000 refund check to

Plaintiffs.

92.     Whether Isiah Robinson tore in half and returned the $2,000 refund check to Defendant.

93.     Whether "Robert Karr," the named attorney-in-fact on the power-of-attorney form used for Plaintiffs' transaction, is a real person.

94.     Whether the Retail Installment Contract and Bill of Sale/Buyer's Order bearing "TMU" notations were signed by Plaintiffs on a date other than September 8, 2023, and whether those documents were backdated to reflect September 8, 2023 as the date of execution.

95.     Whether the signatures appearing on the re-executed Retail Installment Contract and Bill of Sale/Buyer's Order bearing "TMU" notations are the genuine signatures of Isiah Robinson and Lisa Clayton Robinson, or whether the signatures were copied or transposed from the contracts provided to Plaintiffs on September 8, 2023 without their knowledge or consent.

## 12. A Concise Statement of Each Issue of Law

1.     Whether Defendant violated the Federal Odometer Act.

2.     Whether Defendant violated the Federal Odometer Act with an "intent to defraud" Plaintiffs.

3.     Whether Defendant made a false statement to Plaintiffs concerning a material fact.

4.     Whether Defendant knew a representation to Plaintiffs was false.

5.     Whether Defendant intended that a representation to Plaintiffs would induce Plaintiffs to act upon it.

6.     Whether Plaintiffs relied on a representation made by Defendant thereby causing Plaintiffs injury.

7.     Whether Florida's UCC applies to Plaintiffs' claim for breach of express warranty.

8.     Whether Defendant breached an express warranty to Plaintiffs.

9.     Whether Plaintiffs were damaged by any breach of an express warranty.

10.    Whether there was  a "written warranty" under the Magnuson-Moss Warranty Act.

11.    Whether Plaintiffs have proved the elements of a claim for breach of express warranty under the Magnuson-Moss Warranty Act.

12.    Whether Plaintiffs were damaged by any breach of a written warranty under the Magnuson-Moss Warranty Act.

13.    Whether Florida state law governs the damages that Plaintiffs seek under the Magnuson-Moss Warranty Act.

14.    Whether Plaintiffs waived their right to assert any claims against Defendant.

15.    Whether Plaintiffs are estopped from asserting any claims against

Defendant.

16.     Whether Plaintiffs' claims are barred, in whole or in part, due to Plaintiffs' material breach of the parties' agreements by tampering with, removing and/or disabling the GPS unit attached to the Equinox.

17.     Whether Plaintiffs' claims are barred, in whole or in part, based on Plaintiffs' unclean hands.

18.     Whether Plaintiffs' claims are barred, in whole or in part, based on laches.

19.     Whether Plaintiff'' claims are barred, in whole or in part, based on fraud committed by Plaintiffs.

20.     Whether Plaintiffs' claims are barred, in whole or in part, based on accord and satisfaction.

21.     Whether Plaintiffs breached the parties' agreements by tampering with, disabling and/or removing the GPS unit installed on the Equinox.

22.     Whether Plaintiffs' breach of the parties' agreements, if any such breach is found, caused Defendant damages.

23.     Whether representing the mileage as "actual" on September 8, 2023 constitutes a false statement under 49 U.S.C. § 32705.

24.     Whether a post-sale disclosure or later correction can cure an earlier non-title disclosure.

25.     Whether a dealer has an affirmative duty under the Federal Odometer Act

to verify mileage before certifying mileage as "actual."

26.     Whether written mileage representations in the transaction documents constitute an express warranty under Fla. Stat. § 672.313.[3]

27.     Whether "as-is" language or express written disclaimers of warranties negate or limit a specific mileage affirmation contained in the same transaction under Fla. Stat. § 672.316.

28.     Whether a fact is material such that, but for the alleged non-disclosure or misrepresentation, the Plaintiff would not have entered into the transaction.

29.     Whether a knowing concealment or non-disclosure of a material fact constitutes fraud.

30.     Whether an allegedly incomplete statements that omitted material facts constitute fraud where Plaintiff relied on those statements to their detriment.

31.     Whether a representation made by Defendant constitutes  a statement of fact if Defendant had superior knowledge of the subject matter.

32.     Whether Plaintiffs' proof of fraud may be established through circumstantial evidence.

33.     What damages are recoverable in a claim for fraudulent misrepresentation or fraud in the inducement.

---

[3] Defendant does not concede that Florida UCC statutory provisions were pled and/or are applicable to any of Plaintiffs' claims.

34.    Whether fraud claims are subject to a four-year statute of limitations.

35.    When does a fraud claim accrue.

36.    Under what facts and circumstances is an express warranty created between a buyer and seller?.

37.    Whether reliance on the seller's affirmation of fact or promise, or a description of the goods, is presumed absent clear affirmative proof to the contrary.

38.    Whether the goods failed to conform to the affirmation, promise, or description of the goods that formed the basis of the bargain.

39.    Whether formal words such as "warrant" or "guarantee," or a seller's specific intention to create a warranty, are required to establish an express warranty.

40.    What categories of damages are recoverable for a breach of express warranty.

41.    What proof is required by Plaintiffs to support their claims for damages for breach of express warranty.

42.    Whether Plaintiffs can can testify as to the value of  goods in relation to their claim for damages for breach of express warranty.

43.    Whether claims for breach of express warranty are subject to a four-year statute of limitations.

44.    Whether a consumer must be damaged by the failure of a warrantor or supplier to comply with a warranty or obligation in order to recover under the Magnuson-

Moss Warranty Act.

45.     Whether a warranty under the Magnuson-Moss Warranty Act must pertain to a consumer product, as defined by the Act.

46.     What categories of damages are recoverable and remedies available for a breach of a warranty under the Magnuson-Moss Warranty Act.

47.     Whether the Magnuson-Moss Warranty Act incorporates state law to determine the measure and type of damages recoverable.

48.     Whether revocation of acceptance constitutes an equitable remedy.

49.     Under what circumstances may a buyer revoke acceptance of goods.

50.     When revocation of acceptance must occur under the Magnuson-Moss Warranty Act.

### 13. Pending Motions

The parties have filed multiple dispositive motions that remain pending before the Court. Plaintiff filed a First Motion for Summary Judgment on Defendant's Counterclaim [DE 68] on September 29, 2025, and a separate Motion for Partial Summary Judgment [DE 69] on September 30, 2025. Defendant filed Responses in Opposition [DE 71 and DE 74] to Plaintiff's motions on October 29 and October 30, 2025, respectively. Defendant also filed its own Motion for Summary Judgment and Memorandum of Law [DE 70] on September 30, 2025. Plaintiff filed a Response in Opposition [DE 73] on October 30, 2025, and Defendant thereafter filed a Reply in Support [DE 76] on November 13, 2025. All summary judgment motions have been fully briefed and remain pending for

determination by the Court.

## 14. Settlement

The parties have engaged in prior settlement discussions and will continue to

participate in good faith efforts to thoroughly and exhaustively discuss settlement of the

action as ordered by the Court.

## 15. Certifications

In preparing this final pretrial statement, we have aimed for the just, speedy, and

inexpensive resolution of this action.

Dated: March 31, 2026

For Plaintiffs:

*/s/ Joshua E. Feygin*
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685
Email:  Josh@sueyourdealer.com
**SUE YOUR DEALER – A LAW
FIRM**
4601 Sheridan St #205,
Hollywood, FL 33021
Tel: (954) 228-5674
Fax: (954) 697-0357

For Defendant:

*/s/ Kimberly Held Israel*
Kimberly Held Israel, Esq.
Florida Bar No. 47287
**KAUFMAN DOLOWICH**
301 E. Pine Street, Suite 1150
Orlando, FL 32801

Phone: 407.358.5619
Primary E-mail:
kim.israel@kaufmandolowich.com
Secondary E-mail:
Jill.mcyeo@kaufmandolowich.com

# EXHIBIT A

# Plaintiffs' Exhibit List

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| ISIAH ROBINSON AND LISA CLAYTON ROBINSON, | Case No. 3:24-CV-948-WWB-PDB |
| Plaintiffs/Counter-Defendants, | |
| v. | |
| NATIONAL AUTOMOTIVE, INC., | |
| Defendant/Counter-Plaintiff. | |
| _____ | |

### PLAINTIFFS' EXHIBIT LIST

☐ Government   ☑ Plaintiff(s)   ☐ Defendant(s)   ☐ Court   ☐ Other:

| Exhibit No. | Date Identified | Date Admitted | Sponsoring Witnesses | Objections/ Stipulated Admissions | Description of Exhibit |
|---|---|---|---|---|---|
| 1 | | | FLHSMV Representative | Hearsay, subject to which portions of the records and/or whether a rep appears to testify | Certified Title History FLHSMV [DHSMV_001-070] |
| 2 | | | Robin Ramaghi / Murray Ford Representative | Authenticity and potential hearsay (as to Ramaghi because she was not familiar with the particular document and had not seen it before); this is not an NAI business record | Wholesale Order Murray Ford [P-Ex.2 CR National Auto. 8-15-25] |

| Exhibit No. | Date Identified | Date Admitted | Sponsoring Witnesses | Objections/ Stipulated Admissions | Description of Exhibit |
|---|---|---|---|---|---|
| 3 | | | Robin Ramaghi/ Murray Ford Representative | Authenticity and potential hearsay (as to Ramaghi because she was not familiar with the particular document and had not seen it before); this is not an NAI business record | Murray Ford Payment Receipt [P-Ex.3 CR National Auto. 8-15-25] |
| 4 | | | Robin Ramaghi | Authenticity, completeness, best evidence; Ramaghi was unable to identify this as the correct/actual one | Bill of Sale Buyer's Order [P-Ex.6 CR National Auto. 8-15-25] |
| 5 | | | Robin Ramaghi | Authenticity, completeness, best evidence; Ramaghi was unable to identify this as the correct/actual one | Retail Installment Sales Contract [P-Ex.7 CR National Auto. 8-15-25] |
| 6 | | | Robin Ramaghi | Authenticity, completeness, best evidence; Ramaghi testified this was a blank/unsigned document | Odometer Disclosure Statement [P-Ex.8 CR National Auto. 8-15-25] |

| Exhibit No. | Date Identified | Date Admitted | Sponsoring Witnesses | Objections/ Stipulated Admissions | Description of Exhibit |
|---|---|---|---|---|---|
| 7 | | | Robin Ramaghi/ FLHSMV Representative | Authenticity, completeness, best evidence; Ramaghi testified this was a blank/unsigned document | Application for Certificate of Motor Vehicle Title FLHSMV Form 82040 [P-Ex.9 CR National Auto. 8-15-25] |
| 8 | | | Robin Ramaghi | | Power of Attorney Form HSMV 82053 [P-Ex.10 CR National Auto. 8-15-25] |
| 9 | | | Robin Ramaghi | Authenticity, completeness, best evidence; Ramaghi testified this was a blank/unsigned document | Separate Odometer Disclosure Statement DHSMV Form 82993 [P-Ex.11 CR National Auto. 8-15-25] |
| 10 | | | Robin Ramaghi/ FLHSMV Representative | Authenticity, completeness, best evidence; Ramaghi testified the writing on the document was not hers | Application for Certificate of Motor Vehicle Title FLHSMV Form 82040 (Wet-ink copy) [P-Ex.12 CR National Auto. 8-15-25] |
| 11 | | | Robin Ramaghi/ FLHSMV Representative | Authenticity, completeness, best evidence; Ramaghi testified the document came from the DMV and did not recognize certain handwriting on it | Application for Certificate of Motor Vehicle Title FLHSMV Form 82040 (Wet-ink copy) [P-Ex.13 CR National Auto. 8-15-25] |

| Exhibit No. | Date Identified | Date Admitted | Sponsoring Witnesses | Objections/ Stipulated Admissions | Description of Exhibit |
|---|---|---|---|---|---|
| 12 | | | Robin Ramaghi/ FLHSMV Representative | Authenticity, completeness, best evidence; Ramaghi testified the document came from the DMV and did not recognize certain handwriting on it (this appears to be the same document as EXH 13 to the NAI corporate rep deposition) | Application for Certificate of Motor Vehicle Title FLHSMV Form 82040 (Wet-ink copy) [NAI0015-NAI0016] |
| 13 | | | Robin Ramaghi | | Odometer Disclosure Statement (Wet-ink copy) [NAI0018] |
| 14 | | | Robin Ramaghi | | Odometer Disclosure Statement (Wet-ink copy) [NAI0047] |
| 15 | | | Robin Ramaghi | Best evidence | Bill of Sale Buyer's Order (Wet-ink copy) [NAI0021-NAI0023] |
| 16 | | | Robin Ramaghi | Best evidence | Retail Installment Sales Contract (Wet-ink copy) [NAI0024-NAI0028] |
| 17 | | | Robin Ramaghi/ FLHSMV Representative | Best evidence | Separate Odometer Disclosure Statement FLHSMV Form 82993 (Wet-ink copy) [NAI0017] |
| 18 | | | Robin Ramaghi | | Separate Odometer Disclosure Statement FLHSMV Form 82993 (Wet-ink copy) [NAI00046] |
| 19 | | | Robin Ramaghi/ FLHSMV Representative | | Power of Attorney Form HSMV 82053 (Wet-ink copy) [NAI0019] |
| 20 | | | Robin Ramaghi/ FLHSMV Representative | Best evidence, completeness, prejudice, irrelevant, immaterial | Power of Attorney Form HSMV 82053 (Wet-ink copy) [NAI0044] |

| Exhibit No. | Date Identified | Date Admitted | Sponsoring Witnesses | Objections/ Stipulated Admissions | Description of Exhibit |
|---|---|---|---|---|---|
| 21 | | | Robin Ramaghi/ FLHSMV Representative | | Power of Attorney Form HSMV 82053 (Wet-ink copy) [NAI0048] |
| 22 | | | SVR Tracking Representative | | SVR Tracking Records |
| 23 | | | Robin Ramaghi | | Original Pieces of Ripped Check [NAI0060] |
| 24 | | | Isiah Robinson / Lisa Clayton Robinson | Objection under Fed. R. Evid. 403 and 408 | Plaintiffs' Demand Package [P-Ex.25 CR National Auto. 8-15-25] |
| 25 | | | FLHSMV Representative | Hearsay | FL HSMV Investigative File [Robinson_076-082] |
| 26 | | | Robin Ramaghi/ FLHSMV Representative | Hearsay | FLHSMV Citation Letter Dated May 3, 2024 [NAI0059] |
| 27 | | | Manheim Representative | | Records of Manheim Remarketing [Robinson 174-175] |
| 28 | | | Murray Ford Representative | | Records of Murray Ford [Robinson 188-209] |
| 29 | | | Isiah Robinson/ Tom Gibbs Representative | | Tom Gibbs Repair Records |
| 30 | | | Isiah Robinson/ Grease Monkey Representative | | Grease Monkey Repair Records |
| 31 | | | Isiah Robinson/ Family Kia Representative | | Family Kia Repair Records |
| 32 | | | Isiah Robinson | | Deposition of Isiah Robinson (July 29, 2025), including exhibits |
| 33 | | | Lisa Clayton Robinson | | Deposition of Lisa Clayton Robinson (July 29, 2025), including exhibits |
| 34 | | | Robin Ramaghi | | Deposition of Robin Byler-Ramaghi, Corporate Representative of National Automotive, Inc. (August 15, 2025), including exhibits |

| Exhibit No. | Date Identified | Date Admitted | Sponsoring Witnesses | Objections/ Stipulated Admissions | Description of Exhibit |
|---|---|---|---|---|---|
| 35 | | | Isiah Robinson | | Declaration of Isiah Robinson in Support of Plaintiffs' Motion for Summary Judgment (D.E. 68-4 / 69-7) |
| 36 | | | Isiah Robinson | | Supplemental Declaration of Isiah Robinson (D.E. 73-2) |
| 37 | | | Lisa Clayton Robinson | | Declaration of Lisa Clayton Robinson in Support of Plaintiffs' Motion for Summary Judgment (D.E. 69-6) |
| 38 | | | Lisa Clayton Robinson | | Supplemental Declaration of Lisa Clayton Robinson (D.E. 73-1) |
| 39 | | | Robin Ramaghi | | NAI's Answers and Objections to Plaintiff Isiah Robinson's First Interrogatories (Plaintiffs' Claims), including supplemental/amended answers |
| 40 | | | Robin Ramaghi | | NAI's Amended Answers to Plaintiff Isiah Robinson's First Interrogatories Nos. 7 and 8 (Verified) |
| 41 | | | Robin Ramaghi | | NAI's Answers and Objections to Counter-Defendant Isiah Robinson's First Interrogatories (Counterclaim) |
| 42 | | | Robin Ramaghi | | NAI's Response to Plaintiffs' First Request for Production of Documents (Counterclaim) |
| 43 | | | Isiah Robinson | | Plaintiff Isiah Robinson's Answers to NAI's First Interrogatories |
| 44 | | | Lisa Clayton Robinson | | Plaintiff Lisa Clayton Robinson's Answers to NAI's First Interrogatories |

| Exhibit No. | Date Identified | Date Admitted | Sponsoring Witnesses | Objections/ Stipulated Admissions | Description of Exhibit |
|---|---|---|---|---|---|
| 45 | | | Robin Ramaghi | To the extent documents in this batch are not NAI's own records (and otherwise addressed above), then potential authenticity, completeness hearsay objections | NAI Document Production - Batch 1 [NAI0001-NAI0070] |
| 46 | | | Robin Ramaghi | To the extent documents in this batch are not NAI's own records (and otherwise addressed above), then potential authenticity, completeness hearsay objections | NAI Document Production - Batch 2 [NAI0071-NAI0147] |
| 47 | | | Robin Ramaghi | To the extent documents in this batch are not NAI's own records (and otherwise addressed above), then potential authenticity, completeness hearsay objections | NAI Document Production - Batch 3 [NAI0148-NAI0283] |

| Exhibit No. | Date Identified | Date Admitted | Sponsoring Witnesses | Objections/ Stipulated Admissions | Description of Exhibit |
|---|---|---|---|---|---|
| 48 | | | Robin Ramaghi | To the extent documents in this batch are not NAI's own records (and otherwise addressed above), then potential authenticity, completeness hearsay objectons | NAI Document Production - Batch 4 [NAI0284-NAI0415] |
| 49 | | | Isiah Robinson & Lisa Robinson | | Plaintiffs' Verified Amended Complaint (D.E. 30) |
| 50 | | | Robin Ramaghi | This pleading is not verified and is not admissible evidence | NAI's Amended Answer, Affirmative Defenses, and Counterclaim |

# EXHIBIT B

# Defendant's Exhibit List

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**,

ISIAH ROBINSON AND LISA CLAYTON
ROBINSON,

      Plaintiffs/Counter-Defendants,

v.

NATIONAL AUTOMOTIVE, INC.,

      Defendant/Counter-Plaintiff.

Case No. 3:24-CV-948-WWB-PDB

_____

# EXHIBIT LIST

☐ Government    ☐ Plaintiff(s)    ☒ Defendant(s)    ☐ Court    ☐ Other:

| Exhibit No. | Date Identified | Date Admitted | Sponsoring Witnesses | Objections/Stipulated Admissions | Description of Exhibit |
|---|---|---|---|---|---|
| 1 | | | Robin Ramaghi/Chris Caldwell | | Credit Application |
| 2 | | | Robin Ramaghi/Chris Caldwell | | List of Customer References |
| 3 | | | Robin Ramaghi/Chris Caldwell | | National Automotive, Inc. – Non-Refundable Form |
| 4 | | | Robin Ramaghi/Chris Caldwell | | Federal Risk Based Pricing Notice |
| 5 | | | Robin Ramaghi/Chris Caldwell | | OFAC Security Statement |
| 6 | | | Robin Ramaghi/Chris Caldwell | | Insurance Agreement |
| 7 | | | Robin Ramaghi/Chris Caldwell | | Retail Installment Contract and Security Agreement |
| 8 | | | Robin Ramaghi/Chris Caldwell | | Bill of Sale Buyer's Order |
| 9 | | | Robin Ramaghi/Chris Caldwell | | Buyers Guide |

| 10 | | | Robin Ramaghi/Chris Caldwell | | As Is – Sold Without Warranty agreement |
|---|---|---|---|---|---|
| 11 | | | Robin Ramaghi/Chris Caldwell | | Acknowledgement of Purchase of Vehicle Containing Past Due Starter Interrupt and/or Electronic Tracking (GPS) Device as Condition of Sale |
| 12 | | | Robin Ramaghi/Chris Caldwell | | Repossession Agreement |
| 13 | | | Robin Ramaghi/Chris Caldwell | | Credit Card Payment Authorization Form |
| 14 | | | Robin Ramaghi/Chris Caldwell | | Separate Odometer Disclosure Statement and Acknowledgement |
| 15 | | | Robin Ramaghi/Chris Caldwell | | Odometer Disclosure Statement |
| 16 | | | Robin Ramaghi | | Power of Attorney for a Motor Vehicle, Mobile Home, Vessel or Vessel with Trailer |
| 17 | | | Robin Ramaghi/Chris Caldwell | | Customer Consent to Contact via Telephone and Wireless Devices |
| 18 | | | Robin Ramaghi | | C.O.D. Tag/Title/Registration Notice and Evidence of Amounts Owed |
| 19 | | | Robin Ramaghi/Chris Caldwell | | Vehicle Air Pollution Control Statement |
| 20 | | | Robin Ramaghi/Chris Caldwell | | National Automotive, Inc. – Commercial Insurance Policy |
| 21 | | | Robin Ramaghi/Chris Caldwell/Erin Mikell | | SVR Tracking: Active (A) / Non Active (N) tracking sheet |

2

| | | | | | |
|---|---|---|---|---|---|
| 22 | | | Robin Ramaghi | | Motor Vehicle Power of Attorney/Odometer Disclosure form (blank other than Mr. Robinson's signature) |
| 23 | | | Robin Ramaghi/Chris Caldwell/Isiah Robinson/Lisa Clayton Robinson | | Copies of the Robinsons' driver's licenses |
| 24 | | | Robin Ramaghi | | Application for Certificate of Motor Vehicle Title (signed copy) |
| 25 | | | Robin Ramaghi/Chris Caldwell | | Dealer jacket cover |
| 26 | | | Robin Ramaghi | | NAI check #12479 for $2,000 (torn in half) |
| 27 | | | Robin Ramaghi | | Payment History (current to March 26, 2026) |
| 28 | | | Robin Ramaghi/Jim Schumacher | | GPS Vehicle Finder invoice for GPS device (IMEI: 016060002982011) |
| 29 | | | Robin Ramaghi | | Clay County Tax Collector – Dealer Control Sheet (packet of documents taken to the Clay County Tax Collector's Office) |
| 30 | | | Isiah Robinson | | Documents produced by Family Kia of St. Augustine |
| 31 | | | Isiah Robinson/Lisa Clayton Robinson | | CarFax Vehicle History Report (NAI0126-NAI0131) |
| 32 | | | Robin Ramaghi/Jim Schumacher | | SVR Tracking – GPS report for vehicle |
| 33 | | | Robin Ramaghi | | NAI invoices for purchases at Advance Auto Parts |
| 34 | | | Robin Ramaghi | | NAI work order for vehicle (NAI0406) |

3

| 35 | | | Robin Ramaghi | | NAI License Certificate (NAI0408) |
|---|---|---|---|---|---|
| 36 | | | Robin Ramaghi | | Signs posted at the NAI office (NAI0410-NAI0415) |
| 37 | | | Isiah Robinson | | Documents produced by Tom Gibbs Chevrolet |
| 38 | | | Robin Ramaghi | | Documents produced by Murray Ford-Mercury, Inc. |
| 39 | | | Robin Ramaghi | | NAI's Interrogatory answers and any supplemental answers in the underlying claim |
| 40 | | | Rogin Ramaghi | | NAI's Interrogatory answers and any supplemental answers in the Counterclaim |
| 41 | | | Isiah Robinson | | Mr. Robinson's Interrogatory answers |
| 42 | | | Lisa Clayton Robinson | | Mrs. Clayton Robinson's Interrogatory answers |
| 43 | | | Isiah Robinson | | Documents produced by JSJA Auto, LLC d/b/a Volkswagen of St. Augustine |
| 44 | | | Isiah Robinson | | Declaration of Isiah Robinson (D.E. 68-4) |
| 45 | | | Isiah Robinson | | Declaration of Isiah Robinson (D.E. 69-7) |
| 46 | | | Isiah Robinson | | Supplemental Declaration of Isiah Robinson (D.E. 73-2) |
| 47 | | | Lisa Clayton Robinson | | Declaration of Lisa Clayton Robinson (D.E. 69-6) |
| 48 | | | Lisa Clayton Robinson | | Supplemental Declaration of Lisa Clayton Robinson (D.E. 73-1) |

4

| | | | | | |
|---|---|---|---|---|---|
| 49 | | | Isiah Robinson | | Document produced by Grease Monkey International |
| 50 | | | Gary Twelkmeier/Manheim corporate rep | | Documents produced by Manheim |
| 51 | | | | | Florida Highway Safety & Motor Vehicles Certified DMV records |
| 52 | | | Robin Ramaghi/Isiah Robinson/Lisa Clayton Robinson | | Payment records (copies of money orders) |
| 53 | | | | | Records related to criminal conviction(s) of Isiah Robinson |
| 54 | | | | | Records related to criminal conviction(s) of Lisa Clayton Robinson |
| 54 | | | | | Deposition of Lisa Clayton Robinson, including exhibits |
| 56 | | | | | Deposition of Isiah Robinson, including exhibits |
| 57 | | | Robin Ramaghi | | Affidavit(s) of Robin Ramaghi, including any exhibits |
| 58 | | | Chris Caldwell | | Affidavit(s) of Chris Caldwell, including any exhibits |
| 59 | | | Jim Schumacher | | Affidavit of Jim Schumacher, including any exhibits |
| 60 | | | Robin Ramaghi/Chris Caldwell | | Documents produced by NAI not otherwise identified above (NAI000-NAI0415) |

5

# EXHIBIT C

# Plaintiffs' Deposition Designations

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
(Jacksonville Division)

**CASE NO.: 3:24-cv-00948**

ISIAH ROBINSON, and,
LISA CLAYTON ROBINSON,
each an Individual,

       Plaintiffs/Counter-Defendants,

vs.


