**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ISIAH ROBINSON and LISA CLAYTON
ROBINSON,

          Plaintiffs,

v.                                  Case No.: 3:24-cv-948-WWB-PDB

NATIONAL AUTOMOTIVE, INC.,

          Defendant.

_____/

## ORDER

THIS CAUSE is before the Court on Plaintiffs' Motion for Summary Judgment on Defendant's Counterclaim (Doc. 68), Plaintiffs' Motion for Partial Summary Judgment (Doc. 69), Defendant's Motion for Summary Judgment (Doc. 70), and the responses and the replies (Doc. Nos. 71, 73, 74, 76) thereto.  For the reasons set forth below, Plaintiffs' Partial Motion will be stricken, Plaintiffs' Counterclaim Motion will be denied, and Defendant's Motion will be denied.

## I.    BACKGROUND

In September 2023, Defendant National Automotive, Inc. ("**National Automotive**") purchased several vehicles out of a wholesale lot from Murray Ford, including a used 2011 Chevrolet Equinox.  (Doc. 70 at 21–22).  Shortly thereafter, Plaintiffs Isiah Robinson and Lisa Clayton-Robinson bought the Equinox from National Automotive.  (Doc. 30 at 4; Doc. 39 at 3; Doc. 70 at 22).  While the parties agree that a Retail Installment Contract and Security Agreement was signed at the time of sale, the parties have submitted different versions of the document, which they each assert is the version executed at the

time of purchase.  (Doc. 30 at 5; Doc. 39 at 16).  Defendant's version includes a handwritten "TMU"—"true mileage unknown"—notation, while Plaintiffs' version does not. (Doc. 30-2 at 2; Doc. 39 at 23).  Those differences are also present in the parties' versions of the Bill of Sale Buyer's Order.  (*See* Doc. 39 at 29; Doc. 68-1 at 2).[1]  Additionally, the signed Separate Odometer Disclosure Statement and Acknowledgment submitted by Plaintiffs shows that Defendant represented 118,245 miles as the "actual mileage" of the vehicle, while the version submitted by Defendant shows that the figure "is not the actual mileage."  (Doc. 30-4 at 2; Doc. 39 at 39).

Because National Automotive did not possess the certificate of title for the Equinox either at the time of the sale from Murray Ford or at the time of the sale to Plaintiffs, Christopher Caldwell, a salesman at National Automotive, used the mileage as shown on the Equinox's odometer—118,245 miles—when preparing the documents for Plaintiffs to sign.  (Doc. 68-3 at 72:18–24; Doc. 70 at 22; Doc. 74 at 28–29).  Plaintiffs state that National Automotive represented—either orally or in writing—that 118,245-miles was the "actual mileage" of the Equinox.  (Doc. 69-6 at 1; Doc. 69-7 at 1).[2]  However, Isiah Robinson did not believe Caldwell was intentionally trying to trick him but was "trying to be a good salesman."  (Doc. 70 at 39).  Ramaghi did not speak with Plaintiffs the day they

---

[1] Robin Ramaghi, the general manager and owner of National Automotive, testified that Defendant's version of the document was the second version of the contract between the parties, which was signed by Plaintiffs at the dealership after National Automotive discovered a defect in the vehicle's odometer reading.  (Doc. 69-8 at 9:1–3, 122:1–124:24).

[2] Although Plaintiffs' second motion for summary judgment will be stricken, the Court will consider the record evidence attached to the Motion as though it had been attached to Plaintiffs' Response.

2

came into the dealership to purchase the Equinox and was not personally involved in the sale of the vehicle to them.  (Doc. 68-3 at 80:16–81:8).