NATIONAL AUTOMOTIVE, INC., a
Florida Corporation,


       Defendants/Counter-Plaintiffs.
_____/


### PLAINTIFFS' DEPOSITION DESIGNATIONS


**Deponent:** Robin Byler-Ramaghi, as Rule 30(b)(6) Corporate Representative of National Automotive, Inc.

**Deposition Date:** August 15, 2025

**Court Reporter:** Gwendolyn P. Smith, Florida Court Reporting (561-689-0999); Transcript pp. 1–178


| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| Reza Ramaghai is not employed by the Defendant. | **52:15-23** | *Q. Yes. Okay. What is this agent's name?*<br>*A. Reza.*<br>*Q. Okay. Last name?*<br>*A. Last name is Ramaghi.* | Irrelevant and immaterial to the claims pled; nor does this bear on any of Defendant's defenses or its Counterclaim. Reza Ramaghi was not involved | Reza retrieved the title from Murray Ford on NAI's behalf (73:1-5) and was NAI's sole title agent. His role is relevant to the chain of custody of the defective |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
|  |  | *Q. Okay. And what is his relationship to you?* <br> *A. It's my husband.* <br> *Q. Is he employed by the dealership?* <br> *A. No.* <br> *Q. Who is he employed by?* <br> *A. He is not employed by National Automotive.* | in the sale of the Equinox to Plaintiffs, nor did he have any communications with Plaintiff s. | title and NAI's constructive knowledge of the NOT ACTUAL notation. FRE 401 requires only tendency to make a fact of consequence more or less probable. As 30(b)(6) designee, Ramaghi's testimony about NAI's own agent is a party-opponent admission. FRE 801(d)(2). Additionally: (2) Agency liability - Ramaghi testified Reza was given explicit authority to act for NAI in acquiring vehicles (52:24-25). That is actual authority binding NAI for his acts regardless of employment status. If NAI attempts at trial to disclaim anything Reza did in connection with the title, this testimony |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | | | forecloses that defense. |
| Defendant received the title to the Equinox from Murray Ford with an incomplete mileage disclosure. | 71:22–72:17 | Q. Okay. Is this a truthful and accurate depiction of how the title looked when you received it from Murray Ford? A. I'm unsure if that was an exact, but most likely similar. It's very blacked out in - on the back. Q. Okay. And did you personally view this title when it came in from Murray Ford? A. Yes, sir. But it was not blacked out like that. Q. Okay. What was filled in when you received the title? A. Exactly what you see now. Q. Okay. So the selling dealer license number was filled in? A. Yes, sir. I can see their address and Murray Ford and their VF102 | Incomplete. Defendant's representative did not testify to the stated "fact " as worded and portions of her testimony was not included in the quoted excerpt ( see, e.g. p. 72, li. 1, 4). | NAI's completeness objection as to 72:1 and 72:4 is valid; those lines have been added. The core admission - "Q. The mileage disclosure was not filled in, correct? A. Correct." - stands unrebutted and constitutes a binding corporate admission. *QBE Ins. Corp. v. Jorda Enters.,* 277 F.R.D. 676, 688 (S.D. Fla. 2012) (the testimony of a Rule 30(b)(6) witness represents the collective knowledge of the corporation, not of the specific individual deponent; the designee presents the corporation's position on the listed topics; and the corporation |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *number. Yes. Q. Okay. And then there was a seller agent signature and - and printed name as well, correct?*<br>*A. Nothing else other than what you currently see.*<br>*Q. Okay. The mileage disclosure was not filled in, correct?*<br>*A. Correct.* | | appears vicariously through its designees. Witness need not have personal knowledge). Fed. R. Evid. 801(d)(2)(C)-(D); Fed. R. Civ. P. 32(a)(3). |
| Defendant represented that the Equinox had 118,245 actual miles at the time of the sale on September 8, 2023. | **91:13–15** | *Q. Going to the top here. What's the odometer reading?*<br>*A. 118,245, sir.* | Incomplete, confusing, not authenticated and prejudicial – Defendant's representative testified that she was unable to authenticate the document that counsel showed her ( see p. 87, li. 15-21); and she further testified that she did not personally participate in the sale to Plaintiffs on 9/8/23 ( see p. 81, li. 16-18; p. 86, li. 3- 17; p. 91, li. 9-12; p. | Personal knowledge objection fails since Ramaghi testified as the corporate representative. *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012) (the testimony of a Rule 30(b)(6) witness represents the collective knowledge of the corporation, not of the specific individual deponent; the designee presents the |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|------|-----------|---------------------|---------------------------------------------|------------------------------------------|
| | | | 97, li. 11-13; and p. 101, li. 10-12 ) | corporation's position on the listed topics; and the corporation appears vicariously through its designees). Ramaghi's personal absence from the sale is irrelevant; the corporation appears through its designee. Fed. R. Civ. P. 32(a)(3); Fed. R. Evid. 801(d)(2)(C)-(D). As to the RISC itself, Ramaghi confirmed at 87:8-12 that National prepared it for Plaintiffs to sign and at 88:3-7 that "National Automotive would have printed this document... the answer is yes," placing the date at 9/8/2023 (88:12-13) - authentication by a witness with knowledge. FRE 901(b)(1). NAI's remaining cites to 81:16-18, 86:3-17, 91:9-12, |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | | | 97:11-13, and 101:10-12 establish lack of personal knowledge - which is precisely what the 30(b)(6) collective-knowledge rule addresses. |
| | 97:23–98:23 (expanded to add 98:3–5) | *Q. Did National prepare this document [Exhibit 8 - ODS] for my clients to sign? A. Yes, sir. Q. Who at National prepared this document?*<br>*A. As previously stated with the other documents, Chris. Q. What was the mileage disclosure?*<br>*A. 118,245, Mr. Feygin. Q. And was either check box one or two selected?*<br>*A. No, sir.*<br>*Q. When was this presented to my clients?*<br>*A. At the same time the other blank documents were presented to them with no National* | Incomplete, confusing and prejudicial. There is testimony omitted from this excerpt ( see p. 98, li. 3-4 ), but Plaintiffs included testimony that Defendant's representative did not have personal knowledge of what was explained to Plaintiffs, which makes this a fact in dispute. Also, Defendant's representative testified that this particular document was provided to Plaintiffs as part of a set of blank documents that | 98:3-5 has been added. The added lines ("Q. Who at National prepared this document? A. As previously stated with the other documents, Chris.") authenticate the ODS through a witness with knowledge (FRE 901(b)(1)), identify the specific NAI employee who prepared it, and constitute a binding corporate admission. *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012) (the testimony of a Rule 30(b)(6) witness |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *Automotive signature, when they asked to review blank documents when they went on their test drive, Mr. Feygin.*<br>*Q. What date was that? A. 9/8.*<br>*Q. That would be 9/8/2023?*<br>*A. Yes, sir.*<br>*Q. Okay. And you have no personal knowledge of what, if anything, was explained to them in this document?*<br>*A. Correct.* | they requested, not fully-executed documents comprising the contracts between the parties ( see p. 98, li. 12-16). | represents the collective knowledge of the corporation, not of the specific individual deponent; the designee presents the corporation's position on the listed topics; and the corporation appears vicariously through its designees. Witness need not have personal knowledge). As to the blank-documents theory: whether the Robinsons received these documents as blank review copies or as the operative transaction documents is a factual dispute that goes to the weight and credibility of the evidence - not to admissibility. That determination belongs with the jury. Moreover, Ramaghi's own |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | | | testimony at 50:2-5 establishes that NAI's standing practice was that "everything is signed in front of the customer at all times" and "nobody leaves without properly executed documents" - NAI's stated verbal policy contradicts the blank-documents narrative. Fed. R. Evid. 401; Fed. R. Civ. P. 32(a)(3). |
| | 100:3–10 | *Q. What was the mileage disclosure made by National on this document [Exhibit 9 - HSMV 82040]?*<br>*A. Same mileage as the other documents, sir, 118,245.*<br>*Q. What selection was made regarding the accuracy of that disclosure?*<br>*A. The same thing that was given on all the other blank* | | |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *documents to your client, reflects actual mileage.* | | |
| | **105:9–25** | *Q. So looking at this separate odometer disclosure statement and acknowledgement [Exhibit 11 - HSMV 82993], does this look familiar to you?* *A. It does look familiar, sir. But, again, I will state my position that that is not the formal odometer disclosure that was turned in with Mr. and Mrs. Robinsons' paperwork to the Department of Motor Vehicles.* *Q. This is a document that was prepared by National?* *A. Yes, sir.* *Q. What is the mileage disclosure?* *A. 118,245. All other documents preceding have the same.* | Incomplete, confusing, unauthenticated and prejudicial. Defendant's representative testified that the document being reviewed and discussed was not the document submitted to the Department of Motor Vehicles. | Whether the document was submitted to the DMV goes to weight, not admissibility. Ramaghi admitted NAI prepared the document (105:16-17) and that NAI had the ability to change the electronically-generated 'actual mileage' checkbox (106:2-11). That admission stands regardless of which version was ultimately filed. The jury resolves the 'true form' dispute. |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *Q. Regarding the accuracy, which box is selected?*<br>*A. On this one, the box that reflects actual mileage is currently checked.* | | |
| Defendant did not indicate on any document provided to Plaintiffs on September 8, 2023 that the Equinox's mileage was not actual. | **97:23– 98:23** | *Q. Did National prepare this document [Exhibit 8 - ODS] for my clients to sign? A. Yes, sir.*<br>*Q. Who at National prepared this document?*<br>*A. As previously stated with the other documents, Chris.*<br>*Q. What was the mileage disclosure?*<br>*A. 118,245, Mr. Feygin. Q. And was either check box one or two selected?*<br>*A. No, sir.*<br>*Q. When was this presented to my clients?*<br>*A. At the same time the other blank documents were presented to* | Incomplete, confusing and prejudicial. The stated fact is not supported by the cited testimony. Defendant's representative was describing a blank and unsigned set of documents that Plaintiffs requested in conjunction with test driving the vehicle, not the actual fully signed set of contract documents. Also, in response to Plaintiffs' counsel's question about her personal knowledge, she indicated she did not know what | Same analysis as Row 4. 98:3-5 has been added, authenticating the ODS through Chris as preparer. *QBE Ins. Corp. v. Jorda Enters.,* 277 F.R.D. 676, 688 (S.D. Fla. 2012). NAI's completeness cite to p.98:12-16 is moot - those lines are already in the designated testimony. The Caldwell affidavit (D.E. 71, ¶ 7) cannot override binding 30(b)(6) testimony; a post-deposition affidavit that squarely contradicts prior sworn testimony without adequate explanation may |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *them with no National Automotive signature, when they asked to review blank documents when they went on their test drive, Mr. Feygin.* <br> *Q. What date was that? A. 9/8. Q. That would be 9/8/2023?* <br> *A. Yes, sir.* <br> *Q. Okay. And you have no personal knowledge of what, if anything, was explained to them in this document?* <br> *A. Correct.* | was explained to Plaintiffs in that particular unsigned document ( see also p. 81, li. 16-18; p. 86, li. 3-17; and the Affidavit of Christopher Caldwell at D.E. 71, p. 53, ¶ 7). | be disregarded. *See Van T. Junkins & Assoc. v. U.S. Industries, Inc., 736 F.2d 656 (11th Cir.1984).* The blank-documents theory is a factual dispute for the jury, not an admissibility question. Ramaghi's own verbal policy (50:2-5) that "everything is signed in front of the customer at all times" directly contradicts that narrative. Fed. R. Evid. 401. |
| | 100:3–10 | *Q. What was the mileage disclosure made by National on this document [Exhibit 9 - HSMV 82040 Title Application]?* <br> *A. Same mileage as the other documents, sir, 118,245.* <br> *Q. What selection was made regarding the* | | |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *accuracy of that disclosure?* *A. The same thing that was given on all the other blank documents to your client, reflects actual mileage.* | | |
| | **105:9–25; 106:1–11** | *Q. So looking at this separate odometer disclosure statement and acknowledgement [Exhibit 11 - HSMV 82993], does this look familiar to you?* *A. It does look familiar, sir. But, again, I will state my position that that is not the formal odometer disclosure that was turned in with Mr. and Mrs. Robinsons' paperwork to the Department of Motor Vehicles.* *Q. This is a document that was prepared by National?* *A. Yes, sir.* | Incomplete, confusing, unauthenticated and prejudicial. Defendant's representative testified that the document being reviewed and discussed was not the document submitted to the Department of Motor Vehicles. Defendant goes on to discuss the "true form" and Plaintiffs' request for blank documents and how many of the documents counsel was asking her about were not signed ( see p. 106, li. 22 - p.10 8, li. 21 ) | 106:22-108:21 is the blank-documents narrative, which is a fact dispute for the jury- not content that 'in fairness' qualifies the core admission that NAI prepared the document and the actual-mileage box was auto-generated and changeable by NAI. FRE 106. The unauthenticated objection fails because NAI produced the document and Ramaghi- as corporate designee-confirmed NAI's preparation. FRE 901(b)(1). |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|------|-----------|---------------------|--------------------------------------------|------------------------------------------|
|  |  | *Q. What is the mileage disclosure?*<br>*A. 118,245. All other documents preceding have the same.*<br>*Q. Regarding the accuracy, which box is selected?*<br>*A. On this one, the box that reflects actual mileage is currently checked.*<br>*Q. And that was something that National checked off?*<br>*A. No, sir. It's done electronically. We have the ability to change.*<br>*Q. It was a selection that was made by National then?*<br>*A. As you previously asked, this is an automatically generated check box when generic paperwork [...] that particular box is something National* |  |  |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *Automotive is able to change.* | | |
| | **113:16–22** | *Q. And what date was this second disclosure made?*<br>*A. This document was actually done when they came back a few days later. This is not - date of 9/8/23. The same form that was done that day.*<br>*Q. What date did they come back?*<br>*A. I believe it to be 9/13, 9/14. I am not 100 percent accurate, Mr. Feygin.* | | |
| | **119:13–20; 121:13–122:5** | *Q. Up top, who wrote that TMU near the odometer reading [Exhibit 15 - Buyer's Order with TMU]?*<br>*A. I wrote that in front of your customers - or your clients, sir.*<br>*Q. When did that occur?*<br>*A. The same date that that previous document was signed again with the TMU. A few* | | |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *days after the original purchase. [...]*<br>*Q. Who wrote the TMU acronym [Exhibit 16 - RISC with TMU]?*<br>*A. I did.*<br>*Q. When did that occur?*<br>*A. In front of your clients.*<br>*Q. When?*<br>*A. Same dates they came in to sign the second set of documents as previously stated.*<br>*Q. Is it your position as you sit here today that my clients signed a second retail installment sales contract?*<br>*A. [...] Yes.*<br>*Q. And that wasn't on September 8th, was it?*<br>*A. No, sir.* | | |
| Defendant did not sign the Buyer's Order, Retail Installment Sale | **108:7-15** | *Q. And none of the documents that we reviewed so far were blank, were they?*<br>*A. Of all the documents we've* | Incomplete, inaccurate, misleading, confusing and prejudicial. This misconstrues Defendant's | 108:7-15 is a clean binding admission: "None of them have National Automotive's signature, sir... all |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| Contract, Odometer Disclosure Statement, Certificate of Title Application, and the the Power of Attorney provided to Plaintiffs on September 8, 2023. | | *reviewed so far, what, sir?*<br>*Q. None of them were blank, were they?*<br>*A. None of them have National Automotive's signature, sir.*<br>*Q. But all the other information is there, correct?*<br>*A. Correct.* | representative's testimony as she testified that either she or Chris sign the contracts as well, as did Mr. Caldwell ( see p. 46, li. 18 – p. 47, li. 9; see also the Affidavit of Christopher Caldwell at D.E. 71, p. 53, ¶ 9). Defendant's representative also testified extensively that Plaintiffs' requested, and were given, a blank set of contract documents to review in conjunction with requesting a test drive ( see, e.g. p. 98, li. 12-16; p. 107, li. 5 – p. 108, li. 13 ). | the other information is there, correct? A. Correct." The testimony of a Rule 30(b)(6) witness represents the collective knowledge of the corporation. *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012). As to NAI's cite to p.46:18-47:9: that testimony shows that in the normal process "signatures are placed by the corporate representative, myself or Chris" (47:1-2). Far from helping NAI, this admission that the regular practice is for NAI to sign makes the absence of NAI's signature on the 9/8/23 documents all the more significant - it confirms the transaction deviated from standard practice. |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | | | The Caldwell affidavit (D.E. 71, ¶ 9) cannot override the binding 30(b)(6) admission. *See Tippens v. Celotex* Corp., 805 F.2d 949, 953-54 (11th Cir. 1986). Fed. R. Civ. P. 32(a)(3); Fed. R. Evid. 801(d)(2)(C)-(D). |
| As of February 22, 2023, the Equinox's certificate of title reflected that the mileage was "NOT ACTUAL." | **73:12–74:8** | *Q. Going to the face of the title, the very first page. What is the mileage disclosure here? A. What does the mileage say on the screen you are - you're - showing, sir? Is that your question? Q. Yes, ma'am. A. 112 and some change. Q. 1 - 1 - 112,990? A. It looks like two blobs and a zero to me. [...] 112,990 0. Q. Okay. And what was the date that was read?* | This fact as worded is confusing and could be misleading.  The face of the Certificate of Title speaks for itself, but the way the question was asked at the deposition was "what was the date that was read". Defendant's representative did not own the vehicle in February 2023 and did not place either the date or the mileage reading on the title in February 2023. | The ownership date is irrelevant to the point: when NAI received the Murray Ford title, the face of that title disclosed NOT ACTUAL mileage. Ramaghi confirmed at 74:6-8 that there is 'no dispute' she received it that way. That is probative of NAI's actual and constructive knowledge of TMU status before the sale- the core of the willfulness element under 49 U.S.C. § 32710(a). |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *A. 2/22/23.*<br>*Q. And what does it say regarding the accuracy of the mileage?*<br>*A. Not actual.*<br>*Q. Okay. No dispute that this is what you received when you got the title from Murray Ford?*<br>*A. Yes, sir.* | | |
| Defendant used a non-secure power of attorney form in the Robinson transaction. | **102:3–19** | *Q. Does this document look familiar to you?*<br>*A. Yes, sir.*<br>*Q. Okay. Is this a true and correct copy of the power of attorney for motor vehicle mobile home vessel or vessel with trailer submitted to the DMV?*<br>*A. That might be the only true thing that you have shown me thus far that was submitted to the DMV accurately. Yes, sir.*<br>*Q. What is this form used for?*<br>*A. The DMV several years ago* | Confusing and prejudicial.  The form of Power of Attorney used – a copy of which will be identified and discussed at trial – speaks for itself. | "It is astonishing that the objection that a document speaks for itself, repeated every day in courtrooms across America, has no support whatsoever in the law of evidence." *Miller v. Holzmann*, 240 F.R.D. 1 (D.D.C. 2006). "Speaks for itself" is not a recognized evidentiary objection and has no basis in the Federal Rules of Evidence. Documents are identified and discussed through witness testimony - that is the standard |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *started requiring third-party power of attorney, sir.*<br>*Q. Is it your position that the Department of Motor Vehicle requires the use of this form?*<br>*A. Yes, sir.* | | mechanism for laying foundation. FRE 901(b)(1). Ramaghi confirmed document identity at 102:3-10, identifying the POA as the form submitted to the DMV and as "the only true thing" shown to her that was accurately submitted - authentication by a witness with knowledge. FRE 901(b)(1). Rule 403 does not support exclusion; the use of a fictitious attorney-in-fact on a DMV-required form is highly probative of the systematic nature of NAI's document practices, and no unfair prejudice substantially outweighs that probative value. |
| "Robert Karr," the attorney-in-fact named on the | 103:7–19 | *Q. Who is Robert Karr?*<br>*A. Robert Karr is a person that a lot of us dealers use* | Confusing, misleading and prejudicial. Defendant's representative's | "It is astonishing that the objection that a document speaks for itself, repeated every |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| power of attorney, is a fictitious person. | | *for a third-party name. Everybody seems to have their own.*<br>*Q. Does he work for the dealership?*<br>*A. No.*<br>*Q. Does he get paid by the dealership?*<br>*A. No.*<br>*Q. Is he somebody that actually exists?*<br>*A. I'm sorry. I didn't hear what your question was, sir.*<br>*Q. Does he actually exist?*<br>*A. No.* | actual testimony speaks for itself. | day in courtrooms across America, has no support whatsoever in the law of evidence." *Miller v. Holzmann*, 240 F.R.D. 1 (D.D.C. 2006). NAI's objection that the testimony "speaks for itself" concedes the admission is exactly what Plaintiffs represent. "Q. Does he actually exist? A. No." is an unambiguous binding corporate admission. *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012). Fed. R. Evid. 801(d)(2)(C)-(D). As to NAI's cite to p.103:20-23 ("That is not National Automotive. That would have been done at the Department of Motor Vehicles"): that testimony concerns who filled in the |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | | | content of the POA form, not whether Robert Karr exists as a person. The admission that the named attorney-in-fact is fictitious is completely independent of which party filled in the blanks. A dealership cannot escape the significance of routinely using a fictitious attorney-in-fact simply because the DMV may have completed certain fields on the form. The existence question and the form-completion question are distinct. |
| It is Defendant's regular practice to use a power of attorney designating "Robert Karr" as attorney-in-fact. | 102:20–21; 103:7–10 | Q. Do you use this form in every transaction? A. In the recent year, yes. [...] Q. Who is Robert Karr? A. Robert Karr is a person that a lot of us dealers use for a third-party | Confusing, misleading, incomplete and prejudicial. Plaintiffs omitted a substantive portion of Defendant's representative's response ( see p. 102, li. 22 – p. 103, li.1). Also, | Testimony supports the characterization 'regular practice.' The omitted 102:22-103:1 (no DMV explanation) is exculpatory to NAI but does not contradict the core admission. |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *name. Everybody seems to have their own.* | Defendant's representative did not testify that it is Defendant 's "regular practice" to use a power of attorney designatin g "Robert Karr" as attorney- in-fact. Defendant's representative also testified that Defendant did not even fill out the content reflected in a portion of the questioned document ( see p. 103, li. 20 – 23). Also, Defendant has a separate signed Power of Attorney that does not even list/identify Robert Karr (D.E. 39, p. 4 4). | |