Sometime around September 11, 2023, National Automotive received the certificate of title from Murray Ford, which revealed that the mileage listed on the Equinox's odometer was "not actual." (*Id.* at 72:18–24; Doc. 70 at 24).  According to the title history, the Equinox had an actual mileage of 208,579 miles as of January 16, 2023. (Doc. 69-2 at 56).  The parties, however, do not agree on what occurred after this discovery.  According to Defendant, it contacted Plaintiffs to report the mileage issue and asked them to return to the dealership to discuss their options.  (Doc. 70 at 24). Thereafter, Defendant claims that it gave Plaintiffs the option to surrender the vehicle, terminate the contract, and receive a return of their down payment at a meeting on September 14, 2023, at the dealership.  (*Id.* at 24–25; Doc. 74 at 30).  Plaintiffs opted to keep the Equinox.  (Doc. 70 at 25; Doc. 74 at 30).  Plaintiffs dispute that such a meeting occurred and claim that they never returned to the dealership to sign new contracts or authorize any changes to the mileage disclosure documents.  (Doc. 69-6 at 3; Doc. 69-7 at 3).

As a result of the foregoing, Plaintiffs brought suit against National Automotive alleging violations of the Federal Odometer Act ("**Odometer Act**"), 49 U.S.C. § 32701 *et seq.*, fraud, fraudulent inducement, breach of express warranty, and revocation of acceptance .  (Doc. 30 at 12–17).

In Response to Plaintiffs' claims, National Automotive brought a counterclaim for breach of contract.  (Doc. 39 at 16–20).  National Automotive installed a GPS device on the Equinox before it was sold.  (Doc. 68-3 at 132:4–133:2).  In connection with the

3

purchase, Plaintiffs signed the Acknowledgment of Purchase of Vehicle Containing Past Due Starter Interrupt and/or Electronic Tracking (GPS) Device as Condition of Sale ("**GPS Agreement**"), in which Plaintiffs agreed to allow Defendant to use the GPS to locate the Equinox until the underlying vehicle contract had been paid in full, at which time that GPS device would be removed.  (Doc. 39 at 51).

The GPS device ran on an internal battery that held a 48-hour charge when the vehicle was not in operation and was recharged while the car was running.  (Doc. 68-3 at 134:25–135:12).  Around May 4, 2024, the device sent a "disconnected" notification to National Automotive.  (*Id.* at 140:20–141:25, 156:25–157:4).  Plaintiffs claim that the Equinox "sat idle" between approximately May 4, 2024, and September 6, 2024, "due to mechanical defects" and that the vehicle's battery lost power during that time.  (Doc. 68-4 at 2).  Ramaghi contacted the GPS manufacturer for assistance in rebooting the device but those attempts were unsuccessful.  (*Id.* at 142:17–22, 143:7–10).  Thereafter, Ramaghi contacted Plaintiffs for permission to inspect the vehicle and GPS, but Plaintiffs did not allow National Automotive to inspect either the Equinox or the GPS device inside the vehicle.  (*Id.* at 142:8–25, 143:10–11).  Jim Schumacher, the owner of GPS Vehicle Finder, claims that the GPS unit inside the Equinox could have ceased sending location signal because "it was physically disconnected from the vehicle, it was removed from the vehicle or it was tampered with."  (Doc. 71 at 58–59).

## II.     LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

## III.   DISCUSSION

As an initial matter, Plaintiffs filed two motions for summary judgment. However, as set forth in this Court's Case Management and Scheduling Order, "[t]he motion for summary judgment and supporting memorandum of law shall be presented *in a single document* of not more than twenty-five pages." (Doc. 22 at 6 (emphasis added)); *see also Keeley v. John's Green House, Inc.*, No. 6:22-cv-721, 2023 WL 7129860, at *1 (M.D.

Fla. Sept. 20, 2023); *Benhassine v. Star Transp. Mgmt., Inc.*, No. 6:12-cv-1508-Orl, 2013 WL 12164716, at *1–2 (M.D. Fla. Oct. 29, 2013); *Voter Verified, Inc. v. Premier Election Sols., Inc.*, No. 6:09-cv-1968-Orl, 2010 WL 1049793, at *2–3 & n.2 (M.D. Fla. Mar. 22, 2010). Plaintiffs did not seek leave to file a successive motion for summary judgment and, therefore, their second Motion will be stricken without further analysis.