| At the time of the Robinson transaction, the title to the Equinox was not physically held by a | **103:2–6** | *Q. At the time that this document was signed, was the title physically being held by a lienholder?*<br>*A. No.*<br>*Q. Was the title lost?* | The stated fact is broader than the specific question asked and answered. | NAI's objection identifies no specific testimony that 'in fairness' ought to be heard with the designated portion. FRE 106; Rule 32(a)(6). Its |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| lender or lost. | | *A. No.* | | vague 'broader than testimony' label is insufficient. |
| A physical certificate of title for the Equinox existed in September of 2023. | **72:18–73:8** | *Q. Okay. When did National get the title from Murray Ford? A. To the best of my recollection, and I am unsure of an exact date, but I believe it to be the Monday after the sale. Q. And what was that date? A. Approximately 9/11. Q. Okay. How was it delivered? A. Hand-delivered. Picked up - in person. Q. Who picked it up? A. Reza. Q. And where did he bring the title after he picked it up? A. I met him to receive it so I could do title work.* | Irrelevant, immaterial and prejudicial. Defendant does not dispute that it received the original Certificate of Title in September 2023, but Defendant cannot speak for Murray Ford as to when or how it obtained the title to provide to Defendant. The stated fact is broader than Defendant's representative's testimony. | NAI's own objection concedes the fact: Defendant does not dispute that it received the original Certificate of Title in September 2023. That concession is a judicial admission under FRE 801(d)(2)(A). Seek to convert to a stipulated admitted fact. If NAI refuses, its objection language may be read to the jury. The testimony at 72:18-73:8 is accurate and supports the fact as stated. |
| Defendant's business practice is to store | **40:2–6; 40:20–22; 41:10–22** | *Q. Okay. So how are titles typically delivered to National for the* | Irrelevant, immaterial and prejudicial. Critically, | The storage practice is relevant to: (1) NAI's failure to |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| vehicle titles at Robin Ramaghi's personal residence. | | *vehicles that it purchases? A. They are picked up on Mondays from one dealership or franchise dealership. They're picked up on Saturdays from another dealership. And they are held off-site, sir. [...] Q. So what does National do once it receives a title for a vehicle it intends on reselling? A. My procedure, once I receive title, I review it to ensure everybody has properly signed, proper endorsements, affidavits, et cetera, are there. [...] Q. And once you get that title, is it scanned in and saved somewhere? A. No, sir. Q. How is the hard copy held?* | Plaintiffs have no evidence that Defendant had the original title in its possession, custody or control prior to or on September 8, 2023. Where other vehicle titles may have been stored has no bearing on, or relevance to, Plaintiffs' claims. Also, t he stated fact is broader than Defendant's representative's testimony. | present the title at closing; (2) how the NOT ACTUAL notation was not caught pre-sale; and (3) willfulness under 49 U.S.C. § 32710(a) (reckless disregard). FRE 401. Whether the specific Robinson title was at the residence on 9/8/23 goes to weight, not admissibility- the systematic practice is probative of how the transaction was handled. NAI's 'broader than testimony' objection is unsupported; it identifies no specific qualifying content. FRE 106. |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|------|-----------|---------------------|-----------|-----------|
| | | *A. It is held off-site, like I previously stated, sir.*<br>*Q. Where is this off-site storage?*<br>*A. At my personal residence.*<br>*Q. Okay. And who has access to the title, aside from you?*<br>*A. Me.*<br>*Q. Nobody else?*<br>*A. No one else, sir.* | | |
| | **47:18– 48:6** | *Q. So once the deal is done, consumer leaves, how does the dealership submit the title documents to the DMV?*<br>*A. After all of the signed and executed documents are brought to my office, the titles are pulled generally within 48 hours when I pull them from my home residence. They are completed, any boxes checked, dates filled in. On our side. [...]* | Irrelevant, immaterial and prejudicial. This is not how the title to the subject vehicle was handled. | NAI's claim that 'this is not how the title to the subject vehicle was handled' is a disputed fact for the jury, not a basis to exclude testimony about NAI's standard practices. The 30(b)(6) witness testified to NAI's business practice; whether NAI deviated from that practice in the Robinson transaction is for the jury to decide. The testimony is admissible as habit/routine |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *Title is completed. And we are - make copies of those. Copies are kept in the folder on a rack. All of the originals are then paper clipped with a cover sheet and sent to the Department of Motor Vehicles for registering.* | | practice evidence under FRE 406. |
| Robin Ramaghai inserted a check mark next to the statement "the odometer reading IS NOT THE ACTUAL MILEAGE" in the Odometer Disclosure Statement after September 8, 2023. | **122:17-123:11** | *Q. I'm pulling up Exhibit 17. (Plaintiff's Exhibit 17 identified.) Q. Does this document look familiar to you? A. Yes, sir. Q. Is this the separate odometer disclosure statement and acknowledgment prepared by National Automotive? A. Yes, sir, it is a separate odometer disclosure. Yes, sir. Q. What was the mileage reading on this document?* | Confusing, misleading, incomplete and prejudicial. The stated " fact" does not include the full title of the document, does not cite solely to the questioned box on the form itself (it adds language which is incomplete and out of context), and also omits a material p art of Defendant's representative's response, which is that the mark was placed in the presence of Plaintiffs ( see p. 123, li. 9 ). | NAI's completeness objection misreads the transcript. Line 123:9 - "A. That was me in front of your client." - is in the designated testimony. The language NAI claims was omitted ("in the presence of Plaintiffs") appears verbatim in the current designation. NAI's objection has no basis in the actual record. The admission that Ramaghi inserted the NOT ACTUAL mark after 9/8/23, in |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *A. Would you please be kind enough to blow it up so that I can see? 118,245. This one is typed in.*<br>*Q. Who handwrote TMU on both sides?*<br>*A. I did.*<br>*Q. Who selected box number one?*<br>*A. That is a computer-generated X.*<br>*Q. Who selected box number three?*<br>*A. That was me in front of your client.* | | front of Plaintiffs, is unambiguous and binding. This confirms: (1) the original 9/8/23 documents lacked the TMU notation; (2) the notation was a post-sale modification; and (3) Ramaghi is the author of that modification. QBE Ins. Corp. v. Jorda Enters., 277 F.R.D. 676, 688 (S.D. Fla. 2012). Fed. R. Evid. 801(d)(2)(C)-(D). |
| The Florida Department of Highway Safety and Motor Vehicles (FLHSMV) cited Defendant for its conduct in connection with the Robinson transaction, specifically for failing to properly | **169:15-22** | *Q. What was the outcome of the DMV complaint?*<br>*A. They sent me a letter three - two, three, four-ish months later that said I improperly completed the odometer statement.*<br>*[...]*<br>*Q. Is this the letter that you're describing?*<br>*A. Yes.* | Irrelevant, immaterial, confusing and prejudicial. The letter is silent as to the nature of the violation and does not mention the mileage disclosure at all. Nor does the letter indicate which "odometer disclosure statement" is even at issue as there are two | Relevance: a regulatory finding of improper odometer completion in this exact transaction is directly relevant to the violation, NAI's notice, and willfulness. FRE 401. Hearsay: the DHSMV letter qualifies as a public record under FRE 803(8)(A)(iii) as a record setting out |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| complete an odometer disclosure statement. F.S. 319.225(4). | | | different forms that have been identified and discussed during the litigation. Lastly, the letter contains hearsay. | factual findings from a legally authorized investigation. The 11th Circuit has applied FRE 803(8) to admit agency reports containing findings from authorized investigations in civil cases. *Hines v. Brandon Steel Decks*, Inc., 886 F.2d 299, 302-03 (11th Cir. 1989). |
| Defendant received a pre-suit demand package from the Plaintiffs that contained a Notice of Revocation of Acceptance. | **167:5–23** | *Q. Ms. Ramaghi, does this look familiar to you? A. Yes, sir. [...] THE WITNESS: This is the original package I sent to you. [...] Q. So there's no dispute that you received this demand package, correct? A. Yes, sir.* | The use of the phrase "pre-suit demand package" invokes privileged and confidential settlement communications in violation of FRE 408. Defendant does not dispute receipt of a letter from Plaintiffs' counsel entitled Notice of Revocation of Acceptance. | FRE 408 bars use of compromise offers and negotiations to prove validity or amount of a claim. It does not bar evidence of legally operative facts. The 11th Circuit's own test is 'whether the statements or conduct were intended to be part of the negotiations toward compromise.' Blu-J, Inc. v. Kemper C.P.A. Grp., 916 F.2d 637, 642 |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|------|-----------|---------------------|---------------------------------------------|------------------------------------------|
| | | | | (11th Cir. 1990). A letter transmitting a statutory Notice of Revocation of Acceptance is not a compromise offer - it is a legally operative notice that serves as a condition precedent to the MMWA/UCC revocation remedy under Fla. Stat. ss. 672.607(3)(a) and 672.608(2). And, despite conferral efforts, Defendant disputed this fact. |
| Defendant did not tender any funds sought in the pre-suit demand package. | **168:3-11** | *Q. Did National pay any of the amounts that were demanded in these letters?* *A. No.* *Q. Did National pay anything at all to the plaintiffs to settle their claims?* *A. No.* | This fact invokes privileged and confidential settlement communications in violation of FRE 408. Defendant did not assert any defenses claiming it settled Plaintiffs' claims. | Same FRE 408 analysis as Row 23 under Blu-J, Inc. v. Kemper C.P.A. Grp., 916 F.2d 637, 642 (11th Cir. 1990). Failure to cure after notice establishes that the statutory condition precedent under 15 U.S.C. s. 2310(e) and Fla. Stat. s. 672.711 was satisfied - it is a legally |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | | | operative fact, not a rejected settlement offer. |
| The Equinox's battery voltage dropped from 11.8 volts to 3.4 volts between May 2 and May 4, 2024. | 153:8–11; 153:15–21; 154:8–19; 154:20–25; 155:1–5; 155:14–21 | Q. The vehicle's battery voltage, correct? A. Approximate. Yes. Q. And then the device's internal battery, correct? A. Yes. [...] Q. What is the vehicle's battery voltage reading on May 2nd, the very first entry? A. I can't see through your yellow - [...] It looks like 11.8, sir. Q. And what was the internal battery reading at that time? A. 100 percent. [...] Q. On May 3rd at 3:02, what was the voltage of my clients' battery? A. 5.3. Q. On May 3rd at 2341, what was the vehicle battery's voltage? A. 4.0. | The GPS tracking report speaks for itself and is best interpreted and discussed by Jim Schumacher and/or an SVR Tracking corporate representative. The proposed "fact" is merely asking Defendant's representative to repeat data from the report itself. Having said that, if Plaintiffs' intent is to point out certain content from the report, then to the extent any content from the GPS tracking reports are included, for the purposes of completeness, Defendant must add in several additional facts, including the various points in time when the | Ramaghai was not asked for a mechanical diagnosis — she was asked to read voltage figures from NAI's own vendor's GPS report. She did so without meaningful qualification: she confirmed 11.8V on May 2 and 3.4V on May 4, and when asked directly whether the voltage dropped between those dates, answered "It appears so." That is a corporate admission binding on NAI. Fed. R. Evid. 801(d)(2)(C)–(D); *QBE Ins. Corp. v. Jordan Enterprises, Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012). Ramaghai's protest that she is "not a mechanic" is irrelevant; no |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *Q. And what was the device battery capacity at that time?* <br> *A. 65 percent.* <br> *Q. And on May 4th at 3:41, what was the vehicle battery voltage?* <br> *A. 3.9.* <br> *Q. And what was the internal device battery capacity?* <br> *A. 65 percent.* <br> *Q. And on May 4th at 1929, what was the vehicle battery voltage?* <br> *A. 3.4.* <br> *Q. And what was the device battery capacity?* <br> *A. Your paper states 25 percent. [...]* <br> *Q. So it's fair to say, based on what we just reviewed, the vehicle's battery voltage dropped from 11.8 volts to 3.4 volts over these two days, correct?* <br> *MS. ISRAEL: Object to the form.* | GPS unit was no longer transmitting any data at all. Defendants have no evidence that there were any problems with the vehicle's battery between May 2-4, 2024. | mechanical opinion was sought. Reviewing and reciting numerical data from company records is lay testimony permissible under FRE 701. Defendant's "completeness" demand is not a basis to reject a properly supported proposed fact. FRE 106 entitles Defendant to introduce additional portions of the GPS report to place the cited data in context, it does not authorize rejection of an accurately stated fact of record. Finally, Defendant's denial of "any evidence of battery problems" is non-responsive: the proposed fact states only what the GPS data reflects, not why |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *A. It appears so, but I'm unsure of what you're asking from me. I'm not a mechanic, Mr. Feygin.* | | the voltage dropped. Causation is a separate question for a separate fact. |
| The GPS device's internal battery dropped from 100% to 25% between May 2 and May 4, 2024. | **153:22–25; 154:6–13; 154:23–25; 155:1–5; 155:22–156:23** | *Q. And what was the internal battery reading at that time [May 2nd]?* *A. 100 percent.* *[...]* *Q. And the 100 percent is the internal battery?* *A. Yes, sir.* *Q. On May 3rd at 3:02, what was the internal capacity of the GPS device at that time?* *A. 100 percent.* *[...]* *Q. And on May 4th at 3:41, what was the internal device battery capacity?* *A. 65 percent.* *Q. And on May 4th at 1929, what was the vehicle battery voltage?* *A. 3.4.* | The GPS tracking report speaks for itself and is best interpreted and discussed by Jim Schumacher and/or an SVR Tracking corporate representative. The proposed "fact" is merely asking Defendant's representative to repeat data from the report itself. Having said that, if Plaintiffs' intent is to point out certain content from the report, then the extent any content from the GPS tracking reports are included, for the purposes of completeness, Defendant must add in several additional facts, | Same FRE 701 lay opinion analysis as Row 25. The 30(b)(6) admission at 156:20-23 that Ramaghi 'cannot' confirm the battery drop is not an exculpatory denial- it is an admission that the GPS data shows what it shows and she lacks a counter-explanation. Corporate inability to explain the battery drain supports the inference of a vehicle defect. NAI's completeness argument re: transmission gaps goes to weight; Plaintiffs need not include harmful inferences to |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *Q. And what was the device battery capacity?*<br>*A. Your paper states 25 percent.*<br>*[...]*<br>*Q. Based upon these records that we just reviewed, is it accurate that these records reflect that the vehicles - or the device battery for the GPS installed in this vehicle dropped from 100 percent to 25 percent in the span of two days?*<br>*MS. ISRAEL: Object to the form.*<br>*A. Mr. Feygin, I will say that that is an alleged suspicion. I am not a mechanic nor am I an IT guy for SVR. That is the best answer I can give you.* | including the various points in time when the GPS unit was no longer transmitting any data at all. | satisfy Rule 32(a)(6). |
| The GPS device's internal battery is charged through the | **134:25–136:16** | *Q. Does the device have an internal battery?*<br>*A. It lasts for approximately 48 hours.* | Confusing, misleading, incomplete and prejudicial. The GPS tracking report speaks for | NAI's completeness demand for p.136:4-25 must be parsed carefully. Lines |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| Equinox's battery and/or alternator. | | *Q. So, yes, it does?*<br>*A. That is a yes, sir.*<br>*Q. How does the battery get charged?*<br>*A. When it is - when the car runs. It's through the battery, the alternator.*<br>*Q. What happens if the vehicle doesn't run?*<br>*A. The internal battery kicks in.*<br>*Q. What happens when the internal battery dies and the vehicle isn't charging the internal battery?*<br>*A. It is recharged once the battery kicks back on. The car is started. The car is running.*<br>*Q. And if the car does not start or run?*<br>*A. We've never had that issue, sir. [...]*<br>*Q. Okay. So based on your testimony, the internal battery gets charged by* | itself and is best interpreted and discussed by Jim Schumacher and/or an SVR Tracking corporate representative. Plaintiffs omitted a n important portion of Defendant's representative's testimony. After stating "as far as my knowledge with the system," which Pla i ntiffs cited, Defendant continued with her answer ( see p. 136, li. 4-25). | 136:4-16 - Ramaghi's full answer about the GPS replenishing power when the car runs - are consistent with and corroborative of the designated testimony. However, lines 136:17-20 read: "Q. Does the device monitor the vehicle's battery voltage? A. It does not monitor the battery voltage of the vehicle. To my knowledge, it's more the internal battery." NAI seeks to add 136:17-20 to suggest the GPS does not actually measure vehicle battery voltage, potentially undermining the GPS data on which Plaintiffs rely. Rule 32(a)(6) requires only that an adverse party may require introduction of any other part that "in fairness |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | *the vehicle, correct?*<br>*A. Correct.*<br>*Q. And it gets charged off the vehicle's battery and/or alternator, correct?*<br>*A. Correct.*<br>*Q. And if the vehicle's battery and/or alternator are not working, the battery can't get charged then, correct?*<br>*A. As far as my knowledge with the system, yes. [...] To the best of my knowledge, it replenishes its power source when that car starts and goes.*<br>*Q. Does the device monitor the vehicle's battery voltage?*<br>*A. It does not monitor the battery voltage of the vehicle. To my knowledge, it's more the internal battery.* | | should be considered with the part introduced." Fairness does not require Plaintiffs to introduce testimony favorable to NAI's counterclaim defense. The designated testimony through 136:16 is complete on the charging-through-vehicle proposition. The monitoring-voltage question at 136:17-20 is a separate topic that NAI may address on cross-examination. The 30(b)(6) corporate testimony that the GPS charges through the vehicle's battery and alternator is a binding admission. *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012) . Fed. R. Evid. 801(d)(2)(C)-(D). |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| Defendant has no written polices or procedures pertaining to how dealership employees are to complete purchase and sale documents. | **49:23-50:10.** | *Q. Are there any written policies and procedures regarding how dealership employees are required to complete the purchase and sale documents that we have just discussed?*<br>*A. Anybody that handles documents outside of myself is trained that everything is signed in front of the customer at all times. Nobody leaves without properly executed documents, sir.*<br>*Q. Okay. And is that policy written down anywhere?*<br>*A. Is that policy what, sir?*<br>*MS. ISRAEL: Written down. Written down anywhere.*<br>*A. No, sir. That is how I train my employees.* | Irrelevant, immaterial, confusing, incomplete and prejudicial. Plaintiffs' claims are not dependent on whether Defendant had written policies or procedures for its employees as to how to complete purchase and sale documents; nor is that an issue in Defendant's Amended Counterclaim or raised in Defendant's affirmative defenses. Also, the stated fact is not what Defendant's representative's testimony actually was. The specific "policy" that counsel asked her about – that she actually answered – was that all purchase and sale documents are | Ramaghi's actual testimony at 50:2-5 is significant beyond the written-policy question: "Anybody that handles documents outside of myself is trained that everything is signed in front of the customer at all times. Nobody leaves without properly executed documents, sir." This verbal policy directly contradicts NAI's blank-documents theory across multiple designations. If the standing corporate practice is that documents are signed in front of the customer and nobody leaves without properly executed documents, then the claim that Plaintiffs received only blank review copies - not a fully signed set - violates NAI's |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | | signed in front of the customer at all times and that nobody leaves without properly executed documents. | own stated operational standards. The absence of written policies for completing federal odometer disclosure documents is also relevant to willfulness under 49 U.S.C. § 32710(a): a dealer operating without written compliance protocols on a statutory disclosure document that carries treble-damage exposure demonstrates at minimum reckless disregard for statutory requirements. FRE 401. |
| Defendant has no written policies or procedures pertaining to how dealership employees are to | 25:12-16 | *Q. Okay. Lots to unpack there. So you're going to have to bear with me. Are there any written policies and procedures regarding how dealership employees are* | Irrelevant, immaterial, confusing, incomplete and prejudicial. Plaintiffs' claims are not dependent on whether Defendant had | A dealer's failure to take even basic verification steps is reckless, and courts infer intent when no investigation is done. Suiter v. Mitchell Motor Coach Sales, |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|------|-----------|---------------------|---------------------------------------------|------------------------------------------|
| complete vehicle inspections. | | *tocomplete this inspection?*<br>*A. No, sir. They're just trained verbally.* | written policies or procedures for its employees as to how to complete a vehicle inspection, nor on the completion of an inspection at all. Nor is that an issue in Defendant's Amended Counterclaim or raised in Defendant's affirmative defenses. In addition, Plaintiffs' counsel's use of the phrase "this inspection" refers back to Defendant's representative's prior answer, but the stated fact is broader than her answer. | Inc., 151 F.3d 1275, 1284 (10th Cir. 1998); Bolton v. Tyler Lincoln Mercury, Inc., 587 F.2d 796 (5th Cir. 1979). NAI's pre-sale vehicle inspection is the precise point in its process at which a discrepancy between the odometer reading and the title's NOT ACTUAL designation should have been caught. Operating that inspection without any written protocol for cross-checking the odometer against title information is directly probative of reckless disregard under 49 U.S.C. § 32710(a). The "broader than answer" objection fails — 25:12-16 is a precise question and a direct answer with no extraneous material. NAI |

| Fact | Page:Line | Designated Testimony | Argument & Authority (Post-Meet-and-Confer) | Plaintiffs' Counter-Argument & Authority |
|---|---|---|---|---|
| | | | | identifies no omitted qualifying testimony under FRE 106. FRE 401; Fed. R. Civ. P. 32(a)(3).<br><br>. |

# EXHIBIT D

# Defendant's Deposition Designations

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ISIAH ROBINSON, and LISA
CLAYTON ROBINSON, each
an Individual,

       Plaintiffs/Counter-Defendants,
vs.