### A. Defendant's Counterclaim

Plaintiffs contend that they are entitled to summary judgment on Defendant's counterclaim for two reasons: (1) Defendant has failed to show an injury-in-fact required for standing; and (2) Defendant has failed to prove the required elements of breach or damages. The Court will first resolve any disputes over standing.

First, Plaintiffs argue that the loss of GPS signal alone is too abstract to constitute an injury-in-fact under Article III. "Under settled precedent, the 'irreducible constitutional minimum' of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The foremost standing requirement is injury in fact. An injury in fact consists of an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (quotations omitted); *see also Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022). "Almost invariably, a party to a contract has standing to sue for breach." *SFR Servs. L.L.C v. Indian Harbor Ins. Co.*, No. 2:21-cv-160, 2021 WL 2825952, at *2 (M.D. Fla. July 7, 2021); *see also Hershey Co. v. Cadiz*,

6

No. 05-60999-CIV, 2006 WL 8431511, at *2 (S.D. Fla. May 9, 2006) (holding that a litigant has "standing to bring claims for breach" of contract "as a party to the contract").

Defendant attached a signed copy of the GPS Agreement to its counterclaim. (Doc. 39 at 51).  According to the GPS Agreement, the GPS device was "used to secure collection of monies" by Defendant while Plaintiffs had ongoing payments for the vehicle. (*Id.*).  Therefore, as "the party to benefit from the alleged agreement," Defendant has "standing to sue" because it has a "legally protected interest" in the contract and "suffered concrete harm" due to the alleged breach.  *Marine Depot, Int'l, Inc. v. James River Grp., Inc.*, No. No. 19-CV-24821, 2021 WL 4848921, at *4 (S.D. Fla. July 2, 2021), *report and recommendation adopted*, 2021 WL 4189587 (S.D. Fla. Sept. 15, 2021).

Plaintiffs also argue that Defendant cannot identify any impaired contractual right because the presence of an integration clause in the Retail Installment Contract precludes the Court from reviewing the contemporaneously-signed GPS Agreement.  Plaintiffs' argument fails.  "Where two or more documents are executed by the same parties, at or near the same time and concerning the same transaction or subject matter, the documents are generally construed together as a single contract."  *Audiology Distrib., LLC v. Simmons*, No. 8:12-cv-02427, 2014 WL 7672536, at *5 (M.D. Fla. May 27, 2014) (quoting *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1067 (11th Cir. 2004).  "In other words, if two or more contracts are functionally intertwined, they must be read and construed together."  *Id.* (quotation omitted).  Here, the GPS Agreement and Retail Installment Contract are functionally intertwined and pertain exactly to how Defendant would be compensated and be able to enforce its right to collect that compensation.  Thus, when read together, these documents clearly identify an impaired contractual right.

7

Finally, Plaintiffs appear to argue that Defendant lacks standing to bring its breach of contract claim because it has not produced or disclosed any computation of damages. But this argument also fails.  Indeed, "[i]t is well settled that a party may pursue an action for breach of contract even in the absence of, or inability to properly prove, actual damages." *Swipe for Life, LLC v. XM Labs, LLC*, No. 10-22337-Civ, 2012 WL 1289726, at \*5 (S.D. Fla. Apr. 16, 2012).  "In such a case, the plaintiff is entitled to nominal damages because 'there is a legal remedy for every legal wrong and, thus, a cause of action exists for every breach of contract.'" *Id.* (quoting *AMC/Jeep of Vero Beach, Inc. v. Funston*, 403 So. 2d 602, 605 (Fla. 4th DCA 1981)).  Therefore, for these reasons, the Court finds that Defendant has standing on its counterclaim.

Turning to the merits, Plaintiffs argue that Defendant cannot succeed in its counterclaim because it cannot prove breach.  To prevail on a breach of contract claim under Florida law, "a plaintiff must establish the following elements: '(1) a valid contract, (2) a material breach, and (3) damages.'" *De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 113 F. Supp. 3d 1221, 1223 (M.D. Fla. 2014) (quoting *Havens v. Coast Fla., P.A.*, 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013)).  "[T]he question of whether a valid contract exists is a threshold question of law that may be properly decided by the court." *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014).