NATIONAL AUTOMOTIVE, INC., a
Florida corporation,

       Defendant/Counter-Plaintiff.

_____

CASE NO.: 3:24-cv-00948

## **DEFENDANT'S DEPOSITION DESIGNATIONS**

    I.    Deposition of Plaintiff, Lisa Clayton Robinson, taken via Zoom on July 29, 2025, before Denice C. Taylor, FPR, First Coast Court Reporters:

| Page(s) | Line(s) | Description of Testimony |
|---|---|---|
| 13 | 7-10 | She claims she has never been convicted of a crime |
| 22, li. 23 – P. 25, li. 22 | | Identification of her initials and signature on the Retail Installment Contract and Security Agreement (marked as EX 1) |
| 25, li. 24 – P. 27, li. 8 | | Identification of her signature on the Bill of Sale/Buyers Order (marked as EX 2) |
| 28, li. 10 – P. 29, li. 3 | | Identification of her initials and signature on the Customer Consent to Contact (marked as EX 4) |
| 29, li. 5 – | | Identification of her signature on the Federal Risk-Based Pricing Notice (marked as EX |

| Page(s) | Line(s) | Description |
|---|---|---|
| P. 30, li. 17 | | 5) |
| 32, li. 4 – P. 33, li. 6 | | Identification of her signature on the Buyer's Guide Notice (marked as EX 7) |
| 33, li. 8 – P. 34, li. 1 | | Identification of her signature on the Power of Attorney (marked as EX 8) |
| 34 | 3-19 | Identification of her signature and Mr. Robinson's signature on the Application for Title (marked as EX 9) |
| 39, li. 8 – P. 40, li. 5 | | Identification of her signature and Mr. Robinson's signature on the Repossession Agreement (marked as EX 12) |

II.     Deposition of Plaintiff, Isiah Robinson, taken via Zoom on July 29, 2025, before Denice C. Taylor, FPR, First Coast Court Reporters:

| Page(s) | Line(s) | Description of Testimony |
|---|---|---|
| 37<br><br>38, li. 25 – p. 40, li. 6 | 12-22 | Identification of his initials and signature and Mrs. Robinson's signature on the Retail Installment Contract and Security Agreement (marked as EX 1) |
| 40, li. 2 – p. 43, li. 20 | | Identification of his signature on the Bill of Sale/Buyers Order (marked as EX 2) |
| 45, li. 7 – p. 46, li. 11 | | Identification of his initials and signature on the Customer Consent to Contact (marked as EX 4) |
| 46 | 13-23 | Identification of his signature on the Federal Risk-Based Pricing Notice (marked as EX 5) |
| 46, li. 25 – p. 47, li. 13 | | Identification of his signature on the State of Florida Odometer Statement (marked as EX 6) |
| 50<br><br>51 | 10-15<br><br>9-15 | Identification of his signature on the Buyer's Guide (marked as EX 7) |
| 51 | 17-25 | Identification of his signature on the Power of Attorney (marked as EX 8) |

2

| 52, li. 7 – p. 53, li. 3 | | Identification of his signature on the Application for Title (marked as EX 9) |
|---|---|---|
| 56, li. 20 – p. 57, li. 17 | | Identification of his signature on the Repossession Agreement (marked as EX 12) |

# EXHIBIT E

# Jury Instructions

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
(Jacksonville Division)

**CASE NO.: 3:24-cv-00948**

ISIAH ROBINSON, and,
LISA CLAYTON ROBINSON,

  Plaintiffs and Counter-Defendants,

vs.

NATIONAL AUTOMOTIVE,
INC., a Florida Corporation,

  Defendant and Counter-Plaintiff.

_____/

## JOINT PROPOSED JURY TRIAL INSTRUCTIONS AND VERDICT FORM

The Plaintiffs, ISIAH ROBINSON and LISA CLAYTON ROBINSON, joined by

the Defendant, NATIONAL AUTOMOTIVE, INC., a Florida Corporation, respectfully

propose the following jury instructions and verdict form for the culmination of this

Action:

## TABLE OF CONTENTS

**PRELIMINARY INSTRUCTIONS**

**1.1 General Preliminary Instruction**

**1.2 Burden of Proof - Clear and Convincing Evidence**

**1.3 Official English Translation/Interpretation**

**1.4 Jury Questions**

**1.5 Interim Statements**

**TRIAL INSTRUCTIONS**

**2.1 Stipulations**

**2.2 Use of Depositions**

1

**2.4 Interim Statements**

**2.5 Judicial Notice**

**2.6 Use of Interrogatories**

**2.7 In-Trial Instructions on News Coverage**

**2.8 Civil Allen Charge**

**BASIC INSTRUCTIONS**

**3.1 Introduction**

**3.2.2 The Duty to Follow Instructions - Corporate Party Involved**

**3.2.3 The Duty to Follow Instructions - Government Entity or Agency Involved**

**3.3 Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court**

**3.4 Credibility of Witnesses**

**3.5.1 Impeachment of Witnesses because of Inconsistent Statements**

**3.5.2 Impeachment of Witnesses because of Inconsistent Statements or Felony Conviction**

**3.5.3 Impeachment of Witness Because of Bad Reputation for (or Opinion about) Truthfulness**

**3.7.1 Responsibility for Proof - Plaintiff's Claim[s], Cross Claims, Counterclaims - Preponderance of the Evidence**

**3.7.2 Responsibility for Proof - Affirmative Defense Preponderance of the Evidence**

**3.8.2 Duty to Deliberate when both Plaintiff and Defendant Claim Damages or when Damages are not an Issue**

**3.9 Election of Foreperson Explanation of Verdict Form[s]**

**CAUSES OF ACTION IN THIS CASE**

**4.1 Federal Odometer Act (49 U.S.C. §§ 32705, 32710)**

**4.2 Fraud (Count II) (Florida Law)**

2

**4.3 Fraudulent Inducement (Count III) (Florida Law)**

**4.4 BREACH OF EXPRESS WARRANTY (FLA. STAT. § 672.313)**

**4.5 BREACH OF WRITTEN WARRANTY PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.**

**4.6 DEFENDANT'S COUNTERCLAIM: BREACH OF CONTRACT (GPS ACKNOWLEDGMENT)**

**4.7 NO DOUBLE RECOVERY**

**PROPOSED JOINT VERDICT FORM**

## 1.1

### General Preliminary Instruction

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:  It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:  You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain.

3

Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

<u>What is not evidence:</u>  During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he or she thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. I may allow some evidence for only a limited

4

purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:  To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account: the witness's opportunity and ability to see, hear, or know the things the witness is testifying about; the witness's memory; the witness's manner while testifying; any interest the witness has in the outcome of the case; any bias or prejudice the witness may have; any other evidence that contradicts the witness's testimony; the reasonableness of the witness's testimony in light of all the evidence; and any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiffs, Isiah Robinson and Lisa Clayton Robinson, claim the Defendant, National Automotive, Inc., violated the Federal Odometer Act, committed fraud, and breached an express written warranty by failing to disclose an accurate reading of the odometer in a motor vehicle purchased by Plaintiffs from Defendant. Plaintiffs also seek to revoke their acceptance of the motor vehicle. Defendant, National Automotive, Inc. denies those claims and contends that Plaintiffs are precluded from bringing these claims based on their conduct after the sale. National Automotive also claims that Plaintiffs breached the parties' contract by tampering with, removing or disabling the GPS device installed on the vehicle.

5

Burden of proof:  Plaintiffs have the burden of proving their case by what the law calls a "preponderance of the evidence." That means Plaintiffs must prove that, in light of all the evidence, what they claim is more likely true than not. If Plaintiffs fail to meet this burden, you must find in favor of National Automotive, Inc. National Automotive, Inc. has also brought claims for relief against Plaintiffs called counterclaims. On those claims, National Automotive, Inc. has the same burden of proof that Plaintiffs have for their claims.

On certain issues, called "affirmative defenses," National Automotive, Inc. has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts National Automotive, Inc. must prove for any affirmative defense. After considering all the evidence, if you decide that National Automotive, Inc. has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

Conduct of the jury:  While serving on the jury, you may not talk with anyone about anything related to the case. You shouldn't even talk about the case with each other until you begin your deliberations. You must not provide any information about the case to anyone by any means, including posting on any Internet site, blog, social website, or other means. You also shouldn't search online or offline for any information about the case, the parties, or the law.

Taking notes:  If you wish, you may take notes to help you remember what the witnesses said. Whether or not you take notes, you should rely on your own memory of the testimony.

Course of the trial:  First, each side may make an opening statement. Next, Plaintiffs will present their witnesses. After Plaintiffs question a witness, National

6

Automotive, Inc. may cross-examine the witness. Then National Automotive, Inc. will present its witnesses, and Plaintiffs may cross-examine them. After all the evidence is in, the lawyers will present closing arguments, and then I'll give you instructions on the law. You'll then go to the jury room to deliberate.

**Requesting Party:  Defendant**
**<u>Defendant's proposed Instruction for "Burden of Proof" section:</u>**

As to Plaintiffs' claims based on federal law, Plaintiffs have the burden of proving their case by what the law calls a "preponderance of the evidence." That means Plaintiffs must prove that, in light of all the evidence, what they claim is more likely true than not. If Plaintiffs fail to meet this burden, you must find in favor of National Automotive, Inc. As to Plaintiffs' claims based on state law, Plaintiffs have the burden of proving their case by what the law calls the "greater weight of the evidence," which I will define for you during these instructions.  National Automotive, Inc. has also brought a claim for relief against Plaintiffs called a counterclaim. On that claim, National Automotive, Inc. has the same burden of proof that Plaintiffs have for their state law claims.

On certain issues, called "affirmative defenses," National Automotive, Inc. has the burden of proving the elements of a defense by either the preponderance of the evidence or the greater weight of the evidence. I'll instruct you on the facts National Automotive, Inc. must prove for any affirmative defense and the applicable burden of proof. After considering all the evidence, if you decide that National Automotive, Inc. has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

**Defendant's Authority for proposed Instruction**: Florida Standard Jury Instructions in Civil Cases 409.2, 409.3, 409.10, 409.11, 409.12 and 409.13.

7

**1.2**

**Burden of Proof – Clear and Convincing Evidence**

Sometimes a party has the burden of proving a claim or defense by clear and convincing evidence. This is a higher standard of proof than proof by a preponderance of the evidence. It means the evidence must persuade you that the claim or defense is highly probable or reasonably certain. The court will tell you when to apply this standard.

**1.4**

**Jury Questions**

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. After each witness has testified, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff. You may submit a question only to clarify an answer or to help you understand the evidence. You must submit all questions in writing. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

## 1.5

## Interim Statements

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence, not evidence themselves.

## 2.1

## Stipulations

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

**2.2**

**Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

12

**2.4**

**Interim Statements**

At the beginning of the trial, I told you that the lawyers might make short statements previewing upcoming evidence or summarizing and highlighting evidence that they have already presented. [Mr./Ms. name] is going to make a short statement. Please remember that the statement you are about to hear is that attorney's view of the evidence, but isn't itself evidence.

**2.5**

**Judicial Notice**

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted [state the fact] as proved even though no one introduced evidence to prove it. You must accept it as true for this case.

**2.5(a)**

**Certified Records and Self-Authenticating Documents**

Plaintiffs have introduced certified copies of official government records, including records from the Florida Department of Highway Safety and Motor Vehicles. Certified copies of public records are self-authenticating under the Federal Rules of Evidence; they do not require live testimony from a records custodian to be received in evidence. Fed. R. Evid. 902(4).

I have received these certified records in evidence. You should consider them as you would any other evidence in the case and give them the weight you believe they deserve.

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** Fed. R. Evid. 902(4) (certified copies of public records are self-authenticating); Fed. R. Evid. 902(11) (certified records of regularly conducted activity); Fed. R. Evid. 803(8) (public records hearsay exception);

**2.5(a) Certified Records and Self-Authenticating Documents**

**Requesting Party: Defendant.**

Defendant has not proposed a competing instruction on this point.

**Plaintiffs' Objection to Defendant's Proposed Instruction:**

Not applicable.

**2.6**

**Use of Interrogatories**

You'll now hear/You've heard answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath. You must consider [name of party]'s answers as though [name of party] gave the answers on the witness stand.

**2.7**

**In-Trial Instructions on News Coverage**

Reports about this trial may appear in the media. The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong. You must not read, listen to, or watch anything about this trial. You must decide this case exclusively on the evidence you receive here in court.

**2.8**

**Civil Allen Charge**

Members of the jury:

I'm going to ask you to continue your deliberations to reach a verdict. This is an important case. The trial has been expensive in terms of time, effort, money, and emotional strain to both the plaintiff and the defendant. If you fail to agree on a verdict, the case remains open and may have to be tried again. A second trial would be costly to both sides, and there's no reason to believe either side can try it again better or more exhaustively than they have tried it before you.

It's your duty to consult with one another and to deliberate with a view to reaching an agreement – if you can do it without violating your individual judgment. You must not give up your honest beliefs about the evidence's weight or effect solely because of other jurors' opinions or just to return a verdict. You must each decide the case for yourself – but only after you consider the evidence with your fellow jurors. You shouldn't hesitate to reexamine your own views and change your opinion if you become convinced it's wrong.

18

## 3.1

## Introduction

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case. When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

### 3.2.2

### The Duty to Follow Instructions – Corporate Party Involved

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

**3.3**

**Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Your own recollection and interpretation of the evidence is what matters.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**3.4**

**Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part.

To decide whether you believe any witness I suggest that you ask yourself: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to accurately observe the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness's testimony differ from other testimony or other evidence?

22

**3.5.1**

**Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception.

### 3.5.2

### Impeachment of Witnesses Because of Inconsistent Statements or Felony Conviction

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception.

### 3.5.3

### Impeachment of Witness Because of Bad Reputation for (or Opinion about) Truthfulness

There may also be evidence tending to show that a witness has a bad reputation for truthfulness in the community where the witness resides, or has recently resided, or that others have a bad opinion about the witness's truthfulness. You may consider reputation and community opinion in deciding whether to believe or disbelieve a witness.

**3.7.1**

**Responsibility for Proof – Plaintiff's Claims, Cross Claims, Counterclaims –
Preponderance of the Evidence[1]**

In this case it is the responsibility of the Plaintiffs to prove every essential part of their claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiffs' claim is more likely true than not true. If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the party making that claim or contention. When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

---

[1] Defendant's position is that this is applicable to Counts I and V only. State law claims are governed by the Florida pattern instructions on the burden of proof as noted in relation to pattern Instruction 1.1 above. *See* Florida Standard Jury Instructions in Civil Cases 409.2, 409.3, 409.10, 409.11, 409.12 and 409.13

26

**3.7.2**

**Responsibility for Proof – Affirmative Defenses – Preponderance of the Evidence**

In this case, the Defendant asserts affirmative defenses. Even if the Plaintiffs prove their claims by a preponderance of the evidence, the Defendant can prevail in this case if it proves an affirmative defense by a preponderance of the evidence. When more than one affirmative defense is involved, you should consider each one separately.

I caution you that the Defendant does not have to disprove the Plaintiffs' claims, but if the Defendant raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** Eleventh Circuit Civil Pattern Jury Instruction 3.7.2; *Hollister Inc. v. Zassi Holdings, Inc*., No. 20-10636, 2021 U.S. App. LEXIS 37213, at *7 (11th Cir. Dec. 16, 2021)( "A defendant bears the burden of proving an affirmative defense at trial."). *Andres v. Roswell-Windsor Village Apartments*, 777 F.2d 670, 673 (11th Cir. 1985) (per curiam) (noting that the job of a reviewing court is to make sure "'that the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law'"). "The trial court has a duty to give instructions that are meaningful and translated into terms the jury can understand." *King v. Allstate Ins. Co*., 906 F.2d 1537, 1543 (11th Cir. 1990).Doc. 22 at 9 ("The Court prefers pattern jury instructions approved by the United States Court of Appeals for the Eleventh Circuit").

**3.7.2 Responsibility for Proof – Affirmative Defenses – Preponderance of the Evidence**

**Requesting Party: Defendant.**

In this case, the Defendant asserts the affirmative defenses of waiver, estoppel, unclean hands, the Plaintiffs' material breach of contract, laches, fraud, accord and satisfaction, execution of an "As Is – Sold Without Warranty" agreement and Plaintiffs' failure to mitigate their damages. Even if the Plaintiffs prove their federal claims by a preponderance of the evidence, the Defendant can prevail in this case if it proves any of its affirmative defenses by a preponderance of the evidence. Even

27

if the Plaintiffs prove their state claims by the greater weight of the evidence, the Defendant can prevail on those claims if it proves any of its affirmative defenses by the greater weight of the evidence. When more than one affirmative defense is involved, as is true in this instance, you should consider each one separately. I caution you that the Defendant does not have to disprove the Plaintiffs' claims, but if the Defendant raises an affirmative defense, the only way they can prevail on that specific defense is if they prove that defense by a preponderance of the evidence as to the federal claims or the greater weight of the evidence as to the state claims.

**Defendant's Authority:** Eleventh Circuit Civil Pattern Jury Instruction 3.7.2; Florida Standard Jury Instructions in Civil Cases 409.2, 409.3, 409.10, 409.11, 409.12 and 409.13.

## **Plaintiffs' Objection to Defendant's Proposed Instruction:**

Plaintiffs do not object to Defendant naming each affirmative defense in the instruction. Plaintiffs' sole objection is to any suggestion in Defendant's proposed instruction, or in any supplemental instruction Defendant may propose, that a different or higher burden-of-proof standard governs. Preponderance of the evidence is the correct standard for all claims and defenses in this action. Using inconsistent burden language across counts in the same trial - "preponderance" for federal claims and "greater weight of the evidence" for state law claims - would confuse the jury. Consistent Eleventh Circuit pattern language should be used throughout. *Eleventh Circuit Civil Pattern Jury Instructions 3.7.1, 3.7.2* (both apply preponderance standard).

**3.8.2**

**Duty to Deliberate When Both Plaintiff and Defendant Claim Damages or When Damages are not an Issue**

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

29

**3.9**

**Election of Foreperson; Explanation of Verdict Form**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience. Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. But I caution you not to tell me how many jurors have voted one way or the other at that time.

30

**4.1**

**Federal Odometer Act (49 U.S.C. §§ 32705, 32710)**

Plaintiffs assert a claim under the Federal Odometer Act. Plaintiffs contend that Defendant violated federal odometer disclosure requirements in connection with the transfer of the vehicle and did so with intent to defraud.

Buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of a vehicle. 49 U.S.C. § 32701(a)(1)–(3). A transferor must make the odometer disclosure in the form and manner prescribed – that is, on the title, presented to and signed by the transferee at the time of sale. 49 U.S.C. § 32705(a)(1)–(3); 49 C.F.R. § 580.5(c).

To prevail on this claim, Plaintiffs must prove each of the following by a preponderance of the evidence:

1. The Defendant violated the Federal Odometer Act or a regulation issued under it in connection with the transfer of the vehicle; and
2. The Defendant acted with intent to defraud.

"Intent to defraud" means an intent to deceive or cheat. Intent to defraud may be proved by direct evidence or by circumstantial evidence and reasonable inferences drawn from the facts and circumstances. An admission is not required.

If you find for Plaintiffs on this claim, the Federal Odometer Act entitles Plaintiffs to recover three times their actual damages or $10,000, whichever is greater. 49 U.S.C. § 32710(a). This means that even if Plaintiffs' actual damages are less than $10,000, Plaintiffs are still entitled to a minimum recovery of $10,000 upon a finding that Defendant violated the Act with intent to defraud. You should determine the amount of Plaintiffs' actual damages, if any; the Court will then apply the trebling and statutory minimum to fix the final damages award. Attorney's fees

31

and costs will also be addressed by the Court as provided by law. 49 U.S.C. §
32710(a)–(b).

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** 49 U.S.C. §§ 32701(a)(1)–(3) (buyers entitled to rely on
odometer as accurate indicator of mileage); 49 U.S.C. § 32705(a)(1)–(3); 49 C.F.R.
§ 580.5(c) (requiring mileage disclosure on title at time of transfer, signed by
transferee); 49 U.S.C. § 32710 (providing for treble damages and attorney's fees);
*Owens v. Samkle Auto., Inc.*, 425 F.3d 1318, 1321–22 (11th Cir. 2005) (establishing
two-element liability test—statutory violation plus intent to defraud—and permitting
proof of intent through circumstantial evidence and reasonable inferences); *Coleman
v. Lazy Days RV Ctr., Inc.*, No. 8:05-cv-00930-T-17TBM, 2007 WL 2021832, at *4
(M.D. Fla. July 12, 2007) (constructive knowledge sufficient to establish intent to
defraud under the Odometer Act); *Bertolotti v. A&L Int'l Motor Corp.*, No. 1:15-cv-
24249, 2016 U.S. Dist. LEXIS 159464, at *1 (S.D. Fla. Nov. 17, 2016); *see also
Womack v. Nissan N. Am., Inc.*, 550 F. Supp. 2d 630, 635 (E.D. Tex. 2007) (statutory
damages provision "allows victims to recover without proving actual damages"); *Att'y
Gen. of Md. v. Dickson*, 717 F. Supp. 1090, 1105 (D. Md. 1989) ("When the victim
proves no damage, he receives the minimum statutory amount of [$10,000] as a
penalty."); *accord Haddon v. FS Invs. of Am., Inc.*, No. 8:23-cv-00709-WFJ-SPF,
2025 U.S. Dist. LEXIS 1373, at *8–9 (M.D. Fla. Jan. 6, 2025) (confirming § 32710(a)
"provides relief without proof of actual damages").