In addition to providing evidence of the existence of the contract, Defendant also provides testimonial evidence from Ramaghi[3] about the various notifications the device

---

[3] To the extent Plaintiffs argue that Ramaghi's deposition shows no dispute of material fact because she had no personal knowledge of tampering, the argument is unconvincing.  "The testimony of a Rule 30(b)(6) witness represents the collective knowledge of the corporation, not of the specific individual deponents." *Critchlow v. Sterling Jewelers Inc.*, No. 8:18-cv-96-T, 2019 WL 13062636, at \*2 (M.D. Fla. Feb. 26,

sent to National Automotive, the device's owner, depending on whether it was disconnected or lost power, and how Plaintiffs did not allow National Automotive to inspect either the vehicle or the device. Defendant also provides a sworn statement from Schumacher to support its contention that there was a breach of the GPS Agreement through potential tampering. Moreover, the testimony of Schumacher and Ramaghi could be viewed by a reasonable juror to find that Plaintiffs' impaired Defendant's enforceable legal interests under the contract. Thus, there are genuine disputes of fact such that a reasonable jury could differ on whether Plaintiffs breached their contractual obligations to National Automotive. Accordingly, Plaintiff's Motion will be denied.

### B. Plaintiff's Claims

#### 1. Federal Odometer Act

"The Federal Odometer Act imposes on car dealers various requirements intended to ensure that automobile consumers are provided with accurate statements of a car's mileage." *Coleman v. Lazy Days RV Ctr, Inc.*, No. 8:05-cv-930-T, 2006 WL 2131303, at *3 (M.D. Fla. July 28, 2006) (citing 49 U.S.C. § 32705). To state a claim for monetary relief under the Odometer Act, a party must allege that a person violated the Act, or regulations or orders promulgated therefrom, "with intent to defraud." 49 U.S.C. § 32710(a); *see also Bertolotti v. A&I Int'l Motor Corp.*, No. 16-22185-Civ, 2016 WL 6804624, at *2 (S.D. Fla. Nov. 17, 2016) ("For a plaintiff to recover damages under the Act, he must prove (1) a violation of the act (2) made with intent to defraud."). With respect to intent to defraud, "[a] majority of courts have found an 'intent to defraud' where a seller

---

2019) (quotation omitted). "Thus, a Rule 30(b)(6) witness need not have personal knowledge of the designated subject matter." *Id.* (quoting *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012)).

exhibited gross negligence or a reckless disregard for the truth in preparing odometer disclosure statements." *Bertolotti*, 2016 WL 6804624, at *2.  "Mere negligence cannot be the basis of civil liability under the Odometer Act."  *Snoody v. Savannah Motors, Inc.*, No. CV405-203, 2007 WL 9711140, at *13 (S.D. Ga. Jan. 26, 2007).

Plaintiffs claim that Defendant violated the Odometer Act by making a false statement to a transferee, failing to provide Plaintiffs with the actual title certificate to transfer title for examination and signature, utilizing an unsecure power of attorney to sign as both buyer and seller in confirming a federal odometer reading, and accepting an incomplete title transfer from Murray Ford.  (Doc. 30 at 12–13).  Defendant claims that Plaintiffs have no evidence that Defendant intended to defraud them or that Defendant had any actual or constructive knowledge of a mileage discrepancy.  However, the record evidence shows there are genuine disputes on whether Defendant had an intent to defraud.