**Defendant's Objection to Plaintiffs' proposed Instruction**:

Plaintiffs' proposed instruction paraphrases 49 U.S.C. §32701(a)(1)-(3), 49 U.S.C.
§32705, and 49 C.F.R. §580.5 in a way that is inaccurate, misleading and from an
advocate's perspective rather than neutral. Defendant further objects to the inclusion
of any content related to the Court performing any calculations, e.g. the "trebling" of
damages, as well as any content related to attorney's fees and costs when that is
solely within the province of the Court, unnecessary and prejudicial to include as part
of the instructions to the jury and will only confuse the jury.

**4.1 Federal Odometer Act (49 U.S.C. §§ 32705, 32710)**

**Requesting Party: Defendant**

Plaintiffs assert that National Automotive, Inc. violated the Federal Odometer Act.
The issues for you to decide on this claim are:

First, whether Plaintiffs have proved by a preponderance of the evidence that
National Automotive, Inc. violated the Federal Odometer Act or a regulation
prescribed under the Act at the time it sold the vehicle to Plaintiffs; and

32

Second, whether Plaintiffs have proved by a preponderance of the evidence that National Automotive, Inc. violated the Federal Odometer Act or a regulation prescribed under the Act with an intent to defraud Plaintiffs.

Proving a discrepancy with the vehicle's mileage is not indicative of National Automotive, Inc.'s intent to defraud Plaintiffs.

**Defendant's Authority:** *Owens v. Samkle Auto., Inc.,* 425 F.3d 1318 (11th Cir. 2005); *Bertolotti v. A&L Int'l Motor Corp.,* 2016 U.S. Dist. LEXIS 159464 (S.D. Fla. Nov. 17, 2016); *Coleman v. Lazy Days RV Center, Inc.,* 2007 WL 2021832 (M.D. Fla. July 12, 2007).

**<u>Plaintiffs' Objection to Defendant's Proposed Instruction:</u>**

Defendant's proposed sentence - "Proving a discrepancy with the vehicle's mileage is not indicative of National Automotive, Inc.'s intent to defraud Plaintiffs" - is an improper comment on the weight of evidence that invades the exclusive province of the jury and is inconsistent with controlling Eleventh Circuit authority. *Owens,* 425 F.3d at 1321–22, expressly holds that intent to defraud may be proved by circumstantial evidence; it does not exclude or minimize a mileage discrepancy as probative evidence of intent. Singling out one type of evidence and directing the jury to discount it as non-indicative of intent is indistinguishable from directing a partial verdict on the intent element. The Court should reject this sentence.

33

**4.2**

**Fraud (Count II) (Florida Law)**

Plaintiffs assert a claim for fraud. To prevail on this claim, Plaintiffs must prove each of the following by a preponderance of the evidence:

1. The Defendant made a false statement concerning a material fact;
2. The Defendant knew the statement was false when it was made;
3. The Defendant intended that the statement induce Plaintiffs to act on it; and
4. Plaintiffs acted in reliance on the statement and suffered injury as a result.

A "material" fact is one a reasonable person would consider important in deciding what to do. The false representation must be of a past or existing fact. Fraud may be based on a defendant's knowing concealment or non-disclosure of a material fact. Where the representation comes from someone with superior knowledge of the subject of the statement, it should be treated as a fact. Evidence of the defendant's knowledge that the representation is false can be shown through circumstantial evidence. Actual damages must be proved.

If you find for Plaintiffs on this claim, you must determine damages. Florida uses the "flexibility theory" of damages, meaning the court can use either the "out-of-pocket" rule - the difference between the purchase price and the actual value of the property - or the "benefit of the bargain" rule - the difference between the actual value of the property and its value had the alleged facts been true - depending on which is more likely to fully compensate the plaintiff.

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** *Butler v. Yusem,* 44 So. 3d 102, 105 (Fla. 2010) (four-element fraud standard; materiality = what reasonable person would consider important); *Omnipol, A.S. v. Multinational Def. Servs., LLC,* 32 F.4th 1298, 1308 (11th Cir. 2022) (Eleventh Circuit applying Florida fraud elements); *Bluhm v. Wyndham Destinations, Inc.,* 2023 U.S. App. LEXIS 27470 (11th Cir. Oct. 17, 2023); *Costa Inv'rs, LLC v.*

34

*Liberty Grande, LLC,* 353 So. 3d 627, 632 (Fla. DCA 2022) (false representation must be of past or existing fact); *TransPetrol, Ltd. v. Radulovic,* 764 So. 2d 878, 879 (Fla. DCA 2000) (concealment basis for fraud); *Grimes v. Lottes,* 241 So. 3d 897 (Fla. DCA 2018) (superior knowledge treated as fact); *Cohen v. Kravit Estate Buyers, Inc.,* 843 So. 2d 989, 991 (Fla. 3d DCA 2003) (knowledge provable circumstantially); *Simon v. Celebration Co.,* 883 So. 2d 826, 833 (Fla. 4th DCA 2004) (actual damages required); *Nordyne, Inc. v. Fla. Mobile Home Supply,* 625 So. 2d 1283, 1286–87 (Fla. DCA 1993) (flexibility theory of fraud damages). Doc. 22 at 9 (Court prefers Eleventh Circuit pattern instructions).

**Defendant's objection to Plaintiffs' proposed Instruction:** There is no pattern instruction for fraud in the Eleventh Circuit, and Plaintiffs' claims are state law claims which should follow the Florida pattern instructions, as applicable.

**4.2 Fraud (Count II) (Florida Law)**

**Requesting Party: Defendant.**

**409.2 Summary of Claims**

The claims and defenses for Plaintiffs' claims for fraud are as follows: Plaintiffs claim that Defendant fraudulently misrepresented the accuracy of the mileage on the vehicle's odometer which caused them harm.

Defendant denies that claim and also asserts that Plaintiffs waived their right to bring this claim and/or are estopped from bringing this claim by declining the opportunity to return the vehicle, receive the return of their down payment and terminate all of their contractual obligations related to the purchase of the vehicle.

**409.3 Greater Weight Of The Evidence**

"Greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.

**409.5 Material Fact**

A material fact is one that is of such importance that Plaintiffs would not have entered into the transaction but for the false statement.

**409.6 Legal Cause**

Reliance on the false information is a legal cause of damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such damage, so that it can reasonably be said that, but for the reliance, the damage would not have occurred.

**409.7 Issues on Plaintiff's Claim — Fraud (Count II)**

The issues for you to decide on Plaintiffs' claim for fraud are:

First, whether Defendant made a false statement concerning a material fact;

Second, whether Defendant knew the statement was false when it made it;

Third, whether Defendant intended that Plaintiffs would rely on the false statement;

Fourth, whether Plaintiffs relied on the false statement; and, if so,

Fifth, whether the reliance on the false statement was a legal cause of loss to Plaintiffs.

On this claim for fraudulent misrepresentation, Plaintiffs may rely on a false statement, even though its falsity could have been discovered if Plaintiffs had made an investigation. However, Plaintiffs may not rely on a false statement if they knew it was false or its falsity was obvious to them.

There must be actual damage for recovery in a fraud action. Fraud that does not result in damage is not actionable.

### 409.10 Burden Of Proof On Main Claims

If the greater weight of the evidence does not support one or more of Plaintiffs' claims for fraud and fraud in the inducement, your verdict should be for Defendant on those claims.

**Defendant's Authority:** Florida Standard Jury Instructions in Civil Cases, Series 409; *Casey v. Welch*, 50 So. 2d 124 (Fla. 1951); *Stokes v. Victory Land Co.*, 128 So. 408 (Fla. 1930); *Pryor v. Oak Ridge Development Corp.*, 119 So. 326 (1928); *Wheeler v. Baars*, 15 So. 584 (Fla. 1894); *National Aircraft Services, Inc. v. Aeroserv International, Inc.*, 544 So. 2d 1063 (Fla. 3d DCA 1989); *National Equipment Rental, Ltd. v. Little Italy Restaurant & Delicatessen, Inc.*, 362 So. 2d 338 (Fla. 4th DCA 1978); *Minotty v. Baudo*, 42 So. 3d 824, 835 (Fla. 4th DCA 2010); *GEICO General Ins. Co. v. Hoy,* 136 So. 3d 647, 651 (Fla. 2d DCA 2013); *Awodiya v. Ross Univ. School of Medicine,* 857 Fed. Appx. 533, 537 (11th Cir. 2020); *Minotty v. Baudo,* 42 So. 3d 824, 835 (Fla. 4th DCA 2010).

### **Plaintiffs' Objection to Defendant's Proposed Instruction:**

Plaintiffs object on four grounds. First, this Court prefers Eleventh Circuit pattern jury instructions. Doc. 22 at 9. Defendant's instruction is sourced from Florida Standard Jury Instructions Series 409, which is designed for state court proceedings and is not the preferred authority in this Court. Second, "greater weight of the evidence" is legally equivalent to "preponderance of the evidence," but using different burden language for different counts in the same federal trial is needlessly confusing. Third, Defendant's definition of "material fact" - one Plaintiffs would not have entered the transaction "but for" - is a stricter, transaction-specific standard that is inconsistent with the Eleventh Circuit's reasonable-person materiality standard. *Omnipol,* 32 F.4th at 1308; *Butler v. Yusem,* 44 So. 3d at 105. Fourth, the "obvious falsity" proviso does not appear in Eleventh Circuit fraud authority and functions as an unsupported affirmative defense instruction within the fraud claim itself.

36

**4.3**

**Fraudulent Inducement (Count III) (Florida Law)**

Plaintiffs assert a claim for fraudulent inducement. Fraudulent inducement focuses on whether the alleged misrepresentation induced Plaintiffs to enter the transaction. To prevail on this claim, Plaintiffs must prove each of the following by a preponderance of the evidence:

1. The Defendant made a misrepresentation of a material fact;
2. The Defendant knew or should have known of the falsity of the statement;
3. The Defendant intended that the representation would induce Plaintiffs to rely and act on it; and
4. Plaintiffs suffered injury in justifiable reliance on the representation.

A "material" fact is one a reasonable person would consider important in deciding what to do. The false representation must be of a past or existing fact. For fraudulent inducement, Plaintiffs' reliance on the false statement must be justifiable. Had Plaintiffs been advised of the truth, they would not have entered into the transaction.

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** *White Holding Co., Ltd. Liab. Co. v. Martin Marietta Materials, Inc.,* 423 F. App'x 943, 945 (11th Cir. 2011) (four-element fraudulent inducement standard including justifiable reliance); *Global Quest, LLC v. Horizon Yachts, Inc.,* 849 F.3d 1022, 1029–30 (11th Cir. 2017) (justifiable reliance element of fraudulent inducement under Florida law applied by Eleventh Circuit); *Babbit Elecs., Inc. v. Dynascan Corp.,* 38 F.3d 1161 (11th Cir. 1994); *Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242, 1259 (11th Cir. 2014); *Ingram v. Butter,* 2015 U.S. Dist. LEXIS 175437 (S.D. Fla. Dec. 23, 2015) (justifiable reliance); *Econ-O-Check Corp. v. Suncoast Credit Union,* 2019 U.S. Dist. LEXIS 238132 (M.D. Fla. Dec. 19, 2019). Doc. 22 at 9 (Court prefers Eleventh Circuit pattern instructions).

**Defendant's Objection to Plaintiff's proposed Instruction**: The elements of the cause of action for the state law claim speak for themselves, but any added content is unnecessary and proposed from an advocate's position. Further, the Court's preference for Eleventh Circuit pattern instructions is not dispositive here because there is no pattern instruction for a state law fraud claim. The only pattern

37

instructions for a Florida fraudulent misrepresentation claim come from the Florida pattern instructions proposed by Defendant below.

### 4.3 Fraudulent Inducement (Count III) (Florida Law)

**<u>Requesting Party: Defendant.</u>**

**Issues on Plaintiffs' Claim for Fraud in the Inducement (Count III)**

The issues for you to decide on Plaintiffs' claim for fraud in the inducement are:

First, whether Defendant made a false statement concerning a material fact;

Second, whether Defendant knew the representation was false;

Third, whether Defendant intended that the representation would induce Plaintiffs to act upon it; and

Fourth, whether Plaintiffs relied on the representation thereby causing them injury.

### 409.10 Burden Of Proof On Main Claims

If the greater weight of the evidence does not support one or more of Plaintiffs' claims for fraud and fraud in the inducement, your verdict should be for Defendant on those claims.

### 409.11 Defense Issues

If, however, the greater weight of the evidence supports one or more of Plaintiffs' state law fraud claims against Defendant, then you shall consider the defenses raised by Defendant.

On the first defense, the issue for you to decide is whether Plaintiffs waived their right to assert any claims against Defendant because Plaintiffs returned to Defendant's place of business six days after the purchase of the vehicle, at Defendant's request and/or invitation, during which Plaintiffs were given the opportunity to inspect the original Certificate of Title that was tendered by Murray Ford and to return the vehicle to Defendant and, in exchange, receive the return of their cash down payment without any further monetary or contractual obligation to Defendant.

On the second defense, the issue for you to decide is whether Plaintiffs is estopped from asserting any claims against Defendant because Plaintiffs returned to Defendant's place of business six days after the purchase of the vehicle, at Defendant's request and/or invitation, during which Plaintiffs were given the opportunity to inspect the original Certificate of Title that was tendered by Murray Ford and to return the vehicle to Defendant and, in exchange, receive the return of their cash down payment without any further monetary or contractual obligation to Defendant.

On the third defense, the issue for you to decide is whether Plaintiffs' claims are barred, in whole or in part, due to Plaintiffs' material breach of the parties' agreements by tampering with, removing and/or disabling the GPS unit attached to the vehicle, in violation of the GPS Acknowledgement.

On the fourth defense, the issue for you to decide is whether Plaintiffs' claims are barred, in whole or in part, based on unclean hands because Plaintiffs returned to Defendant's place of business six days after the purchase of the vehicle, at Defendant's request and/or invitation, during which Plaintiffs were given the opportunity to inspect the original Certificate of Title that was tendered by Murray Ford and to return the vehicle to Defendant and, in exchange, receive the return of their cash down payment without any further monetary or contractual obligation to Defendant.

On the fifth defense, the issue for you to decide is whether Plaintiffs' claims are barred, in whole or in part, based on laches because Plaintiffs returned to Defendant's place of business six days after the purchase of the vehicle, at Defendant's request and/or invitation, during which Plaintiffs were given the opportunity to inspect the original Certificate of Title that was tendered by Murray Ford and to return the vehicle to Defendant and, in exchange, receive the return of their cash down payment without any further monetary or contractual obligation to Defendant.

On the sixth defense, the issue for you to decide is whether Plaintiffs' claims are barred, in whole or in part, based on fraud committed by Plaintiffs because Plaintiffs returned to Defendant's place of business six days after the purchase of the vehicle, at Defendant's request and/or invitation, during which Plaintiffs were given the opportunity to inspect the original Certificate of Title that was tendered by Murray Ford and to return the vehicle to Defendant and, in exchange, receive the return of their cash down payment without any further monetary or contractual obligation to Defendant.

On the seventh defense, the issue for you to decide is whether Plaintiffs' claims are barred, in whole or in part, based on accord and satisfaction because Plaintiffs returned to Defendant's place of business six days after the purchase of the vehicle, at Defendant's request and/or invitation, during which Plaintiffs were given the opportunity to inspect the original Certificate of Title that was tendered by Murray Ford and to return the vehicle to Defendant and, in exchange, receive the return of their cash down payment without any further monetary or contractual obligation to Defendant.

## 409.12 Burden Of Proof On Defense Issues

If the greater weight of the evidence does not support Defendant's defenses and the greater weight of the evidence supports one or more of Plaintiffs' claims, then your verdict should be for Plaintiffs in the total amount of their damages.

39

**409.13 Damages**

If you find for Defendant on Plaintiffs' claims for fraud and fraud in the inducement, you will not consider the matter of damages. But, if you find for Plaintiffs on either of their claims for fraud or fraud in the inducement, you should award Plaintiffs an amount of money that the greater weight of the evidence shows will fairly and adequately compensate Plaintiffs for either their out-of-pocket loss or the benefit-of-the-bargain loss.[2]

The "benefit of the bargain" rule awards as damages the difference between the actual value of the property and its value had the alleged facts regarding it been true. The "out-of-pocket" rule awards as damages the difference between the purchase price and the real or actual value of the property.[3]

**Defendant's Authority:** Florida Standard Jury Instructions in Civil Cases, Series 409 (409.10, 409.11, 409.12); *GEICO General Ins. Co. v. Hoy,* 136 So. 3d 647, 651 (Fla. 2d DCA 2013); *Awodiya v. Ross Univ. School of Medicine,* 857 Fed. Appx. 533, 537 (11th Cir. 2020).

**<u>Plaintiffs' Objection to Defendant's Proposed Instruction:</u>**

Plaintiffs object on three grounds. First, this Court prefers Eleventh Circuit pattern instructions; Defendant's instruction is drawn from Florida SJI Series 409. Doc. 22 at 9. Second, the Eleventh Circuit's fraudulent inducement framework requires justifiable reliance as a separate, affirmatively stated element. *White Holding Co.,* 423 F. App'x at 945; *Global Quest,* 849 F.3d at 1029–30. Omitting "justifiable" reliance understates Plaintiffs' burden and eliminates the requirement that the circumstances warranted reliance on Defendant's representations - a question directly at issue given Defendant's claim that the TMU title brand was visible or discernible. Third, the "greater weight of the evidence" standard is legally equivalent to preponderance but creates inconsistency across counts in the same trial.

---

[2] *In re Weeks Landing, LLC*, 439 B.R. 837, 916 (M.D. Fla. 2010); *Minotty v. Baudo*, 42 So. 3d 824, 835 (Fla. 4th DCA 2010).

[3] *Minotty v. Baudo*, 42 So. 3d 824, 835 (Fla. 4th DCA 2010), citing *Martin v. Brown*, 566 So. 2d 890, 891-892 (Fla. 4th DCA 1990).

**4.4**

**Breach of Express Warranty (Count IV) (Fla. Stat. § 672.313)**

Plaintiffs assert a claim for breach of express warranty arising from the sale of the vehicle.

An express warranty is created if a seller makes an affirmation of fact or promise about the goods, or gives a description of the goods, and that affirmation, description, or sample becomes part of the basis of the bargain. Formal words such as "warrant" or "guarantee" are not required. However, a seller's mere opinion or commendation of the goods does not create an express warranty. Reliance on the warranty is presumed once the warranty is established, unless the seller provides clear affirmative proof to the contrary. Fla. Stat. § 672.313.

To prevail on this claim, Plaintiffs must prove each of the following by a preponderance of the evidence:

1. There was a sale of goods;
2. The Defendant made an express warranty as I have defined that term;
3. The warranty became part of the basis of the bargain between the parties;
4. The Defendant breached the express warranty, meaning the vehicle did not conform to the terms of the express warranty;
5. Plaintiffs gave the Defendant reasonable notice of the breach within a reasonable time after discovering or should have discovered the breach; and
6. Plaintiffs suffered damages as a result of the breach.

If you find for Plaintiffs on this claim, the measure of damages is the difference at the time and place of acceptance between the value of the vehicle as accepted and the value it would have had if it had been as warranted, together with any incidental and consequential damages. Fla. Stat. §§ 672.714(2)–(3), 672.715.

**Requesting Party: Plaintiffs**

41

**Plaintiffs' Authority:** Fla. Stat. § 672.101 (Chapter 672 is the Uniform Commercial Code – Sales in Florida, enacted in a single legislative act, ch. 65-254; every § 672.xxx section is the Florida codification of its UCC counterpart); *Fotomat Corp. of Fla. v. Chanda,* 464 So. 2d 626 (Fla. 3d DCA 1985) ("Florida has adopted the Uniform Commercial Code in dealing with commercial transactions"); Fla. Stat. § 672.313(1)(a)–(b) (express warranty by affirmation of fact or description forming part of basis of bargain); Fla. Stat. § 672.316(1) (disclaimer inconsistent with express warranty is inoperative as a matter of law); Fla. Stat. § 672.607(3)(a) ("reasonable" notice of breach required - the statutory standard is "reasonable," not "adequate timely" as Defendant proposes); Fla. Stat. §§ 672.714(2)–(3), 672.715 (damages; incidental and consequential damages); *Carter Hawley Hale Stores v. Conley,* 372 So. 2d 965 (Fla. 1979) (basis of bargain; reliance presumed once warranty established); *Thursby v. Reynolds Metals Co.,* 466 So. 2d 245 (Fla. 1984) (reliance presumed); *Taillard v. Mercedes Benz USA, LLC,* 2025 U.S. Dist. LEXIS 171299 (S.D. Fla. Sept. 3, 2025); *Gulf Runner, LLC v. Seahunter, Inc.,* 2024 U.S. Dist. LEXIS 250154 (S.D. Fla. Nov. 13, 2024); *Miles v. Kavanaugh,* 350 So. 2d 1090, 1093 (Fla. 3d DCA 1977) (incidental and consequential damages recoverable upon breach of warranty); *Bair v. A.E.G.I.S. Corp.,* 523 So. 2d 1186, 1189 (Fla. 2d DCA 1988).

**Defendant's objection to Plaintiffs' proposed Instruction:** Plaintiffs did not plead, cite, reference nor rely on any Florida UCC statutes in the Amended Complaint (D.E. 30, Count IV, pp. 15-16). The instruction proposed by Defendant follows the wording of UCC §2-313 and the elements as cited in the publication. Even were the Court to include portions of Plaintiffs' proposed instruction over Defendant's objection, references to the Florida Statutes themselves should be removed as they could unduly influence the jury.

### 4.4 Breach of Express Warranty (Count IV) (Fla. Stat. § 672.313)

**Requesting Party: Defendant.**

Plaintiffs have also asserted a claim against Defendant for breach of express warranty under Section 2-313 of the Uniform Commercial Code. In an action to recover economic loss resulting from the alleged breach of an express warranty arising under Uniform Commercial Code § 2-313, Plaintiffs must prove the following elements:

1. a transaction for the purchase of goods by Plaintiffs;

2. representations made by Defendant relating to the goods;

3. Defendant's representations were part of the basis of the bargain underlying the transaction;

4. a nonconformity of the goods to Defendant's representations constituting a breach of warranty;

42

5. adequate timely notice to Defendant of the breach of warranty; and

6. economic losses suffered by Plaintiffs proximately resulting from the nonconformity of the goods.

**Defendant's Authority:** UCC § 2-313; "Cause of Action for Economic Loss Resulting from Breach of Express Warranty Under UCC §2-313," 15 COA 723 at §4, Causes of Action First Series, March 2026 Update, by Roderick J. Mortimer, JD. Further, Plaintiffs did not plead, cite, reference nor rely on any Florida UCC statutes in the Amended Complaint (D.E. 30, Count IV, pp. 15-16).  The instruction proposed by Defendant follows the wording of UCC §2-313 and the elements as cited in the publication.