To begin, the parties submit notably different versions of the same Retail Installment Contract and Security Agreement, while both asserting that these are the true and correct agreements signed at the time of the sale.  One version includes notations about the true mileage being unknown, while the other does not.  The same is true about the Separate Odometer Disclosure Statement submitted by the parties.  Although it is undisputed that Defendant did not possess the certificate of title for the Equinox, Plaintiffs claim in sworn statements that National Automotive represented that the 118,245-mileage figure was the "actual mileage" of the Equinox.  Defendant submits evidence from Caldwell and Ramaghi contradicting those assertions, contending that Plaintiffs later returned to the dealership to resign their agreement despite being offered their deposit

back by Defendant and a termination of the contract. But Plaintiffs' sworn statements also assert that they never returned to resign the contract. One version of events could lead a reasonable factfinder to the conclusion that Defendant acted with gross negligence, while the other could support the opposite finding. *Coleman*, 2006 WL 2131303, at *5. At the summary judgment stage, it is not the Court's role to weigh evidence and decide which version of events is most compelling. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quotation omitted)). Therefore, the Court finds Defendant is not entitled to summary judgment as to Count I.

### 2. Fraud and Fraudulent Inducement

Counts II and III assert claims for fraud and fraudulent inducement respectively. Both claims are predicated on Defendants' alleged assurances with respect to the mileage of the Equinox, which Plaintiffs say induced them into signing the contract.

"Under Florida common law, to prove fraud in the inducement or fraudulent misrepresentation, a plaintiff must prove the defendant made a false statement about a material fact, the defendant knew the fact is false, the defendant made the statement intending to induce the plaintiff to act on it, and, in acting in reliance on the statement, the plaintiff suffered an injury." *Open Sea Distrib. Corp. v. Artemis Distrib., LLC*, 692 F. Supp. 3d 1151, 1197 (M.D. Fla. 2023) (citing *Dziegielewski v. Scalero*, 352 So. 3d 931, 934 (Fla. 5th DCA 2022)). "The statement 'must be one of fact rather than opinion.'" *Id.* at 1198 (quoting *Vokes v. Arthur Murray, Inc.*, 212 So. 2d 906, 908 (Fla. 2d DCA 1968)). And the statement must have, "in whole or in part," induced the plaintiff to enter into the

11

transaction.  *Id.* (quoting *Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 841 (Fla. 2022)).  Both Florida and federal courts have found that "[f]raud in the inducement is not ordinarily appropriate for summary disposition."  *Haynes v. Arman*, 192 So. 3d 546, 549 (Fla. 5th DCA 2016) (quotation omitted); *see also Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1029 (11th Cir. 2017) ("In fraud cases, however, summary judgment is rarely proper as the issue so frequently turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge." (quotation omitted)).

Here, the "axis of the circumstances surrounding the complete transaction" is far from clear on whether Defendant had the requisite scienter required for fraud.  *Glob. Quest, LLC*, 849 F.3d at 1029.  As previously stated, there are disputes about which party's version of the contracts is the correct version, which could change the nature of the mileage disclosure, disputes about whether Caldwell gave any oral assurances of the vehicle's mileage during the sale despite the fact National Automotive did not possess the certificate of title, disputes about whether Defendant contacted Plaintiffs after discovering the odometer mileage was inconsistent with the certificate of title, and disputes about whether Plaintiffs revisited National Automotive on September 14, 2023, to resign the contracts.  Thus, whether Defendant knew the disclosure was false and made the false disclosure to induce the Plaintiffs into purchasing the Equinox remain triable issues.  Accordingly, the Court finds that Counts II and III fall into those kinds of cases unfit for resolution at the summary judgment stage.

### 3. Breach of Express Warranty and Revocation of Acceptance

In Count IV, Plaintiffs argue that the written mileage representations on the vehicle contracts, including the Retail Installment Sales Contract, Bill of Sale Buyer's Order, and Odometer Disclosure, created an express warranty and that Defendant breached this express warranty.[4]

Under Florida law, a cause of action for a breach of express warranty requires: "(1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty." *Moss v. Walgreen Co.*, 765 F. Supp. 2d 1363, 1368 (S.D. Fla. 2011) (footnotes omitted) (citing *Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977)).   Under Florida law, the creation of express warranties is governed by statute.  *See generally* Fla. Stat. § 672.313.  "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  Fla. Stat. § 672.313(1)(a).  Moreover, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  Fla. Stat. § 672.313(1)(b).