<u>**Plaintiffs' Objection to Defendant's Proposed Instruction:**</u>

Plaintiffs object on four grounds. First, Defendant's notice element requires "adequate timely notice," which is not the statutory standard. Fla. Stat. § 672.607(3)(a) requires only "reasonable" notice. The word "adequate" does not appear in the statute and imposes a higher standard without basis. Second, Illinois Pattern Jury Instructions 185.09, 185.11, and 185.12 have no authority in this Court. Doc. 22 at 9. Third, Defendant's argument that Fla. Stat. § 672.313 was not pled fails as a matter of law. Florida's Chapter 672 IS the UCC - it is titled "Uniform Commercial Code – Sales," enacted in a single act (ch. 65-254), and every provision cross-references its UCC counterpart. Fla. Stat. § 672.101; *Fotomat,* 464 So. 2d 626. Fourth, Defendant's failure-to-mitigate instruction is not supported by evidence and places an unfounded burden-shifting instruction before the jury without factual predicate.

43

**4.4(a)**

**Lay Witness Testimony on the Value of Property**

In this case, Plaintiffs may testify to the value of the vehicle and to the value it would have had if the mileage represented had been accurate. An owner of property is competent to testify as to the value of that property without being qualified as an expert witness. You may consider Plaintiffs' testimony on the question of the vehicle's value and give it whatever weight you believe it deserves in light of all the other evidence.

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** Fla. Stat. § 672.714(2) (the difference in value between the vehicle as accepted and as warranted is the standard measure of warranty damages; *Neff v. Kehoe*, 708 F.2d 639, 644 (11th Cir. 1983) ("an owner of property is competent to testify regarding its value.")

**Defendant's Objection to Plaintiffs' proposed Instruction**: Defendants do not concede the application of Fla. Stat. §672.714(2) as Florida's UCC statute(s) were not pled, cited to nor referenced in relation to any claims in the Amended Complaint. (D.E.).  Further, the first sentence is written from an advocate's position and is improperly leading the jury to find in favor of Plaintiffs.  The second sentence also says too much, e.g. the phrase "without being qualified as an expert witness" – as the *Neff* case did not make this holding. *See Neff*, 708 F.2d at 644. If this instruction is included at all, the first sentence should read, "In this case, Plaintiffs may testify to the value of the vehicle," and the second sentence should read, "An owner of property is competent to testify regarding its value."

**4.5**

**Claim for Breach of Written Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (Count V)**

**The Claim**

Plaintiffs assert a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312. That federal statute creates a private right of action for a consumer who is damaged by a supplier's failure to comply with a written warranty. 15 U.S.C.

44

§ 2310(d)(1). The cause of action is federal. The measure of damages is supplied by state law because the Act is silent on damages. 15 U.S.C. § 2311(b)(1).

**What is a Written Warranty**

A "written warranty" under the Act means any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the product and affirms or promises that the product will meet a specified level of performance. 15 U.S.C. § 2301(6)(A).

Congress has found that purchasers rely heavily on the odometer reading as an index of the condition and value of motor vehicles, that they are entitled to rely on it as an accurate indication of mileage, and that accurate mileage assists a purchaser in determining a vehicle's safety and reliability. 49 U.S.C. § 32701(a)(1)–(3). A written certification of a vehicle's actual mileage at the time of sale is a written affirmation of fact about the product's material condition and a specific performance characteristic that goes to the core of the transaction.

**Elements**

To prevail on this claim, Plaintiffs must prove each of the following by a preponderance of the evidence:

1. National Automotive, Inc. provided a written warranty by making a written affirmation of fact concerning the vehicle's mileage; and
2. National Automotive, Inc. breached that written warranty – that is, the vehicle's actual mileage at the time of sale exceeded or differed from the mileage represented.

**Damages**

The Magnuson-Moss Warranty Act is silent on the measure of damages. State law supplies the applicable measure. 15 U.S.C. § 2311(b)(1). Plaintiffs have

elected revocation of acceptance as their remedy. Revocation of acceptance is a remedy available to a buyer under Florida law where a nonconformity substantially impairs the value of the goods to the buyer.

To award damages under this Count, you must also find each of the following:

1. The nonconformity – the mileage misrepresentation – substantially impaired the value of the vehicle to Plaintiffs. "Substantially impaired" means the nonconformity was serious enough to substantially frustrate the vehicle's essential purpose or value to the buyer;

2. Plaintiffs accepted the vehicle without discovering the nonconformity because discovery was reasonably difficult before acceptance or because of representations made by National Automotive, Inc.; and

3. Plaintiffs notified National Automotive, Inc. of their revocation of acceptance within a reasonable time after they discovered or should have discovered the grounds for revocation.

If you find all of the above, the measure of damages is the full purchase price Plaintiffs paid for the vehicle, plus any incidental and consequential damages. Fla. Stat. §§ 672.711(1), 672.714(2)–(3), 672.715. Do not include in your Count V damages award any amounts already awarded in Counts I through IV.

Incidental damages include any reasonable expenses proximately caused by the breach. Consequential damages include any loss resulting from Plaintiffs' requirements and needs of which Defendant had reason to know and which could not reasonably be prevented by Plaintiffs. Fla. Stat. § 672.715.

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** 15 U.S.C. § 2301(6)(A) (written warranty defined as written affirmation of fact about product affirming specified level of performance); 15 U.S.C. § 2310(d)(1) (MMWA private right of action); 15 U.S.C. § 2311(b)(1) (MMWA preserves all state law rights and remedies; state law supplies damages measure); 49 U.S.C. § 32701(a)(1)–(3) (Congressional findings that buyers entitled to rely on odometer reading as accurate indication of mileage - supporting that a written

46

mileage certification constitutes a "written warranty" under the MMWA); *MacKenzie v. Chrysler Corp.,* 607 F.2d 1162, 1166 (5th Cir. 1979) (MMWA is silent on damages; state law governs the measure) (binding in the Eleventh Circuit under *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981)); *Boyd v. Homes of Legend, Inc.,* 188 F.3d 1294, 1298–99 (11th Cir. 1999) (MMWA incorporates state law remedies to determine the measure and type of damages recoverable); *Mesa v. BMW of North America, LLC,* 904 So. 2d 450, 453 (Fla. 3d DCA 2005) (revocation of acceptance is a remedy available under the MMWA; state law governs the damages measure); *Rentas v. DaimlerChrysler Corp.,* 936 So. 2d 747 (Fla. 3d DCA 2006) (MMWA provides independent federal cause of action for breach of written warranty that borrows state law remedies); *McKissic v. Country Coach, Inc.,* Case No. 8:07-cv-01488, 2008 U.S. Dist. LEXIS 104147 (M.D. Fla. July 16, 2008) (applying Florida UCC revocation of acceptance framework as damages measure for MMWA claim in this District); *Tom Bush Volkswagen, Inc. v. Kuntz,* 429 So. 2d 398, 399–401 (Fla. 1st DCA 1983) (revocation available as equitable remedy under MMWA); Fla. Stat. § 672.101 (Chapter 672 is the UCC–Sales in Florida; every provision is the Florida codification of its UCC counterpart; enacted in a single act, ch. 65-254; *Fotomat Corp. of Fla. v. Chanda,* 464 So. 2d 626 (Fla. 3d DCA 1985)); Fla. Stat. § 672.316(1) (disclaimer inconsistent with express warranty is inoperative); Fla. Stat. §§ 672.608(1)–(2) (revocation elements: substantial impairment; basis for acceptance; timely notice); Fla. Stat. § 672.711(1) (upon revocation, buyer recovers purchase price paid); Fla. Stat. §§ 672.714(2)–(3), 672.715 (warranty damages; incidental and consequential damages); *Barrington Homes of Fla., Inc. v. Kelley,* 320 So. 2d 841 (Fla. 2d DCA 1975) (substantial impairment standard); *Parsons v. Motor Homes of Am., Inc.,* 465 So. 2d 1285 (Fla. 1st DCA 1985) (substantial impairment in vehicle context); *Armadillo Distribution Enterprises v. Hai Yun Musical Instruments Mfr. Co.,* 142 F. Supp. 3d 1245 (M.D. Fla. 2015) (actual, incidental, and consequential damages awarded upon revocation in this District); *Miles v. Kavanaugh,* 350 So. 2d 1090, 1093 (Fla. 3d DCA 1977) (consequential damages recoverable upon warranty breach under Florida UCC); *Royal Typewriter Co. v. Xerographic Supplies Corp.,* 719 F.2d 1092 (11th Cir. 1983) (material deterioration for reasons other than defect bars revocation).

**Defendant's Objection to Plaintiffs' proposed Instruction:**  The Parties have stipulated to the definition of a "written warranty" under the Act, which should be read exactly as worded.  Plaintiffs have added sections – and language – that are written from an advocate's position, not from the Court's neutral posture, e.g. language that tells the jurors what "Congress has found" and that a written certification of a vehicle's mileage is a "written affirmation of fact."  There is no legal authority cited for that particular statement.  Plaintiffs cite 49 U.S.C. § 32701(a)(1)–(3) for the proposition "that a written mileage certification constitutes a "written warranty" under the MMWA," but the statute itself does not say that, and language cannot be added to the statute for Plaintiffs' purposes. The entirety of this instruction, for the most part, spoon feeds to the jury that they should rule in Plaintiffs' favor. The proposed language invades the province of the jury as the finder of fact, and the instruction should not be used as worded.Defendant further objects to all references to Florida's

47

UCC provisions, whether by paraphrasing or direct quote, as the Florida UCC was not cited, referenced nor quoted in the Amended Complaint. (D.E. 30).

**4.5**

**Plaintiffs' Claim for Revocation of Acceptance Under the Magnuson-Moss Warranty Act (Count V)**

**Requesting Party: Defendant.**

Plaintiffs seek to revoke acceptance of the vehicle under the Magnuson-Moss Warranty Act. At the time of the sale of the vehicle, there was in force a federal statute known as the Magnuson-Moss Warranty Act. That Act provides that a consumer who is damaged by the failure of a seller to comply with a written warranty may bring suit for damages, refund or repair.

Plaintiffs claim that they sustained damages as the purchasers of a vehicle sold by Defendant. Plaintiffs further claim that Defendant violated the Magnuson-Moss Act in that Defendant breached an express written warranty given with the vehicle as to its mileage and that they were damaged as a result. Defendant denies that it violated the Magnuson-Moss Act as claimed by Plaintiffs. Defendant further denies that any of the alleged damages resulted, in whole or in part, from any violation of the Act. Defendant further denies that Plaintiffs sustained damages as claimed and that Plaintiffs failed to mitigate their alleged damages by failing to return the vehicle to Defendant in exchange for a refund of their down payment and the termination of their contractual obligation to Defendant.

In order for Plaintiffs to recover for a breach of written warranty claim against Defendant, Plaintiffs have the burden of proving each of the following propositions:

First, the existence of a defect in the vehicle covered by the warranty;

Second, compliance with the terms of the warranty by Plaintiffs;

Third, that Plaintiffs afforded Defendant a reasonable opportunity to repair the defect; and

Fourth, that Defendant did not repair the vehicle after being given a reasonable number of attempts or a reasonable amount of time; or did not offer to refund or replace within a reasonable amount of time.

Fifth, that Plaintiffs sustained damages as a result of Defendant's failure to take action required by the warranty to correct the defect or otherwise to correct the problem.

**Defendant's Authority:** Illinois Pattern Civil Jury Instructions 185.01; 185.02; 185.04; 185.07; 185.09; 185.11; 185.12. The State of Illinois has specific instructions related to a claim brought under the Magnuson-Moss Warranty Act, which track the

language of the Act itself, and neither the Eleventh Circuit nor the State of Florida have any comparable instructions.

**Plaintiffs' Objection to Defendant's Proposed Instruction:**

Plaintiffs object on six grounds. First, Illinois Pattern Jury Instructions have no authority in the Middle District of Florida. Doc. 22 at 9. Second, Defendant's framework converts Count V from a federal breach-of-written-warranty claim into a lemon-law repair-opportunity claim - a different cause of action with different elements. The MMWA creates the cause of action; Florida law supplies the remedy. There is no repair-opportunity requirement in an MMWA breach-of-written-warranty claim where the alleged breach is a mileage misrepresentation that cannot be cured through repair. No repair performed after the sale changes the vehicle's historical mileage at the time of transfer. Requiring proof of a repair opportunity on an incurable misrepresentation amounts to a directed verdict for Defendant. Third, Defendant's instruction omits the substantial impairment element, which is the central statutory prerequisite for revocation of acceptance under Fla. Stat. § 672.608(1). Omitting it from the instruction and the verdict form exposes any resulting verdict to post-trial challenge. Fourth, the basis-for-acceptance and timely-notice elements of § 672.608(2) are also absent from Defendant's instruction. Fifth, the "As Is" disclaimer is inoperative as a matter of law once the jury finds an express warranty exists. Fla. Stat. § 672.316(1);. Sixth, Defendant's proposed damages measure - difference in value at acceptance - is the retained-goods warranty measure under § 672.714(2), not the revocation measure (full purchase price) under § 672.711(1), which is Plaintiffs' elected remedy upon a finding that the revocation prerequisites are met.

**Affirmative Defense No. 12 – "As Is" Warranty Disclaimer**

Defendant claims that it disclaimed all warranties through an "As Is – Sold Without Warranty" agreement and a Buyers Guide, and that these documents bar Plaintiffs' warranty claims (Counts IV and V). Defendant has the burden of proving this affirmative defense.

However, a disclaimer that is inconsistent with an express warranty that the seller has already made is inoperative as a matter of law and cannot limit or negate that express warranty. Fla. Stat. § 672.316(1). If you find that Defendant made an express warranty – that is, if you find for Plaintiffs on the warranty-creation element of Count IV or Count V – then the "As Is" disclaimer is void and cannot bar Plaintiffs' recovery on those counts. The disclaimer defense succeeds only if you find that Defendant never made an express warranty or written warranty in the first instance.

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** Fla. Stat. § 672.316(1) (disclaimer tending to negate an express warranty "is inoperative to the extent that such construction is unreasonable"); UCC Official Comment 1 to § 2-316 ("[d]isclaimer of express warranties inconsistent with express warranties already given . . . cannot stand").

**Defendant's Objection to Plaintiffs' proposed Instruction:** Defendant objects to all references and/or citations to Florida's UCC provisions, whether by paraphrasing or direct quote, as the Florida UCC was not cited, referenced nor quoted in the Amended Complaint. (D.E. 30). In addition, Plaintiffs improperly rephrase Fla. Stat. §672.316(1) to be written from an advocate's position, not the Court's impartial position. Further, Plaintiffs' proposed instruction improperly limits Defendant's disclaimers to two particular documents, rather than all of the contract documents, which must be taken as a single agreement.

**Affirmative Defense No. 12 – "As Is" Warranty Disclaimer**

**Requesting Party: Defendant.**

In this case Defendant has asserted that it expressly disclaimed all warranties on the vehicle, either express or implied, through the contract documents, including the "As Is – Sold Without Warranty" agreement and the Buyers Guide. Defendant has

50

the burden of proving this affirmative defense. If you find from your consideration of all the evidence that the propositions required of Plaintiffs have been proven and that Defendant's affirmative defense has not been proven, then your verdict should be for Plaintiffs. If, on the other hand, you find from your consideration of all the evidence, that the propositions Plaintiffs are required to prove have not been proven, or that Defendant's affirmative defense has been proven, then your verdict should be for Defendant.

A written warranty is a writing provided by the supplier to a purchaser setting out the promises and obligations of the supplier.

If you decide for Plaintiffs on their claim for breach of warranty, you must fix the amount of money which will reasonably compensate Plaintiffs for damages naturally arising from the breach. In calculating Plaintiffs' damages, you should determine that sum of money that will put Plaintiff in as good a position as they would have been in if both Plaintiffs and Defendant had performed all of their promises under the contract. The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of goods accepted and the value they would have had if they had been as warranted. Whether any of these elements of damages has been proven by the evidence is for you to determine.

In fixing the amount of money which will reasonably and fairly compensate Plaintiffs, you must consider that a person who has been damaged by a breach of warranty must exercise ordinary care to minimize existing damages and to prevent further damage. Damages caused by a failure to exercise such care cannot be recovered. Defendant has the burden of proof to show Plaintiffs failed to minimize existing damage and prevent further damage.

You may also award incidental or consequential damages if Plaintiffs prove that they are entitled to recover these damages. Incidental damages resulting from Defendant's breach include any reasonable expense proximately caused by the breach. Consequential damages resulting from Defendant's breach include any loss resulting from general or particular requirements and needs of which Defendant had reason to know at or before the time the vehicle left Defendant's control which could not be prevented by Plaintiffs.

**Defendant's Authority:** Illinois Pattern Civil Jury Instructions 185.04; *Witkowski v. Mack Trucks, Inc.,* 712 F.2d 1352, 1354 (11th Cir. 1983).

**<u>Plaintiffs' Objection to Defendant's Proposed Instruction:</u>**

Plaintiffs object on two grounds. First, Defendant's proposed instruction omits the controlling legal rule of Fla. Stat. § 672.316(1): that a disclaimer inconsistent with an express warranty already made is inoperative. Submitting the disclaimer defense without that limitation would allow the jury to credit a disclaimer that is void as a matter of law the moment they find an express warranty was made, which is the precise outcome § 672.316(1) prohibits. *Carter Hawley Hale Stores,* 372 So. 2d 965; *Doug Connor,* 761 So. 2d at 428. Second, *Witkowski v. Mack Trucks,* 712 F.2d 1352 (11th Cir. 1983), does not support Defendant's position here. In *Witkowski,* no

51

affirmation of a specific performance fact had been made; the disclaimer stood because no express warranty had been created in the first place. Here, the odometer disclosure is an affirmation of a specific numerical fact - 118,245 miles - which is precisely the kind of statement that creates an express warranty under § 672.313(1)(a), making the disclaimer inoperative under § 672.316(1). Illinois Pattern Jury Instructions have no authority in this Court. Doc. 22 at 9.

**Affirmative Defense – Waiver**

Defendant claims that Plaintiffs gave up their right to bring the claims in this lawsuit. This is called a "waiver." To establish this defense, Defendant must prove all of the following by a preponderance of the evidence:

1. Plaintiffs had a specific legal right that actually existed;

2. Plaintiffs had full knowledge of that right and of all material facts bearing on it; and

3. Plaintiffs freely and intentionally gave up that right.

A waiver may be oral or written, or may arise from conduct. However, there can be no waiver unless the party alleged to have waived their rights had knowledge of all material facts. Continuing to use property after a sale does not, by itself, constitute a waiver of legal claims arising from the transaction.

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** *Irvine v. Cargill Inv. Servs., Inc.,* 799 F.2d 1461, 1464 (11th Cir. 1986) (applying Florida law: "there can be no waiver unless the party had all the material facts"; waiver is disfavored and will not be lightly inferred from ambiguous conduct; defendant bears the burden of proving waiver). The waiver defense cannot bar Plaintiffs' Federal Odometer Act claim as a matter of law because Congress did not provide for consumer waiver of the Odometer Act's civil remedy. 49 U.S.C. § 32710.

**Defendant's objection to Plaintiffs' proposed Instruction**: This defense is based on Plaintiffs' post-sale conduct. The civil remedy afforded by 49 USC §32710 does not mean that defendants cannot ever raise a defense or are defenseless to a claimant's claims. There is no case law to support that proposition. Further, the use of the sentence, "Continuing to use property after a sale does not, by itself, constitute a waiver of legal claims arising from the transaction" is not supported by any cited case law and is written from an advocate's position and should be removed if Plaintiffs' instruction is used in any capacity. Defendant also objects to the burden of proof, to the extent this defense relates to the state law claims. This defense is not limited to a single claim asserted by Plaintiffs. *See* Florida Standard Jury Instructions in Civil Cases 409.2, 409.3, 409.10, 409.11, 409.12 and 409.13.

53

**Affirmative Defense – Waiver**

**Requesting Party: Defendant.**

416.30 Affirmative Defense – Waiver

Defendant claims that it is not liable to Plaintiffs because Plaintiffs gave up their right to any claims against Defendant by deciding to keep the vehicle despite being notified the mileage was not actual, by confirming their intent to be bound by the parties' contract, and by continuing to use the vehicle thereafter. This is called a "waiver."

To establish this defense, Defendant must prove all of the following:

1. Plaintiffs' right to return the vehicle, receive the return of their down payment and to terminate the contract actually existed;

2. Plaintiffs knew or should have known they had the right to return the vehicle, receive the return of their down payment and to terminate the contract; and

3. Plaintiffs freely and intentionally gave up their right to return the vehicle, receive the return of their down payment and to terminate the contract.

A waiver may be oral or written or may arise from conduct which shows that Plaintiffs gave up their rights.

If Defendant proves that Plaintiffs gave up their right to return the vehicle, receive the return of their down payment and to terminate the contract, then your verdict is for Defendant on this affirmative defense.

**Defendant's Authority:** Florida Standard Jury Instructions 416.30.

**Plaintiffs' Objection to Defendant's Proposed Instruction:**

Plaintiffs object on two grounds. First, Defendant's proposed instruction improperly embeds a disputed, one-sided factual narrative into the jury instruction itself. What happened on September 14, 2023, what Plaintiffs were shown, what they were told, and what they understood are all genuinely disputed facts for the jury to determine from the evidence. A jury instruction must state the law neutrally; it must not tell the jury which facts are established. Incorporating Defendant's version of events into the instruction is functionally equivalent to directing a verdict on those facts. *Mathes v. Francis,* 609 F.3d 1201, 1208 (11th Cir. 2010) ("court may not invade the province of the jury"; instructions must not resolve disputed factual questions). Second, waiver requires knowledge of *all* material facts. *Irvine,* 799 F.2d at 1464. Whether Plaintiffs had full knowledge of the vehicle's complete mileage history - including the prior 208,579-mile odometer reading and the "Not Actual" title brand - at the time of the September 14 meeting is a jury question. An instruction that presupposes they did prejudges that element of the defense.

54

## Affirmative Defense – Estoppel

Defendant has raised the defense of equitable estoppel. To establish this defense, Defendant must prove all of the following by a preponderance of the evidence:

1. Plaintiffs made a representation as to a material fact, or took action, that was inconsistent with the position Plaintiffs are now asserting in this lawsuit;

2. Defendant relied on that representation or action reasonably and in good faith; and

3. Defendant changed its position to its detriment as a result of that reliance.

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** *State v. Harris,* 881 So. 2d 1079, 1084 (Fla. 2004) (Florida Supreme Court: the elements of equitable estoppel are (1) a representation as to a material fact contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon). Defendant cannot establish the detrimental reliance element. Defendant continued to hold the RISC and collect payments from Plaintiffs after the September 14, 2023 meeting - that is performance of the existing contract, not a change in position. Estoppel requires that the relying party did something it would not otherwise have done, or refrained from something it would have done, in reliance on the other party's conduct. *Harris,* 881 So. 2d at 1084.