Defendant argues that Plaintiffs cannot prevail on their breach of express warranty claim because the vehicle contracts contained an "as is" disclaimer.  (Doc. 70 at 13). Though a conspicuous "as is" disclaimer can exclude *all implied* warranties, the same is not true for express warranties.   *Compare* Fla. Stat. § 672.313 *with* Fla. Stat.

---

[4] Based on the deposition of Isiah Robinson, there is also evidence that this warranty could have been an oral representation of some kind by dealership employees. (Doc. 70 at 39).

§ 672.316(2)–(3)(a).  Rather, "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but . . . negation or limitation is inoperative to the extent that such construction is unreasonable."  Fla. Stat. § 672.316(1).

"The most prominent principle in the construction of warranties is the ascertainment of the intentions of the parties in light of the surrounding circumstances." *See Knipp v. Weinbaum*, 351 So. 2d 1081, 1085 (Fla. 3d DCA 1977)).  As to the possibility of a written warranty, there are significant discrepancies between the parties' submitted versions of the contract documents, including the odometer disclosures.  Plaintiffs' version of the Separate Odometer Disclosure Statement and Acknowledgment makes it appear that Defendant represented the 118,245-mileage figure as the "actual mileage" of the vehicle, while Defendant's version shows that this mileage "is not the actual mileage." (Doc. 30-4 at 2; Doc. 39 at 39).  As to the possibility of an oral warranty, there are also disputes about what Caldwell said to Plaintiffs in-person, namely whether Caldwell simply used persuasion like a "good salesman," as Isiah Robinson suggested, or whether anything was said that goes beyond "mere puffery."  *See Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013) ("[M]ere puffery or sales talk is not sufficient to create an express warranty." (citing *Carter Hawley Hale Stores, Inc. v. Conley*, 372 So. 2d 965, 969 (Fla. 3d DCA 1979))).  Therefore, there are genuine disputes of material fact over the existence of an express warranty and whether that warranty was breached.

Count V of Plaintiff's Amended Complaint seeks revocation of acceptance as an equitable remedy for breach of express warranty "pursuant to the Magnusson Moss

14

Warranty Act." (Doc. 30 at 16). "The Magnuson-Moss [Warranty] Act ("MMWA") is designed to protect[] consumers from deceptive warranty practices in the sale of 'consumer products' or 'service contracts.'" *Mount Sage, Ltd. v. Rolls-Royce Com. Marine Inc.*, 635 F. App'x 833, 838 (11th Cir. 2016) (footnote omitted); *see also* 15 U.S.C. §§ 2301–2312. "[A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation" listed in the MMWA "or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). Here, Plaintiffs' cause of action is specifically grounded in their claim that Defendant allegedly breached an express warranty. (Doc. 30 at 16).

"The MMWA does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law." *Vaughan v. Emerald Coast RV Ctr., LLC*, No. 8:17-cv-639, 2019 WL 13227254, at *3 (M.D. Fla. Mar. 7, 2019) (quotation omitted). "As such, the MMWA borrow[s] state law causes of action for breach of both written and implied warranties as a necessary condition for bringing forth an action under the MMWA." *Taillard v. Mercedes-Benz USA, LLC*, 805 F. Supp. 3d 1235, 1244 (S.D. Fla. 2025) (quotation omitted). Thus, "claims under the [MMWA] stand or fall with [a plaintiff's] express and implied warranty claims under state law." *Vazquez v. Gen. Motors, LLC*, No. 17-22209-CIV, 2018 WL 447644, at *4 (S.D. Fla. Jan. 16, 2018) (quotation omitted). Because Plaintiffs' claims for breach of express warranty cannot properly be solved at summary judgment, the same is true of Count V.

IV.    **CONCLUSION**

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

15

1. Plaintiffs' Motion for Summary Judgment on Defendant's Counterclaim (Doc. 68) is **DENIED**.

2. Plaintiffs' Motion for Partial Summary Judgment (Doc. 69) is **STRICKEN**.

3. Defendant's Motion for Summary Judgment (Doc. 70) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida on April 13, 2026

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of Record

16