**Defendant's objection to Plaintiffs' proposed Instruction**: First, Defendant submits that Florida law – and the pattern instruction on the burden of proof (greater weight of the evidence) – governs this defense and instruction. Second, Plaintiffs' authority is based on legal argument regarding facts that have not yet been presented to the jury. Defendant also objects to the stated burden of proof, to the extent this defense relates to the state law claims. This defense is not limited to a single claim asserted by Plaintiffs. *See* Florida Standard Jury Instructions in Civil Cases 409.2, 409.3, 409.10, 409.11, 409.12 and 409.13

## Affirmative Defense – Estoppel

**Requesting Party: Defendant.**

Affirmative Defense — Estoppel

Defendant has raised the defense of estoppel. To establish this defense, Defendant must prove all of the following:

1. Plaintiffs took action by deciding to keep the vehicle despite being made aware the mileage was not actual, confirming their intent to be bound by the parties' contract, and continuing to use the vehicle;

2. Defendant relied in good faith upon Plaintiffs' actions; and

3. Defendant's reliance on Plaintiffs' actions caused Defendant to change its position for the worse.

If Defendant proves that Plaintiffs chose not to return the vehicle, receive the return of their down payment and to terminate the contract, then your verdict is for Defendant on this affirmative defense.

**Defendant's Authority:** Former Florida Standard Civil Jury Instructions 416.33.

**<u>Plaintiffs' Objection to Defendant's Proposed Instruction:</u>**

Plaintiffs object on two grounds. First, for the same reasons stated in the objection to the waiver instruction, Defendant's proposed instruction improperly incorporates disputed facts into a neutral legal instruction. *Mathes v. Francis,* 609 F.3d 1201, 1208 (11th Cir. 2010). The September 14, 2023 events are disputed; they belong before the jury as evidence, not baked into the instruction itself. Second, Defendant cannot demonstrate detrimental reliance. Estoppel requires that the party invoking it actually changed its position for the worse in reliance on the other party's conduct. *State v. Harris,* 881 So. 2d 1079, 1084 (Fla. 2004). Continuing to hold a security interest and accept payments under an existing RISC is not a change in position - it is performance of an obligation that already existed before the September 14 meeting.

**Affirmative Defense – Unclean Hands**

Defendant has raised the defense of unclean hands. Unclean hands is an equitable defense. It applies only to bar equitable relief, not to bar legal claims for monetary damages. To establish this defense as to any equitable relief Plaintiffs seek, Defendant must prove all of the following by a preponderance of the evidence:

1. Plaintiffs engaged in misconduct, overreaching, or trickery that would be condemned by honest and reasonable persons;

2. Defendant relied on that misconduct;

3. The misconduct directly relates to the subject matter of the claims asserted in this lawsuit; and

4. The misconduct caused actual injury to Defendant.

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** *U.S. Bank, N.A. v. Qadir,* 342 So. 3d 855, 859 (Fla. 1st DCA 2022) (four-element test for unclean hands: (1) misconduct by plaintiff; (2) defendant's reliance on that misconduct; (3) the misconduct directly relates to the subject matter of the claims; (4) the misconduct caused actual injury to defendant); *RK Motors, Inc. v. Midway Leasing, Inc.,* 2025 U.S. Dist. LEXIS 87201 (S.D. Fla. 2025) (striking unclean hands as a defense to Federal Odometer Act damages claim; unclean hands is an equitable doctrine that does not bar legal relief). Plaintiffs' claims for damages under the Federal Odometer Act (Count I), fraud (Counts II and III), and breach of express warranty (Count IV) are legal claims seeking monetary damages. Unclean hands cannot bar those claims. This instruction applies, if at all, only to any equitable component of the revocation remedy under Count V.

**Defendant's objection to Plaintiffs' proposed Instruction:** Plaintiffs never sought to strike this affirmative defense, nor obtain an Order striking same, so the second and third sentences should be removed as should the phrase "as to any equitable relief". Otherwise, the Court would have to include instructions as to the definitions of legal relief and equitable relief. Defendant also objects to the burden of proof, to the extent this defense relates to the state law claims. This defense is not limited to a single claim asserted by Plaintiffs. *See* Florida Standard Jury Instructions in Civil Cases 409.2, 409.3, 409.10, 409.11, 409.12 and 409.13.

**Affirmative Defense – Unclean Hands**

**Requesting Party: Defendant.**

Affirmative Defense – Unclean Hands

57

Defendant has raised the defense of unclean hands. Unclean hands is an equitable defense much like fraud. The defense applies to bar an equitable claim no matter the claim's merits when "the plaintiff has engaged in some manner of unscrupulous conduct, overreaching, or trickery that would be 'condemned by honest and reasonable men.'" Merely proving condemnable conduct is not enough. Defendant must also prove its reliance on Plaintiffs' conduct; relation to the claims asserted by Plaintiffs in this lawsuit; resulting in an injury to Defendant.

If Defendant proves that Plaintiffs gave up their right to return the vehicle, receive the return of their down payment and to terminate the contract, then your verdict is for Defendant on this affirmative defense.

**Defendant's Authority:** *U.S. Bank, N.A. v. Qadir,* 342 So. 3d 855, 859 (Fla. 1st DCA 2022).

### **Plaintiffs' Objection to Defendant's Proposed Instruction:**

Plaintiffs object on two grounds. First, unclean hands is an equitable doctrine that does not bar legal claims for money damages. *Motors, Inc. v. Midway Leasing,* 2025 U.S. Dist. LEXIS 87201 (S.D. Fla. 2025); *U.S. Bank, N.A. v. Qadir,* 342 So. 3d 855, 859 (Fla. 1st DCA 2022). Submitting this defense as applicable to all claims - including the federal statutory claim for Odometer Act damages and the tort claims for fraud damages - is legally erroneous. If the Court submits this defense at all, the instruction must clearly limit its application to equitable relief only. Second, Plaintiffs continuing to possess and pay for a vehicle they are obligated to pay for under an existing RISC does not constitute the kind of "unscrupulous conduct, overreaching, or trickery" the doctrine requires. *Qadir,* 342 So. 3d at 859. Paying for a vehicle that a dealer misrepresented is not misconduct by the buyer.

**Affirmative Defense – Laches**

Defendant has raised the defense of laches. Laches is an equitable doctrine. It does not apply to legal claims for which Congress or the Florida Legislature has established a statute of limitations. To establish laches as to any equitable claim, Defendant must prove the following elements by a preponderance of the evidence:

1. Conduct by Defendant that gave rise to the complaint;
2. Plaintiffs had knowledge of Defendant's conduct and the opportunity to file suit, but unreasonably delayed in doing so;
3. Defendant lacked knowledge that Plaintiffs would assert the right upon which the suit is based; and
4. Defendant suffered actual injury or undue prejudice as a result of Plaintiffs' delay.

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** *Wilodynski v. Ryland Homes of Fla. Realty Corp.,* No. 8:08-cv-00361-JDW-MAP, 2008 WL 2783148, at *2 (M.D. Fla. July 17, 2008) ("the defense of laches does not apply to claims arising under congressional acts providing a statute of limitations"); *State, Dept. of Revenue ex. rel. Dees v. Petro,* 765 So. 2d 792, 793 (Fla. 1st DCA 2000) (elements of laches; defense requires unreasonable delay causing prejudice to the opposing party). The Federal Odometer Act prescribes a two-year statute of limitations. 49 U.S.C. § 32710(b). Fraud claims under Florida law carry a four-year limitations period. Fla. Stat. § 95.11(3)(j). Plaintiffs filed this action within those statutory periods. Laches cannot be used to impose a shorter limitations period than Congress or the Legislature established, and cannot bar any of Plaintiffs' legal claims at Counts I through IV. This instruction applies, if at all, only to any equitable component of the remedy sought under Count V.

**Affirmative Defense – Laches**

**Requesting Party: Defendant.**

Affirmative Defense – Laches

Defendant has raised the defense of laches. In order to establish the defense of laches, Defendant must prove the following elements:

(1) conduct by Defendant that gave rise to the complaint;

59

(2) Plaintiffs did not file suit, despite having knowledge of Defendant's conduct and the opportunity to file suit;

(3) lack of knowledge by Defendant that Plaintiffs will assert the right upon which the suit is based; and

(4) injury or undue prejudice to Defendant.

**Defendant's Authority:** *State, Dept. of Revenue ex. rel. Dees v. Petro,* 765 So. 2d 792, 793 (Fla. 1st DCA 2000).

**<u>Plaintiffs' Objection to Defendant's Proposed Instruction:</u>**

Plaintiffs object on two grounds. First, laches cannot bar Plaintiffs' legal claims under Counts I through IV. The Federal Odometer Act has a two-year limitations period (49 U.S.C. § 32710(b)); fraud claims have a four-year period (Fla. Stat. § 95.11(3)(j)). Plaintiffs filed within those periods. An equitable doctrine cannot create a shorter limitations period than a statute establishes. *Wilodynski,* 2008 WL 2783148, at *2. Submitting this defense as applicable to all counts misleads the jury. Second, Defendant has not identified any actual prejudice it suffered from the timing of suit. To the contrary, during the period Defendant claims constitutes delay, Defendant was receiving monthly payments under the RISC. Laches requires showing that the delay caused specific detriment to the defending party, not merely that time passed. *Petro,* 765 So. 2d at 793.

60

**Affirmative Defense – Accord and Satisfaction**

Defendant has raised the defense of accord and satisfaction. To establish this defense, Defendant must prove all of the following by a preponderance of the evidence:

1. There was a disputed obligation between the parties;
2. The parties mutually agreed to settle that dispute by entering into a new, superseding agreement (the "accord") supported by new consideration;
3. The new agreement was actually performed (the "satisfaction"); and
4. The accord and its performance were intended to discharge the original obligations.

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** *U.S. v. Morrison,* 28 So. 3d 94, 101 (Fla. 1st DCA 2009) (accord and satisfaction arises when parties mutually intend to settle an existing dispute by entering into a superseding agreement and there is actual performance of the new agreement); *Martinez v. South Bayshore Tower, L.L.L.P.,* 979 So. 2d 1023, 1024 (Fla. 3d DCA 2008) (accord and satisfaction requires both the new agreement and completion of performance under it; an unperformed accord does not discharge the original obligation); *Air Products & Chemicals, Inc. v. Louisiana Land & Exploration Co.,* 806 F.2d 1524, 1528–29 (11th Cir. 1986) (accord and satisfaction in the contract context requires a good-faith dispute over the original obligation, a new agreement settling that dispute, and performance of the new agreement). There is no evidence that the parties entered into a new superseding agreement. The September 14, 2023 meeting, on Defendant's own account, did not result in any signed agreement or completed performance. Defendant contends Plaintiffs tore up a check rather than accepting it - which by definition means there was no "satisfaction." Without both an accord and a satisfaction, the defense fails. Additionally, accord and satisfaction does not bar statutory claims under the Federal Odometer Act. 49 U.S.C. § 32710.

**Defendant's objection to Plaintiffs' proposed Instruction**:  Defendant objects to the stated burden of proof as applicable to Plaintiffs' state law claims.  This defense is not limited to a single claim asserted by Plaintiffs. *See* Florida Standard Jury Instructions in Civil Cases 409.2, 409.3, 409.10, 409.11, 409.12 and 409.13. Factually, Defendant's position is that the parties did reach a new agreement by virtue the meeting on September 14th and the signing of contract documents that noted "TMU" and "not actual" in various places, which Defendant maintains was done with Plaintiffs' knowledge and consent and in Plaintiffs' presence when they elected not to return the vehicle, receive their down payment back and terminate the contract.

## Affirmative Defense – Accord and Satisfaction

**Requesting Party: Defendant.**

Affirmative Defense – Accord and Satisfaction

Defendant has raised the defense of accord and satisfaction. In order to establish the defense of accord and satisfaction, Defendant must prove the following elements:

First, that the parties mutually intended to settle an existing dispute by entering into a superseding agreement; and

Second, that there was actual performance in accordance with the new agreement; compliance with the new agreement discharges the prior obligations.

**Defendant's Authority:** *U.S. v. Morrison,* 28 So. 3d 94, 101 (Fla. 1st DCA 2009); *Martinez v. South Bayshore Tower, L.L.L.P.,* 979 So. 2d 1023, 1024 (Fla. 3d DCA 2008).

**Plaintiffs' Objection to Defendant's Proposed Instruction:**

Plaintiffs object on three grounds. First, there is no evidence of a new superseding agreement. The September 14, 2023 event, as described by Defendant, resulted in Plaintiffs leaving with the vehicle and continuing under the original RISC. That is continuation of the original contract, not formation of a new one. Accord and satisfaction requires a distinct new agreement supported by new consideration. *Morrison,* 28 So. 3d at 101. Second, Defendant's own account establishes there was no "satisfaction." Defendant contends that I. Robinson tore up the $2,000 refund check. If the check was not accepted and cashed, there was no performance of any alleged accord. Without performance, accord and satisfaction cannot be established as a matter of law. *Martinez,* 979 So. 2d at 1024. Third, accord and satisfaction does not bar statutory claims. Plaintiffs bring no contractual claims against Defendant; their claims are statutory and tort. This defense has no legal predicate as to Counts I through V. *Air Products,* 806 F.2d at 1528–29.

62

**Affirmative Defense – Failure to Mitigate**

Defendant claims that Plaintiffs failed to take reasonable steps to reduce their damages. Defendant has the burden of proving this defense by a preponderance of the evidence.

To establish this defense, Defendant must prove: (1) Plaintiffs failed to exercise reasonable care to minimize damages after they discovered, or should have discovered, the basis for their claims; and (2) that failure caused or increased the damages Plaintiffs now claim.

Statutory damages under the Federal Odometer Act are set by Congress and are not subject to reduction for failure to mitigate. 49 U.S.C. § 32710(a). Equitable and common-law defenses do not reduce Congress's fixed statutory damages. This defense applies, if at all, only to actual damages claimed under the state law counts.

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** *State v. P.C.L.,* 332 So. 3d 4 (Fla. Dist. Ct. App. 2022) (the mitigation doctrine bars only damages that a plaintiff could have avoided "without undue risk, burden, or humiliation"; the duty to mitigate applies only when reasonable measures were actually available to the plaintiff; defendant bears the burden of proving the plaintiff failed to mitigate). Statutory damages under the Federal Odometer Act are set by Congress and are not subject to reduction for failure to mitigate. 49 U.S.C. § 32710(a). The record shows Plaintiffs took affirmative steps to address the mileage misrepresentation: they filed a formal complaint with the Florida Department of Highway Safety and Motor Vehicles, sent a pre-suit demand letter to Defendant, and filed this lawsuit within the statutory limitations period.

**Defendant's objection to Plaintiffs' proposed Instruction**:  Plaintiffs do not sufficiently distinguish which of their claims are subject to this defense.  The second to last sentence should be removed, and language added to the last sentence if this proposed instruction is used in lieu of Defendant's proposed instruction.

**Affirmative Defense – Failure to Mitigate**

**Requesting Party: Defendant.**

In fixing the amount of money which will reasonably and fairly compensate Plaintiffs, you must consider that a person who has been damaged by a breach of warranty

63

must exercise ordinary care to minimize existing damages and to prevent further damage. Damages caused by a failure to exercise such care cannot be recovered. Defendant has the burden of proof to show Plaintiffs failed to minimize existing damage and prevent further damage.

Defendant contends that Plaintiffs failed to mitigate their alleged damages by failing to return the vehicle to Defendant in exchange for a refund of their down payment and the termination of their contractual obligation to Defendant.

**Defendant's Authority:** Illinois Pattern Jury Instructions 185.11(as to the breach of warranty claim/count); *State v. P.C.L.*, 332 So. 3d 4, 10 (Fla. 4th DCA 2022) ("The duty to mitigate 'prevents a party from recovering those damages inflicted by a wrongdoer which the injured party 'could have avoided without undue risk, burden or humiliation.' *Id.* (quoting Restatement (Second) of Contracts §350(1) (1979)).

## Plaintiffs' Objection to Defendant's Proposed Instruction:

Plaintiffs object on three grounds. First, Illinois Pattern Jury Instructions have no authority in this Court. Doc. 22 at 9. Second, Defendant's proposed instruction incorrectly frames the only available mitigation as returning the vehicle on September 14, 2023. The mitigation doctrine requires the plaintiff to take measures that are reasonable and available without undue risk or burden - it does not require a fraud victim to surrender their property to the wrongdoer as the price of seeking legal redress. *State v. P.C.L.*, 332 So. 3d 4 (Fla. Dist. Ct. App. 2022). Third, the duty to mitigate does not require acceptance of a settlement offer from the party who caused the harm. Defendant bears the burden of identifying specific, reasonable steps Plaintiffs failed to take and proving those steps would have reduced the damages now claimed. *P.C.L.*, 332 So. 3d 4.

**4.6**

**Defendant's Counterclaim – Breach of Contract (GPS Acknowledgment)**

Defendant has brought a Counterclaim against Plaintiffs for breach of contract. Defendant claims that Plaintiffs breached a contract by tampering with, disabling, and/or removing the GPS tracking device installed on the vehicle, and that this breach resulted in damages to Defendant. Plaintiffs deny that they tampered with, disabled, or removed the GPS device.

To prevail on this counterclaim, Defendant must prove each of the following by a preponderance of the evidence:

1. A valid and enforceable contract existed between Defendant and Plaintiffs that included an obligation regarding the GPS tracking device;
2. Defendant performed, or substantially performed, all of its obligations under that contract;
3. All conditions required for Plaintiffs' performance had occurred;
4. Plaintiffs materially breached the GPS obligation; and
5. Defendant suffered actual, proven damages as a direct result of that breach.

A valid contract requires offer, acceptance, consideration, and sufficiently definite essential terms. The making of a contract depends only on what the parties said or did; you may not consider thoughts or unspoken intentions.

If you find that Defendant has not proved every element above, your verdict is for Plaintiffs on the Counterclaim. If you find a breach but Defendant has not proved actual damages, your verdict is for Plaintiffs on the Counterclaim.

**Requesting Party: Plaintiffs**

**Plaintiffs' Authority:** *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009) (elements of breach of contract under Florida law require proof of a valid contract, a material breach, and resulting damages; all three must be established to sustain the claim). In federal court, Article III of the Constitution requires that Defendant demonstrate a concrete, actual injury to maintain this counterclaim.

65

*Spokeo, Inc. v. Robins,* 578 U.S. 330, 338–39 (2016) (injury in fact must be concrete and particularized, not speculative or hypothetical); *Muransky v. Godiva Chocolatier, Inc.,* 979 F.3d 917, 924–25 (11th Cir. 2020) (en banc) (applying Spokeo in the Eleventh Circuit: plaintiff must allege a real, concrete harm; a bare technical violation of a contract term without concrete injury is insufficient for Article III standing). Defendant has not quantified any actual monetary loss from the alleged GPS tampering.

**Defendant's objection to Plaintiffs' proposed Instruction**:  There is no dispute as to what the elements of a breach of contract claim require under Florida law. Defendant's proposed instructions below follow Florida's pattern instructions. Defendant has also produced proof of its damages and has demonstrated concrete harm/injury/loss.  Further, Florida law allows for an award of nominal damages if a breach of contract is shown, even in the absence of actual damages, although Defendant has demonstrated actual damages. *See* Florida pattern instruction 504.11 "Nominal Damages" ("If you decide that Plaintiffs breached the contract but also that Defendant did not prove any loss or damage, you may still award Defendant nominal damages such as one dollar.").

## 4.6 Defendant's Counterclaim – Breach of Contract

### Requesting Party: Defendant.

### 416.1 Defendant's Counterclaim for Breach of Contract – Introduction

Defendant has also brought a Counterclaim against Plaintiffs for breach of contract. Defendant claims that Plaintiffs breached the contract by tampering with, disabling and/or removing the GPS device installed on the vehicle before Plaintiffs purchased it, and that this breach resulted in damages to Defendant. Plaintiffs deny that they tampered with, disabled or removed the GPS device on the vehicle.

### 416.3 Contract Formation — Essential Factual Elements

Defendant claims that the parties entered into a contract. To prove that a contract was created, Defendant must prove all of the following:

1. The essential contract terms were clear enough that the parties could understand what each was required to do;

2. The parties agreed to give each other something of value. A promise to do something or not to do something may have value; and

3. The parties agreed to the essential terms of the contract.

When you examine whether the parties agreed to the essential terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement. The making of

66

a contract depends only on what the parties said or did. You may not consider the parties' thoughts or unspoken intentions.

If Defendant did not prove all of the above, then a contract was not created.

### 416.4 Breach of Contract — Essential Factual Elements

To recover damages from Plaintiffs for breach of contract, Defendant must prove all of the following:

1. Defendant and Plaintiffs entered into a contract;

2. Defendant did all, or substantially all, of the essential things which the contract required it to do;

3. All conditions required by the contract for Plaintiffs' performance had occurred;

4. Plaintiffs failed to do something essential which the contract required them to do or did something which the contract prohibited them from doing and that prohibition was essential to the contract; and

5. Defendant was damaged by that failure.

### 504.1 Introduction To Contract Damages

If you find for Plaintiffs on Defendant's Counterclaim, you will not consider the matter of damages. But, if you find for Defendant on its Counterclaim, you should award Defendant an amount of money that the greater weight of the evidence shows will fairly and adequately compensate Defendant for its damages. You shall consider the following type(s) of damages:

### 504.2 Breach Of Contract Damages

Compensatory damages is that amount of money which will put Defendant in as good a position as it would have been if Plaintiffs had not breached the contract and which naturally result from the breach.

### 504.11 Nominal Damages

If you decide that Plaintiffs breached the contract but also that Defendant did not prove any loss or damage, you may still award Defendant nominal damages such as one dollar.

**Defendant's Authority:** *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256 (11th Cir. 2009); Florida Standard Jury Instructions in Civil Cases as noted.

**4.7**

**No Double Recovery**

If you find for a party on more than one claim, you must not award the same damages more than once. Damages, if any, should fairly compensate for the injury proven, without duplication.

## 601.1

## Weighing the Evidence

In deciding this case, it is your duty as jurors to answer certain questions I ask you to answer on a special form, called a verdict form. You must come to an agreement about what your answers will be. Your agreed-upon answers to my questions are called your jury verdict.

The evidence in this case consists of the sworn testimony of the witnesses, all exhibits received in evidence and all facts that were admitted or agreed to by the parties, and any facts of which the court has taken judicial notice. In reaching your verdict, you must think about and weigh the testimony and any documents, photographs, or other material that has been received in evidence. Your job is to determine what the facts are. You may use reason and common sense to reach conclusions. You may draw reasonable inferences from the evidence. But you should not guess about things that were not covered here. And, you must always apply the law as I have explained it to you.

69

**601.2**

**Believability of Witnesses**

Let me speak briefly about witnesses. In evaluating the believability of any witness and the weight you will give the testimony of any witness, you may properly consider the demeanor of the witness while testifying; the frankness or lack of frankness of the witness; the intelligence of the witness; any interest the witness may have in the outcome of the case; the means and opportunity the witness had to know the facts about which the witness testified; the ability of the witness to remember the matters about which the witness testified; and the reasonableness of the testimony of the witness, considered in the light of all the evidence in the case and in the light of your own experience and common sense.

It is entirely proper for a lawyer to talk to a witness about what testimony the witness would give if called to the courtroom. The witness should not be discredited just because the witness talked with a lawyer about his or her testimony.

**Section 700**

**Closing Instructions**

Members of the jury, you have now heard all the evidence, my instructions on the law that you must apply in reaching your verdict and the closing arguments of the attorneys. You will shortly retire to the jury room to decide this case. Before you do so, I have a few last instructions for you.

During deliberations, jurors must communicate about the case only with one another and only when all jurors are present in the jury room. You will have in the jury room all of the evidence that was received during the trial. In reaching your decision, do not do any research on your own or as a group. Do not use dictionaries, the Internet, artificial intelligence, or any other reference materials. Do not investigate the case or conduct any experiments. All jurors must see or hear the same evidence at the same time. Do not read, listen to, or watch any news accounts of this trial.

You are not to communicate with any person outside the jury about this case. Until you have reached a verdict, you must not talk about this case in person or through the telephone, writing, or electronic communication, such as social media, e-mail, text message, or any other means. These communications rules apply until I discharge you at the end of the case.

In reaching your verdict, do not let bias, sympathy, prejudice, public opinion, or any other sentiment for or against any party influence your decision. Your verdict must be based on the evidence that has been received and the law on which I have instructed you.

71

I will give you a verdict form with questions you must answer. You must follow my instructions and the form carefully. You must consider each question separately. Please answer the questions in the order they appear. After you answer a question, the form tells you what to do next.

Your verdict must be unanimous, that is, your verdict must be agreed to by each of you. When you have agreed on your verdict, your foreperson must write the date and sign it at the bottom and return the verdict to the courtroom. If any of you need to communicate with me for any reason, write me a note and give it to the bailiff. In your note, do not disclose any vote or split. You may now retire to decide your verdict.

# EXHIBIT F

# Verdict Form

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Case No.: 3:24-cv-00948

ISIAH ROBINSON and LISA CLAYTON
ROBINSON, each an individual,

      Plaintiffs/Counter-Defendants,

v.

NATIONAL AUTOMOTIVE, INC. a Florida
Corporation, and ROBIN RAMAGHI, an
individual,

      Defendants/Counter-Plaintiff.

_____

**PROPOSED JOINT SPECIAL VERDICT FORM**

We, the jury, return the following verdict:

    **I.**    **Plaintiffs' Claims**

**Count I – Violation of the Federal Odometer Act**

    1.    Did Plaintiffs prove National Automotive, Inc. violated the Federal Odometer Act?

        **YES_____**               **NO_____**

If your answer to question 1 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count II. If your answer to question 1 is YES, please answer question 2.

    2.    Did Plaintiffs prove National Automotive, Inc. intended to defraud Plaintiffs in relation to a violation of the Federal Odometer Act?

        **YES_____**               **NO_____**

If your answer to question 2 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count II. If your answer to question 2 is YES, please answer question 3.

3.      State the amount of actual damages, if any, sustained by each Plaintiff. If a Plaintiff sustained no actual damages, enter $0.

(a) Isiah Robinson:              $_____

(b) Lisa Clayton Robinson:       $_____

**Count II – Fraud**

4.      Did Plaintiffs prove that National Automotive, Inc. made a false statement to Plaintiffs concerning a material fact?

**YES_____                          NO_____**

If your answer to question 4 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count III. If your answer to question 4 is YES, please answer question 5.

5.      Did Plaintiffs prove that National Automotive, Inc. knew the statement was false when it made it?

**YES_____                          NO_____**

If your answer to question 5 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count III. If your answer to question 5 is YES, please answer question 6.

6.      Did Plaintiffs prove that National Automotive, Inc. intended that Plaintiffs would rely on the false statement?

**YES_____                          NO_____**

If your answer to question 6 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count III. If your answer to question 6 is YES, please answer question 7.

7.    Did Plaintiffs prove that they relied on the false statement?

**YES**_____    **NO**_____

If your answer to question 7 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count III. If your answer to question 7 is YES, please answer question 8.

8.    Did Plaintiffs prove that their reliance on the false statement was the legal cause of their loss?

**YES**_____    **NO**_____

If your answer to question 8 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count III. If your answer to question 8 is YES, please answer question 9.

9.   State the amount of damages on Count II (Fraud): $_____

**Count III – Fraud in the Inducement**

10.    Did Plaintiffs prove that National Automotive, Inc. made a false statement of material fact to Plaintiffs?

**YES**_____    **NO**_____

If your answer to question 10 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count IV. If your answer to question 10 is YES, please answer question 11.

11.    Did Plaintiffs prove that National Automotive, Inc. knew, or should have known, that the representation was false?

**YES**_____    **NO**_____

If your answer to question 11 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count IV. If your answer to question 11 is YES, please answer question 12.

12.     Did Plaintiffs prove that National Automotive, Inc. intended that its statement would induce Plaintiffs to act upon it?

**YES**_____                    **NO**_____

If your answer to question 12 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count IV. If your answer to question 12 is YES, please answer question 13.

13.     Did Plaintiffs prove that they relied on the false statement thereby causing them injury?

**YES**_____                    **NO**_____

If your answer to question 13 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count IV. If your answer to question 13 is YES, please answer question 14.

14.     What is the amount of damages sustained by Plaintiffs? $_____

PROPOSED TITILE FOR COUNT IV – Breach of Express Warranty (Requesting Party – Plaintiff):

**Count IV – Breach of Express Warranty – Fla. Stat. § 672.313 – Uniform Commercial Code**

**AUTHORITY [Requesting Party: Plaintiffs]:**

The title to Count IV should include the statutory citation to Florida's UCC because the claim arises under and is governed by that statute. Florida adopted the Uniform Commercial Code to govern commercial transactions, *Fotomat Corp. of Fla. v. Chanda*, 464 So. 2d 626 (Fla. 3d DCA 1985), and the legislature codified it in Chapter 672, which "shall be known and may be cited as the 'Uniform Commercial Code—Sales.'" Fla. Stat. §

672.101. Every section of Chapter 672, including § 672.313, was enacted in a single legislative act, ch. 65-254, and each section's history note expressly cross-references the corresponding UCC provision. *See, e.g., Fla. Stat. § 672.607, Historical Note ("s. 2-607, U.C.C."). The claim pleaded in Count IV is a Florida UCC breach of warranty claim; omitting the statutory citation misidentifies the source of the right and the governing damages framework. Including the applicable section accurately reflects the nature of the claim and provides the jury the proper legal context for its verdict.*

**Defendant's proposed "title" for Count IV of the Verdict form**: Defendant requests that the title to the above portion of the Verdict form be simply "Count IV – Breach of Express Warranty" as that is how the Verified Amended Complaint (D.E. 30) describes this claim/count (D.E. 30, p. 15) and Plaintiffs did not plead, reference nor cite to any portion of the Florida statutes in this particular count/claim. The sole reference is to Section 2-313 of the Uniform Commercial Code. (D.E. 30, p. 15, ¶ 85).

15.    Did Plaintiffs prove the sale of the 2011 Chevrolet Equinox was a transaction for the purchase of goods?

**YES_____          NO_____**

If your answer to question 15 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count V. If your answer to question 16 is YES, please answer question 16.

16.    Did Plaintiffs prove National Automotive, Inc. made representations to Plaintiffs that constituted an express warranty regarding the goods?

**YES_____          NO_____**

Page **5** of **14**

If your answer to question 16 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count V. If your answer to question 16 is YES, please answer question 17.

17.    Did Plaintiffs prove the representations made by National Automotive, Inc. constituted an express warranty that was part of the basis of the bargain underlying the transaction?

**YES**_____                    **NO**_____

If your answer to question 17 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count V. If your answer to question 17 is YES, please answer question 18.

18.    Did Plaintiffs prove the 2011 Chevrolet Equinox failed to conform to the representations made by National Automotive, Inc. that constitute the express warranty?

**YES**_____                    **NO**_____

If your answer to question 18 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count V. If your answer to question 18 is YES, please answer question 19.

19.    Did Plaintiffs prove they provided reasonable notice to National Automotive, Inc. of the breach of warranty?

**YES**_____                    **NO**_____

If your answer to question 19 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count V. If your answer to question 19 is YES, please answer question 20.

20.    Did Plaintiffs prove they suffered economic losses proximately resulting from the nonconformity of the goods ?

**YES**_____                    **NO**_____

If your answer to question 20 is NO, then your verdict is for National Automotive, Inc. and you should proceed to Count V. If your answer to question 20 is YES, please answer question 21.

**PROPOSED VERDICT FORM QUESTION ON DAMAGES UNDER <u>Count IV – Breach of Express Warranty – Fla. Stat.</u> § 672.313 – Uniform Commercial Code (Requesting Party – Plaintiff):**

21.    State the amount of incidental, consequential and actual damages on Count IV (Breach of Express Warranty): $_____

**AUTHORITY [Requesting Party: Plaintiffs]:**

Under Florida's Uniform Commercial Code, a buyer who has accepted goods and established a breach of warranty is entitled to recover the difference in value at acceptance plus incidental and consequential damages in a proper case. Fla. Stat. §§ 672.714(2)–(3), 672.715. Florida courts have applied these provisions together as the complete warranty damages remedy. *Miles v. Kavanaugh*, 350 So. 2d 1090, 1093 (Fla. 3d DCA 1977) ("The law is clear under Florida's Uniform Commercial Code that the measure of damages in a breach of warranty action where the goods have been accepted by the buyer include any consequential damage proximately caused by the breach of warranty.").

A verdict form that omits incidental and consequential damages misstates the applicable law and forecloses a recovery to which Plaintiffs are entitled under the UCC, Florida Statutes §§ 672.714 and 672.715.

**Defendant's proposed question 21:**

21.    What is the amount of damages sustained by Plaintiffs? $_____

**Defendant's basis for the proposed language in question 21:** Plaintiffs did not demand incidental and/or consequential damages in Count IV of the Verified Amended Complaint (D.E. 30, pp. 15-16), whether under Florida Statutes §§672.714, 672.715 or otherwise. Paragraph 87 generally describes a diminution in value, but the WHEREFORE clause does not demand any particular type of damages. Plaintiffs are not entitled to seek recovery for relief that was not pled.


**Count V – Revocation of Acceptance under Magnusson Moss Warranty Act**

**Defendant's proposed questions for Count V:**

23.    Did Plaintiffs prove there was a defect in the 2011 Chevrolet Equinox covered by an express warranty?

**YES_____                    NO_____**

If your answer to question 23 is NO, then your verdict is for National Automotive, Inc. and you should proceed to the Counterclaim. If your answer to question 23 is YES, please answer question 24.

24.    Did Plaintiffs comply with the terms of the express warranty?

**YES_____                    NO_____**

Page **8** of **14**

If your answer to question 24 is NO, then your verdict is for National Automotive, Inc. and you should proceed to the Counterclaim. If your answer to question 24 is YES, please answer question 25.

25.    Did Plaintiffs afford National Automotive, Inc. a reasonable opportunity to cure the defect?

**YES**_____                    **NO**_____

If your answer to question 25 is NO, then your verdict is for National Automotive, Inc. and you should proceed to the Counterclaim. If your answer to question 25 is YES, please answer question 26.

26.    Did National Automotive, Inc. fail to cure the defect after being given a reasonable number of attempts or a reasonable amount of time to do so or fail to offer to refund or replace the defect within a reasonable amount of time?

**YES**_____                    **NO**_____

If your answer to question 26 is NO, then your verdict is for National Automotive, Inc. and you should proceed to the Counterclaim. If your answer to question 26 is YES, please answer question 27.

27.    Did Plaintiffs sustain damages as a result of National Automotive, Inc.'s failure to take action required by the express warranty to correct the defect or otherwise to correct the problem?

**YES**_____                    **NO**_____

If your answer to question 27 is NO, then your verdict is for National Automotive, Inc. and you should proceed to the Counterclaim. If your answer to question 27 is YES, please answer question 28.

28.     What is the amount of damages sustained by Plaintiffs? $_____

**Defendant's basis for proposed language related to damages (question 28) only if the Court deems such question allowable:** Plaintiffs have sought revocation of acceptance under the MMWA in Count V, without any reference to corresponding Florida Statutes (no such statutes were pled or invoked). (D.E. 30, pp. 16-17). But to the extent that Plaintiffs are entitled to seek damages beyond revocation of acceptance, which Defendant does not concede, there is no discussion or description in the body of the count/claim as to what damages Plaintiffs are even seeking, e.g. what constitutes their alleged "incidental and consequential" damages. Moreover, remedies under the MMWA - 15 U.S.C. §2304 – are applicable only to "full" warranties, not "limited" warranties (*McKissic v. Country Coach, Inc.*, 2008 WL 2782678, at *6 (M.D. Fla. July 16, 2008) (citing *Lambert v. Monaco Coach Corp.*, 2005 WL 1227485, at *4 (M.D. Fla. May 24, 2005)), so the jury would first have to find that there was a "full" written warranty in place for Plaintiffs to be entitled to any remedies in the first instance.  There is simply no evidence of a "full" warranty in this case, and in fact the only evidence is that Defendant expressly disclaimed, in writing, all warranties.

**PROPOSED VERDICT FORM QUESTIONS FOR Count V – Revocation of Acceptance under Magnusson Moss Warranty Act (Requesting Party- Plaintiffs)**

23.     Did Plaintiffs prove that National Automotive, Inc. provided a written warranty by making a written affirmation of fact concerning the Equinox's mileage that the Plaintiffs relied on when purchasing the Equinox?

      **YES_____                                   NO_____**

If your answer to question 23 is NO, your verdict is for National Automotive, Inc. on Count V and you should proceed to the Counterclaim. If your answer to question 23 is YES, please answer question 24.

**AUTHORITY [Requesting Party: Plaintiffs]:**

15 U.S.C. § 2301(6)(A) (MMWA "written warranty" defined as any written affirmation of fact made in connection with the sale of a consumer product that relates to the nature of the product and affirms or promises it will meet a specified level of performance).

15 U.S.C. § 2310(d)(1) (MMWA private right of action for consumer damaged by warrantor's failure to comply with a written warranty).
*Rentas v. DaimlerChrysler Corp.,* 936 So. 2d 747 (Fla. 3d DCA 2006) (MMWA provides independent federal cause of action that borrows state law causes of action).

*Mesa v. BMW of North America, LLC,* 904 So. 2d 450 (Fla. 3d DCA 2005) (revocation of acceptance is a remedy available for breach of express warranty under the MMWA; state law governs the remedy and damages measure).

49 U.S.C. § 32701(a)(1)–(3) (Congress: purchasers "entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle"; mileage is a material condition and index of value).

Fla. Stat. § 672.313(1)(a)–(b) (express warranty created by affirmation of fact or description of goods forming part of basis of bargain); § 672.316(1) (disclaimer inconsistent with express warranty is inoperative as a matter of law).

24.    Did Plaintiffs prove that National Automotive, Inc. breached that written warranty?

**YES_____                    NO_____**

If your answer to question 24 is NO, your verdict is for National Automotive, Inc. on Count V and you should proceed to the Counterclaim. If your answer to question 24 is YES, please answer question 25.

**AUTHORITY [Requesting Party: Plaintiffs]:**

15 U.S.C. § 2310(d)(1) (consumer may bring suit for damages upon warrantor's failure to comply with any obligation under a written warranty).

*McKissic v. Country Coach, Inc.,* Case No. 8:07-cv-01488, 2008 U.S. Dist. LEXIS 104147 (M.D. Fla. July 16, 2008) (applying Florida UCC breach and revocation framework to MMWA claim in this District).

49 U.S.C. § 32701(a)(2) (purchasers "entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle").

25.    State the amount of actual, incidental, and consequential damages sustained by Plaintiffs as a result of National Automotive, Inc.'s breach of written warranty (do not include amounts already awarded in Count IV):

$ _____

Proceed to the Counterclaim.

**AUTHORITY [Requesting Party: Plaintiffs]:**

15 U.S.C. § 2311(b)(1) (MMWA expressly preserves all state law rights and remedies; state law supplies the damages measure).

*MacKenzie v. Chrysler Corp.,* 607 F.2d 1162, 1166 (5th Cir. 1979) (MMWA is silent on damages; state law governs) (binding under *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)).

*Mesa v. BMW of North America, LLC,* 904 So. 2d 450, 453 (Fla. 3d DCA 2005) (state law governs damages under the MMWA; upon effective revocation, buyer recovers purchase price paid plus incidentals and consequentials).

Fla. Stat. § 672.711(1) (upon revocation of acceptance, buyer may cancel and recover purchase price paid plus damages); §§ 672.714(2)–(3), 672.715 (incidental and consequential damages recoverable).

*Armadillo Distribution Enterprises v. Hai Yun Musical Instruments Mfr. Co.,* 142 F. Supp. 3d 1245 (M.D. Fla. 2015) (actual, incidental, and consequential damages awarded upon revocation under Florida UCC in this District).

*Miles v. Kavanaugh,* 350 So. 2d 1090, 1093 (Fla. 3d DCA 1977) (consequential damages recoverable upon breach of warranty under Florida UCC).

NOTE: The jury instruction for Count V explains that if the jury finds breach, Plaintiffs' elected remedy of revocation of acceptance under Fla. Stat. § 672.608 entitles them to recover the full purchase price paid, plus incidental and consequential damages, subject to the Court's instruction on the prerequisites for revocation (substantial impairment, basis for acceptance, and timely notice). The revocation analysis is a damages-measure instruction, not a separate verdict form element. See McKissic, 2008 U.S. Dist. LEXIS 104147; Mesa, 904 So. 2d at 450–53.

**National Automotive, Inc.'s Counterclaim – Breach of Contract**

26.   Did Defendant prove that it and Plaintiffs entered into a contract for the purchase and sale of the 2011 Chevrolet Equinox?

**YES_____                        NO_____**

If your answer to question 26 is NO, then your verdict is for Plaintiffs and you should date and sign your Verdict form. If your answer to question 26 is YES, please answer question 27.

27.   Did Defendant prove that Plaintiffs breached the parties' contract by tampering with, disabling or removing the GPS device that was installed on the 2011 Chevrolet Equinox?

**YES_____                        NO_____**

If your answer to question 27 is NO, then your verdict is for the Plaintiffs and you should date and sign your Verdict form. If your answer to question 27 is YES, please answer question 28.

28.   Did Defendant prove it sustained damages as a result of Plaintiffs' breach of the parties' contract?

Page **13** of **14**

**YES**_____                    **NO**_____

If your answer to question 28 is NO, then your verdict is for the Plaintiffs and you should date and sign your Verdict form. If your answer to question 28 is YES, please answer question 29.

29.    What is the amount of damages sustained by National Automotive, Inc.? $_____

SO SAY WE ALL this _____ day of _____, 2026.

_____
FOREPERSON

Page **14** of **14**

# EXHIBIT G


# Voir Dire

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO.: 3:24-cv-00948**

ISIAH ROBINSON, and,
LISA CLAYTON ROBINSON,

    Plaintiffs/Counter-Defendants,

vs.

NATIONAL AUTOMOTIVE, INC., a
Florida Corporation,

    Defendant/Counter-Plaintiff.

_____/

## PROPOSED JOINT VOIR DIRE QUESTIONS

1.    Can you decide this case solely on the evidence admitted in court and the law that I instruct you to apply, even if you personally disagree with that law?

(a) Is there any category of law or type of case where you think you might have difficulty following my instructions?

2.    Will you hold both sides to the same standard of credibility, regardless of whether you initially identify more with one side or the other?

(a)    What experience, if any, makes you think you might lean one way or another before hearing the evidence?

3.    Have you ever been involved in a lawsuit as a plaintiff or defendant?

(a)    If so, what was the claim about and what was the outcome of the lawsuit?

4.    Do you believe civil lawsuits are generally overused or usually frivolous, such that you may be skeptical of the party bringing claims?

(a)    If so, what would a plaintiff have to do to overcome that skepticism for you?

Page **1** of **5**

(b)    Do you believe that if a case has been filed, there must be truth to the allegations made against the defendant?

5.    Have you ever bought or sold a used car?

6.    Have you, a family member, or a close friend ever had a significant experience, good or bad, involving a car dealership or a used car purchase that could affect your evaluation of the evidence and your decision in this case?

(a)    Do you think that experience would make it hard to be completely neutral here?

7.    Have you ever felt misled or tricked about the car's mileage when buying a used car?

(a)    Do you still carry strong feelings about that experience today that may impact your ability to follow my instructions and make a decision in this case?

8.    Have you ever dealt with odometer disclosures, or the phrases "not actual mileage," or "True Mileage Unknown,"  in relation to the purchase of a used car?

(a)    Would that experience cause you to assume anything about this case, or to reach a conclusion, before hearing the evidence?

9.    Have you ever worked for, or had close ties to, a car dealership,  GPS tracking company, a DMV or tax collector's office related to the issuance of titles to cars, a car auction or wholesale car business?

10.    Would that background lead you to give extra weight to one party's testimony or business records?

11.     Do you have strong views, positive or negative, about car dealerships, car salespeople, or individual lawsuits against a car dealership that would make it difficult to be completely neutral?

12.     What is the view, and do you believe you can set it aside and ensure that both sides are given equal consideration?

13.     Some of the Plaintiffs' claims in this case require proof of the Defendant's intent to defraud them. Do you have any preconceived ideas as to what the evidence must be?

14.     Are you uncomfortable awarding money damages even if the evidence supports it?

(a)     Would that discomfort prevent you from awarding damages?

15.     Are you uncomfortable denying a party's request for money damages if the evidence does not support such a request?

16.     Would you ever substitute your personal views for my instructions?

17.     This case requires proof based on the evidence presented by both sides, and I will explain the burden of proof to you in more detail as to each claim in this case. Would anyone hold a party to a higher standard simply because of the nature of the allegations in this case?

(a)     If so, could you still commit to applying the correct standard that I give you?

18.    Is there anything about the subject matter of this particular case – the sale of a used car, allegations of fraud, or business practices in the sale of a used car and allegations of breach of contract – that makes it difficult or impossible for you to be fair and impartial?

19.    This case also includes an issue involving GPS tracking. Do you have strong views about GPS tracking in cars that could affect your impartiality?

(a) Would those views cause you to favor one side or another before hearing any evidence?

20.    If you learn that plaintiffs are seeking money damages, do you tend to assume the case is primarily about "getting a payout" rather than enforcing legal rights?

(a) If so, can you set that aside and decide based on evidence and the Court's instructions?

21.    If you hear allegations of fraud, do you tend to assume "people exaggerate" or that "it's probably a misunderstanding"?

22.    If you hear that there is a counterclaim against the plaintiffs, do you tend to assume the plaintiffs must have done something wrong?

(a) Can you agree that each claim and counterclaim must stand or fall on its own proof?

23.    Can you hold the party with the burden of proof to that burden, meaning if they fail to prove an element, you will return a verdict against them even if you sympathize with them?

Page **4** of **5**

(a) Is there any situation where sympathy would lead you to decide for one party or another without the required proof?